February 3, 2023

Pedro and Karolina Marciniak-Domingues Goncalves Agra
500 E 63rd Str, Apr 13F, New York, NY, 10065
phone # 9732167330
email: <marciniak.kar@gmail.com>
(Plaintiffs)

Hon. Andrew L. Carter, Jr.
Southern District of New York
40 Foley Square, Room 435
New York, New York 10007

email copy to "ALCarterNYSDChambers@nysd.uscourts.gov"
<ALCarterNYSDChambers@nysd.uscourts.gov>

cc: "Bloom, Elise M." <ebloom@proskauer.com>, "Baddish, Noa" <nbaddish@proskauer.com>
 (The Rockefeller University Defendant)

Re: *Agra v. Center for Brains, Minds and Machines, et al.*, No. 22 Civ. 10959 (ALC)

Dear Judge Carter:

We, Plaintiffs on this lawsuit, submit this letter in response to The Rockefeller University ("RU") 's Pre-Motion letter from Jan 31st ("The Letter") requesting 'Conference on Anticipated Motion to Dismiss'. Below we are setting forth our position.

I. Response and rebuttal towards *"Plaintiffs' Allegations and Claims"*

  The Letter refers to 'CBMM' as if CBMM was an entity separated from RU, whereas the fact is that RU incorporates CBMM (¶¶ 31-32). In 2017, RU delegated its employee, Plaintiff Karolina Marciniak-Domingues Goncalves Agra ('Dr. Marciniak') to travel to Woods Hole, MA, for business. (¶¶ 105-113, 120). There, at MBL facilities, she fell a victim of the sexual perpetration scheme (¶¶ 114-118), which on Aug 30, 2017, at the university's facilities, resulted in rape (¶¶ 119). The perpetrator and his enabler held position of authority, and were indirect supervisors of Dr. Marciniak at her workspace (¶¶ 115, footnote 74). She informed her RU supervisor about the incident two days afterwards (¶¶ 120). His refusal to act upon her complaint caused her to suffer subsequent continuous sexual harassment not only from the sexual assault perpetrator (¶¶ 124-141), but also from her RU supervisor (¶¶ 427-437). At the beginning of 2019, she filled the internal institutional complaint against the sexual assault perpetrator and his enabler (¶¶142-147) and reported the criminal incident to the Falmouth Police (¶¶ 121). Yet, her internal complaint has been secretly discussed between the involved institutions for months, until, 'it was decided' (to Dr. Marciniak's disadvantage and despite her opposition) that it would be investigated by the duo of the MBL HR Director and the University of Chicago's Title IX coordinator (¶¶ 149, 153, 157, 159, 179-180, 184, 195, 202). Crucially, starting way before the actual 'investigation' launched, the RU HR Vice President and Title IX coordinator had been closely interacting with Dr. Marciniak, deciding upon and supervising all of her complaint moves (¶¶ 204-232).
  Documentation of the above mentioned complaint process does not indicate that any Title IX (let alone Title VII) procedures were implemented at all. In fact, it is documented that the duo who 'investigated' Dr. Marciniak's complaint did not use Title IX but 'utilized' other procedures (¶¶ 275-277). Their effective execution in 'investigating' Dr. Marciniak's complaint was deliberately skewed to give disproportional advantage to the rapist (¶¶ 251-256, 265,- 271). Dr. Marciniak was not allowed to appeal the outcome which resulted from the

erroneous and biased process (¶¶ 272-273). Despite she had been repeatedly pointing towards clear procedural errors in the 'investigative' process, the outcome was unanimously endorsed as final by all institutions liable towards the complaint, including MIT (¶¶ 392, 621), NSF ODI (¶¶ 624, 626), and RU. Specifically, in late 2019, in actions supervised by the RU legal counsel, the RU official silenced Dr. Marciniak after gaining factual knowledge about other victims of the same perpetrator who were willing to corroborate Dr. Marciniak's testimony (¶¶ 331-381).

In summary, The Letter falsely refers to Dr. Marciniak's institutional complaints she initialized in March 2019 as the Title IX complaint, in attempt to dodge about the RU's liability, the illegal strategy (¶¶10), which RU has been systematically using from May 2019 (¶¶ 216-218, Response to NYS DHR complaint). Factual allegations shows that *'the University's subsequent efforts to provide Dr. Marciniak with mental health and legal services and otherwise assist her'*, alleged in The Letter, were in fact part of the scheme to cover-up Dr. Marciniak's sexual assault and sexual harassment complaints and salience their victim (¶¶ 205-289, 290-330, 331-381). The retaliatory animus from RU towards Dr. Marciniak and her husband because of her complaint was also evidenced by causal link between Dr. Marciniak's protected activity and employment negative action of her RU supervisor in June 2020 (¶¶427-455), and through further RU's malicious and retaliatory actions towards Plaintiffs (¶¶ 468-547)

A separate CBMM corporate identity has been systematically abused by RU's officials, directors and employees in their interactions towards Dr. Marciniak and her sexual assault, sexual harassment and retaliation complaints, sanctioning fraud and promoting injustice. The claims of this lawsuit are formulated against RU grouped together with other involved institutions, to allow the litigation process to pierce the corporate veil of the NSF-CBMM corporate agreement.

II. Rebuttal towards" *Failure to Satisfy Rule 8*":

Although defendants are addressed collectively in stating the lawsuit's claims since the collective actions of the CBMM Defendants subjected them to liability with respect to claims brought in this lawsuit (¶¶ 11-16), factual allegations giving rise to the claims against each and every defendant are formulated with enough specificity to identify the involvement of each and every of them, including RU. This lawsuit's referrals to the evidence are unambiguous in revealing 'who did what'. Inherent structure of the claims brought in this lawsuit prevents motion to dismiss based on alleged 'failure to satisfy Rule 8', and the actions of RU leading to this lawsuit's claims are addressed with sufficient specificity to allow the RU defendant to respond to the allegations. RU exercised complete domination and control, and abused privileges of doing business in the corporate form to perpetuate a wrong and injustice, causing Plaintiffs' injury.

III. Response to Title VII and Title IX (Counts 1-6).

There is no ground for motion to dismiss for '*failure to exhaust administrative remedies*', since Plaintiffs followed the requirement of the doctrine of exhaustion of remedies. This lawsuit is focused on the causes of actions which caused Plaintiffs harm (¶¶ 21-26), are not covered by independent agencies (state or federal) of the United States government (¶¶ 11- 20) and are suitable only for this venue (¶¶ 27-30). Yet, Plaintiffs have great interest in having the litigation issue against Rockefeller University resolved promptly. Plaintiffs acknowledge that the failure of exhaustion of administrative remedies is generally an affirmative defense subject to court waiver, and would consider withholding the administrative complaints if the successful remedies can be found in this venue. In case RU defendant presents matters concerning other complaints as matters outside of the pleadings on a motion under Rule 12(b)(6) or 12(c), the motion must be treated as one for summary judgment under Rule 56, and Plaintiffs will assure their right to present the material pertinent to defendant's anticipated motion.

Plaintiffs respectfully demanded to apply §42.9 Fraudulent Concealment Exception to Statute of Limitations for related Title VII and Title XI counts (1-6). Dr. Marciniak did not file EEOC complaint earlier because illegal RU defendant's actions did not allow her to do so.

RU is liable towards claims 1-6 since they are recognizable either under Title VII or under Title IX, both applicable towards RU in this litigation (the claim of erroneous outcome under Title IX cast doubts on the accuracy of not necessary the investigation itself, but of a disciplinary proceeding's outcome, in which RU was

involved). For the purposes of Title IX, trainee postdocs can be characterized as a "student" because under Title IX, students aren't merely those who are seeking a degree, but anyone who is getting their education (even hands-on education) as a part of a covered program. RU has to comply with Title IX regulations as the recipient of the federal funds. From 9/1/2017 to 8/31/2019, Dr. Marciniak was appointed as a fellow, not an employee, thus RU's actions of deliberate indifference which took place in this period are liable under Title IX. The negligence claims of finding that a "special duty" is owed to the reporting student were allowed in this venue (Doe v. Sarah Lawrence College et al. 19-CV-10028 (PMH), S.D.N.Y 2020. Anyway, the negligence claim still holds against RU under Title VII, since Dr. Marciniak's complaint to RU about sexual assault at her workplace (which happened when she was employed) reported a hostile work environment by the perpetrator, i.e., her non-immediate supervisor and the co-worker in her workplace environment (RU failed to take prompt, effective remedial action reasonably calculated to end the harassment).

III. Response to Conspiracy (Count 8), Criminal Statutes (Counts 9-12)

Litigating the schemes of the rape culture and sexual harassment complaint cover-ups is possible by this lawsuit because of factual allegations evidencing the existence of pattern of illegal institutional responses towards Dr. Marciniak's sexual assault, sexual harassment and retaliation complaints, multi-institutional communications over her complaint and similar interests to avoid liability towards her complaint by each and every defendant. Plaintiffs make factual allegations supporting 'meetings of the minds such that {the} defendants (including RU's officials) entered into an agreement to achieve {an} unlawful end". Although Plaintiffs could not raise criminal charges, they are allowed to recover damages arising from those claims.

IV. Response to TVPA (Count 13).

Factual allegations (including documented email correspondence between 2014-2016, prior she started her work for RU), indicate that Dr. Marciniak was coerced to work for the University by means of abuse from the side of her RU supervisor. To recruit her to work for RU, he intentionally manipulated Dr. Marciniak's belief about her future work by falsely presented laboratory's methodology, made false promises about his laboratory's technology, and compelled her to sign the contract using emotional coersion. To work for the University, Dr. Marciniak moved her center of living from Germany to the USA, which left her vulnerable in a new environment, under immigration status which was fully controlled by the RU, and which allowed her to work only for RU. Factual allegations also support that throughout her employment, her immediate RU supervisor resolved to quid pro quo sexual harassment towards her. Through his actions, he demonstrated that he expected Dr. Marciniak's compliance towards his sexual advances as pert of her work. When she opposed it, he threatened her with the end of her career. Factual allegations indicate that "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act." took place throughout Dr. Marciniak's employment at RU.

V. Response to RICO (Count 14):

Factual allegations sufficiently support the claim under RICO law. In the lawsuit, Plaintiffs allege information regarding the hierarchy, organization, activities of the 'enterprise', and – critically in this case- explain participation of the RU in fraudulent and illegal conduct. In particular, the role of RU's Vice President for HR and Title IX Coordinator executed by Virginia Huffman for this claim is reveal in details by this lawsuit. Virginia Huffman discussed Dr. Marciniak's 'case' with RU's legal counsel, and held otherwise superior position in Dr. Marciniak's complaint cover-up scheme hierarchy at RU.

VI. Response to IIED and Loss of Consortium (Counts 15 and 16):

The lawsuit's IIED claim can not be time-barred under the applicable one-year statute of limitations on the ground of the fact that Dr. Marciniak's employment with the defendant ended on November 30, 2021. RU's actions which took place after that date, caused Plaintiffs' physical and mental suffering, which required medical

and mental health treatment for PTSD, and which is documented with medical records and testimonies, in the form which is strong enough to prove IIED and loss of consortium claims.

VII. Conclusion

Because the evidence supports the notion that the lawsuit's counts are correctly addressed against the defendant and likely suggests that defendant's anticipated motion to dismiss will not hold, we respectfully ask the Court to reject The Rockefeller University's request for 'Conference on Anticipated Motion to Dismiss', and allow the defendant to answer the lawsuit's allegations.

We thank the Court for its consideration of this matter.


Respectfully submitted,

/s/ Karolina Maria, Marciniak-Domingues Agra


/s/ Pedro Henrique, Marciniak-Domingues Agra



email copy to "ALCarterNYSDChambers@nysd.uscourts.gov"
<ALCarterNYSDChambers@nysd.uscourts.gov>

cc: "Bloom, Elise M." <ebloom@proskauer.com>, "Baddish, Noa" <nbaddish@proskauer.com>
(The Rockefeller University Defendant)