## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ———————————————————— ) | |
| DR. KAROLINA MARCINIAK-DOMINGUES ) | |
| GONCALVES AGRA and MR. PEDRO ) | |
| MARCINIAK-DOMINGUES GONCALVES AGRA, ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:22-cv-10959 (ALC) |
| ) | |
| v. ) | |
| ) | **ORAL ARGUMENT REQUESTED** |
| CENTER FOR BRAINS, MINDS AND MACHINES ) | |
| AT MASSACHUSETTS INSTITUTE OF ) | |
| TECHNOLOGY, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ———————————————————— ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS THE AMENDED COMPLAINT

(see author block)

Jennifer L. Chunias (*pro hac vice*)
Emily Unger (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: (617) 570-1000
Email: jchunias@goodwinlaw.com
Email: eunger@goodwinlaw.com

Marco Y. Wong
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
Email: marcowong@goodwinlaw.com

*Counsel for Defendant Massachusetts Institute of Technology*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

    A.    Neither MIT Nor CBMM Have Meaningful Ties To New York. ........................ 2

    B.    The Complaint Fails To Adequately Allege That Marciniak And Her Alleged Perpetrators Were MIT Employees. ........................................................ 3

    C.    Very Few Of The Events Alleged By Plaintiffs Occurred At MIT's Campus. .............................................................................................................. 3

    D.    MIT Promptly Responded To Marciniak's Title IX Complaint And Ensured That An Investigation Occurred. ............................................................ 4

ARGUMENT ........................................................................................................................ 5

I.      THIS CASE SHOULD BE DISMISSED UNDER RULE 12(B)(2) BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER MIT. ............................... 5

    A.    This Court Does Not Have General Jurisdiction Over MIT. ................................ 5

    B.    This Court Does Not Have Specific Jurisdiction Over MIT. ............................... 6

II.    THIS CASE SHOULD BE DISMISSED UNDER RULE 12(B)(3) BECAUSE VENUE IS IMPROPER IN NEW YORK. ........................................................................ 9

III.   THE COMPLAINT DOES NOT STATE A CLAIM AGAINST MIT UNDER TITLE IX. ................................................................................................................... 10

IV.   THE COMPLAINT DOES NOT STATE A CLAIM AGAINST MIT UNDER TITLE VII. ................................................................................................................. 17

V.    THE COMPLAINT DOES NOT STATE A CLAIM AGAINST MIT FOR NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION (COUNT VII). ........................................................................................................... 22

CONCLUSION .................................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Broidy v. Glob. Risk Advisors LLC*,
    2023 WL 6258135 (S.D.N.Y. Sept. 26, 2023)...........................................................................5

*Ahluwalia v. St. George's Univ.*,
    626 F. App'x. 297 (2d Cir. 2015) ........................................................................................23

*Austin v. Fordham Univ.*,
    2022 WL 4626485 (S.D.N.Y. Sept. 30, 2022) ......................................................................11

*Bruin v. Bank of Am., N.A.*,
    2022 WL 992629 (S.D.N.Y. Mar. 31, 2022) (Carter, J.).....................................................5, 6

*Bustamante v. Atrium Med. Corp.*,
    2020 WL 583745 (S.D.N.Y. Feb. 6, 2020) (Carter, J.)....................................................6, 8, 9

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014).....................................................................................5

*Byron v. Bronx Parent Hous. Network*,
    2023 WL 2585824 (S.D.N.Y. Mar. 20, 2023) ................................................................18, 25

*Comunale v. Gemma*,
    2020 WL 635554 (S.D.N.Y. Feb. 11, 2020) (Carter, J.).........................................................7

*DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*,
    2023 WL 199196 (S.D.N.Y. Jan. 17, 2023) ..........................................................................9

*Dava v. City of New York*,
    2016 WL 4532203 (S.D.N.Y. Aug. 29, 2016).......................................................................23

*Doe 1 v. Congregation of Sacred Hearts of Jesus & Mary*,
    2023 WL 185496 (S.D.N.Y. Jan. 13, 2023) ..........................................................................9

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)........................................................................23, 24, 25

*Doe v. Columbia Univ.*,
    831 F.3d 46 (2d Cir. 2016)...................................................................................................16

*Doe v. Golden Krust Caribbean Bakery & Grill Inc.*,
    2023 WL 2652264 (E.D.N.Y. Mar. 27, 2023) ......................................................................19

*Doe v. New York Univ.*,
    438 F. Supp. 3d 172 (S.D.N.Y. 2020).......................................................................11, 12, 14

*Ehrens v Lutheran Church*,
   385 F.3d 232 (2d Cir. 2004)...........................................................25

*Gates v. City of New York*,
   2021 WL 3774189 (S.D.N.Y. Aug. 25, 2021) ........................................2

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998)...................................................................13

*Gonzalez v. City of New York*,
   2015 WL 9450599 (E.D.N.Y. Dec. 22, 2015) ..............................18, 19

*Harriram v. Fera*,
   2023 WL 2647856 (S.D.N.Y. Mar. 27, 2023) ......................................11

*Harris v. Mills*,
   572 F. 3d 66 (2d Cir. 2009)............................................................19

*Kaupp v. Church*,
   2011 WL 4357492 (S.D.N.Y. Sept. 19, 2011).....................................25

*Klinkowitz v. Jamaica Hosp. Med. Ctr.*,
   2022 WL 818943 (E.D.N.Y. Mar. 17, 2022) ......................................18

*Lovell v. Staten*,
   2019 WL 4601665 (S.D.N.Y. Sept. 23, 2019) (Carter, J.) ...............19, 20

*Mapfre Peru Compania de Seguros y Reaseguros S.A. v. M/V AS FORTUNA*,
   2022 WL 976827 (S.D.N.Y. Mar. 31, 2022) .....................................7, 8

*Matthews v. City of New York*,
   2016 WL 5793414 (S.D.N.Y. Sept. 30, 2016) (Carter, J.) ...................22

*Milosevic v. O'Donnell*,
   934 N.Y.S.2d 375 (N.Y. App. Div. 2011) ...........................................24

*Nungesser v. Columbia Univ.*,
   244 F. Supp. 3d 345 (S.D.N.Y. 2017).................................................11

*Ochoa v. New York City Dep't of Educ.*,
   2021 WL 5450343 (S.D.N.Y. Nov. 22, 2021).............................16, 17, 21

*Posso v. Niagara Univ.*,
   2020 WL 8771334 (W.D.N.Y. Nov. 2, 2020) .......................................16

*Radwan v. Manuel*,
   55 F.4th 101 (2d Cir. 2022) ..........................................................21

*Roskin-Frazee v. Columbia Univ.*,
  2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018) ........................................................ 15

*Rozsa v. May Davis Grp., Inc.*,
  187 F. Supp. 2d 123 (S.D.N.Y. 2002) ................................................................... 26

*Sarkis v. Ollie's Bargain Outlet*,
  560 F. App'x 27 (2d Cir. 2014) ........................................................................... 22

*Shalom v. Hunter Coll. of City Univ. of New York*,
  645 Fed. App'x. 60 (2d Cir. 2016) ....................................................................... 16

*Shukla v. Deloitte Consulting LLP*,
  2020 WL 3181785 (S.D.N.Y. June 15, 2020) ....................................................... 21

*Smith v. PacerMonitor, LLC*,
  2020 WL 702224 (S.D.N.Y. Feb. 12, 2020) ............................................................ 9

*Sutton v. Stony Brook Univ.*,
  2021 WL 3667013 (E.D.N.Y. Aug. 18, 2021) ....................................................... 13

*Thackurdeen v. Duke Univ.*,
  130 F. Supp. 3d 792 (S.D.N.Y. 2015) ..................................................................... 6

*Toledo v. Unibud Restoration Corp.*,
  2022 WL 171198 (S.D.N.Y. Jan. 19, 2022) ................................................... 18, 19

*Tubbs v. Stony Brook Univ.*,
  343 F. Supp. 3d 292 (S.D.N.Y. 2018) ............................................................. 14, 15

*Tyson v. Town of Ramapo*,
  2023 WL 3949057 (S.D.N.Y. June 12, 2023) ....................................................... 12

*Univ. of Texas Southwestern Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013) ........................................................................................... 22

*Vasta v. Super Stop & Shop #0509*,
  2016 WL 5720772 (S.D.N.Y. Sept. 29, 2016) ...................................................... 23

*Vega v. Hempstead Union Free Sch. Dist.*,
  801 F.3d 72 (2d Cir. 2015) .................................................................................. 20

*Waraich v. Nat. Austl. Bank*,
  2022 WL 126014 (S.D.N.Y. Jan. 13, 2022) ........................................................ 5, 6

*Weinreb v. Xerox Bus. Servs., LLC*,
  323 F. Supp. 3d 501 (S.D.N.Y. 2018) ................................................................... 11

## PRELIMINARY STATEMENT

Defendant MIT[1] moves pursuant to Rules 8 and 12(b) of the Federal Rules of Civil Procedure to dismiss all of the claims against it in the Complaint with prejudice.[2]

In March 2019, Marciniak, a postdoctoral researcher employed by RU, filed a Title IX complaint with MIT about sexual assault and harassment that she allegedly suffered in 2017 while attending a summer program held by CBMM, of which MIT is one of seven partner academic institutions, at the campus of the MBL, in Woods Hole, Massachusetts. Marciniak admits that she chose to file her complaint with MIT for its robust investigative procedures, MIT promptly responded to her complaint, MIT and others determined that MBL was the most appropriate entity to investigate, and MIT informed her and referred her to MBL's Title IX officer. A thorough, months-long investigation followed and a "no-violation" outcome issued in August 2019.

Apparently disgruntled with that outcome, Plaintiffs now sue MIT and others more than three years after the investigation. The Complaint takes a scattershot approach, alleging, *inter alia*, violations of Title IX, Title VII, and New York state law. None of those theories state a claim but, as a threshold matter, the Court also does not have personal jurisdiction over MIT and venue is improper in New York. Specifically, in addition to the reasons set forth in the Joint Motion, the Complaint must be dismissed, in full and with prejudice, for the following reasons.

*First*, the Court does not have personal jurisdiction over MIT, as MIT is "at home" in Massachusetts, and Plaintiffs have not pleaded that any of the provisions in New York's long-arm

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Joint Memorandum in Support of Defendants' Consolidated Motion to Dismiss (the "Joint Motion").

[2] Additional factual and procedural background is included in the Joint Motion. Pursuant to the Court's order dated November 6, 2023 (Dkt. 68), Defendants are filing a joint motion to dismiss Counts One, Ten, Eleven, and Fourteen of the Complaint, alleging claims for (1) labor exploitation and trafficking as well as sex trafficking; (2) conspiracy to interfere with civil rights; (3) RICO; and (4) loss of consortium, respectively.

statute apply, nor sufficient minimum contacts with New York. *Second*, Plaintiffs have not pleaded that New York is a proper venue, given that most of the Defendants are—and most of the alleged events occurred—in Massachusetts. *Third*, the Complaint fails to state a Title IX claim: certain of the claims do not involve MIT and/or are untimely, and the remainder of the claims fail because one or more of their elements are not met. *Fourth*, the Complaint fails to state a Title VII claim: Plaintiffs have not pled that MIT was Marciniak's employer, their "breach of duty of reasonable care" theory comes too late and fails to allege an adverse action and sex-based discrimination, and their "retaliation" theory fails to allege an adverse action attributable to MIT and causation. *Finally*, the Complaint fails to state a negligent hiring, training, supervision, and retention claim: most of the allegations are untimely, and Plaintiffs fail to plead that MIT had an employee-employer relationship with Marciniak's alleged perpetrator, that MIT had the requisite state of mind, that some of the events occurred on MIT's premises, and causation as to certain other events.

The Complaint must be dismissed in full and with prejudice. It also demonstrates that Plaintiffs have no prospect of making out a claim against MIT, so amendment would be futile.

## BACKGROUND

### A.   Neither MIT Nor CBMM Have Meaningful Ties To New York.

MIT is one of the world's leading research universities, located in Cambridge, Massachusetts. *See* Compl. ¶ 11.[3] MIT's presence in New York is limited, and only includes recruiting some of its students, fundraising, and employing officers tasked with recruiting and fundraising—activities true of MIT in every other state as well. Declaration of Glen Shor ("Shor

---

[3] The Court may consider the Complaint's allegations, and the exhibits attached to the Declaration of Jennifer L. Chunias ("Chunias Decl."), which are referenced in the Complaint. *E.g.*, *Gates v. City of New York*, 2021 WL 3774189, at *1 (S.D.N.Y. Aug. 25, 2021) ("[i]t is appropriate to consider the EEOC Charge on a motion to dismiss because it is a public record and [p]laintiff relied on it in her Complaint by attaching her right-to-sue letter"). All (i) internal alterations, citations, and quotation marks are omitted unless otherwise noted; and (ii) emphasis is added.

Decl.") ¶¶ 5–8. Established in 2013 from an NSF award, CBMM is a multi-institutional research and education center. *See* Compl. ¶ 8. MIT is an awardee alongside several other institutions. *Id.*[4] CBMM's annual summer program is held in Woods Hole, Massachusetts. *Id.* ¶ 10.

> **B.     The Complaint Fails To Adequately Allege That Marciniak And Her Alleged Perpetrators Were MIT Employees.**

Plaintiffs briefly allege an employment relationship between MIT and Marciniak and her alleged perpetrators, Winrich Freiwald and Frederico Azevedo, *id.* ¶¶ 9-10, but do not plead facts to support these cursory allegations. Specifically, Plaintiffs allege that MIT was a "joint employer" of Marciniak because it had "control over her employment and work progress, shared her work, and . . . overs[aw] her work," *id.* ¶ 9, but do not allege, for instance, how MIT exercised control or oversight, such as the method and means thereof. Plaintiffs also plead that RU employed Marciniak from September 2016 to November 2021. *Id.* Plaintiffs likewise fail to allege facts to support the allegations that Freiwald and Azevedo were employed by MIT during the relevant time period. The Complaint contends that Azevedo is employed by MIT, and that "CBMM Summer School Directors are employed by MIT, Harvard and BCH," but does not include facts to support these bald assertions that such an employment relationship existed during the relevant time period, such as employment agreements to which MIT was a party. *Id.* ¶¶ 10, 133, 185.

> **C.     Very Few Of The Events Alleged By Plaintiffs Occurred At MIT's Campus.**

With the exception of two events, all of the other alleged misconduct identified in Plaintiffs' sprawling 220 paragraph Complaint did not occur on MIT's campus. Specifically, all of the allegations regarding sex discrimination and sexual assault by Freiwald and RU occurred in New York. *E.g.*, *id.* ¶¶ 41-49, 56-66, 71, 142-151. The alleged rape at the CBMM summer program in August 2017 and sex discrimination at the program in 2018 occurred at MBL's campus in

---

[4] In addition to awardee MIT, the sub-awardees are Harvard, BCH, MBL, UChicago, and RU.

Woods Hole, Massachusetts. *Id.* ¶¶ 10, 50-51, 67-70, 152-54. A number of other acts of alleged harassment also did not occur on MIT's campus. *E.g.*, *id.* ¶ 74 (alleged sexual assault in New York); *id.* ¶ 82 (alleged breach of no-contact-order over videoconference). The Complaint alleges that two events occurred on MIT's campus: (i) an alleged private conversation with Azevedo at a CBMM event at MIT in May 2018 and (ii) an event in May 2019, in which Marciniak did not interact with Azevedo but felt intimidated by him. *Id.* ¶¶ 75-76, 79. As to the first, Marciniak filed a complaint with MIT in March 2019. *Id.* ¶ 78. As to the second, MIT promptly "assigned MIT policeman to provide a security service for her" after Marciniak "called MIT Police." *Id.* ¶ 79.

### D.   MIT Promptly Responded To Marciniak's Title IX Complaint And Ensured That An Investigation Occurred.

In March 2019, Marciniak filed an incident report with MIT's Title IX & Bias Response Office in relation to sexual assault and harassment by her alleged perpetrator in 2017. *Id*. ¶ 87. Marciniak apparently chose to file a complaint with MIT because she believed "MIT had implemented investigative procedures, which assigned independent investigator to conduct interviews and review the evidence, and gave for each party equal opportunity to inspect, review and respond to the evidence prior to conclusion of this investigation." *Id.* ¶ 113.

After receiving the Title IX complaint, MIT "followed-up shortly" and had a phone call with Marciniak to understand her allegations. *Id*. ¶ 87. Fewer than two months later, "after consulting with folks at Harvard and the MBL program, it was determined that MBL is the most appropriate entity to investigate the matter." *Id.* ¶ 95. MIT's representative informed Marciniak of the outcome directly and provided her with contact information of MBL's Title IX officer. *Id.* UChicago's Title IX officer and MBL's Director of Human Resources contacted Marciniak the next day, and these institutions conducted a full investigation into her complaint. *Id.* ¶¶ 95–99. After months of investigation, MBL issued its determination on August 11, 2019. *Id.* ¶ 99.

Disappointed with that outcome, Plaintiffs filed suit against MIT and other institutions. *Id.* ¶ 220.

## ARGUMENT

**I.    THIS CASE SHOULD BE DISMISSED UNDER RULE 12(b)(2) BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER MIT.**

Once personal jurisdiction is challenged pursuant to Rule 12(b)(2), the plaintiff must make a *prima facie* showing that personal jurisdiction in fact exists over a defendant. *Bruin v. Bank of Am., N.A.*, 2022 WL 992629, at *2 (S.D.N.Y. Mar. 31, 2022) (Carter, J.). The Court may consider affidavits from the parties, and it need not "draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation." *Id.* at *2.

New York courts "may exercise personal jurisdiction over an out-of-state defendant if New York law would confer upon its courts the jurisdiction to reach the defendant and, so finding, if extension of jurisdiction in such a case would be permissible under the Due Process Clause of the Fourteenth Amendment." *Id.* at *2. Exercise of personal jurisdiction over a defendant is only proper where that party has "sufficient minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Waraich v. Nat. Austl. Bank*, 2022 WL 126014, at *2 (S.D.N.Y. Jan. 13, 2022). The Court "can assert personal jurisdiction under two theories: specific jurisdiction and general jurisdiction." *Id.* As discussed below, this Court cannot assert either over MIT.[5]

### A.    This Court Does Not Have General Jurisdiction Over MIT.

General jurisdiction for suits neither arising out of nor related to the defendant's contacts may be exercised over a defendant only where its "affiliations with the State are so continuous and

---

[5] While Plaintiffs may allege personal jurisdiction as to their RICO claim (Count XI), pursuant to RICO's Jurisdictional Provision (18 U.S.C. § 1965), as discussed in the Joint Motion, the RICO claims must be dismissed "therefore precluding a personal jurisdiction basis under Section 1965." *Broidy v. Glob. Risk Advisors LLC*, 2023 WL 6258135, at *5 (S.D.N.Y. Sept. 26, 2023); *see also BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 352 (S.D.N.Y. 2014).

systematic as to render them essentially at home in the forum State." *Bruin*, 2022 WL 992629, at *3; *see also* CPLR § 301. "Aside from the truly exceptional case, a corporation is at home and subject to general jurisdiction only in its place of incorporation or principal place of business." *Bruin*, 2022 WL 992629, at *3. MIT is neither incorporated in New York, nor does it maintain its principal place of business in New York. MIT is incorporated in Massachusetts, and it maintains its principal place of business in Cambridge, Massachusetts. *See* Shor Decl. ¶ 4.

MIT's presence in New York—which is limited to recruiting some of its student population, fundraising, and employing officers tasked with recruiting and fundraising in New York (*id.* ¶¶ 5–8)—"is scant and insufficiently numerous" to qualify as the "truly exceptional case" that "render[s] it at home in this forum." *Waraich*, 2022 WL 126014, at *2; *see also Bustamante v. Atrium Med. Corp.*, 2020 WL 583745, at *3 (S.D.N.Y. Feb. 6, 2020) (Carter, J.) (no general jurisdiction based on defendant's registration to do business in New York); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 799 (S.D.N.Y. 2015) (no general jurisdiction despite allegations of recruiting, fundraising, and employment activities by Duke University in New York). The Court cannot exercise general jurisdiction over MIT.

### B.    This Court Does Not Have Specific Jurisdiction Over MIT.

The Court also cannot exercise specific jurisdiction over MIT. Specific jurisdiction is jurisdiction "over issues that arise out of or relate to the entity's contacts with the forum." *Waraich*, 2022 WL 126014, at *2. To establish specific jurisdiction over a defendant, "a plaintiff must demonstrate . . . that the defendant committed acts within the scope of New York's long-arm statute, CPLR § 302," *Bruin*, 2022 WL 992629, at *3, and that extending jurisdiction would comport with federal due process requirements. Plaintiffs fail to do either.

New York's long-arm statute allows for specific jurisdiction over a non-domiciliary "who in person or through an agent . . . (1) transacts business within the state or contracts anywhere to

supply goods or services in the state, or (2) commits a tortious act within the state . . . or
(3) commits a tortious act without the state causing injury to person or property within the
state . . . or (4) owns, uses or possesses any real property situated within the state." *Comunale v.
Gemma*, 2020 WL 635554, at *5 (S.D.N.Y. Feb. 11, 2020) (Carter, J.) (quoting CPLR § 302).
Plaintiffs do not allege that MIT committed any tortious act in New York, or that the sexual assault
against her arose from MIT's ownership, use, or possession of any real property in New York.
Thus, neither Section 302(a)(2) nor Section 302(a)(4) applies.

Additionally, Section 302(a)(1), which confers jurisdiction over a foreign defendant who
transacts business—only includes a defendant who "purposefully avails itself of the privilege of
conducting activities within New York, thus invoking the benefits and protections of its laws," and
"[t]here must be an articulable nexus between the business transacted and the cause of action sued
upon." *Mapfre Peru Compania de Seguros y Reaseguros S.A. v. M/V AS FORTUNA*, 2022 WL
976827, at *3 (S.D.N.Y. Mar. 31, 2022); *see* CPLR § 302(a)(1). The single allegation that
apparently implicates MIT, and has any connection to New York, is an alleged sexual assault by
one of the Teaching Assistants ("TA") in the CBMM summer program, Frederico Azevedo, in
March 2018. [6] *See* Compl. ¶ 74. Even for that single New York-related allegation, Plaintiffs do not
claim that MIT purposefully availed itself of the privileges of engaging in business in New York,
much less that any such business directly relates to the present action. [7]

---

[6] Plaintiffs makes a number of allegations regarding RU supervisor Winrich Freiwald—but do not
allege any nexus between RU, Freiwald, or their conduct with MIT. Compl. ¶¶ 15–29, 41–49, 56–
66, 96–109, 115–24, 134–38, 142–51, 171–84, 188–99, 210–15. Similarly, to the extent that
Plaintiffs base their claims on the NSF's investigation and conclusion that the evidence does not
support a violation of Title IX, Plaintiffs do not allege any nexus between the NSF and its conduct
with MIT. *See id.* ¶¶ 10, 125.

[7] The remainder of the allegations occurred in Massachusetts, including: (1) an alleged rape by
Azevedo in Woods Hole in 2017 (*id.* ¶¶ 67–71); (2) alleged unwanted encounters with Azevedo at
an MIT building in Cambridge in 2018 (*id.* ¶¶ 75, 79); (3) a complaint made to MIT's Title IX &

Finally, Section 302(a)(3) confers jurisdiction over a foreign defendant who "commits a tortious act without the state causing injury to person or property within the state." CPLR § 302(a)(3). Courts determining whether there is injury sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test. *Mapfre*, 2022 WL 976827, at *3. "The situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by the plaintiff." *Id.* The Complaint confirms that the alleged events occurred in Massachusetts, and thus New York is not the location of the original event causing Plaintiffs the alleged injury. Moreover, under Section 302(a)(3), Plaintiffs must plead that MIT "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." CPLR § 302(a)(3)(i)–(ii). As discussed above, MIT does not regularly conduct business in New York or derive substantial revenue from goods or services rendered in New York; moreover, it is not reasonably expected that the above events—almost all of which occurred in Massachusetts—would generate consequences for MIT in New York. Thus, Sections 302(a)(1) and 302(a)(3) also do not apply.

Extending jurisdiction over MIT would violate federal due process requirements. Plaintiffs "must plausibly allege minimum contacts showing [MIT] purposefully directed [its] activities at the forum and the litigation resulted from alleged injuries that arise out of or relate to those activities." *Bustamante*, 2020 WL 583745, at *4. Plaintiffs have not pleaded minimum contacts showing that MIT purposefully directed its activities at New York so it "could foresee being haled

---

Bias Response Office in Cambridge in 2019 (*id.* ¶¶ 87–95); and (4) interference by MIT with an investigation by the Falmouth Police in 2019 (*id.* ¶ 201).

into court there," or that litigation ensued from any injuries that arose out of or related to MIT's

New York-directed activities. *See id*. The Court does not have personal jurisdiction over MIT.

## II.     THIS CASE SHOULD BE DISMISSED UNDER RULE 12(b)(3) BECAUSE VENUE IS IMPROPER IN NEW YORK.

Courts apply the same standard of review to a motion to dismiss for improper venue as

they apply to one for lack of personal jurisdiction. *DarkPulse, Inc. v. FirstFire Glob. Opportunities*

*Fund, LLC*, 2023 WL 199196, at *5 (S.D.N.Y. Jan. 17, 2023). Thus, Plaintiffs bear the burden of

pleading venue, and must make a *prima facie* showing. *See id*. Venue is proper in "(1) a judicial

district in which any defendant resides, if all defendants are residents of the State in which the

district is located; (2) a judicial district in which a substantial part of the events or omissions giving

rise to the claim occurred; or (3) if there is no district in which an action may otherwise be brought

as provided in this section, any judicial district in which any defendant is subject to the court's

personal jurisdiction with respect to such action." *Smith v. PacerMonitor, LLC*, 2020 WL 702224,

at *2 (S.D.N.Y. Feb. 12, 2020) (quoting 28 U.S.C. § 1391(b)). A defendant corporation "resides

in any judicial district in which such defendant is subject to the court's personal jurisdiction with

respect to the civil action in question." *Smith*, 2020 WL 702224, at *2. Courts "take seriously the

adjective substantial in § 1391 and ha[ve] stated that for venue to be proper, *significant* events or

omissions *material* to the plaintiff's claim must have occurred in the district in question, even if

other material events occurred elsewhere." *Doe 1 v. Congregation of Sacred Hearts of Jesus &*

*Mary*, 2023 WL 185496, at *2 (S.D.N.Y. Jan. 13, 2023) (emphasis in original).[8]

---

[8] Plaintiffs bear the burden of demonstrating that transfer is in the interest of justice. *Id.* Transfer is not in the interest of justice if "allowing a transfer would reward a plaintiff for a lack of diligence in choosing a proper forum," or would "reward a plaintiff for forum shopping and [be] a vehicle for resurrecting a claim lost because the plaintiff erred in its initial choice of forums." *Id*. Plaintiffs knew the majority of Defendants resides in Massachusetts, and that most of the events at issue occurred in Massachusetts. The Court should dismiss the case outright.

**III.     THE COMPLAINT DOES NOT STATE A CLAIM AGAINST MIT UNDER TITLE IX.**

Even if the Court had jurisdiction to hear the case and the venue was proper in New York, Plaintiffs still fail to state a claim against MIT pursuant to Title IX. Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Plaintiffs allege that MIT violated Title IX by: (1) engaging in disparate-treatment discrimination (Count II); (2) engaging in quid pro quo sexual harassment (Count III); (3) fostering a sex-hostile environment (Count IV); (4) being deliberately indifferent (Count V); (5) reaching an erroneous outcome (Count VI); (6) creating a heightened risk (Count VIII); and (7) retaliating against Marciniak (Count IX). None of these theories plausibly asserts a violation of Title IX: some are not actionable as to MIT and/or are time-barred, and the remainder fail because one or more elements of the claims are not and cannot be met.[9]

**A.     Certain Of The Title IX Claims, Including All Of Count III, Are Not Actionable As To MIT And/Or Are Time-Barred.**

None of Plaintiffs' claims regarding Freiwald are actionable as to MIT because Plaintiffs do not allege that MIT employed or otherwise controlled Freiwald's conduct. *See, e.g.*, Compl. ¶¶ 41-49, 55-66, 71, 171-84. Thus, Count II, to the extent it is based on alleged sex discrimination experienced by Marciniak while working in Freiwald's laboratory at RU; all of Count III (given that all of the underlying allegations relate to Freiwald's conduct); and Count IX, to the extent it is based on retaliation by Freiwald after Marciniak allegedly "oppos[ed] [his] sexual harassment," are not actionable as to MIT. Indeed, Plaintiffs concede that these claims are not actionable as to MIT because Marciniak complained about Freiwald's conduct to *RU's* human resources

---

[9] As noted above, per the Court's order dated November 6, 2023, the causes of action not addressed herein are addressed in the Joint Motion.

department, not MIT; and she filed a complaint with the New York State Division of Human Rights against *RU and Freiwald*, not MIT. *See id.* ¶¶ 65-66.

Additionally, the vast majority of Plaintiffs' factual allegations that appear to somehow implicate MIT are untimely. "The statute of limitations for Title IX claims brought in New York is three years." *Harriram v. Fera*, 2023 WL 2647856, at \*9 (S.D.N.Y. Mar. 27, 2023). Thus, any alleged conduct that occurred prior to December 29, 2019 cannot form the basis of Plaintiffs' Title IX claim. In particular, any claims based on: (1) the alleged rape by Azevedo in 2017; (2) the alleged subsequent sexual harassment and assault by Azevedo in 2017 and 2018; (3) events occurring during the 2017 and 2018 CBMM summer programs; (4) the handling and referral of Marciniak's complaint in March 2019; (5) MIT's alleged failure to issue a no-contact order in May 2019; and (6) the conduct and conclusion of the investigation in August 2019, are time-barred. *See Austin v. Fordham Univ.*, 2022 WL 4626485, at \*5 (S.D.N.Y. Sept. 30, 2022) (dismissing complaint on statute of limitations grounds).

## B.     The Complaint Does Not State A Claim Against MIT For Disparate-Treatment Discrimination (Count II).

Plaintiffs' disparate-treatment discrimination argument is based on the notion that CBMM treated women differently on account of their sex. *See* Compl. ¶¶ 50-55. However, Title IX does not create a private right of action under a disparate impact theory. *E.g., Weinreb v. Xerox Bus. Servs., LLC*, 323 F. Supp. 3d 501, 521 (S.D.N.Y. 2018); *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 361–62 (S.D.N.Y. 2017). This alone requires dismissal of Count II.

Plaintiffs also fail to allege any facts demonstrating that MIT treated male and female postdocs differently. *See Doe v. New York Univ.*, 438 F. Supp. 3d 172, 182 (S.D.N.Y. 2020) ("[C]ourts in this circuit have consistently dismissed selective enforcement claims absent allegations that a school treated similarly situated members of the opposite sex—that is, members

of the opposite sex facing comparable disciplinary charges—differently."). In *Doe*, the court granted a motion to dismiss where, as here, the plaintiff "fails to identify a single instance in which [the defendant institution] treated a similarly situated female differently than it treated [the] [p]laintiff." *Doe*, 438 F. Supp. 3d at 182. For example, Plaintiffs allege that an internal audit conducted by CBMM "discriminated against Marciniak, by running the process under uncontrolled confidentiality rules," and that CBMM wrongly denied Marciniak a TA position for the 2020 CBMM summer program. Compl. ¶ 54. But Plaintiffs fail to plead that the process treated males and females differently, or that a 2020 CBMM summer program TA position was given to a similarly situated man.

Plaintiffs also fail to allege discrimination on the basis of sex. *See Doe*, 438 F. Supp. 3d at 183 (requiring the plaintiff to allege "specific facts that support a minimal plausible inference of discrimination"). Plaintiffs have not pleaded any facts to show that MIT discriminated against her *because of* her sex. *See Tyson v. Town of Ramapo*, 2023 WL 3949057, at *7 (S.D.N.Y. June 12, 2023) (plaintiff's "discrimination claims . . . fail because she has not presented any evidence that Defendants terminated her *because of* her race or gender"). While Plaintiffs allege that only three of 20 TAs in the 2018 CBMM summer program were women, and that CBMM opportunities were "distributed unequally among CBMM faculty and postdocs," Plaintiffs have not alleged any specific facts to show that this composition resulted from sex-based discrimination. *See* Compl. ¶¶ 51, 53. These defects are fatal to Plaintiffs' claim.

### C. The Complaint Does Not State A Claim Against MIT For A Sex-Hostile Environment (Count IV).

Plaintiffs' sex-hostile environment claim, which attempts to impose liability on MIT through the alleged misconduct of Azevedo, fares no better. *Id.* ¶¶ 67–86. Plaintiffs do not plead any basis for institutional liability, which requires a showing that "an official who has authority to

address the alleged discrimination and to institute corrective measures on the university's behalf has *actual knowledge* of discrimination and fails to adequately respond." *Sutton v. Stony Brook Univ.*, 2021 WL 3667013, at *5 (E.D.N.Y. Aug. 18, 2021). For the vast majority of the alleged misconduct set forth in the Complaint, Plaintiffs have not alleged, much less demonstrated, that anyone at MIT had actual knowledge of it. Plaintiffs have not alleged that anyone at MIT knew about Azevedo's alleged rape, sexual harassment, sexual assault, and intimidation of Marciniak in 2017 and 2018 until Marciniak reported that misconduct to MIT for the first time in March 2019. Compl. ¶ 87. Absent actual knowledge, there is no basis to impose institutional liability on MIT for Azevedo's conduct in 2017 and 2018. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998) ("[I]t would frustrate the purposes of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student . . . without actual notice to a school district official.").

Moreover, Plaintiffs do not claim that MIT failed to adequately respond to Marciniak's complaint once it was finally made. To the contrary, Plaintiffs allege that, after MIT received Marciniak's Title IX complaint in March 2019, it "followed-up shortly" with Marciniak, scheduled a call, and offered to "talk with other institutions" to determine the appropriate procedure for investigating the complaint. Compl. ¶ 87. Plaintiffs also allege that, within two months of when Marciniak and MIT's Title IX officer first spoke, MIT informed Marciniak that the institutions partnering for the CBMM summer program agreed "MBL is the most appropriate entity to investigate" given that the alleged rape occurred at MBL's campus. *Id.* ¶ 95. The Complaint further alleges that MIT connected Marciniak to the Title IX officer at MBL, and MBL thoroughly investigated the matter. *Id.* ¶ 95–98. According to Plaintiffs, when Marciniak sought assistance from MIT police after allegedly feeling threatened by Azevedo in May 2019, MIT promptly

assigned a policeman to provide her with the security requested. *Id.* ¶ 79. Plaintiffs do not claim that MIT provided no response, or that its response "amounts to deliberate indifference to discrimination," as required to state a Title IX claim. *Hauff*, 425 F. Supp. 3d at 136; *see also Boucher*, 2023 WL 2544625, at *9 (requiring plaintiff to prove that defendant's "deliberate indifference amounted to an official decision not to remedy the discrimination").

**D.    The Complaint Does Not State A Claim Against MIT For Deliberate Indifference Or Erroneous Outcome (Counts V, VI).**

In alleging that MIT (and others) were deliberately indifferent to Marciniak, Plaintiffs cite to: (1) the initial handling and referral of Marciniak's complaint by MIT in March 2019 to MBL (Compl. ¶¶ 87–95); (2) the conduct of MBL's investigation of Marciniak's complaint from May to August 2019 (*id.* ¶¶ 96, 99); (3) RU's interactions with Marciniak after she filed the complaint (*id.* ¶¶ 96–105); and (4) the conduct of the NSF's investigation of Marciniak's complaint from May 2019 to 2022 (*id.* ¶¶ 94, 105, 110). Based on the first and second, Plaintiffs also claim that MIT and others are liable on an erroneous outcome theory. *See id.* ¶¶ 111–125.

Most of these allegations do not relate to MIT at all, and so are plainly insufficient to allege liability on the part of MIT. This includes the conduct of MBL's investigation, RU's interactions with Marciniak after she filed the complaint, and the conduct of the NSF's investigation. That leaves the initial handling and referral of Marciniak's complaint to MBL. However, Plaintiffs fail to include any allegations in the Complaint at all from which a trier of fact could reasonably conclude that MIT's response was "clearly unreasonable in light of the known circumstances," as is required to state a claim. *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 309 (S.D.N.Y. 2018). As discussed above, quite to the contrary, the Complaint alleges a series of allegations regarding MIT's prompt response to Marciniak's complaint. *See* Compl. ¶¶ 87-95; *supra* Section III.C.

Plaintiffs' erroneous outcome claim also fails: "Under an erroneous outcome theory, a

plaintiff claims that he or she is innocent and was wrongly found to have committed an offense because of his or her sex." *Doe*, 438 F. Supp. 3d at 181. No claim lies where, as here, Plaintiffs do not allege that they were innocent and wrongly found to have committed an offense as a result of their sex. Moreover, Plaintiffs concede that the entities who investigated and rendered a decision were the "U of Chicago/MBL team under RU's supervision," not MIT. *See* Compl. ¶ 114.

### E. The Complaint Does Not State A Claim Against MIT For Heightened Risk (Count VIII).

Plaintiffs' heightened risk claim is based on a hodgepodge of generalized facts that fail to provide MIT notice of a heightened risk of sexual assault that is sufficiently specific for it to change its policy. *See* Compl. ¶¶ 139–55. Courts have found that a plaintiff must allege that "Defendant possessed *actual knowledge* of a heightened risk of sexual assault in a *specific* context" and generally "have refused to impose Title IX liability based on a university's official policy." *Roskin-Frazee v. Columbia Univ.*, 2018 WL 6523721, at *5 (S.D.N.Y. Nov. 26, 2018).[10]

Plaintiffs' heightened risk claim also fails because the Complaint alleges no facts to suggest MIT had actual knowledge of a "heightened risk that is *specific enough* to allow it to remedy such a policy." *Tubbs*, 343 F. Supp. 3d at 319 (emphasis in original). Such specific knowledge is found when universities have "actual knowledge of sexual assault(s) committed in a *particular* context or program or by a *particular* perpetrator or perpetrators." *Roskin-Frazee*, 2018 WL 6523721, at *5. (emphasis in original). Plaintiffs rely on a 2018 study report and a 2016 survey about sexual harassment in academia not specific to MIT (Compl. ¶¶ 139–41); and anecdotes regarding the

---

[10] Plaintiffs only criticize *RU's* and *CBMM's* policies, not *MIT's* policies. *See id.* ¶¶ 142–51, 152, 155. Indeed, the Complaint *praises* MIT's "investigative procedures" because they "assigned independent investigator to conduct interviews and review the evidence, and gave for each party equal opportunity to inspect, review and respond to the evidence prior to conclusion of the investigation." *See id.* ¶ 113. It appears precisely because of MIT's robust procedures that Marciniak decided to file her Title IX complaint with MIT in the first place. *See id.*

experiences of *other* institutions (*e.g.*, *id.* ¶¶ 142-47). This is a far cry from the facts in *Posso*, where plaintiffs alleged "a lengthy history of male swimmers bullying, intimidating, and humiliating female swimmers" and the head coach making "sexually inappropriate remarks and encourag[ing] a culture of offensive conduct against female swimmers," which "two coaches, the athletics department director and assistant director, the Dean of Students, and the Title IX Coordinator were each made aware of . . . [and] no remedial action was taken to prevent further harm." *Posso v. Niagara Univ.*, 2020 WL 8771334, at *6 (W.D.N.Y. Nov. 2, 2020). Alleging knowledge of the general "prevalence of sexual harassment in academia" (Compl. § 8.1) does not come close to pleading actual knowledge of heightened risk in a specific context.

### F.    The Complaint Does Not State A Claim Against MIT For Retaliation (Count IX).

Finally, Plaintiffs' retaliation claim—which is premised on the CBMM summer program's decision not to offer her a TA position in 2020—fails to state a claim as to MIT. *See* Compl. ¶¶ 161–70. To plead retaliation, Plaintiffs must demonstrate, among other things, that a "causal connection existed between protected activity and adverse action." *Shalom v. Hunter Coll. of City Univ. of New York*, 645 Fed. App'x. 60, 62–63 (2d Cir. 2016).

Plaintiffs fail to adequately plead causation between the complaint about a sexual assault in summer of 2017, filed in March 2019, with the decision by administrators of the CBMM summer program not to offer Marciniak a TA position in 2020, a year later. *See Ochoa v. New York City Dep't of Educ.*, 2021 WL 5450343, at *3 (S.D.N.Y. Nov. 22, 2021) (no liability where plaintiff "does not plead facts to demonstrate that she was denied an extension because she was an older teacher.").[11] The alleged facts refute any inference of causation: Marciniak "*was contacted by a*

---

[11] Courts have interpreted Title IX by looking to the caselaw interpreting Title VII. "In several prior cases, we have applied Title VII's framework and principles to Title IX claims." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016).

*senior TA, Barbu, who inquired about her interest in the TA 2020 position*" (Compl. ¶ 165); the decision not to hire her came *one year* after Marciniak filed a Title IX complaint; and after that decision issued, the CBMM summer program director told her he "hoped to see her around in some of the CBMM meetings as well as other scientific meetings" (*id.* ¶ 166). CBMM's outreach to Marciniak to consider applying for the role and hopeful remarks regarding seeing her at CBMM are inconsistent with the notion that Marciniak was being retaliated against for her Title IX complaint with MIT. The passage of one year between her filing the complaint and the decision not to hire her further "weaken[s] any causal connection." *See Ochoa*, 2021 WL 5450343, at *4 (citing cases that find "as little as three and a half months is too attenuated to establish causation").

## IV.   THE COMPLAINT DOES NOT STATE A CLAIM AGAINST MIT UNDER TITLE VII.

Plaintiffs allege that MIT violated Title VII based on two theories: MIT allegedly "breach[ed its] duty of reasonable care" to Marciniak in handling her Title IX complaint in March 2019 (Count V); and MIT allegedly retaliated against Marciniak in not hiring her for a TA position for the 2020 CBMM summer program (Count IX). Compl. ¶¶ 87–110, 161–84. Plaintiffs fail to state a claim under both theories because: (1) Plaintiffs fail to plead any specific facts to show that MIT was ever an employer of Marciniak; (2) Count V is untimely and in any event fails to state a claim because the Complaint does not plead an adverse action and sex-based discrimination; and (3) Count IX fails because the Complaint does not plead an adverse action attributable to MIT and a causal connection between the filing of Marciniak's Title IX complaint and the decision of CBMM not to hire her for a TA position a year later.

### A.   Plaintiffs Fail to Adequately Allege That MIT Has Ever Been Marciniak's Employer.

Title VII only imposes liability for unlawful discrimination or retaliation by one's "employer." 42 U.S.C. 2000e(b). Plaintiffs allege that "MIT was [Marciniak's] joint employer

from September 2016 to November 2021 . . . because MIT had control over her employment and work progress, shared her work, and had been overseeing her work." Compl. ¶ 9. Plaintiffs further allege that MIT, Harvard, and BCH were Marciniak's joint employers during her time as a TA at CBMM in 2018 and 2019 because they "had control over her hiring," "trained her for the job," and had "overseen her work." *See id.* ¶ 11. Conspicuously absent from the Complaint is a single fact showing how MIT controlled, trained, and/or oversaw her work.[12]

"Courts will consider an entity a joint employer only when there is sufficient evidence that the entity had immediate control over the company's employees." *Toledo v. Unibud Restoration Corp.*, 2022 WL 171198, at *1 (S.D.N.Y. Jan. 19, 2022). The factors that bear on this inquiry include: "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Id.* To establish a joint employment relationship, Plaintiffs have to plead *facts* that would demonstrate that "two or more entities . . . share significant control of the same employee." *Klinkowitz v. Jamaica Hosp. Med. Ctr.*, 2022 WL 818943, at *7 (E.D.N.Y. Mar. 17, 2022); *see also Gonzalez v. City of New York*, 2015 WL 9450599, at *3 (E.D.N.Y. Dec. 22, 2015) ("[S]imply asserting in a conclusory way that an entity has control over conditions of employment is insufficient; a plaintiff must make factual allegations showing such control.").

Plaintiffs do not allege any facts regarding how MIT exercised control over Marciniak's employment. *See Toledo*, 2022 WL 171198, at *2 (finding plaintiff "fail[ed] to plead the requisite

---

[12] The Complaint does not allege that MIT and RU or CBMM are a single employer. Nor can it, absent facts to show that the "two nominally separate entities are actually part of a single integrated enterprise." *See Byron v. Bronx Parent Hous. Network*, 2023 WL 2585824, at *2 (S.D.N.Y. Mar. 20, 2023).

'immediate control' needed to allege a joint employer relationship" where "[i]n conclusory fashion, [p]laintiff allege[d] that [defendant] derived an economic benefit from her labor, controlled her daily activities, and had the right to fire, reassign and/or reduce her hours, inspect her work, and to direct [her supervisor] to terminate her" but "never allege[d] or describe[d] how [defendant] engaged in those methods of control over [p]laintiff"); *Doe v. Golden Krust Caribbean Bakery & Grill Inc.*, 2023 WL 2652264, at *3 (E.D.N.Y. Mar. 27, 2023) (dismissing complaint that "fail[ed] to articulate how" defendants controlled plaintiff's "*daily* employment activities," "had any direct contact with the [p]laintiff," or "personally supervised her work"). Instead, the Complaint is replete with "allegations regarding [the] joint employment [that] are entirely conclusory and consist only of a recitation of the legal standard"—which is inadequate to plead a joint employment relationship that survives a motion to dismiss. *Gonzalez*, 2015 WL 9450599, at *3; *see also Harris v. Mills*, 572 F. 3d 66, 72 (2d Cir. 2009) (similar).

**B.    The Complaint Does Not State A Claim Against MIT Based On Alleged Breach Of Duty Of Reasonable Care (Count V).**

Plaintiffs' first Title VII claim against MIT, based on an alleged breach of duty of reasonable care in handling her Title IX complaint, should be dismissed because it is untimely— Plaintiffs never filed an EEOC charge regarding the underlying facts, and in any event any such charge came too late. Moreover, it fails to plead an adverse action or that Marciniak's gender was a "motivating factor" in MIT's determination that it lacked jurisdiction and referral to MBL.

*First*, Plaintiffs' claim is untimely. Plaintiffs concede that they never filed an EEOC charge relating to their Title VII "breach of duty of reasonable care" claim. Compl. ¶ 12 (only alleging that they filed a "retaliation complaint with EEOC . . . when she was refused the Teaching Assistant position by CBMM Summer School Directors."); Chunias Decl. Ex. A, August 10, 2020 EEOC Complaint. Even if Marciniak's EEOC complaint were drafted broadly to include the facts

underlying the breach of duty of reasonable care claim, the claim still would be untimely because the decision to refer the Title IX complaint to MBL occurred in May 2019, more than 300 days before Marciniak's EEOC complaint. *See Lovell v. Staten*, 2019 WL 4601665, at *3 (S.D.N.Y. Sept. 23, 2019) (Carter, J.) ("[Plaintiffs are required to] file a charge with the EEOC within 300 days after the alleged discriminatory employment practice occurred."). Marciniak filed an incident report with MIT in March 2019, and was notified in May 15, 2019 that "it was determined that MBL is the most appropriate entity to investigate the matter." Compl. ¶¶ 87, 95. Plaintiffs' EEOC complaint dated August 10, 2020—more than 300 days after either event—comes too late. Thus, Plaintiffs' claim is time-barred and should be dismissed. *E.g.*, *Lovell*, 2019 WL 4601665, at *4.

*Second*, Plaintiffs' claim fails to state a claim under Title VII. To plead a Title VII claim, Plaintiffs must allege that "(1) the employer discriminated against [Marciniak] (2) because of [her] race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). "An employer discriminates against a plaintiff by taking an adverse employment action against him." *Id.* Plaintiffs fail to allege either an adverse action or sex-based discrimination. Plaintiffs appear to argue that MIT's referral of the complaint to MBL was an adverse action. The referral of a complaint to another institution is not an adverse action, and is a far cry from the circumstances that lead courts to find an adverse employment action—such as terminations, demotions, material losses of benefits, or significantly diminished material responsibilities. *See Vega*, 801 F.3d at 85. MIT's swift response to Marciniak's report of sexual assault and harassment, Compl. ¶ 87, and subsequent determination that MBL was best positioned to investigate the complaint, *id.* ¶ 95, does not constitute an adverse action.

Plaintiffs also cannot establish that Marciniak's gender was a factor—much less a "motivating factor"—in the decision to refer the complaint to MBL. To prevail, Plaintiffs must

show that MIT had a discriminatory intent "by either direct evidence of discriminatory animus or circumstantial evidence of such animus, including by showing disparate treatment among similarly situated employees." *Radwan v. Manuel*, 55 F.4th 101, 132 (2d Cir. 2022). However, Plaintiffs fail to set forth a single factual allegation of purported animus towards Marciniak on the basis of her gender. They likewise do not plead any facts to suggest that a similarly-situated man would have his complaint investigated by MIT rather than referred to MBL. *See Shukla v. Deloitte Consulting LLP*, 2020 WL 3181785, at *7 (S.D.N.Y. June 15, 2020) (dismissal appropriate "where the complaint was entirely devoid of any details regarding the purported comparators").

### C.  The Complaint Does Not State A Claim Against MIT Based On Alleged Retaliation (Count IX).

Plaintiffs also fail to state a claim under Title VII premised on alleged retaliation in not hiring Marciniak for a TA position for the 2020 CBMM summer program; this claim must be dismissed as well. Compl. ¶ 12.[13] To state a claim, Plaintiffs must show that Marciniak "(1) engaged in activity protected under Title VII . . . (2) that the employer was aware of this activity, (3) that the employer took adverse actions against plaintiff, and (4) that a causal connect[ion] exists between the protected activity and the adverse action." *Ochoa,* 2021 WL 5450343, at *3.

Plaintiffs' retaliation claim should be dismissed for at least two reasons. *First*, Plaintiffs do not allege that Marciniak was subjected to an adverse employment action *attributable to MIT*. To properly plead a disparate treatment claim, Plaintiffs must show that "the *employer* took adverse actions against [Marciniak]." *See id.* Plaintiffs plead that the "[CBMM summer school]

---

[13] Plaintiffs do not allege that MIT was responsible for any alleged retaliation against Marciniak when Freiwald terminated her project and demoted her nor when Freiwald and RU terminated her employment at RU. *See id.* ¶¶ 12–13, 161–70 (admitting that Marciniak's sole complaint filed with EEOC with respect to retaliation by MIT was "about being rejected for the TA position by CBMM").

directors . . . did not select her for the position." Compl. ¶ 166. But Plaintiffs do not allege that MIT participated in the hiring process, as is required to satisfy this element. *Second*, Plaintiffs do not plausibly allege a causal connection between Marciniak's Title IX complaint and CBMM's decision not to hire her. Title VII retaliation claims "must be proved according to traditional principles of but-for causation, which requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Sarkis v. Ollie's Bargain Outlet*, 560 F. App'x 27 (2d Cir. 2014). To do so requires more than showing such animus was even a substantial or motivating factor. *See Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). As discussed *supra* Section III(F), Plaintiffs do not offer any evidence of retaliation.

## V.    THE COMPLAINT DOES NOT STATE A CLAIM AGAINST MIT FOR NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION (COUNT VII).

Finally, Plaintiffs fail to state a claim for negligent hiring, training, supervision, and retention of Azevedo by MIT.[14] Plaintiffs allege that: (1) in spring 2017, MIT and others hired Azevedo despite his alleged prior drug use and previous rape of a female student, Compl. ¶¶ 126–27, and failed to formally screen program applicants, *id.* ¶ 128; (2) during summer 2017, the CBMM "Summer School Directors lacked supervisory authority over Azevedo's conduct," including by allowing him to distribute alcohol to students, *id.* ¶ 129; (3) MIT and others failed to properly supervise Azevedo, *id.* ¶¶ 130–31; and (4) MIT and others continued to negligently retain Azevedo after the events in 2017, *id.* ¶¶ 132–33. These claims fail because: (1) any claims based on events before 2020 are untimely; (2) Plaintiffs fail to plead an employer-employee relationship;

---

[14] Plaintiffs do not claim that MIT was involved whatsoever with the hiring, training, supervision, and retention of Freiwald, *see* Compl. ¶¶ 134–38, so any claim against MIT for Freiwald's conduct is a non-starter. *E.g.*, *Matthews v. City of New York*, 2016 WL 5793414, at *11 (S.D.N.Y. Sept. 30, 2016) (Carter, J.).

(3) Plaintiffs fail to plead that MIT knew or should have known of Azevedo's propensities; (4) certain of the incidents did not occur on MIT's premises; and (5) any claims based on the retention of Azevedo after 2020 fail because Plaintiffs do not plead causation.[15]

### A.    Plaintiffs' Claims Based on Events That Occurred in 2017 Are Time-Barred.

As an initial matter, Plaintiffs' first three theories of liability are time-barred. Negligent hiring, training, supervision, and retention claims are subject to a three-year statute of limitations. *Vasta v. Super Stop & Shop #0509*, 2016 WL 5720772, at *4 (S.D.N.Y. Sept. 29, 2016). The original complaint was filed on December 29, 2022, so Plaintiffs' first three theories of liability fail because those theories are based on events occurring prior to December 29, 2019.

### B.    Plaintiffs Fail To Plead An Employer-Employee Relationship.

Additionally, Count VII should be dismissed absent any allegation that MIT was Azevedo's employer during the relevant time period. *Dava v. City of New York*, 2016 WL 4532203, at *12 (S.D.N.Y. Aug. 29, 2016) ("[U]nder New York law, in addition to the standard elements of negligence, a plaintiff must show . . . that the tort-feasor and the defendant were in an employee-employer relationship."). Plaintiffs make no such showing.

### C.    Plaintiffs Fail To Plead That MIT Knew Or Should Have Known Of Azevedo's Propensity For Sexual Assault.

Count VII should also be dismissed because Plaintiffs fail to plead any facts to show that MIT knew or should have known of Azevedo's alleged propensity to sexually assault his students. *See Ahluwalia v. St. George's Univ.*, 626 F. App'x. 297, 300 (2d Cir. 2015) (affirming dismissal of negligent hiring, training, and supervision claim where plaintiff "has not alleged any facts

---

[15] Additionally, because Plaintiffs fail to state any viable federal claims, to the extent that Plaintiffs' state-law claims are only based on the Court's "supplemental jurisdiction pursuant to 28 U.S.C. § 1367," those claims should be dismissed. *See* Compl. ¶ 1; *see also Solomon*, 2022 WL 912056, at *9 (no supplemental jurisdiction where "federal claims are dismissed before trial.").

showing that the school was on notice of its employees' propensity to commit the conduct alleged"); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) ("[A]n employer is only liable for negligent supervision or retention if it is aware of specific prior acts or allegations against the employee.").

Plaintiffs do not plead any facts to demonstrate that MIT knew any information about Azevedo that would have indicated his propensity for sexual assault. Unable to plead a single fact regarding MIT's *actual knowledge*, Plaintiffs speculate that MIT *should have known* based on allegations of misconduct by Azevedo, some of which do not relate to sexual assault at all, including "two police records in relation to illegal drug use," submission of an incomplete PhD thesis, and the making of crude jokes. Compl. ¶¶ 126–127. But any "prior misconduct . . . must be of the same kind that caused the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Doe*, 12 F. Supp. 3d at 681; *see also Milosevic v. O'Donnell*, 934 N.Y.S.2d 375, 376 (N.Y. App. Div. 2011) (allegations of a "culture" of alcohol use at company events insufficient to show that employer "was aware of the CFO's violent propensities when intoxicated or of the possibility of an assault"). Thus, Plaintiffs' allegations about other misconduct cannot support a claim that MIT "knew or should have known" of Azevedo's propensity for sexual assault.

The only allegation that comes close to the misconduct at issue is the allegation that Azevedo raped a female student in 2013. Compl. ¶¶ 126–127. Plaintiffs do not state the basis for this assertion, but, even assuming its truth, the Complaint still "does not allege a fact to show that [MIT] knew or should have known of [the] prior assault." *See Doe*, 12 F. Supp. at 681. "Plaintiff[s] cannot cure that fatal deficiency by suggesting that a 'reasonable background check' would have revealed [Azevedo's] predisposition for sexual assault because no facts, specific or otherwise, are alleged as to what such a background check would have in fact revealed." *See id.* Plaintiffs do not

24

plead that the 2013 rape was ever reported and was discoverable by MIT. Nor do Plaintiffs allege

that MIT had a legal duty to conduct a background check of Azevedo. *See id.* ("An employer is

under no duty to inquire as to whether an employee has been convicted of crimes in the past.").

**D.    Plaintiffs Fail To Plead That The Alleged Assaults in 2017 and 2018 Occurred on MIT's Premises.**

Plaintiffs cannot base their Count VII claims on the alleged assault in 2017 on MBL's

campus in Woods Hole, Massachusetts, Compl. ¶¶ 67–70; or on the alleged assault in 2018 in RU

housing in New York, *id.* ¶ 74, because those incidents did not occur on MIT's premises. *See*

*Ehrens v Lutheran Church*, 385 F.3d 232, 235–36 (2d Cir. 2004) (affirming dismissal where tort

was not "committed on the employer's premises"); *Doe*, 12 F. Supp. 3d at 681–82 (same).

**E.    Plaintiffs Fail To Plead Proximate Causation For Events Dated After 2020.**

Even if Azevedo were an MIT employee, to the extent Plaintiffs' claims are based on events

after 2020, Plaintiffs nonetheless fail to state a claim against MIT. Plaintiffs fault MIT and others

for Azevedo's allegedly "remain[ing] employed by MIT and actively participat[ing] in CBMM

program." Compl. ¶¶ 132–33. However, "[i]n New York, to establish a cause of action based on

negligent retention, it must be shown . . . that the alleged negligent supervision or retention was a

*proximate cause* of those injuries." *Kaupp v. Church*, 2011 WL 4357492, at *2 (S.D.N.Y. Sept.

19, 2011). Because all of Marciniak's alleged injuries occurred before 2020, any retention of

Azevedo from 2020 forward did not cause her injuries.

**CONCLUSION**

For the reasons set forth above and in the Joint Motion, the Complaint should be dismissed

in its entirety with prejudice. *See Byron*, 2023 WL 2585824, at *4 (dismissing with prejudice and

denying leave to amend where plaintiff "has already amended her complaint once"); *Rozsa v. May*

*Davis Grp., Inc.*, 187 F. Supp. 2d 123, 132 (S.D.N.Y. 2002) (same).

Dated:  December 15, 2023

Respectfully submitted,
MASSACHUSETTS INSTITUTE OF
TECHNOLOGY


By their attorneys,

*/s/ Jennifer L. Chunias*

Jennifer L. Chunias (*pro hac vice*)
Emily Unger (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: (617) 570-1000
Email: jchunias@goodwinlaw.com
Email: eunger@goodwinlaw.com

Marco Y. Wong
GOODWIN PROCTER LLP
620 Eighth Avenue
New York, New York 10018
Telephone: (212) 813-8800
Email: marcowong@goodwinlaw.com

## CERTIFICATE OF SERVICE

I, Jennifer L. Chunias, hereby certify that a copy of the foregoing Memorandum of Law in Support of Massachusetts Institute of Technology's Motion to Dismiss the Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 15, 2023.

Dated: December 15, 2023                                      */s/ Jennifer L. Chunias*