# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DR. KAROLINA MARCINIAK-DOMINGUES GONCALVES AGRA and MR. PEDRO MARCINIAK-DOMINGUES GONCALVES AGRA, | ) ) ) ) |
| Plaintiffs, | ) Case No. 1:22-cv-10959 (ALC) |
| v. | ) ) |
| CENTER FOR BRAINS, MINDS AND MACHINES AT MASSACHUSETTS INSTITUTE OF TECHNOLOGY, *et al*., | ) ) ) ) |
| Defendants. | ) ) ) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONSOLIDATED <u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

PRELIMINARY   STATEMENT   ........................................................................4

RELEVANT BACKGROUND AND PROCEDURAL HISTORY ........................4

ARGUMENT ........................................................................................................ 5

   I.   PLEADING STANDARD……………………………………………6

   II.  MARCINIAK SUFFICIENTLY PLED A CLAIM UNDER THE
       TRAFFICKING VICTIMS PROTECTION ACT (COUNT ONE)........................... 6

     A.   Marciniak Sufficiently Pled An Underlying TVPA Violation

     B.   Marciniak Sufficiently Pled A Beneficiary Claim Under The TVPA

   III. MARCINIAK SUFFICIENTLY STATES A CLAIM FOR CONSPIRACY TO
       INTERFERE WITH CIVIL RIGHTS (COUNT TEN)……………………………...15

   IV. MARCINIAK SUFFICIENTLY STATES A RICO CLAIM (COUNT ELEVEN)....17

     A.   Marciniak Does Identify An Actionable Injury

     B.   Marciniak Does Identify A Violation of 18 U.S.C. § 1962

   V.  AGRA'S LOSS OF CONSORTIUM CLAIMS (COUNT FOURTEEN) IS
       WITHDRAWN ........................................................................................20

CONCLUSION .......................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Anora v. Oasis Pro. Mgmt. Grp., Ltd.*, 2023 WL 2307180 (S.D.N.Y. Mar. 1, 2023)……………12

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)……………………………………………………..6

*Canosa v. Ziff*, No. 18-cv-4115, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019)……………...6,9,10

*Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229……………………………………………17,19

*Doe # 1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726  (11th Cir. 2021)……………………………13

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 167–69 (S.D.N.Y. 2019)……….13,17

*H.J. Inc. v. Nw. Bell Tel. Co.* 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)…….20

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)……………………………..6

*Moore v. Guesno*, 301 F. App'x 17, 18 (2d Cir. 2008)…………………………………………18

*Noble v. Weinstein,* 335 F. Supp. 3d 504, 513 (S.D.N.Y. 2018)…………………6,7,8,9,10,13,14

*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096-97, 195 L. Ed. 2d 476 (2016)…...20

*Smith v. United States*, 508 U.S. 223, 228 (1993)…………………………………………...8

*United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016)…………………………………14

*United States v. Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007)……………………………………8

Plaintiffs Karolina Maria Marciniak-Domingues Goncalves Agra ("Marciniak") and Dr. Marciniak's husband, Pedro Henrique Marciniak-Domingues Goncalves Agra (individually "Agra" and, together with Marciniak, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Massachusetts Institute of Technology ("MIT"), President and Fellows of Harvard College ("Harvard") and The Rockefeller University ("RU") (collectively, "Defendants") joint memorandum of law in support of their motion to dismiss Plaintiffs' claims in their Amended Complaint dated April 10, 2023 (the "Complaint" (Dkt. 65)).

## PRELIMINARY STATEMENT

Marciniak properly asserts claims against Defendants for: (i) violations of the Trafficking Victims Protection Act (the "TVPA") (Count One); (ii) conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2)–(3) (Count Ten); and (iii) violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act (Count Eleven). Agra asserts a claim against Defendants for loss of consortium (Count Fourteen). Plaintiffs assert they sufficiently stated plausible basis for relief against Defendants in connection with each of these claims, excluding Count Fourteen as they are withdrawn by Agra, in the First Amended Complaint filed on April 10, 2023, they should survive and Defendants' consolidated motion should be denied in its entirety with prejudice. In sum, Plaintiffs' claims under Counts One, Ten and Eleven should therefore survive dismissal.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

Center for Brains, Minds and Machines enterprise ("CBMM") is a multi-institutional research and education center.[1] CBMM at MIT was established in 2013 under a cooperative

---

[1] CBMM is dedicated to the study of intelligence, how the brain produces intelligent behavior and how this scientific discovery may enable the replication of intelligence in machines. Compl. ¶ 8.

agreement through funding via NSF.[2] MIT is the main awardee, whereas Harvard, BCH, MBL, UChicago and RU are selected sub-awardee institutions of the NSF-CBMM agreement. Marciniak's claims arose between 2014 and 2022 when she was recruited to, subsequently worked for and trained at the CBMM as a junior postdoctoral researcher ("postdoc") under three CBMM Principal Investigators: Winrich Freiwald (RU) ("Freiwald"), Josh Tenenbaum (MIT) and Nancy Kanwisher (MIT). Compl. ¶¶ 7, 9, 29.  RU and MIT jointly employed Marciniak from September 2016 to November 2021.[3] Harvard, together with MIT, were employing institutions of Marciniak's sexual assault perpetrator, Frederico Azevedo ("Azevedo") against whom in March 2019 she filed a complaint with MIT regarding the rape in August 2017 at CBMM's summer program.[4]

In May and September of 2019, Marciniak filed the complaint about institutional processing of her initial complaint with the NSF Office of Diversity and Inclusion.[5] On August 10, 2020, Marciniak filed a retaliation complaint with EEOC Boston against MIT, Harvard and BCH in relation to the events from February 2020 after denial of a Teaching Assistant position by CBMM's summer program Directors. In May 2020, Marciniak opposed the ongoing sexual harassment from Freiwald, and on June 4, 2020, he demoted her in retaliation resulting in the intended deportation. In May 2021, she filed a sexual harassment and retaliation complaint with the New York State Division of Human Rights ("NYSDHR") against Freiwald and RU. In August 2021, Marciniak was terminated effective November 2021.  In January 2022, the NYSDHR issued a probable cause determination. On June 7, 2022, Marciniak filed a Charge of Discrimination with the EEOC receiving a right to sue. *Id*. at ¶ 13. On December 22, 2022, Plaintiffs commenced this lawsuit against MIT, Harvard, RU and

---

[2] NSF is an independent agency of the United States government that supports fundamental research and education in all non-medical fields of science and engineering. Id. at ¶ 8.
[3] MIT maintained control over her employment, accessed her work progress and oversaw her research.
[4] CBMM's summer program is financed from NSF-CBMM grant funds through MIT and Harvard with CBMM's summer program Directors being employed by MIT, Harvard and non-party BCH. Id. at ¶¶ 10, 70.
[5] The complaint was accepted for investigation in February 2020, and closed in March and July of 2022 with determination of no alleged discrimination. Id. ¶ 12.

four other defendants: BCH, MBL, UChicago and NSF. Defendants filed pre-motion letters seeking to dismiss Plaintiffs' claims on numerous grounds.[6] On February 27, 2023, this Court held a conference to address Defendants' anticipated motions and provided Plaintiffs with an opportunity to amend their complaint, which Plaintiffs did on April 10, 2023. On April 20, 2023, Defendants filed a joint status letter reporting intention to file a consolidated motion to dismiss Counts One, Ten, Eleven and Fourteen with each Defendant's separate motion to dismiss the remaining claims.[7] This Court set a briefing schedule for Defendants' motions on November 6, 2023.[8] Plaintiffs' counsel entered an appearance in this matter on November 8, 2023.[9] On December 5, 2023, Plaintiffs dismissed Defendants BCH, UChicago, MBL and NSF from this case.[10] Plaintiffs herein oppose Defendants' arguments seeking dismissal of Counts One, Ten and Eleven withdrawing Count Fourteen's claims.

## ARGUMENT

### I.   PLEADING STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all inferences in favor of the plaintiff. *Noble v. Weinstein,* 335 F. Supp. 3d 504, 513 (S.D.N.Y. 2018) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)). In order to survive a 12(b)(6) motion to dismiss, the complaint must sufficiently plead facts to "state a claim to relief that is plausible on its face." 335 F. Supp. 3d at 513 (emphasis in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) [internal citations omitted]). A claim's facial plausibility exists when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Canosa v. Ziff*, No. 18-cv-4115, 2019 WL 498865, at *5 (S.D.N.Y. Jan.

---

[6] Dkt. 15, 24, 27, 32, 42, 47, 50.
[7] Dkt. 66.
[8] Dkt. 68.
[9] Dkt. 69.
[10] Dkt. 75.

28, 2019) (citing *Iqbal*, 556 U.S. at 663 [internal citations omitted]).

II.    **MARCINIAK SUFFICIENTLY PLED A CLAIM UNDER THE TRAFFICKING VICTIMS PROTECTION ACT (COUNT ONE)**

Title 18 U.S.C. section 1591, the "TVPA," punishes whoever knowingly, in or affecting interstate commerce, (1) "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person," (2) "knowing…that means of force, threats of force, fraud, coercion…or any combination of such means will be used," (3) "to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a); see also *Noble*, 335 F. Supp. 3d at 517-519. By its terms, the statute does not limit its application to any particular set of facts. The elements, comprised of clear and unambiguous language, contain two statutory definitions (of "coercion" and "commercial sex act"). 18 U.S.C. § 1591 (e)(2), (3). While Defendants jointly attempt to downplay the severity and degree of sexual exploitation Marciniak experienced during her employment with the involved institutions, this Court has reasoned in the seminal case on this issue, *Noble v. Weinstein*, decided in this District, that although a plaintiff's allegations may not be typical applications of the TVPA, and "while the instant case is not an archetypal sex trafficking claim, the allegations plausibly establish that [Defendants'] … conduct … violated Section 1591." 335 F. Supp. 3d at 515.

The Court in *Canosa* further elaborated on the application of the TVPA to dispense with the line of reasoning that the TVPA is meant to "reach only caricatures of child slavery, and to exclude corporate-supported conduct…" finding such a limited scope of the TVPA as wholly unpersuasive. The text of the TVPA does not provide any charter for such a distinction. That the RU's Faculty Advisor, tenured professor, supervisor and mentor of Marciniak, Winrich Freiwald, enticed Marciniak to accept a position in his New York based laboratory at RU, sight unseen, through the promise of relocation to the United States via RU's securing of a visa and participation in groundbreaking research while collaborating with the top institutions in the

world promising significant career advancement rather than the promise of crack, does not remove their conduct from the ambit of the statute. Nor does the fact that, as alleged, the institutions enabled Frederico Azevedo, of MIT and Harvard Medical School, to perpetrate a sexual assault on Marciniak during CBMM's three-week summer retreat and in the RU's housing rather than brothels and Freiwald to continuously make unchecked sexual advances to his postdoctoral research student between 2016 to 2021. 2019 WL 498865, at *23. The Court previously found this conduct unlawful in the corporate context, and Plaintiffs request the Court recognize a similar manipulation, sexual abuse and brokerage of female talent running through the highest levels of academia as well.

### A.      Marciniak Sufficiently Pled An Underlying TVPA Violation

#### 1.      Marciniak Was Enticed and/or Recruited

The verbs "entice" and "recruit" are not defined in Section 1591, and thus should be construed "in accord with [their] ordinary or natural meaning." 18 U.S.C. § 1591; *Noble*, 335 F. Supp. 3d at 517, 517 n.6 (citing *Smith v. United States*, 508 U.S. 223, 228 (1993); *United States v. Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007)). The ordinary or natural meaning of "entice" is "to attract artfully or adroitly or by arousing hope or desire," as defined by the Merriam-Webster and Oxford dictionaries. *Noble*, 335 F. Supp. 3d at 517. The ordinary meaning of "recruit" is to "persuade to do or help with something," according to the Merriam-Weber and Oxford dictionaries. Id. at 517 n.6 (internal citations omitted).

In *Noble*, the court found that Weinstein had "enticed" an aspiring actress and model by promising her an audition for an unspecified film role and a meeting with a modeling agency. 335 F. Supp. 3d at 517. These promises "were more than enough to arouse 'hope and desire' in the plaintiff." Id. See *Noble*, 335 F. Supp. 3d at 517 ("What proved to be empty promises of a film role and a modeling meeting were more than enough to arouse 'hope and desire' in Noble,

an aspiring actress and model."). Examples of enticement and recruitment via professional opportunities abound in similar cases to the instant case, *Noble* and *Canosa*. In *Noble*, the court found that the plaintiff was also "entice[d] to engage in a sex act" by Weinstein's "assurances that 'everything will be taken care of for you if you relax,' including as he forced her to masturbate him." Id. at 518. The court also held that the allegations appeared to plausibly allege "recruit[ment]." Id. at 517 n.6. In *Canosa*, the court found that Weinstein had "enticed and recruited" the plaintiff by showing interest in a film idea she pitched to him, by promising to make her a part of the film's production team, and by inviting her to meet with him "ostensibly to discuss a television series…." 2019 WL 498865, at **2-3, 22.

Notably, Defendants focus on cases involving purported trafficking with respect to involuntary servitude and forced labor (18 U.S.C. § 1590) rather than sex trafficking (18 U.S.C. § 1591) attempts to distract from the true thrust of Marciniak's claims. The respective statutes differ in significant ways. Under Section 1590, trafficking involves "recruit[ing], harbor[ing], transport[ing], provid[ing], or obtain[ing] by any means, any person for labor or services…" (Emphasis added.) Section 1591, on the other hand, does not require recruitment or enticement for any specific purpose. 18 U.S.C. § 1591 (a)(1). Additionally, Section 1590 does not criminalize "entic[ing]." In these ways, the TVPA is much broader in the conduct it criminalizes. Regardless, Marciniak sufficiently pleads claims under both §§ 1590 and 1591.

As in *Noble* where the plaintiffs adequately alleged the defendant enticed and recruited them by inviting them to photoshoots and/or one-on-one meetings, as well as by making assurances of career advancement at the photoshoots, Freiwald manipulated Marciniak with the same methods: inviting her to meet at romantic restaurants to discuss neuroscience while alluding to access he could provide to big opportunities for her from breakthrough research being done in his laboratory and projecting high chances of a postdoctoral fellowship award leading to coveted

postdoctoral advanced training for her. (Comp. ¶¶ 15, 16). In February 2016, to her surprise, Freiwald sent emails timed to her vulnerabilities using his position of power and emotional manipulation to assign her to a CBMM research collaboration, promising working closely with Josh Tenenbaum as invaluable to make the most out of her work and good for to access all the scientific support CBMM offered.  Marciniak was shocked because this was not previously discussed, but she had to agree as Tenenbaum was informed she committed and withdrawing would damage her reputation. (*Id*. ¶ 18).  These kinds of invitations, access to his laboratory and other prominent researchers in the field and assurances for rare professional prominence, reasonably gave rise to hope and desire that Freiwald would advance Marciniak's career if she gave in. Marciniak's allegations mirror those in *Noble* and *Canosa* both in that she was enticed by her superior to valuable professional conferences and assurances of career advancement.

Defendants' emphasis on the concept of Marciniak being forced to act lacks the significance they intend. Marciniak was indeed coerced into engaging in completing work for Freiwald severely misleading her as to the state of his laboratory and the preparedness of the technology he could offer her to engage with. Freiwald misrepresented the readiness of required technology *i.e.* non-human fMRI and large-scale electrophysiology and necessary resources i.e. non-human primates ready with localized face patches available to Marciniak in his laboratory. When Marciniak arrived, the new fMRI protocol had to be developed from scratch by her, and the large-scale electrophysiology method was still in its early developmental stage. Once she arrived in his lab, Freiwald provided no guidelines, directing her to quickly figure out technical implementation and terrorized her with unrealistic expectations and intimidation to complete the work on his timeframe. Despite Freiwald's harassment, in spring 2017, Marciniak moved the project forward towards first results in summer 2017 and subsequent ones in summer 2018 all the while receiving enthusiasm from MIT. Freiwald also pressured her into attending the CBMM

program (while only permitted as a listener), which Freiwald suggested, resulting in her being raped by Azevedo, a corresponding and collaborating colleague of Freiwald's, pressured to join at all conferences Freiwald invited her to as date and prying into her personal romantic life. Despite Marciniak reporting Azevedo's rape of her, on February 13, 2020, Freiwald unexpectedly asked Marciniak to meet the next day on Valentine's day *to discuss next steps forward in her project.* During the meeting, Freiwald praised the new results of her research with excitement talking about the potential of the project. He then spread his legs open and exposed through his clothes his visible erection insinuating to Marciniak his request for sexual favors. Comp. ¶¶ 18, 22, 23, 62, 63, 64. Further, CBMM endorsed a misogynist extracurricular culture during its summer events, which effectively marginalized women, consisting of male-bonding and socialization rituals, locker room conversations and viewing porn, drinking alcohol, fostering the degradation and subordination of women present. During CBMM's 2018 summer program meeting on August 16, 2018, Kreiman discussed the topic of sex with students suggesting postponing those interactions to after the program officially ends and instead to look for sexual opportunities around the room, effectively encouraging male TAs to approach female TAs for sex. His behavior made Marciniak very uncomfortable. Comp. ¶¶ 50, 51, 52. Therefore, Marciniak's forced labor claims should not be dismissed based on Defendants' reasoning that *only* the literal meaning of the term force be utilized to interpret the statute as it applies to Marciniak's facts pled in the Complaint.

### 2.   Marciniak's Sex-Trafficking Claim Should Survive

Sex-trafficking under the TVPA requires Marciniak to plausibly allege (1) a "commercial sex act" (2) obtained through "force, threats of force, fraud . . . or any combination of such means." *See* 18 U.S.C. § 1591(a). Through the totality of the circumstances pled in the Complaint, Marciniak has plausibly alleged both necessary elements not warranting the claim's dismissal.

In terms of a commercial sex act defined as "any sex act, on account of which anything of value is given or received by any person" (18 U.S.C. § 1591(e)(3), Marciniak does allege facts explaining all the measures Freiwald took to get her in a position of inferiority to him working in his lab, taking pains to get as close as he could to her personally to make his advances while in romantic social settings over lunch or dinner and touching her lower back and buttocks on at least one 40 minute walk uptown that he insisted they take.  Compl. ¶¶ 17, 18, 48, 57–59. Freiwald's advances and sexual harassment of Marciniak was a proposition – if she engaged in a "sex act" with Freiwald it would benefit her and be in exchange for continuing to research at RU in collaboration with MIT, which is of obvious value. Because she married Agra and would not engage in a *quid pro quo* sexual relationship with Freiwald in exchange for continued employment, despite her stellar results, he terminated her after being rejected and the formal complaint was lodged against him.

### 3.   Marciniak Succeeds in Pleading A Derivative Trafficking Claim

Section 1590 renders it unlawful to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for labor or services in violation" of the TVPA.  18 U.S.C. § 1590(a). Marciniak's claim under this subsection is thus derivative of the other TVPA claims. *See Anora v. Oasis Pro. Mgmt. Grp., Ltd*., 2023 WL 2307180, at *14 (S.D.N.Y. Mar. 1, 2023) (noting that § 1590 claim was premised on viability of § 1589 claim).  Because Marciniak's previously discussed and sufficiently pled TVPA claims should succeed, the § 1590 claim also succeeds as sufficiently pled.

### B.        Marciniak Sufficiently Pled A Beneficiary Claim Under The TVPA

In pleading an underlying TVPA violation, the beneficiary claim under § 1595(a) succeeds as sufficiently pled, which requires alleging that the defendant (1) knowingly benefited (2) from participating in a venture that violated the TVPA as to plaintiff (3) with constructive or

actual knowledge that the venture violated the TVPA as to the plaintiff. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 167–69 (S.D.N.Y. 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523–24 (S.D.N.Y. 2018); *accord Doe # 1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726 (11th Cir. 2021).  The Complaint does sufficiently plead enough facts to adequately support each of the three prongs above.

As required, Defendants were aware they received benefits from Marciniak and understood the connection between the benefits she provided and each Defendants' participation in this joint trafficking venture. As Defendants point out, "[t]he controlling question indeed is whether [the perpetrator] provided any of those benefits to [defendants] because of [their] facilitation of [the perpetrator's] sexual misconduct." *See Geiss*, 383 F. Supp. 3d at 169. Marciniak's allegations that Defendants promoted an academic system unphased by exploiting postdoctoral females' work through brainwashing and manipulative tactics is sufficient to make the requisite casual connection. To reinforce this brainwashing scheme, Defendants represent to greater academia and funding agencies instant progress  in the field is possible, and postdoctoral candidates are promised a mentoring opportunity to advance their education and chances for permanent academic posts in a few years' time. While RU attracts postdoctoral researchers with the goal of establishing themselves as independent investigators, with expertise in a certain area of scientific study,  RU operates  the system of one-year appointments controlled by the Head of the Laboratory, enforcing the culture of pleasing the boss and enabling an abuse of power to easily emerge.  Due to the high quality of Marciniak's research and the initial lab setup she was forced into completing soon after her arrival that Freiwald never disclosed would be required, her work absolutely benefited these academic institutions. Freiwald Compl. ¶¶ 30, 31, 40.

Marciniak and other RU's foreign contributing postdocs were vulnerable to receiving inhumane treatment at work and living in inhumane conditions. Calculated so postdocs could only

afford nearby RU housing, RU's minimum postdoctoral salary is enough only for shared accommodation in a Scholars Residence/Faculty House building complex connected to the campus. The proximity of living quarters to work is abused by the superiors who demanded postdocs work extra hours, night shifts and weekends, as essential personnel beyond an individual's project research during the Pandemic. Compl. ¶ 34.

Second, "participation in a venture" requires that "a defendant actually participate and commit some 'overt act' that furthers the [unlawful] trafficking aspect of the venture." *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016). As stated in *Noble*, participation "cannot be established by association alone," and a plaintiff "must allege specific conduct that furthered the [] trafficking venture." *Noble*, 335 F. Supp. 3d at 524. Marciniak alleged that Defendants committed an overt act in furtherance of this trafficking behavior by their supervision and allowance of Freiwald to directly speak with RU's Human Resources personnel, Maria Lazzaro to ensure Marciniak was transported into the United States via a J-1 Visa[11] to be at his disposable to harass and force her to work for him at the minimum salary RU paid its postdoctoral research employees. As an employee of RU openly collaborating with MIT and Harvard over an extended period of time on research Marciniak generated in his lab, Freiwald's conduct was overseen by Defendants as academic institutions which all benefitted from any advancements achieved by researchers during their employment. Compl. ¶¶ 20, 24.

Defendants' argument that they all had no knowledge Marciniak was being subject to conduct prohibited by the TVPA at the hands of Freiwald and Azevedo fails as she complained directly to them in detail on more than one occasion, and instead of properly investigating these bad actors and the environment that would allow them to think such conduct would be accepted by the institutions, they conspired to conceal it. Significantly, both Freiwald and Azevedo remain

---

[11]     The J-1 Visa not being the correct visa election under immigration law for Marciniak but the cheaper option for RU.

employed by their respective institutions despite this lawsuit as well as an open criminal investigation in Massachusetts and New York into Azevedo's rape of Marciniak and various other researchers working for the involved institutions at the time they met Azevedo. Defendants' participation in this venture is clear as they provide the funding (through tax-payer dollars) for perpetrators like Freiwald and Azevedo, the locations, the access to women like Marciniak, the legal resources to transport them into the country and the authority to threaten them into submission as they hold superior titles as tenured Professors or Teaching Assistants. Accordingly, Count One should remain intact in its entirety.

III.   **MARCINIAK SUFFICIENTLY STATES A CLAIM FOR CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS (COUNT TEN)**

Marciniak in fact does state a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985. To state a claim under 42 U.S.C. § 1985(3), Marciniak must establish "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 828-29, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983). Furthermore, the conspiracy must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id*. at 829. In her Complaint, Marciniak alleged the "invidiously discriminatory animus" motivating Defendants was based upon the view she was subordinate to men because she was a Polish woman completing research for her German superiors. Employed by MIT, Harvard and BCH, as of 2017, Azevedo was a serial sex offender. In 2017 and again in 2018, Azevedo committed the rape of Marciniak. Despite in March 2019 Marciniak submitting her Incident Report to MIT Title IX and Bias Response Office notifying of the rape and subsequent sexual harassment by Azevedo, Defendants conspired to conceal and quiet

Marciniak denying her a formal investigation. RU's Title IX Coordinator and HR Vice President, Virginia Huffman ("Huffman") even pressured Marciniak to stop, procced no further to deter her because of the emotional strain this process would cause her and referred her to a psychotherapist, Maria Solomon ("Solomon"). Shockingly, Solomon spoke directly with Defendants' investigative personnel about Marciniak's therapy sessions. On October 26, 2019, Marciniak revealed to Solomon she was contacted by another Azevedo victim who was willing to testify against him in criminal and institutional investigations. Solomon doubted whether the fact had any legal value and tamed Marciniak's initial belief that this information would move the case forward. Solomon advised her *against* moving forward with the new evidence to avoid harming Azevedo. She rebuked Marciniak, angrily asking if Marciniak was aware that her actions could cause disciplinary actions and negatively affect Azevedo's work along with his future career if Marciniak continued. Compl. ¶¶ 187, 188, 189, 196, 197, 198. Further, Marciniak's Complaint pled that on May 22, 2018, Azevedo as CBMM's retreat organizer attempted to involve Marciniak in a CBMM social event, added her to his self-made Whatsapp group and on multiple occasions used Neo-Nazi and White Supremacist terms, referring to himself as "Fuhrer".[12] Compl. ¶ 75. As required under § 1985(3), Marciniak does state a racial, ethnic and/or other class-based discriminatory animus permitted to permeate within the institutions involved sustaining the civil rights conspiracy claim under § 1985. Compl. ¶¶ 187, 188, 189. Based on the facts pled in the Complaint, Marciniak was deprived equal access to her civil rights and indeed has sufficiently pled a 1985 claim as Defendants conspired against her throughout their feigned investigation causing real emotional, reputational and professional injury. For the foregoing reasons, Marciniak sufficiently pled a conspiracy to interfere with civil rights claim under § 1985, and, accordingly, Count Ten should proceed.

## IV.  MARCINIAK SUFFICIENTLY STATES A RICO CLAIM (COUNT ELEVEN)

---

[12] In 2018, Azevedo commented on the marriage of a Caucasian male MIT postdoctoral researcher with a woman of Latin origins as wasting the man's "good genes". Compl. ¶ 75.

Contrary to Defendants' stance, Marciniak does sufficiently plead a civil RICO claim. "Among the elements of a legally sufficient Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.S. § 1961, *et seq*., claim is that the defendant have (1) committed two or more acts (2) constituting a pattern (3) of racketeering activity." *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229.[13] Marciniak brings her substantive RICO claim under 18 U.S.C. § 1962(c), which makes it unlawful "for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." *Chevron*, at 239. Marciniak must therefore allege (1) an enterprise, (2) the conduct of the affairs of the enterprise through (3) a pattern of racketeering activity, and (4) injury to [its] business or property . . . caused by the violation of Section 1962." Id. Marciniak alleged Defendants essentially formulated a scheme to bury Marciniak's complaint of rape and sexual harassment by top performing researchers who's research was of high value to Defendants because it in part ensured the continuous flow of federal funding via the NSF. CBMM must report its findings and any Title IX violations to the NSF, which could jeopardize prestige and future funding. Compl. ¶¶ 202, 203, 204, 205.

### A.      Marciniak Does Identify An Actionable Injury

The requisite actionable injury to Marciniak necessary for survival of her RICO claim is detailed in the Complaint. RICO provides a civil remedy to any person injured in her *business or property* by a RICO violation." *Geiss*, 383 F. Supp. 3d at 170. Marciniak's research conducted within Freiwald's lab, her hours of work and professional reputation constitutes her business, which after being terminated by Freiwald for refusing his sexual advances, sustained a negative

---

[13] In *Chevron*, Defendants' motion to dismiss plaintiff's civil RICO claim under 18 U.S.C.S. § 1962(c) was denied because applying § 1962(c) to an alleged domestic pattern of racketeering activity would not be extraterritorial, the alleged predicate acts were sufficient to make out a pattern, and plaintiff's allegations satisfied RICO's causation requirement.

financial impart and the emotional distress she endured since being transported by RU to the United States absolutely constitutes an actionable injury to her person adversely affecting her bodily health. Compl. ¶¶ 54, 74, 210, 211. Therefore, Marciniak does allege sufficient injuries to her business or property to sustain the RICO claim.

### B.        Marciniak Does Identify A Violation of 18 U.S.C. § 1962

As Marciniak alleged an actionable injury, she has pled a violation of 18 U.S.C. § 1962. To maximize this incentive-based compensation and prevent loss of interest resulting from finding non-compliance with the Title IX regulations,  it was imperative  for the CBMM  Director Tomaso Poggio ("Poggio") and others, to protect sexual perpetrators, Freiwald and Azevedo, accused of sexual misconduct in the program and to downplay any report of sexual misconduct which might jeopardize the ability to positively "pass" the annual NSF evaluation. The NSF-CBMM cooperative agreement is a formal enterprise created to carry out the racketeering activity harming Marciniak. Between 2019 and 2022, Defendants engaged in a pattern of racketeering activity by covering up Marciniak's sexual harassment complaints in the CBMM program. By engaging in the pattern of racketeering activity, CBMM  Defendants  avoided  liability in Marciniak's complaint  even by violating the psychotherapist-patient confidentiality to pressure her not to proceed pursuing justice against her rapist and harasser to maintain continuous NSF funding to CBMM. Defendants had the specific intent and incentive to engage in the substantive RICO violations alleged herein in order to appear in compliance with Title IX requirements of the federally funded program to maintain receipt of funds and to avoid bad publicity. Compl. ¶¶ 205, 206. As accurately stated by Defendants, Marciniak must allege the existence of (1) two or more predicate acts (the racketeering activity) committed by each defendant (as opposed to by the enterprise as a whole) and (2) a pattern of such acts. *Moore v. Guesno*, 301 F. App'x 17, 18 (2d Cir. 2008). The numerous factual paragraphs of the Complaint include many more than two predicate acts required in support of Defendants' racketeering activity geared toward burying the rape and sexual harassment of Marciniak with

involvement spanning upward even to the purported investigators of these civil rights' violations.

2.       Marciniak Also Sufficiently Alleged a Pattern of Such Predicate Acts

Marciniak has sufficiently pled the factual basis to establish Defendants' pattern of conduct to over years effect the covering up scheme to shield the accused perpetrators from Marciniak's complaints, as required by the statute. As stated in *Chevron*, "[i]t would be consistent with the Supreme Court's and our Circuit's repeated recognition that "the heart of any RICO complaint is the allegation of a *pattern* of racketeering…and its consequences."[14] In further support of the pattern, Marciniak detailed the depths of Defendants' deception when alleging they conspired to deceive her into believing her complaint was dismissed by the EEOC New York office relating to her September 2020 complaint against Freiwald and RU. Compl. ¶ 208.[15]  Defendants' argument Marciniak's complaints are not horizontally or vertically related fails as these institutions all had the same incentive to maintain a reputable public image to receive funding and protect their top performers achieved by strongarming an individual postdoc researcher gaining entry into the country on a visa fostered by RU. The inequal power dynamic is obvious between the parties – Azevedo as a CBMM organizer and TA and Freiwald as a tenured professor gifted by RU his own lab complete with his own procedures. With these positions of power of Marciniak, they were firmly in positions to exercise their wills against Marciniak. Her complaints are all related as Defendants' continued to improperly address the inappropriate sexual conduct and unchecked discriminatory animus of its male educators. Therefore, the Complaint does adequately plead relatedness in every necessary sense.

Further, the Complaint meets the "continuity" requirement. Marciniak must establish that those predicate acts constituted a pattern of racketeering activity, meaning "a series of related

---

[14] *Chevron* at 61.

predicates that together demonstrate the existence or threat of continued criminal activity." *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096-97, 195 L. Ed. 2d 476 (2016). The elements of relatedness and continuity prevent the use of RICO to target mere "sporadic activity" or "separated and isolated" criminal acts.[16] Marciniak was targeted by these perpetrators for sexual gratification and then by Defendants during the attempted cover up scheme for the related reason of making these complaints go away without truly addressing the toxic culture that has been permitted to run amok in these particular institutions for several years. This was a narrowed scheme against Marciniak to conceal these unsightly and illegal accusations of sexual misconduct in what historically have been renowned, highly professional environments – a reputation slipping away as of late. Continuity of Defendants' criminal activity is demonstrated in Marciniak's Complaint as the institutions involved were aware of the complained of misconduct for multiple years from 2019 to 2022, constituting a substantial period of time and have yet to address it – both Freiwald and Azevedo remain employed with RU and MIT, respectively. As multiple women have been sexually assaulted by Azevedo while he held his position at MIT and he continues to research for Defendants, earning a salary from the federally-funded NSF-CBMM collaboration composed of tax-payers' dollars, he will continue these indeed predicate acts without any intervention from Defendants. Perhaps now with the instant litigation, he will suffer the appropriate consequences to his insidious illegal behavior towards women. In sum, Marciniak has sufficiently pled a valid RICO claim, and Count Eleven should remain intact.

## V.    **AGRA'S LOSS OF CONSORTIUM CLAIMS (COUNT FOURTEEN) ARE WITHDRAWN**

Agra's loss of consortium claims (Count Fourteen) are withdrawn by Plaintiffs as a matter of law in their entirety and with prejudice.

---

[16] *H.J. Inc. v. Nw. Bell Tel. Co.* 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

## **CONCLUSION**

For the foregoing reasons, Defendants' consolidated motion seeking dismissal of Counts

One, Ten and Eleven of the Complaint should be denied in its entirety with prejudice.


Dated: January 17, 2024                                    Respectfully submitted,

                                                           SHEGERIAN & ASSOCIATES


                                                           */s/ Olivia M. Clancy*
                                                           Olivia M. Clancy
                                                           90 Broad Street, Ste. 804
                                                           New York, New York 10004
                                                           Tel. 212.257-8883
                                                           oclancy@shegerianlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Olivia M. Clancy, hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Defendants' Consolidated Motion to Dismiss the Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") on January 17, 2024.

Dated: January 17, 2024                                         */s/ Olivia M. Clancy*