**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KAROLINA MARIA MARCINIAK-
DOMINGUES GONCALVES AGRA and
PEDRO HENRIQUE MARCINIAK-
DOMINGUES GONCALVES AGRA,

                           Plaintiffs,

           -against-

MASSACHUSETTS INSTITUTE OF
TECHNOLOGY; PRESIDENT AND
FELLOWS OF HARVARD COLLEGE;
BOSTON CHILDREN'S HOSPITAL;
MARINE BIOLOGICAL LABORATORY;
UNIVERSITY OF CHICAGO;
ROCKEFELLER UNIVERSITY; and
NATIONAL SCIENCE FOUDATION
CENTER FOR BRAINS MINDS AND
MACHINES COOPERATIVE
AGREEMENT,

                         Defendants.

No. 22-cv-10959 (ALC)

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**THE ROCKEFELLER UNIVERSITY'S MEMORANDUM OF LAW IN SUPPORT**
**OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT. ...................................................................................................... 5

FACTUAL AND PROCEDURAL BACKGROUND ....................................................................... 5

ARGUMENT ................................................................................................................................... 7

    I.      Pleading

    II.     Marciniak's Disparate Treatment Claims Against RU Under Title VII, Title IX and the NYSHRL Are Untimely (Count 2)

    III.    Marciniak States a Claim for *Quid Pro Quo* Sexual Harassment and Hostile Work Environment under Title VII (Count 3)

    IV.    Marciniak's *Quid Pro Quo* and Hostile Work Environment Claims Under the NYSHRL and the NYCHRL Are Timely

    V.     Marciniak States a Claim against RU for Deliberate Indifference Under Title IX (Counts 5)

    VI.    Marciniak States a Claim against RU for Breach of Duty of Reasonable Care Under  Title VII (Count 5)

    VII.    Marciniak's Withdrawn Claims Under Title IX (Counts 6 and 7)

    VIII.   Marciniak's Claim for Heightened Risk Survives (Count 8)

    IX.    Marciniak's Retaliation Claims Should Remain (Count 9)

    X.     Marciniak's IIED Claim Survives (Count 12)

CONCLUSION ............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)………………………………7

*Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir.
1981), *cert. denied,* 455 U.S. 988, 71 L. Ed. 2d 847, 102 S. Ct. 1611 (1982)…………………………………20

*Azzolini v. Alitalia Airline*, 1991 U.S. Dist. LEXIS 16422, 90 Civ. 3392, 1991 WL 243380, *2
 (S.D.N.Y. Nov. 13, 1991)……………………………………………………………………………8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)…………………………………………………………………………………7,8

*Burnham v. Board of Edu.*, 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997
 WL 317389, 2* (S.D.N.Y. June 11, 1997)……………………………………………………8,10,12

*Cannon v. Univ. of Chicago*, 441 U.S. 677, 704, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979)…………………14

*Cohn v. New York City Dep't of Parks*, 1996 WL 449539……………………………………………………..8

*DeJohn v. Wal-Mart Stores East, LLP*,
 2013 WL 1180863 (N.D.N.Y. Mar. 20, 2013)……………………………………………………11

*Doe v. Regents of the Univ. of Cal.,* 23 F.4th 930……………………………………………………………14

*Doe v. Syracuse Univ.*,
 2023 WL 7391653 (2d Cir. Nov. 8, 2023)…………………………………………………………15

*Doe v. Trs. of Columbia Univ.*,
 2023 WL 4211031 (S.D.N.Y. June 27, 2023)……………………………………………………...16

*Dollinger v. New York State Ins. Fund*, 726 Fed. Appx. 828…………………………………………13

*Frank v. Plaza Const. Corp.*,
 186 F. Supp. 2d 420 (S.D.N.Y. 2002)................................................................ …...12

*Harris v. New York City Department of Homeless Services*, 1998 U.S. Dist. LEXIS 5865, *28,
 No. 97 Civ. 0432 (SAS), 1998 WL 205334, *9 (S.D.N.Y. Apr. 28, 1998)…………………………8

*Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010)……………………………………………………7

*Henschke v. New York Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166, 172 (S.D.N.Y. Apr. 13, 1993)…………15

*Kane v. Mount Pleasant Cent. Sch. Dist.*,
 80 F.4th 101 (2d Cir. 2023)…………………………………………………………………...10

*Kneeland v. Bloom Township High School Dis*t., 484 F. Supp. 1280………………………………………15,17

*Kwan v. Andalex Grp.*, LLC, 737 F.3d 834…………………………………………………………19

*Morris v. Fordham University*, 2004 U.S. Dist. LEXIS 7310, 2004 WL 906248, *3 (S.D.N.Y. Apr. 28,

2004)...................................................................................................................................15

*Myers v. Doherty*,

    2022 WL 4477050 (2d Cir. Sept. 27, 2022)..............................................................13

*Oshinksy v. New York City Hous. Auth.*, 2000 U.S. Dist. LEXIS 1879..................................8

*Patane v. Clark*,

    508 F.3d 106 (2d Cir. 2007)............................................................................9,12

*Petrosino v. Bell Atl.*, 385 F.3d 210, 219-20 (2d Cir. 2004)....................................................8

*Rosenberg v. City of New York*, 2011 U.S. Dist. LEXIS 112818.........................................15

*Schiebel v. Schoharie Cent. Sch.*, 2023 U.S. Dist. LEXIS 112951.......................................15

*Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686.....................................................................18

*Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)...............................7

*Torres v. Pisano*, 116 F.3d 625, 630 n.3 (2d Cir. 1997).....................................................15

*Towers v. State Univ. of N.Y. at Stony Brook*, 2007 U.S. Dist. LEXIS 37373, 2008 WL 1470152,

    at *3 (E.D.N.Y. May 21, 2007)............................................................................15

*Vance v. Ball State Univ.*, 570 U.S. 421............................................................................17

*Quinn v. Green Tree Credit Corp.*, 159 F.3d at 766.............................................................9

Plaintiffs Karolina Maria Marciniak-Domingues Goncalves Agra ("Marciniak") and Dr. Marciniak's husband, Pedro Henrique Marciniak-Domingues Goncalves Agra (individually "Agra" and together with Marciniak "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant The Rockefeller University's ("RU") partial motion to dismiss Plaintiffs' claims asserted against RU in the Amended Complaint dated April 10, 2023.  (Dkt. 65, or the "Complaint.").

## PRELIMINARY STATEMENT

Marciniak's claims brought against RU under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1972  ("Title IX"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") are sufficiently pled against RU.[1] For the reasons articulated herein, Plaintiffs respectfully request this Court deny RU's request to dismiss any of Marciniak's timely brought claims against the Defendant institution.

## FACTUAL AND PROCEDURAL BACKGROUND

Center for Brains, Minds and Machines enterprise ("CBMM") is a multi-institutional research and education center.[2] CBMM at MIT was established in 2013 under a cooperative agreement through funding via National Science Foundation ("NSF").[3] MIT is the main awardee, whereas President and Fellows of Harvard College ("Harvard"), Boston's Children's Hospital ("BCH"), Marine Biological

---

[1] Marciniak brings the following claims: (i) disparate treatment under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1972  ("Title IX"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") (Count 2); (ii) *quid pro quo* sexual harassment and hostile work environment under Title VII, the NYSHRL and the NYCHRL (Count 3); (iii) sex-hostile environment regarding Frederico Azevedo ("Azevedo") under Title IX (Count 4); (iv) deliberate indifference under Title IX and breach of duty of reasonable care under Title VII (Count 5); (v) erroneous outcome under Title IX (Count 6); (vi) negligent hiring, training, supervision and retention (Count 7); heightened risk under Title IX (Count 8); (vii) retaliation under Title VII and Section 215 of the New York Labor Law ("NYLL") (Count 9); and (viii) intentional infliction of emotional distress ("IIED") (Count 12).

[2] CBMM is dedicated to the study of intelligence, how the brain produces intelligent behavior and how this scientific discovery may enable the replication of intelligence in machines. Compl. ¶ 8.

[3] NSF is an independent agency of the United States government that suppo1is fundamental research and education in all non-medical fields of science and engineering. Id. at ¶ 8.

Laboratory ("MBL"), University of Chicago ("UChicago") and RU are selected sub-awardee institutions of the NSF-CBMM agreement. Marciniak's claims arose between 2014 and 2022 when she was recruited to, subsequently worked for and trained at the CBMM as a junior postdoctoral researcher ("postdoc") under three CBMM Principal Investigators: Winrich Freiwald (RU) ("Freiwald"), Josh Tenenbaum (MIT) and Nancy Kanwisher (MIT). Compl. ¶¶ 7, 9, 29.  RU and MIT jointly employed Marciniak from September 2016 to November 2021.[4] Harvard, together with MIT, were employing institutions of Marciniak's sexual assault perpetrator, Frederico Azevedo ("Azevedo") against whom in March 2019 she filed a complaint with MIT regarding the rape in August 2017 at CBMM's summer program.[5]

In May and September of 2019, Marciniak filed the complaint about institutional processing of her initial complaint with the NSF Office of Diversity and Inclusion.[6] On August 10, 2020, Marciniak filed a retaliation complaint with EEOC Boston against MIT, Harvard and BCH in relation to the events from February 2020 after denial of a Teaching Assistant position by CBMM's summer program Directors. In May 2020, Marciniak opposed the ongoing sexual harassment from Freiwald, and on June 4, 2020, he demoted her in retaliation resulting in deportation. In May 2021, she filed a sexual harassment and retaliation complaint with the New York State Division of Human Rights ("NYSDHR") against Freiwald and RU. In August 2021, Marciniak was terminated effective November 2021.  On June 7, 2022, Marciniak filed a Charge of Discrimination with the EEOC receiving a right to sue. *Id*. at ¶ 13. On December 22, 2022, Plaintiffs commenced this lawsuit against MIT, Harvard, RU and four other defendants: BCH, MBL, UChicago and NSF. Plaintiffs herein oppose Defendants' arguments seeking partial dismissal of Plaintiffs' federal, state and city claims.

---

[4] MIT maintained control over her employment, accessed her work progress and oversaw her research.
[5] CBMM's summer program is financed from NSF-CBMM grant funds through MIT and Harvard with CBMM's summer program Directors being employed by MIT, Harvard and non-party BCH. *Id*. at ¶¶ 10, 70.
[6] The complaint was accepted for investigation in February 2020, and closed in March and July of 2022 with determination of no alleged discrimination. *Id*. ¶ 12.

## ARGUMENT

### I.     Pleading

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the amended complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give [*7] rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679.

To survive a motion to dismiss in an employment discrimination case, a plaintiff's "'complaint . . . [need] not contain specific facts establishing a prima facie case of discrimination'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). But the amended complaint must meet a standard of "plausibility," *Ashcroft v. Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 564), and "provid[e] . . . fair notice of the nature of the claim [and] grounds on which the claim rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556 n.3. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

### II.    Marciniak's Disparate Treatment Claims Against RU Under Title VII, Title IX and

 **the NYSHRL Are Timely (Count 2)**

**a.      Marciniak States a Claim for Disparate Treatment Under Title VII**

Marciniak's Title VII treatment claim survives because she brought her this claim in federal court on December 29, 2022 (Dkt. 1) after filing a charge with the EEOC within 300 days of the discriminatory acts. 42 U.S.C. § 2000e-5(e)(1); see *Petrosino v. Bell Atl*., 385 F.3d 210, 219-20 (2d Cir. 2004). "Generally, a court may consider, in addition to the original EEOC charges, those claims 'reasonably related' to the EEOC charges." *Burnham v. Board of Edu*., 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2* (S.D.N.Y. June 11, 1997). A claim is considered "reasonably related" to the original claim in the EEOC complaint if: (1) the conduct complained of falls within the scope of the EEOC investigation of the original charge(s) of discrimination; (2) the claim alleges retaliation by an employer against an employee for filing an EEOC charge; or (3) a plaintiff alleges further incidents of discrimination carried out in precisely the same manner as alleged in the EEOC charge. *Burnham*, 1997 U.S. Dist. LEXIS 8177, *4-5, 1997 WL 317389, *2. The Court notes that "this Circuit has instructed courts to look beyond the four corners of the often inarticulately framed [EEOC] charge when determining whether the claims alleged in the complaint are reasonably related to the EEOC charge." *Harris v. New York City Department of Homeless Services*, 1998 U.S. Dist. LEXIS 5865, *28, No. 97 Civ. 0432 (SAS), 1998 WL 205334, *9 (S.D.N.Y. Apr. 28, 1998). This is especially true when a plaintiff was not represented by counsel at the time of filing said charge, as was the case here. In *Oshinksy v. New York City Hous. Auth*., 2000 U.S. Dist. LEXIS 1879, under the continuing violation doctrine, the mandatory filing period is tolled until the last discriminatory act furthering a continuous discriminatory practice or policy, provided that the existence of a continuing violation is clearly asserted both in the EEOC filing and in the federal complaint. *Cohn v. New York City Dep't of Parks*, 1996 WL 449539, *3; *Azzolini v. Alitalia Airline*, 1991 U.S. Dist. LEXIS 16422, 90 Civ. 3392, 1991 WL 243380, *2 (S.D.N.Y. Nov. 13,

1991). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Quinn v. Green Tree Credit Corp.*, 159 F.3d at 766.

Based upon the continuing violations doctrine, which is applicable to Marciniak's Title VII claim, her allegations despite arising before July 22, 2020 are not time-barred. (*See* Compl. ¶¶ 42-46, 48, 55; *see* 42 U.S.C. § 2000e–5(e)(1). As required by *Patane v. Clark*, Marciniak properly pled as a women who was highly qualified for her position – recruited by Freiwald himself abroad to work in his lab[7] - suffered adverse employment action by being terminated for opposing sexual assault and harassment after lodging complaints to RU resulting in her termination entirely not based on her performance as a postdoc researcher. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007). Contrary to RU's assertion, Marciniak's disparate treatment allegations qualify for relief as she experienced the adverse employment action of unlawful termination in November 2021 after refusing Freiwald's numerous sexual advances identifying circumstances that gave rise to an inference of discrimination based on her sex. As of September 12, 2021, there were only five (5) female scientists compared to 16 male scientists working in Freiwald's laboratory ("lab"). Throughout Marciniak's employment at RU, Freiwald's distribution of lab resources and delegation of tasks among postdocs and PhD students was discriminatory towards women as he more often assigned women the tedious, demanding jobs requiring working overtime and on weekends including animal training, surgical procedures and administrative tasks. This being his preference so the men were free to perform research. On a regular basis during her employment, Freiwald tasked Marciniak with administrative work deprioritizing her contributions. In 2020, he refused to support Marciniak's application for the internal RU postdoctoral fellowship

---

[7] Compl. ¶ 15.

but endorsed a similarly situated male postdoc's of CBMM. Compl. ¶¶ 41-45. Therefore, Marciniak's disparate treatment claim under Title VII should remain intact.

**b.**   **Marciniak States a Claim for Disparate Treatment Under Title IX**

Marciniak's Title IX claims should remain as similar to her VIII claims, they are not time-barred based upon arguments supported by the Continuing violations doctrine as her EEOC Charge was timely filed along with her initial pleading. RU's reliance on *Kane v. Mount Pleasant Cent. Sch. Dist.*, 80 F.4th 101 (2d Cir. 2023) fails to acknowledge the exception of the continuing violations doctrine on Marciniak's claims arising prior to December 28, 2019, which Marciniak argues applies garnering the same effect as to her Title VII claims. (*See* AC ¶¶ 42-46, 48). As Marciniak did in fact experience an adverse employment action through her termination in November 2021 soon after refusing Freiwald's blatant sexual advances and banana innuendos stated in the Complaint, Marciniak's IX claims should therefore remain. (Compl. ¶¶ 42-46, 48, 61-64). Accordingly, Marciniak's disparate treatment claim under Title IX should survive.

**c.**   **Marciniak States a Claim for Disparate Treatment under the NYSHRL**

Marciniak's NYSHRL claim should also survive for the same reasons and facts referenced above concerning her Title VII and Title IX claims as timely based on the continuing violations doctrine and her allegations met the pleading standard as sufficient to proceed. *Burnham v. Board of Edu.*, 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2* (S.D.N.Y. June 11, 1997. Just as her Title VII and IX claims, Marciniak's NYSHRL claims are subject to a three-year statute of limitations but also do not warrant dismissal. Following her November 2021 termination, in January 2022, the NYSDHR issued a probable cause determination after a completed investigation. On June 7, 2022, Marciniak filed a sex discrimination and retaliation complaint with the EEOC against RU, and on March 21, 2023,

she received a Right to Sue Letter in relation to her complaint. Marciniak's April 3, 2023 requested dismissal of her NYSDHR complaint due to administrative convenience (Compl. ¶ 13) should not prejudice her so severely as to deprive her from continuing to bring a NYSHRL disparate treatment claim in this proceeding as she timely filed her original complaint within 300 days of the last adverse employment action. RU improperly relies upon *DeJohn v. Wal-Mart Stores East, LLP*, 2013 WL 1180863 (N.D.N.Y. Mar. 20, 2013) as justification to dismiss Marciniak's NYSHRL claim but fails to disclose the standard of review in that case was not the 12(b)(6) pleading standard applicable here but the Rule 50(a)(1) standard analyzing a claim after "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party, and (B) grant a motion for judgment as a matter of law against the party...." This misleads the Court, does not properly address the issue herein and should be disregarded. Therefore, as previously argued, Marciniak's NYSHRL timely claim should remain as well.

### d.    Marciniak's NYCHRL Claims Should Remain

For the same reasons stated above, Marciniak's NYCHRL claims, despite typically having a three-year statute of limitations (NYC Admin Code § 8-502(d)) should be deemed timely by the Court.

## III.    Marciniak States a Claim for *Quid Pro Quo* Sexual Harassment and Hostile Work Environment under Title VII (Count 3)

### a.    Marciniak's Title VII *Quid Pro Quo* Sexual Harassment and Hostile Work Environment Claims Should Both Remain

As Marciniak puts forth the continuing violations doctrine applies to both her *quid pro quo* sexual harassment and hostile work environment claims as facts are sufficiently pled detailing Freiwald's inappropriate sexual conduct and touching of Marciniak as her supervisor as the doctrine

does to her Title VII, Title XI, NYSHRL and NYCHRL claims, they are timely. If a plaintiff is asserting a hostile work environment claim (as Marciniak is), the 'continuing violation exception' may apply, and a court may consider events occurring outside the limitations period, as long as at least one alleged discriminatory act occurred within 300 days of the filing of the EEOC charge." See *Burnham v. Board of Edu.*, 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2* (S.D.N.Y. June 11, 1997). To state a claim of *quid pro quo* sexual harassment under Title VII, a plaintiff must allege that: (1) she was subject to unwelcome sexual conduct or an unwelcome sexual advance; and (2) her reaction to that conduct was used as the basis for an adverse employment action. *Frank v. Plaza Const. Corp.*, 186 F. Supp. 2d 420, 426 (S.D.N.Y. 2002). As a separate theory from *quid pro quo*, but capable of blending together as one given the factual circumstances that Freiwald certainly contributed to the making of her employment hostile, to state a hostile work environment claim, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive - that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106.

Marciniak pled Freiwald's continuous participation in her sexual harassment and maintaining her in a hostile work environment by his own inappropriate sexual advances *i.e.* asking about her romantic relationships and if she likes older men while caressing her hand (implying himself as a potential suitor) and setting her up to return to CBMM's summer program where Azevedo lurked after she complained to Freiwald specifically about the uncomfortable negative experience she endured with Azevedo during CBMM's 2017 summer. Additionally, Marciniak pled that because discontent with Freiwald's management was growing in the lab in summer 2020, a lab climate survey based on RU's template was executed internally

among Freiwald's lab members, and the results revealed that a majority of lab members were not happy in the lab, declared they experienced a hostile environment and did not feel comfortable talking directly to Freiwald as a supervisor about their problems. Marciniak further pled Freiwald threatened to end her career in response to her complaint about his sexual harassment; all allegations taken together amounting to a severe and pervasive environment. Compl. ¶¶ 58, 65, 70-71; *see Myers v. Doherty*, 2022 WL 4477050 (2d Cir. Sept. 27, 2022); *Dollinger v. New York State Ins. Fund*, 726 Fed. Appx. 828. As Marciniak continues to assert the continuing violations doctrine applies to both her *quid pro quo* and hostile work environment claims, and assuming the Court agrees deeming her allegations in support of these claims timely, there are indeed sufficient facts pled documenting Freiwald's unwelcome sexual conduct, advances and touching of Marciniak Count 3 of the Complaint.  Accordingly, Marciniak states claims for quid pro quo sexual harassment and hostile work environment under Title VII.

### IV.   Marciniak's *Quid Pro Quo* and Hostile Work Environment Claims Under the NYSHRL and the NYCHRL Are Timely (Count 3)

As she relies upon the aforementioned continuing violations doctrine, Marciniak's quid pro quo sexual harassment and hostile work environment claims under the NYSHRL and NYCHRL claims are timely.  Compl. ¶¶ 56-60.

### V.   Marciniak States a Claim for Relief Against RU in Count 4

In Count 4, Marciniak does assert a Title IX claim for "sex-hostile environment" against RU because it did engage in conduct that contributed to and compounded her sexual harassment prior to and after Azevedo sexually assaulted her. The assertion Azevedo was unaffiliated with RU and its staff, namely Freiwald and Marciniak herself is baseless and in contradiction to how the cooperative agreement between MIT, Harvard, RU and other institutions worked together corroborating and exchanging information. Azevedo and Freiwald corresponded via email

specifically about Marciniak and the CBMM program. Compl. ¶¶ 67-86.  RU was aware of Azevedo's harassment of Marciniak as she told one of its tenured professors upon returning from the summer program where Azevedo perpetrated the first rape. Id. Under the circumstances alleged in the Complaint, Marciniak properly brings a Title IX claim against RU as it did engage in its own misconduct in handling Marciniak's complaints of both Freiwald and Azevedo plus the sexist work environment they perpetuated degrading more women than Marciniak and routinely pursuing them in aims of sexual encounters, including with students.  Compl. ¶¶ 67-86. The pair of men worked in tandem furthering an internal practice and bias against female postdocs and students held by certain educators of all Defendant institutions, and RU's portion of the wrongdoing allows the Title IX claim to continue.[8] Because the continuing violations doctrine should apply to this claim as well, Marciniak's Title IX claim is timely.

## VI.   Marciniak States a Claim against RU for Deliberate Indifference Under Title IX (Counts 5)

Contrary to RU's arguments[9], Marciniak's Title IX claim for deliberate indifference against RU actually survives.  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. It was designed "to avoid the use of federal resources to support discriminatory practices" and "provide individual citizens effective protection against those practices." *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979). To state a claim for deliberate indifference, a plaintiff must demonstrate that a defendant was "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of

---

[8] *Doe v. Regents of the Univ. of Cal.,* 23 F.4th 930.
[9] Marciniak argues this claim is also not time-barred due to the continuing violations doctrine.

access to the educational opportunities or benefits provided by the school." *Doe v. Syracuse Univ.*, 2023 WL 7391653, at *12 (2d Cir. Nov. 8, 2023). Marciniak's case is clearly distinguishable from *Doe v. Syracuse* as Marciniak lodged complaints of her sexual harassment to every available channel in line with Defendants' policies and requested a no-contact order, which Huffman of RU scoffed at and denied. (Compl. ¶ 82).

Firstly, the Court does not explicitly carve out postdoc researchers from Title IX's protections, which Marciniak asserts were meant to protect an individual researching in a lab from a tenured professor such as Freiwald who promised academic advancement when recruiting her and access to a top of the line lab pursuing neuroscientific research. (Compl. ¶¶ 6, 15; see *Schiebel v. Schoharie Cent. Sch.*, 2023 U.S. Dist. LEXIS 112951 [claims have been recognized in instances of sexual harassment of a student, not an employee]; *Kneeland v. Bloom Township High School Dis*t., 484 F. Supp. 1280). In addressing *Yog v. Texas S. Univ.*, 2010 WL 4053766, at *4 (S.D. Tex. Aug. 30, 2010), there is a split in authority as to whether, "given the availability of a private right of action under Title VII, an employee of an educational institution may bring a private employment discrimination claim for money damages under Title IX." *Rosenberg v. City of New York*, 2011 U.S. Dist. LEXIS 112818. The Second Circuit has not decided that question. See *Towers v. State Univ. of N.Y. at Stony Brook*, 2007 U.S. Dist. LEXIS 37373, 2007 WL 1470152, at *3 (E.D.N.Y. May 21, 2007) (citing *Torres v. Pisano*, 116 F.3d 625, 630 n.3 (2d Cir. 1997)). Those courts that have found such a right of action is available include, M*orris v. Fordham University*, 2004 U.S. Dist. LEXIS 7310, 2004 WL 906248, *3 (S.D.N.Y. Apr. 28, 2004), and *Henschke v. New York Hosp.-Cornell Med. Ctr.*, 821 F. Supp. 166, 172 (S.D.N.Y. Apr. 13, 1993). Just because Marciniak was a researcher employed by RU, not an enrolled student, her deliberate indifference claim does not necessarily fail as it is within the Court's discretion to maintain it.

Secondly, Marciniak has plausibly pled that RU had "actual knowledge" of "severe, pervasive, and objectively offensive" harassment and that its response was "clearly unreasonable" as Freiwald was one of the perpetrators so he had actual knowledge and Marciniak has complained to him about Azevedo's misconduct on *September 1, 2017* after returning from the CBMM 2017 summer program. (Compl. ¶¶ 36, 57, 97-98). Further, after Marciniak filed her Title IX complaint with MIT in May 2019, RU reacted with malice by conducing damage control to protect the institution's flow of federal funding and reputation not Marciniak through referring her to psychotherapist, Maria Solomon who instead of treating Marciniak was conspiring with Huffman to dissuade her from pursuing any recourse against Azevedo and disclosing detail of her sessions without consent. Attorneys offered by RU to advise Marciniak, Rebecca Zipkin and Jessica Morak, were hired and paid for by RU, whose loyalties lied with RU, not Marciniak. Id. The severity of the how RU and associates dealt with Marciniak and her complaints is lost of Defendant RU and their conduct was "clearly unreasonable," which indeed is a requisite element to a claim of deliberate indifference. *See* distinguishable precedent *Doe v. Trs. of Columbia Univ.*, 2023 WL 4211031, at *8 (S.D.N.Y. June 27, 2023) (dismissing deliberate indifference claim where plaintiff failed to allege that defendant's response to complaint was clearly unreasonable). Accordingly, Marciniak's claim remains.

**VII.**   **Marciniak States a Claim against RU for Breach of Duty of Reasonable Care Under Title VII (Count 5)**

Marciniak's claim against RU for breach of duty of reasonable care under Title VII survives contradicting RU's legal arguments. "Under Title VII of the Civil Rights Act of 1964, an employer's liability for workplace harassment may depend on the status of the harasser. If the harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions. In cases in which the harasser is a 'supervisor,' however,

different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. Under this framework, therefore, it matters whether a harasser is a "supervisor" or simply a co-worker." *Vance v. Ball State Univ.*, 570 U.S. 421. In this case, Freiwald is Marciniak's supervisor, sexually harassed her himself, was aware of Azevedo's inappropriate conduct during the 2017 CBMM program only a few days after it occurred and was in a position to remedy it but did not because as Marciniak alleges he is a perpetrator of sex crimes himself resulting in RU's vicarious liability. Therefore, a cognizable and timely claim exists under Title VII. Accordingly, Marciniak's claim for breach of duty of reasonable care under Title VII should prevail against RU.

## VIII. Marciniak's Withdrawn Claims Under Title IX (Counts 6 and 7)

Marciniak withdraws her erroneous outcome and negligent hiring, training, supervision and retention claims against RU for lack of standing as she does not constitute a perpetrator.

## IX. Marciniak's Claim for Heightened Risk Survives (Count 8)

Marciniak's heightened risk claim against RU under Title IX survives. Marciniak's claim is sufficiently pled for the same reasons as her Deliberate Interference claim under Title IX is meritorious. Just because Marciniak was not a student at RU, does not mean she cannot avail herself of the protections afforded under this Title IX claim. See *Kneeland v. Bloom Township High School Dist*., 484 F. Supp. 1280 ("The First Circuit suggested that where an employee is doing work which is specially funded by the federal government, employment-

related sex discrimination against such an employee would be actionable under Title IX").

Additionally, Marciniak plausibly alleges a claim for heightened risk, which requires a plaintiff seeking to bring such a claim allege that "(1) a federally-funded educational institution (2) was deliberately indifferent to and (3) had actual knowledge of (4) sexual harassment that was so severe, pervasive and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits." Id. The Court has held that "[i]n a Title IX case, a plaintiff's cause of action is against the school based on the school's actions or inactions, not the actions of the person who abused the plaintiff. A recipient of federal funds may be liable in damages under Title IX only for its own misconduct. The institution's conduct is therefore the act providing the basis of a plaintiff's legally cognizable Title IX injury. In a successful before claim, a school's deliberate indifference to known past acts of sexual misconduct must have caused the misconduct that the student currently alleges. In other words, a plaintiff could not have been alerted to protect his or her rights through a Title IX suit unless they had reason to believe that the institution did something (or failed to do something) that caused their injury." *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686. Therefore, Marciniak is not required to allege RU had prior knowledge of Azevedo's sexual assaults or the sexual harassment perpetrated by Freiwald.  (Compl. ¶ 148.). Marciniak argues that RU's policies and practices, such as having a bar on its campus and that its sexual harassment prevention training material did not exemplify any daily life situations of postdoctoral work in part provides a basis for a claim of heightened risk.  (*See* Comp. ¶¶ 143, 149.). Accordingly, Marciniak's claim for heightened risk against RU should remain intact.

**X.   Marciniak's Retaliation Claims Should Remain (Count 9)**

Marciniak sufficiently states claims for retaliation under Title VII[10] and the NYLL §

215. To prevail on a retaliation claim under Title VII, "a plaintiff need not prove that his or her

underlying complaint of discrimination has merit, but only that it is motivated by a good faith,

reasonable belief that an underlying employment practice is unlawful[11]." *Kwan v. Andalex Grp*.,

LLC, 737 F.3d 834.[12] Plaintiff must show "1) participation in a protected activity; 2) a

defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a

causal connection between the protected activity and the adverse employment action. A

plaintiff's burden of proof as to this first step is characterized as "minimal" and "de minimis".

Id. Under NYLL § 215, an employer is prohibited from retaliating against an employee

"because such employee has made a complaint to his or her employer . . . that the employer has

engaged in conduct that the employee, reasonably and in good faith, believes violates any

provision of this chapter.[13]  Marciniak did in fact make complaints to RU about Azevedo's

inappropriate conduct at CBMM's summer program on September 1, 2017 (Compl. ¶¶ 137,

172-177, 208) to Freiwald (and Huffman) but no appropriate action was taken to protect her,

and on June 4, 2020 swiftly and irrationally based on the progress of the scientific research after

she formally complained of Freiwald's own sexual harassment, he effected her termination.

Accordingly, Marciniak's retaliation claims under Title VII and the NYLL should remain intact.

## XI.   Marciniak's IIED Claim Survives as Timely (Count 12)
Marciniak's IIED claim is sufficiently pled based on the factual allegations in her Complaint

---

[10] Marciniak relies upon the continuing violations doctrine for her assertion all allegations arising prior to December 29, 2021 are not time-barred.
[11] Federal and state law retaliation claims are reviewed under a burden-shifting approach of McDonnell Douglas Corp. v. Green.
[12] The *Kwan* court holding summary judgment was improper on the retaliation claims under  Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e, *et seq*., N.Y. Exec. Law § 296, and New York City, N.Y., Admin. Code § 8-107 because the employee's complaint to a company officer communicated her concerns to the company as a whole, the three-week period from the employee's complaint to her termination was sufficiently short to make a *prima facie* showing of causation indirectly through temporal proximity, and the employer provided inconsistent and contradictory explanations for the termination.
[13] See NYLL § 215.

and timely according to the continuing violations doctrine. Under the continuing violation doctrine, "where there is a continuous pattern or policy of discrimination, and where the plaintiff has filed her charge no later than 300 days after the last discriminatory act by defendant, the plaintiff may recover for earlier acts of discrimination as well." *See Association Against Discrimination in Employment, Inc. v. City of Bridgeport,* 647 F.2d 256, 274 (2d Cir. 1981), *cert. denied,* 455 U.S. 988, 71 L. Ed. 2d 847, 102 S. Ct. 1611 (1982). Despite the statute of limitations for an IIED claim under New York law being one year, Marciniak has established a continuous pattern of and/or policy of sexual harassment commencing upon her arrival by Freiwald's inappropriate advances, Azevedo's rape, the toxic misogynist culture permeating CBMM's summer events, the institutions' feigned ignorance to male educators' treatment of female researchers and disregard for her complaints of harassment and retaliation. Marciniak's rely upon the continuing violations doctrine is properly placed as she timely filed her EEOC Charge. (Compl. ¶15-215). Therefore, Marciniak's IIED claim in connection with her employment and termination against RU should survive.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny in its entirety Defendant RU's request to dismiss any of Plaintiffs' claims and grant such other and further relief as the Court deems just and proper.

Dated: January 17, 2024
    New York, New York        Respectfully submitted,

        SHEGERIAN & ASSOCIATES

        */s/ Olivia M. Clancy*
        Olivia M. Clancy
        90 Broad Street, Ste. 804
        New York, New York 10004
        Tel. 212.257-8883
        oclancy@shegerianlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

     I, Olivia M. Clancy, hereby certify that a copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Memorandum of Law of Massachusetts Institute of Technology's Motion to Dismiss the Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 17, 2024.

Dated: January 17, 2024                                        *<u>/s/ Olivia M. Clancy</u>*