**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. KAROLINA MARCINIAK-DOMINGUES GONCALVES AGRA and MR. PEDRO MARCINIAK-DOMINGUES GONCALVES AGRA,<br><br>    Plaintiffs,<br><br>    v.<br><br>CENTER FOR BRAINS, MINDS AND MACHINES AT MASSACHUSETTS INSTITUTE OF TECHNOLOGY, *et al.*,<br><br>    Defendants. | Case No. 1:22-cv-10959 (ALC) |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MEMORANDUM OF LAW IN SUPPORT OF MASSACHUSETTS INSTITUTE OF TECHNOLOGY'S MOTION TO DISMISS THE AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 4
FACTUAL AND PROCEDURAL BACKGROUND................................................................. 4
ARGUMENT .................................................................................................................................. 5
I.     THIS COURT HAS PERSONAL JURISDICTION OVER MIT……………………….5
        A.     This Court Does Have General Jurisdiction Over MIT ......................................... 7
        B.     This Court Does Have Specific Jurisdiction Over MIT ...................................... 10
II.    VENUE IS PROPER IN NEW YORK……………………………………………….…11
III.   THE COMPLAINT SUFFICIENTLY PLEADS TITLE IX CLAIMS………………….12
IV.  THE COMPLAINT SUFFICIENTLY PLEADS TITLE VII CLAIMS…………………17
V.   MARCINIAK WITHDRAWS HER CLAIM AGAINST MIT FOR
      NEGLIGENT HIRING, TRAINING, SUPERVISION AND
      RETENTION……………………………………………………………........................17
CONCLUSION ........................................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    Page(s)

*Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)…………………………..8
*A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 563 (E.D.N.Y. 2011)………..9
*Azzolini v. Alitalia Airline*, 1991 U.S. Dist. LEXIS 16422, 90 Civ. 3392, 1991 WL 243380, *2
    (S.D.N.Y. Nov. 13, 1991)……………………………………………………………………………….15
*Bowman v. Winger*, 2015 U.S. Dist. LEXIS 39266………………………………………………………12,13
*Bruin v. Bank of Am., N.A.*,
    2022 WL 992629 (S.D.N.Y. Mar. 31, 2022) (Carter, J.).........................................................................12
*Burnham v. Board of Edu.*, 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997
    WL 317389, 2* (S.D.N.Y. June 11, 1997)…………………………………………………………..15,17
*Bustamante v. Atrium Med. Corp.*,
    2020 WL 583745 (S.D.N.Y. Feb. 6, 2020) (Carter, J.)……………………………………….………..13
*Cohn v. New York City Dep't of Parks*, 1996 WL 449539……………………………………………..15
*Daimler AG v. Bauman*, 571 U.S. 117………………………………………………………………………12
*Doe v. Syracuse Univ.*, 2023 WL 7391653, at *12 (2d Cir. Nov. 8, 2023)…………………………….17
*Dorchester Fin. Sec., Inc. v. Banco BRJ, SA*, 722 F.3d 81, 85 (2d Cir. 2013)……………………………..8
*Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)……………………………..8
*Gonzalez v. City of New York*,
    2015 WL 9450599 (E.D.N.Y. Dec. 22, 2015)………………………………………………………….19
*Gucci Am. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014)……………………………………………8
*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353……………………………………………………………….12
*Harris v. New York City Department of Homeless Services*, 1998 U.S. Dist. LEXIS 5865, *28,
    No. 97 Civ. 0432 (SAS), 1998 WL 205334, *9 (S.D.N.Y. Apr. 28, 1998)…………………………..14
*Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010)………………………………………………….7
*Kneeland v. Bloom Township High School Dis*t., 484 F. Supp. 1280……………………………………..17
*Klinkowitz v. Jamaica Hosp. Med. Ctr.*,
    2022 WL 818943 (E.D.N.Y. Mar. 17, 2022).......................................................................................... 19
*Kwan v. Andalex Grp.*, LLC, 737 F.3d 834……………………………………………………………….18
*LeVarge v. Preston Bd. of Educ.,* 552 F. Supp. 2d 248………………………………………………….16
*Ochoa v. New York City Dep't of Educ.*,
    2021 WL 5450343 (S.D.N.Y. Nov. 22, 2021).......................................................................……....…..18
*Patane v. Clark*, 508 F.3d 106…………………………………………………………………………..15,16
*Petrosino v. Bell Atl*., 385 F.3d 210, 219-20 (2d Cir. 2004)……………………………………………14
*Quinn v. Green Tree Credit Corp.*, 159 F.3d at 766………………………………………………………14
<u>*Swierkiewicz v. Sorema N.A*</u>., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)……………..7
*Thackurdeen v. Duke Univ.*
    130 F. Supp. 3d 792 (S.D.N.Y. 2015)……………………………………………………………….8,11
*Toledo v. Unibud Restoration Corp.*,
    2022 WL 171198 (S.D.N.Y. Jan. 19, 2022) ........................................................................ …..19
*Waraich v. Nat. Austl. Bank*,
    2022 WL 126014 (S.D.N.Y. Jan. 13, 2022) ........................................................................................10

## PRELIMINARY STATEMENT

Plaintiffs bring the following claims against Defendant MIT under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title IX of the Education Amendments of 1972 ("Title IX"): (i) engaging in disparate-treatment discrimination (Count II); (ii) engaging in *quid pro quo* sexual harassment (Count III); (iii) fostering a sex-hostile environment (Count IV); (iv) being deliberately indifferent (Count V); (v) reaching an erroneous outcome (Count VI); (vi) creating a heightened risk (Count VIII); and (vii) retaliating against Marciniak (Count IX); and asserts they are timely and sufficiently pled against MIT.

For the reasons stated herein, Plaintiffs respectfully request this Court deny in its entirety MIT's motion to dismiss any of Marciniak's brought claims against the Defendant institution.

## FACTUAL AND PROCEDURAL BACKGROUND

Center for Brains, Minds and Machines enterprise ("CBMM") is a multi-institutional research and education center.[1] CBMM at MIT was established in 2013 under a cooperative agreement through funding via National Science Foundation ("NSF").[2] MIT is the main awardee, whereas President and Fellows of Harvard College ("Harvard"), Boston's Children's Hospital ("BCH"), Marine Biological Laboratory ("MBL"), University of Chicago ("UChicago") and RU are selected sub-awardee institutions of the NSF-CBMM agreement. Marciniak's claims arose between 2014 and 2022 when she was recruited to, subsequently worked for and trained at the CBMM as a junior postdoctoral researcher ("postdoc") under three CBMM Principal Investigators: Winrich Freiwald (RU) ("Freiwald"), Josh Tenenbaum (MIT) and Nancy Kanwisher (MIT). Compl. ¶¶ 7, 9,

---

[1] CBMM is dedicated to the study of intelligence, how the brain produces intelligent behavior and how this scientific discovery may enable the replication of intelligence in machines. Compl. ¶ 8.
[2] NSF is an independent agency of the United States government that suppo1is fundamental research and education in all non-medical fields of science and engineering. Id. at ¶ 8.

4

29. RU and MIT jointly employed Marciniak from September 2016 to November 2021.[3] Harvard, together with MIT, were employing institutions of Marciniak's sexual assault perpetrator, Frederico Azevedo ("Azevedo") against whom in March 2019 she filed a complaint with MIT regarding the rape in August 2017 at CBMM's summer program.[4]

In May and September of 2019, Marciniak filed the complaint about institutional processing of her initial complaint with the NSF Office of Diversity and Inclusion.[5] On August 10, 2020, Marciniak filed a retaliation complaint with EEOC Boston against MIT, Harvard and BCH in relation to the events from February 2020 after denial of a Teaching Assistant position by CBMM's summer program Directors. In May 2020, Marciniak opposed the ongoing sexual harassment from Freiwald, and on June 4, 2020, he demoted her in retaliation resulting in deportation. In May 2021, she filed a sexual harassment and retaliation complaint with the New York State Division of Human Rights ("NYSDHR") against Freiwald and RU. In August 2021, Marciniak was terminated effective November 2021. In January 2022, the NYSDHR issued a probable cause determination. On June 7, 2022, Marciniak filed a Charge of Discrimination with the EEOC receiving a right to sue. *Id*. at ¶ 13. On December 22, 2022, Plaintiffs commenced this lawsuit against MIT, Harvard, RU and four other defendants: BCH, MBL, UChicago and NSF. Plaintiffs filed the Amended Complaint on April 10, 2023.[6] Plaintiffs herein oppose Defendant MIT's arguments seeking dismissal of any of the claims.

## ARGUMENT

**I.    PLEADING**

In deciding a motion to dismiss pursuant to Rule 12(b)(6) Rule 12(b)(6), the Court evaluates the sufficiency of the amended complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 173

---

[3] MIT maintained control over her employment, accessed her work progress and oversaw her research.
[4] CBMM's summer program is financed from NSF-CBMM grant funds through MIT and Harvard with CBMM's summer program Directors being employed by MIT, Harvard and non-party BCH. *Id*. at ¶¶ 10, 70.
[5] The complaint was accepted for investigation in February 2020, and closed in March and July of 2022 with determination of no alleged discrimination. *Id*. ¶ 12.
[6] Dkt. 75.

L. Ed. 2d 868 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; *Hayden v. Paterson,* 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give [*7] rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 679.

To survive a motion to dismiss in an employment discrimination case, a plaintiff's "'complaint . . . [need] not contain specific facts establishing a prima facie case of discrimination'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). But the amended complaint must meet a standard of "plausibility," *Ashcroft v. Iqbal,* 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 564), and "provid[e] . . . fair notice of the nature of the claim [and] grounds on which the claim rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556 n.3. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

## II.    THIS COURT HAS PERSONAL JURISDICTION OVER MIT

Contrary to MIT's assertions, this Court, given the specific circumstances of Marciniak's case, may assert both specific jurisdiction and general jurisdiction over the institution based on Marciniak's pleading. As MIT challenges whether this New York Court has personal jurisdiction over it pursuant to Rule 12(b)(2), Marciniak recognizes the well-established body of law as it pertains

to nonforum universities and distinguishes her case from *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792 therefore meeting her burden of a *prima facie* showing that personal jurisdiction exists over this Defendant.

"[I]n analyzing a Fed. R. Civ. P. 12(b)(2) motion, courts in New York follow a two-step process. First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute. Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 563 (E.D.N.Y. 2011). There are two ways that New York exercises personal jurisdiction over non-residents: "general jurisdiction pursuant to N.Y. CPLR § 301 ... or specific jurisdiction pursuant to N.Y. CPLR § 302." *Id.* As at this early stage of litigation, "the Court must construe the pleadings and any supporting materials in the light most favorable to the plaintiffs, resolving any doubts in favor of jurisdiction." *See Dorchester Fin. Sec., Inc. v. Banco BRJ, SA.*, 722 F.3d 81, 85 (2d Cir. 2013). Plaintiff intends to persuade the Court that both the two categories of personal jurisdiction, general and specific, are present in this particular case. "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum." *Gucci Am. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014); *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792.

**A. This Court Does Have General Jurisdiction Over MIT**

In terms of general personal jurisdiction, as Marciniak acknowledges "a university or college cannot be deemed 'at home' in a forum merely because it engages in the sort of minimal and sporadic contact with the state that is common to all national universities" (*see Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)), she puts forth that the dynamic existing since 2013 between these National Science Foundation ("NSF") federally funded

7

universities – MIT, The Rockefeller University ("RU") and President and Fellow of Harvard's College ("Harvard") – is unique due to their cooperative agreement to collaborate with each other, share research and talent *i.e.* postdoc researchers to complete work they all benefit from pertaining specifically to the CBMM. CBMM is a research center initially funded in 2013 through NSF's Science and Technology Centers Integrative Partnership program. It is based at MIT and headed by Tomaso Poggio, McDermott Professor in Brain Sciences at MIT. CBMM, like all the NSF centers, is a multi-institution collaboration. Of the 20 faculty members, known as Principal Investigators, affiliated with the center, 10 are from MIT, five are from Harvard and the rest being from Cornell University, RU, the University of California at Los Angeles, Stanford University and the Allen Institute for Brain Science.[7] The CBMM faculty member at RU is RU's tenure-track professor, Winrich Freiwald ("Freiwald"), Marciniak's sexual harasser and direct supervisor who she sufficiently alleged sex trafficked her after recruiting her to work in his laboratory in 2016.[8] (Compl. ¶¶ 6, 8). Marciniak argues along with innovating, MIT, RU and Harvard are allowing a severe and pervasive mistreatment of female postdocs by male educators fueled by discriminatory animus resulting in Marciniak's rape and enduring of sexual harassment by her advisor, Freiwald, which they collectively disregarded after she lodge complaints directly to MIT detailing her allegations. (Compl. ¶ 10). MIT's contact with New York was not minimal or what should be considered typical conduct for such a revered institution (or any entity ever) due to the physical and emotional harm the disregard and blatant conspiring MIT partook in to perpetuate an environment where this behavior occurred in the CBMM program, which its is a major part of. MIT's actions, influence and employees have reached into New York by violating Marciniak's rights as a New York resident who traveled to Massachusetts on various occasions at the behest of

---

[7] https://www.eurekalert.org/news-releases/466820
[8] Plaintiffs refer the Court to Plaintiffs' Memorandum of Law in Opposition to Joint Memorandum of Law in Support of Defendants' Consolidated Motion to Dismiss the Amended Complaint filed January 17, 2024, Dkt. 95.

her perpetrators to attempt to complete meaningful work in her field but was met with rapist, Frederico Azevedo ("Azevedo") and a misogynist culture degrading of women participating in the CBMM events. (Compl. ¶¶ 67-71).

Further, MIT together with Harvard were employing institutions of Marciniak's sexual assaulter and sexual harassment perpetrator, Azevedo against whom in March 2019 she filed a sexual assault and sexual harassment complaint with MIT in relation to the August 2017 rape at the CBMM Summer School.[9] (Comp. ¶¶ 9, 10). As Marciniak pled in the Complaint, these institutions named in the caption share in a common business by operating the CBMM – "a multi-institutional research and education center *dedicated to the study of intelligence, how the brain produces intelligent behavior, and how this scientific discove1y may enable the replication of intelligence in machines.*" (Id., ¶ 8). As of August 18, 2022, NSF awarded over 48 million tax-payers dollars to CBMM, and MIT is the main awardee, whereas Harvard, Bost Children's Hospital, Marine Biological Laboratory, University of Chicago and RU are selected sub-awardee institutions of the NSF-CBMM cooperative agreement. (*Id.*). Beginning in 2014, when Marciniak was recruited and subsequently worked for and trained at the CBMM as a junior researcher or postdoc, under three CBMM Principal Investigators who were also her joint CBMM faculty advisors from different research areas: Winrich Freiwald (RU), Josh Tenenbaum (MIT) and Nancy Kanwisher (MIT). Through having joint faculty advisors, CBMM aimed to foster collaboration not just between institutions but also across disciplinary boundaries. (Compl. ¶ 9).

Marciniak's case is distinguishable from the many university personal jurisdiction cases where the Court denied general jurisdiction existed because the atypical contact MIT had with New York via the alleged conspiracy pled in the detailed Complaint in collaboration with the other involved institutions is sufficiently of a connection to haul the Massachusetts based MIT into Court

---

[9] The CBMM Summer School program is financed from NSF-CBMM grant through Defendants MIT and Harvard.

in this state, especially considering one a New Yorker was raped at one of its programs. Comp. ¶¶ 67-71; see *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792. Therefore, for the reasons articulated above, the Court does have general jurisdiction over MIT.

### B. This Court Does Have Specific Jurisdiction Over MIT

As the Court has discretion to find MIT "essentially at home"[10] in New York, it may also exercise specific jurisdiction over the university. As [s]pecific jurisdiction is jurisdiction "over issues that arise out of or relate to the entity's contacts with the forum." *Waraich*, 2022 WL 126014, at *2. Accurately related by Defendant, to establish specific jurisdiction over a defendant, "a plaintiff must demonstrate . . . that the defendant committed acts within the scope of New York's long-arm statute, CPLR § 302," *Bruin*, 2022 WL 992629, at *3, and that extending jurisdiction would comport with federal due process requirements.

Section 302(a)(3) provides jurisdiction over a non-resident who commits a tortious act outside of the state but "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Bowman v. Winger*, 2015 U.S. Dist. LEXIS 39266. Plaintiff succeeds in establishing specific jurisdictional by meeting New York's long-arm statute's standard. MIT transacts business within New York as it contracts with New York based institutions *i.e.* RU to access its research and postdocs to further its own academic success and maintain funding and intentionally mishandled New York resident Marciniak's complaint of rape by Azevedo occurring at the CBMM program (constituting tortious behavior) in conspiring to conceal what occurred to salvage Azevedo's reputation, keep his work untainted and come out unscathed itself as a federally funded institution subject to Title XI

---

[10] *Daimler AG v. Bauman*, 571 U.S. 117.

requirements. (Compl. ¶¶ 16-215). In taking into account the foreseeability requirement of Section 302(a)(3), which "is intended to ensure some link between a defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere." *Bowman*, at 4*. Marciniak argues it is foreseeable to expect that once a postdoc is raped at its CBMM program in Massachusetts by a Teaching Assistant, Azevedo who does research for MIT, will result in MIT expecting to answer for the tortious conduct in New York, where Marciniak has lived since 2016. (Compl. ¶¶ 16-215). Despite MIT's attempt to downplay the single New York-related rape allegation and her resulting formal complaint as it relates to MIT's involvement, the articulable nexus exists given the entry of these institutions into the cooperative agreement as of 2013, its promotion of the collaborations between the faculty from various institutions in various states, the transport of the postdocs to attend events like the summer program organized through correspondence amongst MIT and RU faculty creates enough of a connection for MIT to purposefully avail itself of the privileges of engaging in business in New York. (Compl. ¶¶ 67-71, 75, 79, 87-95, 201). [7]

Extending jurisdiction over MIT would not violate federal due process requirements. As Plaintiffs sufficiently pled facts establishing the requisite minimum contacts "showing [MIT] purposefully directed [its] activities at the forum and the litigation resulted from alleged injuries that arise out of or relate to those activities." *Bustamante*, 2020 WL 583745, at *4. MIT indeed purposefully directed its activities at New York due to RU being an institution with facilities capable of conducting the sought after research as Freiwald's laboratory was located in New York, and RU was a participant in the cooperative agreement. MIT should have foreseen being sued in New York for the conduct of a Teaching Assistant such as perpetrator Azevedo. (Compl. ¶¶ 67-71, 75, 79, 87-95, 201).

### III.   VENUE IS PROPER IN NEW YORK

As found in *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, by laying venue in "a" -- not "the"

-- judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, 28 U.S.C.S. § 1391(b)(2), Congress removed much of the ambiguity of the former statute. The United States Court of Appeals for the Second Circuit joins several other circuits in holding that the civil venue statute permits venue in multiple judicial districts as long as 'a substantial part' of the underlying events took place in those districts." (Id.) Pursuant to 28 U.S.C. § 1391(b), "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." Marciniak has made a prima facie case based on the facts alleged in the Complaint that a substantial part of the events giving rise to her sexual assault, harassment, discrimination and retaliation claims pertaining to MIT's involvement occurred in this district and the actions taken by MIT continued to have an effect on Marciniak after her return to New York, especially as Azevedo continued to reach out to Marciniak while in New York, and he visited her there at which time he perpetrated a second rape of Plaintiff. (Compl. ¶¶67-76).

### IV.     THE COMPLAINT SUFFICIENTLY PLEADS TITLE IX CLAIMS

Marciniak sufficiently pleads various Title IX claims against MIT. Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Plaintiffs' Title IX claims regarding Freiwald are actionable against MIT due to its participation in the cooperative agreement with the other institutions facilitating extensive collaboration between faculty from all schools, specifically RU, which employed Freiwald.

(Compl. ¶¶ 6, 8, 9, 41-49, 55-66, 71, 171-84). In response to MIT's argument any of Marciniak's claims are time-barred, Plaintiffs rely upon the continuing violations doctrine. Marciniak's Title IX claims survive because she brought these claims in federal court on December 29, 2022 (Dkt. 1) after filing a charge with the EEOC within 300 days of the discriminatory acts. 42 U.S.C. § 2000e-5(e)(1); see *Petrosino v. Bell Atl.*, 385 F.3d 210, 219-20 (2d Cir. 2004). "Generally, a court may consider, in addition to the original EEOC charges, those claims 'reasonably related' to the EEOC charges." *Burnham v. Board of Edu.*, 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2* (S.D.N.Y. June 11, 1997). A claim is considered "reasonably related" to the original claim in the EEOC complaint if: (1) the conduct complained of falls within the scope of the EEOC investigation of the original charge(s) of discrimination; (2) the claim alleges retaliation by an employer against an employee for filing an EEOC charge; or (3) a plaintiff alleges further incidents of discrimination carried out in precisely the same manner as alleged in the EEOC charge. *Burnham*, 1997 U.S. Dist. LEXIS 8177, *4-5, 1997 WL 317389, *2; *Harris v. New York City Department of Homeless Services*, 1998 U.S. Dist. LEXIS 5865, *28, No. 97 Civ. 0432 (SAS), 1998 WL 205334, *9 (S.D.N.Y. Apr. 28, 1998).[11] In *Oshinksy v. New York City Hous. Auth.*, 2000 U.S. Dist. LEXIS 1879, under the continuing violation doctrine, the mandatory filing period is tolled until the last discriminatory act furthering a continuous discriminatory practice or policy, provided that the existence of a continuing violation is clearly asserted both in the EEOC filing and in the federal complaint. *Cohn v. New York City Dep't of Parks*, 1996 WL 449539, *3; *Azzolini v. Alitalia Airline*, 1991 U.S. Dist. LEXIS 16422, 90 Civ. 3392, 1991 WL 243380, *2 (S.D.N.Y. Nov. 13, 1991). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory

---

[11] This being especially true when a plaintiff was not represented by counsel at the time of filing said charge, as was the case here.

13

policy or practice." *Quinn v. Green Tree Credit Corp.*, 159 F.3d at 766.

Based upon the continuing violations doctrine, which is applicable to Marciniak's Title IX claims, despite her allegations arising before July 22, 2020, are not time-barred. (*See* Compl. ¶¶ 42-46, 48, 55; *see* 42 U.S.C. § 2000e–5(e)(1)).

      A.        **Marciniak States A Claim Against MIT For Disparate Treatment**

Marciniak's Title IX claims should remain as they are not time-barred based upon arguments supported by the Continuing violations doctrine as her EEOC Charge was timely filed along with her initial pleading. As required by *Patane v. Clark*, 508 F.3d 106, Marciniak properly pled as a women who was highly qualified for her position – recruited by Freiwald, a faculty member of RU who shared the position of advisor to Marciniak with Josh Tenenbaum (MIT) and Nancy Kanwisher (MIT)[12] - suffered adverse employment action by being terminated for opposing sexual assault, which occurred at the CBMM summer program by MIT's Azevedo and harassment after lodging formal complaints to MIT in 2019 and RU resulting in her termination entirely not based on her performance as a postdoc researcher. *See Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007).

Marciniak pled in support of this disparate treatment claim that women including herself participating in the CBMM Summer School were subjected to different treatment than the men because of their sex. Further, the CBMM Summer School teaching material in 2018 contained sexist and misogynist remarks. The presentation slides of tutorials objectified the female body, derided gender equality and made multiple referrals to sexual interactions between man and woman in the form of misogynist jokes. (Compl. ¶¶ 50-52). CBMM opportunities were distributed unequally among CBMM faculty and postdocs based on sex and favoritism. In late 2017, CBMM Directors and selected faculty together with very few (but all male) postdocs associated with them, formed secretively a CBMM delegation, which in January 2018 traveled

---

[12] Compl. ¶ 15.

to Paolo Alto for the summit with one of the CBMM industry partners, Google. Marciniak was deprived of this privileged networking opportunity as it was limited to chosen male postdocs. (Compl. ¶ 53). Marciniak further pled during CBMM Summer School in 2018, only three out of 20 Teaching Assistants were women, and during the meeting with the Directors on August 16, 2018, Gabriel Kreiman, CBMM Supervisor discussed the topic of *"sex with students"* (Compl. ¶ 69) suggesting to postpone the interactions once the Summer School officially ends and to look for the sexual opportunities here implying within that room. (Compl. ¶ 51). Accordingly, Marciniak's disparate treatment claim under Title IX should survive.

### B. Marciniak States A Claim Against MIT For Sex-Hostile Environment

As Marciniak puts forth the continuing violations doctrine applies to both her *quid pro quo* sexual harassment and hostile work environment claims she pled sufficient fact are detailing MIT's involvement in mishandling her complaint about Azevedo's sexual assault of her making these claims timely. See *Burnham v. Board of Edu.*, 1997 U.S. Dist. LEXIS 1877, *4, No. 96 Civ. 7912 (SAS), 1997 WL 317389, 2* (S.D.N.Y. June 11, 1997). To state a claim for hostile work environment under Title IX[13], a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive - that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex." *Patane v. Clark*, 508 F.3d 106. Marciniak pled sufficient facts detailing MIT's facilitation of various institutions' faculty members collaborating, fostering a misogynistic culture at the CBMM program which was overseen by MIT staff where MIT's Azevedo ceased the opportunity to sexually assault Marciniak. (Compl. ¶¶ 58, 65, 67-76; *see Myers*

---

[13] "Hostile educational environment claims, whether brought under Title IX of the Educational Amendments of 1972, 20 U.S.C.S. § 1681 et seq., or 42 U.S.C.S. § 1983, are governed by traditional Title VII of the Civil Rights Act of 1964 "hostile environment " jurisprudence." See *LeVarge v. Preston Bd. of Educ.,* 552 F. Supp. 2d 248.

*v. Doherty*, 2022 WL 4477050 (2d Cir. Sept. 27, 2022); *Dollinger v. New York State Ins. Fund*, 726 Fed. Appx. 828). Therefore, the claim survives.

### C. Marciniak States A Claim Against MIT For Deliberate Indifference and Withdraws Her Erroneous Outcome Claim

Marciniak sufficiently pled a deliberate indifference claim but withdraws her erroneous outcome claim. To state a claim for deliberate indifference, a plaintiff must demonstrate that a defendant was "deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Doe v. Syracuse Univ.*, 2023 WL 7391653, at *12 (2d Cir. Nov. 8, 2023). Marciniak's case is clearly distinguishable from *Doe v. Syracuse* as Marciniak lodged complaints of her sexual harassment to every available channel in line with Defendants' policies and requested a no-contact order, which Rankin of MIT scoffed at and denied. (Compl. ¶ 87-88). MIT via the CBMM summer program cultivated and condoned a toxic mysogenist academic environment favoring men and initially mishandled Marciniak's March 2019 sexual assault complaint (Compl. ¶¶ 87–95) but then conspired with Defendants to bury her allegations of assault, sexual harassment, disparate treatment and retaliation through to the date of her termination. (*Id.* ¶¶ 94, 105, 110).[14]

### D. Marciniak States a Claim Against MIT For Heightened Risk

Marciniak's heightened risk claim against MIT under Title IX survives. Marciniak's claim is sufficiently pled for the same reasons as her Deliberate Interference claim under Title IX is meritorious. Just because Marciniak was not a student does not mean she cannot avail herself of the protections afforded under this Title IX claim. See *Kneeland v. Bloom Township*

---

[14] Plaintiffs rely upon and refer the Court to its facts and arguments in support of the conspiracy claim lodged against MIT in their Memorandum of Law in Opposition to Joint Memorandum of Law in Support of Defendants' Consolidated Motion to Dismiss the Amended Complaint.

*High School Dist.*, 484 F. Supp. 1280.[15] Additionally, Marciniak plausibly alleges a claim for heightened risk, which requires a plaintiff seeking to bring such a claim allege that "(1) a federally-funded educational institution (2) was deliberately indifferent to and (3) had actual knowledge of (4) sexual harassment that was so severe, pervasive and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits." Id. Marciniak is not required to allege MIT had prior knowledge of Azevedo's sexual assaults to ensure survival of this claim. (Compl. ¶ 148) and argues that MIT did not uphold written policies to prevent the sexual harassment she endured. (*See* Comp. ¶¶ 143, 149.). Accordingly, Marciniak's claim for heightened risk against MIT should remain intact.

### E.    Marciniak States a Claim Against MIT For Retaliation

Plaintiffs' retaliation claim supported by the CBMM summer program's denial of the TA position in 2020 not for reasons related to her qualifications or work product is sufficient to state a claim as to MIT. (Compl. ¶¶ 161–170). To prevail on a retaliation claim,[16] Plaintiff must show "1) participation in a protected activity; 2) a defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action. *Kwan v. Andalex Grp.*, LLC, 737 F.3d 834. Following the decision by administrators of the CBMM summer program not to offer Marciniak a TA position in 2020 after she complained about being sexually assault in 2017 provides enough casual connection despite her complaint being filed in March 2019 and is distinguishable from *Ochoa v. New York City Dep't of Educ.*, 2021 WL 5450343, at *3 (S.D.N.Y. Nov. 22, 2021).

### V.    THE COMPLAINT SUFFICIENTLY PLEADS TITLE VII CLAIMS

---

[15] "The First Circuit suggested that where an employee is doing work which is specially funded by the federal government, employment-related sex discrimination against such an employee would be actionable under Title IX".
[16] The *Kwan* court holding summary judgment was improper on the retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §§ 2000e, *et seq.*, N.Y. Exec. Law § 296, and New York City, N.Y., Admin. Code § 8-107 because the employee's complaint to a company officer communicated her concerns to the company as a whole, the three-week period from the employee's complaint to her termination was sufficiently short to make a *prima facie* showing of causation indirectly through temporal proximity, and the employer provided inconsistent and contradictory explanations for the termination.

Marciniak argues her Title VII claims are sufficiently pled for the factually supported reasons previously stated under the Title IX claims sections, MIT was a joint employer sharing significant control over her employment[17] in conjunction with RU and Freiwald via the cooperative agreement and they are timely under the Continuing violations doctrine's sound logic. "Courts will consider an entity a joint employer only when there is sufficient evidence that the entity had immediate control over the company's employees." *Toledo v. Unibud Restoration Corp.*, 2022 WL 171198, at *1 (S.D.N.Y. Jan. 19, 2022). Therefore, Marciniak's Title VII claims prevail against MIT.

## VI.  MARCINIAK WITHDRAWS HER CLAIM AGAINST MIT FOR NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

Plaintiffs withdraw their claim for negligent hiring, training, supervision and retention of Azevedo against MIT.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Opposition to Defendants' Joint Motion, MIT's motion to dismiss should be denied in its entirety.

Dated:  January 17, 2024                      Respectfully submitted,

                                              SHEGERIAN & ASSOCIATES

                                              */s/ Olivia M. Clancy*
                                              Olivia M. Clancy
                                              90 Broad Street, Ste. 804
                                              New York, New York 10004
                                              Tel. 212.257-8883
                                              oclancy@shegerianlaw.com

---

[17] *Klinkowitz v. Jamaica Hosp. Med. Ctr.*, 2022 WL 818943, at *7 (E.D.N.Y. Mar. 17, 2022); *see also Gonzalez v. City of New York*, 2015 WL 9450599, at *3 (E.D.N.Y. Dec. 22, 2015).

## CERTIFICATE OF SERVICE

      I, Olivia M. Clancy, hereby certify that a copy of the foregoing Plaintiffs' Memorandum of Law in Opposition to Memorandum of Law of Massachusetts Institute of Technology's Motion to Dismiss the Amended Complaint, filed through the CM/ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 17, 2024.

Dated: January 17, 2024                                                                           */s/ Olivia M. Clancy*