UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
KAROLINA MARIA, MARCINIAK-DOMINGUES    :
AGRA, and PEDRO MARCINIAK-DOMINGUES    :
GONCALVES AGRA,    :
    :
                                    *Plaintiff*,    :        1:22-cv-10959 (ALC) (SN)
    :
    :        **ORDER**
          -against-    :
    :
MASSACHUSETTS INSTITUTE OF TECHNOLOGY,    :
PRESIDENT AND FELLOWS OF HARVARD    :
COLLEGE, BOSTON CHILDREN'S HOSPITAL,    :
MARINE BIOLOGICAL LABORATORY,    :
UNIVERSITY OF CHICAGO,    :
ROCKEFELLER UNIVERSITY, and    :
NATIONAL SCIENCE FOUNDATION (NSF)—    :
CENTERS FOR BRAINS, MINDS    :
& MACHINES COOPERATIVE AGREEMENT,    :
    :
                                    *Defendants*.    :
    :
------------------------------------------------------------------- :
    x

**ANDREW L. CARTER, JR., District Judge:**

    Defendants Massachusetts Institute of Technology ("MIT"), President and Fellows of

Harvard College ("Harvard") and The Rockefeller University ("RU") (collectively,

"Defendants") move to dismiss Plaintiffs' Karolina Maria Marciniak-Domingues Goncalves

Agra ("Marciniak" or "Plaintiff") and Dr. Marciniak's husband, Pedro Henrique Marciniak-

Domingues Goncalves Agra (individually "Agra" and, together with Marciniak, "Plaintiffs")

claims in the First Amended Complaint ("FAC"). Defendants Harvard and MIT move to dismiss

on the grounds that this Court lacks personal jurisdiction over them under FRCP 12(b)(2), that

venue is improper in New York under FRCP 12(b)(3), and for failure to state a claim upon which

relief can be granted under FRCP 12(b)(6). Defendant RU moves to dismiss for failure to state a

claim upon which relief can be granted under FRCP 12(b)(6). Plaintiffs oppose the instant motion to dismiss. For the reasons set forth below, Defendants' motions are GRANTED.

## BACKGROUND

In 2013, the Center for Brains, Minds and Machines enterprise ("CBMM") was established at MIT under a cooperative agreement federally funded by the National Science Foundation ("NSF"). ECF No. 98 at 4. CBMM is dedicated to the study of intelligence in the brain and its replication in machines. *Id*. at n.1 (citing FAC ¶ 8). Under the NSF-CBMM's cooperative agreement, MIT was the main awardee and the following were sub-awardees: Harvard, RU, University of Chicago ("UChicago"), Boston Children's Hospital ("BCH"), and UChicago's Marine Biological Laboratory ("MBL"). *Id.*  Twenty faculty members from these awardees, known as "Principal Investigators," were affiliated with the CBMM. ECF No. 99 at 9. Ten were from MIT, five were from Harvard, and the rest were from RU, Cornell University, Stanford University the University of California at Los Angeles, and the Allen Institute for Brain Science. *Id.*

In 2014, Marciniak was recruited by RU on a J-1 Visa. ECF No. 98 at 4, ECF No. 95 at 14. From September 2016 to November 2021, RU and MIT jointly employed Marciniak as a junior postdoctoral researcher ("postdoc"). ECF. 98 at 4-5. During this period, Marciniak worked and trained at the CBMM under three Principal Investigators: Dr. Winrich Freiwald of RU, Josh Tenenbaum of MIT, and Nancy Kanwisher of MIT. *Id.* at 4; *see* FAC. ¶¶ 7, 9, 29. Marciniak, alleges Freiwald, her direct supervisor, sexually harassed her after recruiting her to work in his laboratory in 2016. ECF No. 99 at 9 (citing FAC. ¶¶ 6, 8).

In 2016, Marciniak became a New York resident. *See* ECF No. 98 at 11. In August 2017, Marciniak attended a summer program held by CBMM at MBL in Woods Hole, Massachusetts,

at the alleged insistence of Freiwald. *See* ECF No. 95 at 5, 10-11. Marciniak was allegedly raped

at the program by, postdoctoral scientist, Dr. Frederico Azevedo ("Azevedo"), who was an

employee of Harvard and MIT. *See* ECF No. 98 at 5; *see also* ECF No. 87 at 3. In 2018, Azevedo

allegedly continued to reach out to Marciniak while she was in New York. ECF No. 98 at 12;

ECF No. 95 at 15; *see also* FAC. ¶¶ 67-76. On December 18, 2018, Marciniak married Agra.

FAC. ¶ 7. In 2019, Azevedo visited Marciniak in New York and allegedly raped her for a second

time. ECF No. 98 at 12; *see also* ECF No. 95 at 15 and FAC. ¶¶ 67-76.

In March 2019, Marciniak filed a Title IX sexual assault complaint with MIT's Title IX &

Bias Response Office against Azevedo. ECF No. 87 at 3; *see also* ECF No. 95 at 5 and FAC. ¶

87. The CBMM grantees consulted Harvard and the MBL program and "determined that MBL

was the most appropriate entity to investigate the matter, and MIT referred the complaint to

UChicago and MBL, which conducted an investigation." ECF No. 87 at 3-4 (quoting FAC. ¶ 95).

On August 1, 2019, a report was issued "finding the 2017 sexual encounter did not violate

MBL's policies or code of conduct, and any alleged intercourse was consensual." ECF No. 87 at

4 (citing FAC. ¶¶ 111, 121).

In May and September 2019, Marciniak filed a complaint with the NSF Office of

Diversity and Inclusion about the institutional processing of her March 2019 complaint. ECF No.

95 at 5. In February 2020, CBMM's summer program Directors denied Marciniak a Teaching

Assistant position. ECF No. 95 at 5. In May 2020, Marciniak allegedly opposed ongoing sexual

harassment from Freiwald and he demoted her in retaliation on June 4, 2020. *Id.* In August 2021,

Marciniak was terminated, which became effective in November 2021. *Id.* On August 10, 2020,

Marciniak filed a retaliation complaint with the Equal Employment Opportunity Commission

("EEOC") Boston against MIT, Harvard, and BCH. *Id.* In January 2022, the NYSDHR issued a probable cause determination. *Id.*

On June 7, 2022, Marciniak filed a sex discrimination and retaliation complaint with the EEOC against RU. ECF No. 97 at 10. On March 21, 2023, she received a Right to Sue Letter about her complaint. *Id.* at 10-11. On December 22, 2022, Marciniak and her husband, Agra, commenced this lawsuit against MIT, Harvard, RU and four other defendants: BCH, MBL, UChicago and NSF." ECF No. 95 at 5-6.

## PROCEDURAL HISTORY

On April 10, 2023, Plaintiffs filed the FAC seeking civil remedy and monetary damages for civil claims against Defendants alleging (i) violations of the Trafficking Victims Protection Act (the "TVPA") (Count I), (ii) disparate treatment under Title VII of the Civil Rights Act of 1964 ("Title VII"), Title IX of the Education Amendments of 1972 ("Title IX"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") (Count II); (iii) *quid pro quo* sexual harassment and hostile work environment under Title VII, the NYSHRL and the NYCHRL (Count III); (iv) sex-hostile environment regarding Frederico Azevedo ("Azevedo") under Title IX (Count IV); (v) deliberate indifference under Title IX and breach of duty of reasonable care under Title VII (Count V); (vi) erroneous outcome under Title IX (Count VI); (vii) negligent hiring, training, supervision and retention (Count VII); (viii) heightened risk under Title IX (Count VIII); (ix) retaliation under Title VII and Section 215 of the New York Labor Law ("NYLL"); (Count IX); (x) conspiracy to interfere with civil rights under 42 U.S.C. § 1985(2)–(3) (Count X); (xi) violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act (Count XI); and (xi) intentional infliction of emotional distress ("IIED") (Count XII). ECF No. 65.

On April 20, 2023, Defendants filed a joint status report that advised the Court that they would file a consolidated motion to dismiss Counts One, Ten, Eleven, and Fourteen and that each Defendant would file a separate motion to dismiss the remaining claims on various grounds. ECF No. 66. On December 5, 2023, Plaintiffs voluntarily dismissed without prejudice all claims in the FAC against Defendants BCH, MBL, UC, and NSF. ECF Nos. 74-75.

On December 15, 2023, Defendants Harvard, MIT, and RU filed a joint motion to dismiss all counts. ECF Nos. 78-87. On January 17, 2024, Plaintiffs filed memoranda of law in opposition to the joint motion to dismiss. ECF Nos. 95-100. Plaintiffs also voluntarily withdrew their erroneous outcome claim against RU and withdrew their negligent hiring, training, supervision and retention of Azevedo (Count VII) against Defendants. ECF Nos. 97-99. On January 31, 2024, Defendants Harvard, MIT, and RU filed their reply memoranda of law in support of their motion to dismiss. ECF Nos. 104-106. This Court considers these motions fully briefed.

## LEGAL STANDARD

When analyzing a motion to dismiss under Fed.R.Civ.P. 12(b)(2), courts in New York follow a two-step process. "First, a court will determine whether personal jurisdiction lies pursuant to New York's long-arm statute ... Second, a court must analyze whether personal jurisdiction comports with the basic requirements of due process." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines,* 828 F.Supp.2d 557, 563 (E.D.N.Y.2011) (citations omitted). There are two ways that New York exercises personal jurisdiction over non-residents: "general jurisdiction pursuant to N.Y. CPLR § 301 ... or specific jurisdiction pursuant to N.Y. CPRL § 302." *Id.*

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff must meet the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life*

*Ins. Co. v. Robertson–Ceco Corp*., 84 F.3d 560, 566 (2d Cir.1996) (citing *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir.1994)). At the motion to dismiss stage, the Court must construe the pleadings and any supporting materials in the light most favorable to the plaintiffs, resolving any doubts in favor of jurisdiction. *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 85 (2d Cir.2013). The Court does not, however, draw "argumentative inferences" in plaintiff's favor nor does it accept as true a legal conclusion couched as a factual allegation. *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd*., 968 F.2d 196, 198 (2d Cir.1992) (citing *Norton v. Larney,* 266 U.S. 511, 515 (1925)). "Because a motion to dismiss for lack of personal jurisdiction is inherently a matter requiring the resolution of factual issues outside of the pleadings, all pertinent documentation submitted by the parties may be considered in deciding the motion." *Woods v. Pettine,* No. 13–cv–290 (PGG), 2014 WL 292363, at *1 (S.D.N.Y. Jan. 27, 2014) (internal quotations omitted).

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotations omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*,

550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663 (citing *Twombly*, 550 U.S. at 555). Indeed, deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

The Court will address the merits of each Defendant's motion to dismiss separately.

### I.    Personal Jurisdiction over Harvard and MIT

This Court finds that the Plaintiffs have failed to sufficiently plead personal jurisdiction over Harvard and MIT. When opposing a motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant[s]." *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (*quoting Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)). To establish personal jurisdiction over a defendant, courts in New York must determine (1) whether there is jurisdiction under New York law; and (2) whether the exercise of jurisdiction would be consistent with federal due process requirements. *Id*.

#### i.    General Jurisdiction

As a threshold matter, Plaintiffs fail to establish general jurisdiction over Harvard and MIT. In New York, general jurisdiction is governed by N.Y. CPLR § 301. Section 301 preserves the common law notion that "a court may exercise general jurisdiction over a nondomiciliary

defendant if the defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction." *Chatwal Hotels & Resorts LLC v. Dollywood Co.,* 90 F.Supp.3d 97, 103, 2015 WL 539460, at *3 (S.D.N.Y.2015) (citing *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir.1990)). To comport with federal due process, plaintiff must allege facts that support that general jurisdiction exists when a defendant's "affiliations with the State are 'so continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 119, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Only in an "exceptional case" will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business ... be so substantial and of such a nature as to render the corporation at home in the state." *Id.* at 139 n. 19.

Here, Plaintiffs argue that the Court may assert general jurisdiction over Harvard and MIT given the specific circumstances of their case and the interplay of these academic institutions that share research and access funding. ECF No. 98 at 7-10; *see also* ECF No. 99 at 8-9. Specifically, Plaintiffs claim that the dynamic between these NSF federally funded universities (Harvard, MIT, and RU) is unique due to their cooperative agreement with the CBMM program to collaborate with each other and share both research and talent. ECF No. 98 at 7-9; *see also* ECF No. 99 at 8-9. Plaintiffs argue that Harvard and MIT's contact with New York was not minimal due to the physical and emotional harm she experienced as a participant in the CBMM program, as well as the conspiracy to conceal Marciniak's complaint of rape and sexual harassment that perpetuated a hostile environment in the CBMM program. ECF No. 98, at 8; *see also* ECF No. 99, at 9, 10; FAC. ¶¶ 10, 11, 67-71, 88, 89. Furthermore, Plaintiffs argues that

8

Harvard and MIT's actions, influence, and employees have reached into New York by violating Marciniak's rights as a New York resident who traveled to Massachusetts on various occasions to participate and work in the CBMM program. FAC. ¶¶ 67-71. Plaintiffs further claim that when Marciniak traveled at the behest of her perpetrators, she was met with a misogynist culture degrading women participating in CBMM events and that Azevedo raped her. *Id*. Plaintiffs also argues that their case is distinguishable from other cases that denied general jurisdiction to major universities because Harvard and MIT had "atypical contact" with New York, especially here where a New Yorker was raped at CBMM by one of its Teaching Assistants, Azevedo. *Id*.

This Court finds these arguments unpersuasive to establish general jurisdiction under N.Y. CPLR § 301 over Harvard and MIT. Indeed, Plaintiffs fail to make any factual allegation that might distinguish this case from the well-established rule in this district that national universities are not subject to general jurisdiction outside of their state of incorporation or operation. *See, e.g., Perna v. Sacred Heart Univ., Inc*., No. 22-CV-02284 (NSR), 2023 WL 2330477, at *4 (S.D.N.Y. Mar. 1, 2023)) (finding no general jurisdiction for a university that recruits 37.9% of its student body from New York); *Thackurdeen v. Duke Univ*., 130 F. Supp. 3d 792, 796-801 (S.D.N.Y. 2015), aff'd, 660 F. App'x 43 (2d Cir. 2016) (finding no general jurisdiction based upon a university recruiting, fundraising, offering education and volunteer programs, and maintaining active alumni associations and employees to recruit and fundraise in New York); *Kurzon LLP v. Thomas M. Cooley Law Sch.,* No. 12–cv–8352 (LTS)(RLE), 2014 WL 2862609, at *4 (S.D.N.Y. June 24, 2014) (finding no general jurisdiction where Michigan law school solicited donations from New York alumni, solicited business in New York, sent representatives to school fairs in New York, and offered a small number of externships in New York); *Weil v. Am. Univ.,* No. 07 CIV 7748(DAB), 2008 WL 126604, at *4 (S.D.N.Y. Jan. 2,

2008) (finding no general jurisdiction where District of Columbia university had no contacts with New York beyond those "commonly engage[d]" in by universities and colleges).

These arguments fail for numerous reasons. First, Harvard and MIT are not incorporated nor have their principal place of business in New York.  Second, Harvard and MIT's participation in the NSF-CBMM agreement is precisely the kind of "minimal and sporadic contact" with New York that does not establish general jurisdiction. *Thackurdeen,* 130 F. Supp. 3d at 800. A university "cannot be deemed 'at home' in a forum merely because it engages in the sort of minimal and sporadic contact with the state that is common to all national universities." *Id*. Third, the Plaintiffs have failed to plead sufficient facts that allege that Harvard and MIT's in-forum contacts were "so continuous and systematic as to render [Harvard and MIT] essentially at home" in New York. *Id*. at 799 (quoting *Daimler AG*, 517 U.S. at 127). Indeed, "none of the activities of any the defendants is so tied with the state of New York to render general jurisdiction appropriate." *Chatwal Hotels & Resorts LLC*, 90 F.Supp.3d at 104, 2015 WL 539460, at *4. Instead, Plaintiffs rely exclusively on the kinds of intermittent and minimal contacts that both Harvard and MIT have with almost all states in the country. ECF No. 98 at 7-11; ECF No. 99 at 8-9.

## ii.    Specific Jurisdiction

This Court similarly finds that the Plaintiffs failed to allege sufficient facts to establish specific jurisdiction over Harvard and MIT.  N.Y. CPLR § 302(a)(3) provides that this Court may assert specific jurisdiction over non-residents if they committed "a tortious act without the state causing injury to person or property within the state ... if [they]... expect[] or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce ...." N.Y. C.P.L.R. § 302(a)(3)(ii). "The conferral of

jurisdiction under this provision rests on five elements: First, that defendant committed a tortious act outside the state; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences in the State; and fifth, that defendant derived substantial revenue from interstate or international commerce." *In re Sumitomo Copper Litig.,* 120 F.Supp.2d 328, 341 (S.D.N.Y.2000) (quoting *LaMarca v. Pak–Mor Mfg. Co.,* 95 N.Y.2d 210, 214 (2000)).

Here, Plaintiffs claim that several factors establish specific jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii) have been met. First, Plaintiffs allege that Harvard and MIT committed the tortious act of allegedly conspiring to conceal Marciniak's complaint of rape by Azevedo in Massachusetts. Second, Plaintiffs maintain that this cause of action arises from tortious acts that Harvard and MIT committed. Third, Plaintiffs argue that these acts caused Marciniak, a New York resident, continued injury after leaving Massachusetts. Fourth, Plaintiffs also allege that Azevedo committed a second rape in New York. Finally, Plaintiffs argue that both Harvard and MIT should have expected to face consequences in New York because it is foreseeable to expect that a postdoc's rape at its CBMM program in Massachusetts by a Teaching Assistant will result in Harvard and MIT expecting to answer for the tortious conduct in New York, where Marciniak has lived since 2016.

This Court finds that the Plaintiffs have failed to satisfy the third and fifth elements of N.Y. C.P.L.R. § 302(a)(3)(ii). In determining whether there is injury in New York sufficient to warrant the imposition of § 302(a)(3) jurisdiction, courts apply a "situs-of-injury test", which asks them to locate the original event which caused the injury, not the location where the resultant damages were subsequently felt by the plaintiff. *Bank Brussels Lambert v. Fiddler*

*Gonzalez & Rodriquez*, 171 F.3d 779, 791 (2d Cir. 1999) (quotation omitted). Indeed, "New York courts uniformly hold that the situs of a nonphysical, commercial injury is 'where the critical events associated with the dispute took place.'" *United Bank of Kuwait, PLC v. James M Bridges, Ltd*., 766 F. Supp. 113, 116 (S.D.N.Y. 1991) (citation omitted). For purposes of long-arm jurisdiction under section 302(a)(3)(ii), "[a]n injury occurs at the place of the 'original event' which caused it." *Pincione v. D'Alfonso*, 506 Fed.Appx. 22, 26 (2d Cir. 2012) (citing *Bank Brussels Lambert*, 171 F.3d at 791). "This 'original event' is ... distinguished not only from the initial tort but from the final economic injury and the felt consequences of the tort." *Id*.

Here, Plaintiffs cannot establish specific jurisdiction over MIT and Harvard by pleading that Marciniak felt injury in New York where she resides. Marciniak's residence in New York does not constitute injury within the state for the purpose of establishing jurisdiction under N.Y. CPLR § 302(a)(3) where the injury occurred elsewhere. For specific jurisdiction to exist over these defendants, the critical events underlying these allegations must have occurred in New York. Indeed, the situs of the injury is the location of the original event which caused the injury, which would be in Massachusetts. The Second Circuit has held, that a plaintiff who claims a court has personal jurisdiction over the tortious act of a defendant's agent must show (1) "the alleged agent acted 'for the benefit of and with the knowledge and consent' of the non-resident [defendant]; and (2) "the non-resident [defendant] must have 'exercised some control over' the alleged agent." *See Edwardo*, 66 F.4th at 74 (quoting *Kruetter v. McFadden Oil Corp*., 71 N.Y.2d 460, 467 (1988)). Under New York law, a defendant-employer "is not liable for torts committed by [an] employee for personal motives unrelated to the furtherance of the employer's business." *Id*. (quoting *Swarna v. Al-Awadi*, 622 F.3d 123, 144 (2d Cir. 2010)). "[F]or example, New York courts have rejected respondeat superior claims that a church was liable for its priest's

sexual assault of a child." *Id*. (brackets in original) (citing *Swarna*, 622 F.3d at 144) (citing *Paul J.H. v. Lum*, 736 N.Y.S.2d 561, 562 (4th Dep't 2002)). Plaintiffs allege that Harvard and MIT engaged in tortious conduct by "intentionally mishandle[ing]" "Marciniak's complaint of rape by [their affiliate] Azevedo." *See* ECF No. 99, at 10-11; ECF No. 98, at 10; *see also* FAC ¶ 3. This alleged "conspiracy" presumably occurred in Massachusetts after MBL's investigation of Marciniak's complaint, and Harvard and MIT's refusal to have a "formal investigation." *See* FAC. ¶¶ 188-93; ECF No. 98, at 10-11; ECF No. 99, at 11-12. Plaintiffs cause of action undeniably arises from this alleged tortious act. *See generally* FAC. However, Marciniak's injury occurred in Massachusetts where the original events Plaintiffs alleged occurred *not* New York where she returned and experienced resultant damages. *See Thackurdeen*, 660 F. App'x at 46-47.

Nor can the Plaintiffs establish specific jurisdiction over Harvard and MIT by alleging that the second rape occurred in New York. In the opposition, Plaintiffs claim that the alleged second sexual assault that Azevedo committed in New York is part of the tortious act committed by Harvard and MIT. *See* ECF No. 98, at 11; *see also* FAC. ¶ 74. Taking all Plaintiffs' allegations as true, Azevedo is still affiliated and employed by Harvard and MIT. *See* ECF No. 95, at 15; ECF No. 98, at 5. Even so, this is insufficient to confer specific jurisdiction under New York law over non-residents MIT and Harvard. Plaintiffs have not alleged that Azevedo's perpetration of a sexual assault in New York was an act for the benefit of and with the knowledge of MIT and Harvard. *See* FAC. ¶ 74; ECF No. 98, at 10-11; ECF No. 99, at 11-13; *Edwardo*, 66 F.4th at 74 (citations omitted). Moreover, as to the fifth element required to establish specific jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii), Plaintiffs also fail to plead facts that suggest that Harvard and MIT derived "substantial revenue" from interstate commerce

by transacting business within New York. Instead, Plaintiffs merely assert that MIT and Harvard transacts business within New York as it contracts with New York based institutions.

## II.    Venue in New York

This Court finds that venue in the Southern District of New York is improper. "The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction." *Casville Invs., Ltd. v. Kates*, 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper." *Id.* (citing *DiStefano v. Carozzi N. Am., Inc*., 286 F.3d 81, 84 (2d Cir. 2001); *Savoy Senior Hous. Corp. v. TRBC Ministries*, 401 B.R. 589, 596 (S.D.N.Y. 2009)). To meet this burden, the plaintiff must plead facts sufficient for prima facie showing of jurisdiction or venue. *Glasbrenner*, 417 F.3d at 355 (citing *CutCo Indus. v. Naughton*, 806 F.2d 361, 364–65 (2d Cir. 1986)). Under 28 U.S.C. § 1391(b), venue is proper in the chosen forum if: (1) at least one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial part" of the events giving rise to the claim occurred in the district; or (3) the defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b). In other words, "for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).

Plaintiffs have not made a *prima facie* showing that venue in the Southern District of New York is proper. Plaintiffs allege that venue is proper in this jurisdiction for Harvard and MIT because they made a *prima facia* showing that substantial part of the events giving rise to

Marciniak's sexual assault, harassment, discrimination, and retaliation claims took place in New York. ECF No. 98 at 12; ECF No. 99 at 13; FAC ¶¶ 67-76. In particular, Plaintiffs allege that Harvard and MIT's actions affected Marciniak when she returned to New York, especially as Azevedo continued to reach out to Marciniak while in New York and visited her there at which time he perpetrated a second rape. *Id*. This Court disagrees. While this Court acknowledges that the allegation of a second rape occurring in New York can be considered a material event for the purposes of 28 U.S.C. § 1391(b), the focus of the plaintiffs' claims against Harvard and MIT took place in Massachusetts.  Moreover, the allegation that these events affected Marciniak after returning to her residence in New York is unpersuasive. If this were enough to confer venue, then the plaintiff's residence would always be a proper venue in tort cases, which is not what Congress provided in § 1391(a). *Astor Holdings, Inc. v. Roski*, No. 01 CIV. 1905 (GEL), 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002).

### III.    Title IX Claims

Plaintiffs have failed to sufficiently plead various Title IX claims against Harvard, MIT, and RU. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Because the ultimate purpose of Title IX is to prohibit sex discrimination at all levels of education, Title IX proscribes discrimination in three ways: (1) no one may be excluded from participation in any educational program or activity; (2) no one may be denied the benefits of any education program or activity; and (3) no one may be subjected to discrimination under any education program or activity. 20 U.S.C. S 1681 (a); *see also Tubbs v. Stony Brook Univ*., 343 F. Supp. 3d 292, 307 (S.D.N.Y. 2018).

### A. Harvard

Plaintiffs allege that Harvard violated Title IX by: (1) engaging in disparate-treatment discrimination (Count II); discrimination based on sex–hostile environment (Count IV); deliberate indifference (Count V); heightened risk pursuant to Title IX (Count VIII); and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and Title IX (Count IX). This Court will address the merits of each count against Harvard under Title IX therein.

#### i.    Count II

This Court finds that Plaintiffs fail to sufficiently plead a Title IX claim against Harvard for unlawful sex discrimination under a disparate treatment theory. Courts have held that a private right of action for disparate impact is not cognizable under Title IX. *Xiaolu Peter Yu v. Vassar Coll.*, 97 F. Supp. 3d 448, 461 (S.D.N.Y. 2015) (quoting *Ricci v. DeStefano,* 557 U.S. 557, 577 (2009). Count II does not allege any facts specific to Harvard, but rather alleges that CBMM engaged in disparate treatment sexual discrimination, which is not an actionable claim under Title IX. ECF No. 99 at 15; FAC. ¶¶ 50-53, 69.

#### ii.    Count IV

This Court finds that Plaintiffs fail to state a claim against Harvard for hostile environment under Title IX. The Act indirectly prohibits sexual harassment on the basis that harassment can be a form of sex discrimination when it leads to a hostile environment, which then impedes one's access to the benefits of an educational program. *Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 307 (S.D.N.Y. 2018). Accordingly, a school may be liable for sexual harassment if it allows a hostile environment to persist when a school knows about severe or pervasive harassment and fails to immediately take steps to quell it. *Id*. Plaintiffs allege that Harvard's Title IX Coordinator Jose Martinez failed to adequately respond to Plaintiff

Marciniak's concerns. In particular, Plaintiffs allege that Marciniak spoke with Martinez in April 2019 after she filed her complaint with MIT the prior month, and that Martinez informed her that there was a question as to which university would have jurisdiction over her complaint, but that he would "work on figuring it out." FAC ¶¶ 87-89. Plaintiffs further allege that on May 15, 2019, weeks after raising concerns with Martinez, MIT informed Marciniak that in consultation with Harvard, it was determined that MBL would investigate her concerns. *Id*. ¶ 95.

This Court does not find that the Plaintiffs allege sufficient facts to state a claim for hostile environment under Title IX. Here, it is clear that Harvard worked with the other relevant universities to determine the most appropriate avenue to investigate the complaint without an unreasonable delay. *Id*. While Plaintiffs may disagree with this course of action, these allegations do not demonstrate that Harvard failed to adequately respond to alleged discrimination. *See Tubbs*, 343 F. Supp. 3d at 307.

### iii.    Counts V and VIII

This Court finds that Plaintiffs fail to state a claim against Harvard for deliberate indifference and heightened risk under Title IX. "[F]or a university to violate Title IX through a policy of deliberate indifference, it must have actual knowledge of a heightened risk that is specific enough to allow it to remedy such a policy." *Tubbs*, 343 F. Supp. 3d at 319. To allege a Title IX claim arising from harassment, a plaintiff must plausibly allege (1) [a federally] funded recipient is (2) deliberately indifferent to sexual harassment, (3) of which they have actual knowledge, (4) that is so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school." *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 650 (1999). Indeed, "a university

must respond to known student harassment in a manner that is not clearly unreasonable."

*Roskin-Frazee v. Columbia Univ.*, 474 F. Supp. 3d 618, 624 (S.D.N.Y. 2019).

Despite Plaintiffs' conclusory allegations to the contrary, the allegations set forth in the FAC suggests that the Harvard responded to Marciniak's complaint reasonably and in a timely manner. The alleged sexual assaults against Marciniak occurred in 2017 at CBMM and March 2018 in RU campus housing in New York. FAC ¶¶ 70, 74. Marciniak did not inform Harvard of these incidents until April 2019. *Id.* ¶ 89. Plaintiffs also do not allege that Harvard had any knowledge of a heightened risk of sexual assault by Azevedo. Plaintiffs therefore fail to allege how Harvard acted unreasonably in light of the known circumstances, especially given that Marciniak was not a Harvard student nor employee, was not participating in a Harvard program or activity, and the alleged incidents did not occur at Harvard. Therefore, Plaintiffs do not sufficiently allege that Harvard acted with deliberate indifference nor had specific knowledge of a heightened risk of sexual assault.

   iv.    **Count IX**

This Court finds that Plaintiffs fail to state a claim against Harvard for retaliation under Title IX. As in the context of Title VII, a plaintiff claiming retaliation under Title IX must first establish a prima facie case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action. *Papelino v. Albany College of Pharmacy of Union University*, 633 F.3d 81, 91 (2d Cir. 2011). To establish a prima facie case of retaliation under both Title VII and Title IX, "a plaintiff must show that a reasonable [person] would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable [person] from making or supporting a [complaint]." *Fincher v.*

18

*Depository Trust & Clearing Corporation*, 604 F.3d 712, 721 (2d Cir. 2010) (quoting *Burlington Northern & Santa Fe Railway Company v. White*, 548 U.S. 53, 68 (2006)).

Here, Plaintiffs' retaliation claim fails because Marciniak does not allege that she was an employee at Harvard during or following her engagement in protected activity nor does she allege that she experienced an adverse employment action by Harvard. Instead, this claim arises from the denial of a CBMM position when Plaintiffs were neither students nor employees at Harvard nor participating in any Harvard program. Therefore, Plaintiffs fail to state a claim for retaliation in the absence of any allegations of any adverse educational or employment action by Harvard.

**B.  MIT**

Plaintiffs allege that MIT violated Title IX by: (1) engaging in disparate-treatment discrimination (Count II); (2) engaging in *quid pro quo* sexual harassment (Count III); (3) fostering a sex-hostile environment (Count IV); (4) acting with deliberate indifference (Count V); (5) creating a heightened risk (Count VIII); and (6) retaliating against Marciniak (Count IX). This Court will address the merits of each count against MIT under Title IX therein.

**i.    Count II**

This Court finds that Plaintiffs fail to sufficiently plead a Title IX claim against MIT for unlawful sex discrimination under a disparate treatment theory. As discussed above, Title IX does not create a private right of action under a disparate impact theory. *See Nungesser v. Columbia Univ*., 244 F.Supp.3d 345, 361–62 (S.D.N.Y. 2017) ("While a private plaintiff may bring a claim under Title IX for intentional discrimination, courts have held that a private right of action based on the alleged disparate impact of a policy is not cognizable under Title IX." (citing *Xiaolu Peter Yu v. Vassar Coll*., 97 F.Supp.3d 448, 461 (S.D.N.Y. 2015).

ii.    **Count III**

This Court finds that Plaintiffs fail to sufficiently plead a Title IX claim against MIT for

engaging in *quid pro quo* sexual harassment. In order to state a claim for *quid pro quo* sexual

harassment under Title IX, plaintiff must allege that a tangible educational action resulted from a

refusal to submit to sexual demands. 20 U.S.C.A. § 1681 et seq. "[T]o establish a prima facie

case of quid pro quo harassment, a plaintiff must present evidence that she was subject to

unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for

decisions affecting the compensation, terms, conditions or privileges of her employment."

*Karibian v. Columbia Univ.,* 14 F.3d 773, 777 (2d Cir.1994). Here, Plaintiffs fail to allege facts

that suggest that MIT employees engaged in *quid pro quo* sexual harassment that led to an

adverse action. Rather, the allegations underlying Count III relate to Freiwald's conduct in his

laboratory at RU. Moreover, Freiwald was not an employee of MIT.

iii.    **Count IV**

This Court finds that Plaintiffs fail to state a claim against MIT for hostile environment

under Title IX. A plaintiff can establish a hostile educational environment claim under Title IX if

he or she demonstrates that they "subjectively perceived the environment to be hostile or abusive

and that the environment objectively was hostile or abusive, that is, that it was permeated with

discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the

conditions of his educational environment.'" *Papelino* v. *Albany Coll. of Pharmacy of Union

Univ.*, 633 F.3d 81, 89 (2d Cir. 2011). However, for an educational institution to be liable, "the

plaintiff must establish that a school official with 'authority to address the alleged discrimination

and to institute corrective measures' had 'actual knowledge' of the discrimination and failed to

adequately respond." *Id; see also Doe v. Sacks*, No. 23 CIV. 1307 (KPF), 2024 WL 402945, at *8 (S.D.N.Y. Feb. 2, 2024).

Here, Plaintiffs have not alleged that anyone at MIT knew about Azevedo's alleged rape, sexual harassment, sexual assault, and intimidation of Marciniak in 2017 and 2018 until Marciniak reported that misconduct to MIT for the first time in March 2019. Absent actual knowledge at the time of the alleged incidents, there is no basis to impose institutional liability on MIT for Azevedo's conduct in 2017 and 2018. In addition, Plaintiffs do not claim that MIT failed to adequately respond to Marciniak's complaint. Rather, Plaintiffs allege that after MIT received Marciniak's Title IX complaint in March 2019, it "followed-up shortly" with Marciniak, scheduled a call, and offered to "talk with other institutions" to determine the appropriate procedure for investigating the complaint. FAC. ¶ 87. Within two months of when Marciniak and MIT's Title IX officer first spoke, Plaintiffs also allege that MIT informed Marciniak that the institutions partnering for the CBMM summer program agreed "MBL is the most appropriate entity to investigate" given that the alleged rape occurred at MBL's campus. *Id.* ¶ 95. The Complaint further alleges that MIT connected Marciniak to the Title IX officer at MBL and that MBL thoroughly investigated the matter. *Id.* ¶ 95–98.  After allegedly feeling threatened by Azevedo in May 2019, Plaintiffs claim that Marciniak sought assistance from MIT police who promptly provided her with security. *Id.* ¶ 79. Therefore, Plaintiffs do not sufficiently plead enough facts to establish a plausible hostile educational environment claim under Title IX.

### iv.    Counts V and VIII

This Court finds that Plaintiffs fail to state a claim against MIT for deliberate indifference and heightened risk under Title IX. As discussed above, the standard for deliberate indifference is whether the school failed to act reasonably under the circumstances. *See McGrath v.*

*Dominican Coll. Of Blauvelt*, New York, 672 F. Supp. 2d 477, 488 (S.D.N.Y. 2009). Generally, cases that hold a school responsible for pre-assault deliberate indifference involve actual knowledge of sexual assault(s) committed in a particular context or program or by a particular perpetrator or perpetrators. *See Zamora v. N. Salem Cent. Sch. Dist.*, 414 F.Supp.2d 418, 424 (S.D.N.Y. 2006) (internal citation omitted) (holding that the actual knowledge standard may be satisfied by knowledge of a "substantial risk of serious harm" where there have been multiple prior allegations of the same or similar conduct that is at issue); *see also Tubbs v. Stony Brook Univ.*, No. 15 CIV. 0517 (NSR), 2016 WL 8650463, at *9 (S.D.N.Y. Mar. 4, 2016). Here, Plaintiffs fail to include any allegations in the FAC that suggest that MIT's response was "clearly unreasonable in light of the known circumstances" as required to state a claim of deliberate indifference. Rather, MIT promptly responded and had extensive correspondence with Marciniak about her Title IX Complaint. Moreover, Plaintiffs do not plead facts that allege that MIT was aware of Azevedo's sexual assaults prior to the alleged incidents that would suggest that they had actual knowledge of a heightened risk of sexual assault.

    **v.    Count IX**

    This Court finds that Plaintiffs fail to state a claim against MIT for retaliation under Title IX. As discussed above, Plaintiffs must sufficiently plead facts under a retaliation claim showing: (1) participation in a protected activity; (2) a defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment option.  *Papelino*, 633 F.3d at 91. Plaintiffs allege that MIT retaliated when CBMM program administrators decided not to offer Marciniak a TA position in 2020 after her complaint was filed in March 2019. ECF No. 98 at 17. Defendants argue that Plaintiffs failed to establish causation between Marciniak's complaint in March 2019 and the

CBMM program administrators' decision not to offer her a TA position one year later. ECF No. 105 at 9.

This Court finds that Plaintiffs failed to allege facts that make a *prima facia* showing of a causal connection between Marciniak's complaint and CBHM's decision not to hire her as a TA. Defendants cite *Ochoa v. New York City Dep't of Education* as persuasive authority that refutes any inference of causation. 2021 WL 5450343 at *3 (S.D.N.Y. Nov. 22, 2021), ECF No. 81 at 16. In *Ochoa*, the plaintiff filed a retaliation claim with the EEOC in 2019 one year before her employment offered was reneged in 2020 by an employee who she alleged acted with discriminatory motive. The Court in *Ochoa* sought to assess whether Plaintiff plead sufficient facts to infer a causal connection between (1) her 2016 DHR complaint and termination; and (2) her 2019 EEOC complaint and the reneging of her 2020 employment offer. *Id.* at *4. The Court held that the temporal proximity between the negative reference and the complaint were "too attenuated to infer a causal connection on timing alone." *Id.*  In the Second Circuit, there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman–Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001). Even so, the Second Circuit has held that as little as three and a half months is too attenuated to establish causation "when a retaliation claim relies exclusively on temporal proximity." *See Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 104 (2d Cir. 2020); *see also Bamba v. Fenton*, 758 F. App'x 8, 12 (2d Cir. 2018) (finding no causation where retaliation occurred ten months after complaint).

Here, Marciniak alleged that she "was contacted by a senior TA, Barbu, who inquired about her interest in the TA 2020 position" FAC ¶ 165. CBMM's decision not to hire her came

one year after Marciniak filed a Title IX complaint and after that decision issued, the CBMM summer program director told her he "hoped to see her around in some of the CBMM meetings as well as other scientific meetings." *Id.* ¶ 166. Indeed, CBMM's outreach and passage of one year between filing her complaint and the adverse decision does not support a causal connection to sufficiently state a retaliation claim under Title IX. *See Bamba*, 758 F'App'x at 12 ("The lack of temporal proximity can be overcome if a plaintiff can show that the protected activity was followed by discriminatory treatment or a pattern of antagonism.") (citing *Duplan v. City of New York*, 888 F.3d 612, 626 (2d Cir. 2018)).

### C.  RU

Plaintiffs allege that RU violated Title IX by (i) engaging in disparate treatment (Count II); (ii)-creating a sex-hostile environment regarding Azevedo (Count IV); (iii) maintaining deliberate indifference (Count V); and (v) sustaining heightened risk (Count VIII). This Court will address the merits of each count against RU under Title IX therein.

### i.    Count II

This Court finds that Plaintiffs fail to sufficiently plead a Title IX claim against RU for unlawful sex discrimination under a disparate treatment theory. As discussed above, Title IX does not create a private right of action under a disparate impact theory. Indeed, courts have held that a private right of action based on the alleged disparate impact of a policy is not cognizable under Title IX.*See Nungesser v. Columbia Univ.*, 244 F.Supp.3d 345, 361–62 (S.D.N.Y. 2017); *see also Xiaolu Peter Yu v. Vassar Coll.*, 97 F.Supp.3d 448, 461 (S.D.N.Y. 2015).

### ii.   Count IV

This Court finds that Plaintiffs fail to state a claim against RU for hostile environment under Title IX. As discussed above, "a recipient of federal funds may be liable for damages

24

under Title IX only for its own misconduct." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ*., 526 U.S. 629, 640–41 (1999). Under Title IX, "the statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs." *Id*. at 644.  Plaintiffs argue that Marciniak sufficiently pleads a Title IX claim for "sex-hostile environment" against RU because the university engaged in conduct that contributed to and compounded her sexual harassment prior to and after Azevedo sexually assaulted her. Plaintiffs also argue that RU engaged in its own misconduct in handling Marciniak's complaints of both Freiwald and Azevedo and perpetuating a sexist work environment. FAC ¶¶ 67-86.

RU argues that Marciniak's claim for hostile environment under Title IX fails as a matter of law against RU because that claim centers on conduct by Azevedo, who had no affiliation with RU. Therefore, RU argues that there is no basis to hold the university responsible for the allegations giving rise to Marciniak's claim for hostile environment under Title IX. This Court agrees. Marciniak concedes that her Title IX claim against RU for "sex-hostile environment" relies on her allegations concerning Azevedo, who had no affiliation with RU. Furthermore, Marciniak does not allege that RU employed or had control over Azevedo to sufficiently plead that RU was responsible for the hostile environment. Moreover, Plaintiffs do not allege facts that suggest that RU was involved in furthering an internal practice and bias against female postdocs.

### iii.    Counts V and VIII

This Court finds that Plaintiffs fail to state a claim against RU for deliberate indifference and heightened risk under Title IX. To survive a motion to dismiss, a plaintiff bringing a sexual harassment Title IX claim must allege that: (1) a federally funded educational institution (2) was deliberately indifferent to and (3) had actual knowledge of (4) sexual harassment that was so

severe, pervasive, and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits. *Davis*, 526 U.S. at 650; *see also Roskin-Frazee v. Columbia Univ.*, No. 17 CIV. 2032 (GBD), 2018 WL 6523721, at *4 (S.D.N.Y. Nov. 26, 2018). Here, Plaintiffs do not plausibly allege that RU had actual knowledge of severe, pervasive, or offensive harassment against Marciniak and that its response was clearly unreasonable. Marciniak's allegations that RU assisted her after learning of the incident with Azevedo by referring her to an attorney and therapists do not rise to a claim of deliberate indifference under Title IX. *See Doe v. Trs. Of Columbia Univ.*, 2023 WL 4211031, at *8 (S.D.N.Y. June 27, 2023) (dismissing deliberate indifference claim where plaintiff failed to allege that defendant's response to complaint was clearly unreasonable).

The Plaintiffs similarly fail to allege that RU had "specific knowledge of a heightened risk of sexual assault within a particular context." *Roskin-Frazee v. Columbia Univ.*, No. 17 CIV. 2032 (GBD), 2018 WL 6523721, at *6 (S.D.N.Y. Nov. 26, 2018). Plaintiffs allege that after Freiwald learned that Azevedo would not be disciplined in response to Marciniak's complaint against him, he "remained secure that he could stay under the radar of law with his quid pro quo sexual harassment towards Marciniak" and felt "assured he would never face any repercussions for his behavior." FAC ¶ 148. In their opposition, Plaintiffs also maintain that "Marciniak is not required to allege RU had prior knowledge of Azevedo's sexual assaults or the sexual harassment perpetrated by Freiwald." ECF No. 97 at 18. This Court finds that these facts and allegations are insufficient to state a claim for heightened risk under Title IX as Marciniak does not allege that RU acted with any deliberate indifference that it could have deprived her of access to educational opportunities or benefits.

IV.    **Title VII Claims**

### A. Harvard

This Court finds that Plaintiffs fail to state a claim against Harvard for retaliation under Title IV. As discussed above, retaliation claims under Title VII and Title IX are analyzed under the same framework. *See Doe v. Yeshiva Univ.*, No. 22-CV-5405 (PKC), 2023 WL 8236316, at *10 (S.D.N.Y. Nov. 28, 2023) ("As in the context of Title VII, a plaintiff claiming retaliation under Title IX must first establish a prima facie case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action.")

### B. MIT

Plaintiffs allege that MIT violated Title VII by (1) breaching its duty of reasonable care to Marciniak in handling her Title IX complaint in March 2019 (Count V); and (2) retaliating against Marciniak in not hiring her for a TA position for the 2020 CBMM summer program (Count IX). FAC. ¶¶ 87–110, 161–84.

As a matter of law, Plaintiffs fail to plead any specific facts to show that MIT was Marciniak's employer for purposes of stating a Title VII claim, and therefore these arguments fail as a matter of law. Under Title VII, it is unlawful "*for an employer* ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Because Title VII only imposes liability for unlawful discrimination or retaliation by one's employer", "the existence of an employer-employee relationship is a primary element of Title VII claims." *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 842 (2d Cir. 2022) (quoting *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006)). Courts will consider an entity a joint employer when there is "sufficient evidence that the [entity] had

immediate control over the other company's employees." *Duff v. Pristine Servs., Inc.*, No. 19-CV-10423 (RA), 2021 WL 663981, at *3 (S.D.N.Y. Feb. 19, 2021) (quoting *NLRB v. Solid Waste Servs.*, 38 F.3d 93, 94 (2d Cir. 1994)). The Second Circuit has identified five factors that bear on the "immediate control" inquiry: "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Id.* (quoting *Felder v. United States Tennis Ass'n Inc.*, No. 17-CV-5045 (ER), 2018 WL 5621484, *4 (S.D.N.Y. Oct. 30, 2018)).

Here, Plaintiffs argue that MIT was a joint employer who shared significant control over Marciniak's employment in conjunction with RU and Freiwald via the cooperative agreement. In particular, Plaintiffs allege that "MIT was [Marciniak's] joint employer from September 2016 to November 2021 . . . because MIT had control over her employment and work progress, shared her work, and had been overseeing her work." FAC ¶ 9. Plaintiffs further allege that during Marciniak's time as a TA at CBMM in 2018 and 2019, MIT, among others, "had control over her hiring," "trained her for the job," and had "overseen her work." *Id.* ¶ 11. This Court finds these claims insufficient to establish that MIT was Marciniak's employer. Plaintiff's allegations regarding MIT's joint employment are entirely conclusory and consist only of a recitation of the legal standard. Also absent from the FAC are any facts that allege how MIT controlled, trained, and/or oversaw her work. Because the FAC fails to plausibly allege that the MIT is liable under single employer or joint employer theory, the Title VII claims (Count V and Count IX) against MIT must be dismissed.

**C. RU**

Plaintiffs allege that RU violated Title VII by (i) perpetuating disparate treatment (Count II); (ii) engaging in *quid pro quo* sexual harassment and hostile work environment (Count III); breaching of duty of reasonable care (Count V); and retaliating against Marciniak (Count IX). This Court will address each count under Title VII therein.

### i.    Count II

This Court finds that Plaintiffs' fails to sufficiently plead a Title VII claim against RU for unlawful sex discrimination under a disparate treatment theory. Disparate treatment is "the most obvious easily understood type of discrimination" and was "the most obvious evil Congress had in mind when it enacted Title VII." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977). Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Proof of discriminatory motive is critical" in disparate treatment claims, "although it can in some situations be inferred from the mere fact of differences in treatment." *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 335, n. 15 (1977). In a Title VII sex discrimination case, where there is no direct or overt evidence of discriminatory conduct, courts apply the *McDonnell Douglas framework*. *Weinstock v. Columbia Univ.,* 224 F.3d 33, 42 (2d Cir.2000) (citations omitted). Under the *McDonnell Douglas* framework, a plaintiff may prove disparate treatment by first establishing "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Here, Plaintiffs do not sufficiently allege that Marciniak sustained timely adverse employment action by RU nor adequately pleaded facts that satisfy the continuing violation doctrine. Under the continuing violation doctrine, where "a plaintiff has experienced a continuous practice and policy of discrimination, ... the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (alteration in original) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 349 (2d Cir. 2001). Notably, "[t]he courts of this Circuit have generally been loath to invoke the continuing violation doctrine and will apply it only upon a showing of compelling circumstances." *Little v. Nat'l Broad. Co.*, 210 F.Supp.2d 330, 366 (S.D.N.Y. 2002); *see also Percy v. New York (Hudson Valley DDSO)*, 264 F. Supp. 3d 574, 582 (S.D.N.Y. 2017).

Indeed, Marciniak does not allege facts of specific ongoing discriminatory policies or practices that would warrant tolling the statute of limitations under the continuing violation doctrine. In their opposition, Plaintiffs cite to Marciniak's termination of employment as an adverse employment action under the disparate impact theory, but it "is well established that termination . . . is a single act, discrete in nature to which the continuing violation doctrine does not apply." *Harris v. Off. Of N.Y. State Comptroller*, 2022 WL 814289, at *10 (S.D.N.Y. Mar. 17, 2022) (citations omitted). Notably, her termination is also not cited to support her claim against RU for Count II. Furthermore, Plaintiffs' recital of mere incidences that she received less favorable work assignments and/or schedules, was asked to perform more administrative work, and was not provided with support staff do not constitute adverse employment actions. *See Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) ("[A]lleged failures to compensate adequately, transfers, job assignments and [non-]promotions cannot form the basis

for a continuing violation claim."). Adverse employment action for purposes of establishing a prima face showing under Title VII must be a materially adverse change in terms and conditions of employment, such as a change in working conditions that is more disruptive than mere inconvenience or alteration of job responsibilities. *Alvarado v. United Hospice, Inc*., 631 F. Supp. 3d 89 (S.D.N.Y. 2022); *see also* Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq. Examples of material adverse change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation. *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. N.Y.C. Human Res. Admin*., 361 F.3d 749, 755 (2d Cir. 2004). Therefore, Plaintiffs fail to allege facts that give rise to a plausible claim of disparate treatment under Title VII. FAC ¶¶ 41-45.

ii.     **Count III**

This Court finds that Plaintiffs' failed to sufficiently plead a Title VII claim against RU for engaging in *quid pro quo* sexual harassment and fostering a hostile work environment. To sufficiently allege a claim of *quid pro quo* sexual harassment under Title VII, plaintiff must allege that: (1) she was subject to unwelcome sexual conduct or unwelcome sexual advance, and (2) her reaction to that conduct was used as basis for adverse employment action. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e. Title VII's statute of limitations bars claims based upon events that occurred more than 300 days prior to filing a charge of discrimination with a state or local employment agency. *Garcia v. Yonkers Bd. of Educ.*, 188 F.Supp.3d 353, 358 (S.D.N.Y. 2016) (citing 42 U.S.C. § 2000e–5(e)(1)).

Here, this Court finds that Plaintiffs' claims of *quid pro quo sexual harassment* are time barred. Indeed, the only events that occurred during the 300–day period prior to July 22, 2020,

when Plaintiff filed her Complaint with the EEOC, are actionable under Title VII. Plaintiffs

argue that the 300–day period has been extended under the continuing violation doctrine. As

discussed further above, Plaintiffs fail to adequately plead a continuing violation. Here,

Marciniak fails to state a claim for *quid pro quo* harassment under Title VII because her

allegations of unwelcome sexual conduct from Freiwald occurred on September 24, 2018 and the

alleged adverse employment action occurred on June 3, 2020. FAC ¶¶ 56-60. Therefore,

Plaintiffs fail to state timely allegations under Count III because they all predate July 22, 2022

and do not bring this *quid pro quo sexual* harassment claim into the statute of limitations period.

The Plaintiffs' claims alleging hostile work environment under Title VII are similarly

time barred and fail to state a plausible claim. Hostile work environment claims also fall within

the continuing violation framework, where these claims "may ... be based on events outside the

statute of limitations period as long as (1) the acts occurring before the ... cutoff constitute part of

the same actionable hostile work environment practice, and (2) at least one act contributing to the

claim occurs within the filing period." *Garcia v. Yonkers Bd. of Educ.*, 188 F.Supp.3d 353, 359

(S.D.N.Y. 2016) (internal quotation marks and citations omitted). As a matter of law, Plaintiffs

do not allege facts that assert that the continuing violation doctrines applies to their hostile work

environment claims.

Furthermore, none of these allegations give rise to a hostile work environment claim

under Title VII that suggests that Marciniak experienced a severe or pervasive hostile work

environment because of her sex. In evaluating hostile work environment claims, courts consider

"the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *see also*

*Ruiz*, 2015 WL 5146629, at *8 (same). The actions taken by the defendant "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (citation and quotation marks omitted). Here, Plaintiffs allege a series of incidences where she experienced a hostile work environment: (i) a lab survey conducted prior to August 2020 that purportedly "revealed that [the] majority of lab members were not happy in the lab, declared to experience a hostile environment, and did not feel comfortable to talk to [Dr.] Freiwald about their problems" and was discussed with Dr. Freiwald in August 2020; (ii) Freiwald refusing to redo the survey; and (iii) Marciniak allegedly learning that Freiwald threatened to terminate another post doc's employment after she complained about his lack of support to him. FAC ¶¶ 64-66. Together, these facts do not suggest that the alleged misconduct was so continuous, pervasive, and abusive to plausible state a hostile work environment claim.

### iii.    Count V

This Court finds that Plaintiffs fail to allege a breach of duty of reasonable care under Title VII against RU as a matter of law. Title VII maintains that where a hostile work environment is created by a co-worker who is not a supervisor, the employer can still be liable, but "only for its own negligence." *Summa v. Hofstra Univ*., 708 F.3d 115, 124 (internal quotation marks omitted). To demonstrate such negligence, a plaintiff must adduce evidence "that the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Id*. (internal quotation marks omitted). Here, Plaintiffs fail to allege that RU may be liable under this negligence theory because (1) Marciniak's alleged rapist Azevedo was not a RU employee nor her co-worker and (2) RU was not in a position to take appropriate

remedial action because it was not involved in investigating Marciniak's complaint against Azevedo. Here, Marciniak acknowledges that both Azevedo and Freiwald were not her co-workers. Therefore, these alleged facts do not state a breach of duty of reasonable care claim because Title VII only recognizes a claim where a plaintiff alleges that a "co-worker" created the hostile environment.

      **iv.**    **Count IX**

      This Court finds that Plaintiffs fail to state retaliation claims under both Title VII and NYLL § 215. These retaliation claims under Title VII fail on two separate grounds. First, Marciniak's retaliation claims are untimely because they arise prior to July 22, 2020. FAC ¶¶ 161-177. Second, in the absence of timely, actionable conduct, Marciniak does not satisfy her burden of showing the continuing violation doctrine applies to her retaliation claim against RU. Instead, Plaintiffs concede that Marciniak complained to RU on September 1, 2017 about Azevedo's misconduct and that she was demoted after she complained about Freiwald's sexual harassment on June 4, 2020. *Id*. ¶¶ 137, 172-177, 208. As discussed above, these facts alone do not satisfy the plaintiffs' burden of showing that these are "compelling circumstances" that warrant this Court applying the continuing violation doctrine. *See Doe v. Anonymous Inc*., 2019 WL 2616904, at *4 (S.D.N.Y. June 25, 2019); *see also Oshinsky v. N.Y.C. Hous. Auth.*, 2000 WL 218395, at *8.

      Furthermore, Marciniak does not state a plausible claim under NYLL § 215. Indeed, NYLL § 215 makes it unlawful for an employer to "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee ... because such employee has made a complaint ... that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates [the NYLL]." NYLL § 215(a)(1). In their opposition, Plaintiffs

argue that their NYLL claims are sufficient because they allege that Marciniak complained to RU about Azevedo and Freiwald. ECF No. 97 at 19. However, Marciniak does not state a retaliation claim under the NYLL because she does not allege that she made any complaints of protected activity under the NYLL nor identifies labor law provisions that were violated.

### V.    IIED

This Court finds that Plaintiffs' fail to plead a IIED claim against RU. Plaintiffs allege facts that are outside of the statute of limitations for an IIED claim under New York law. In New York, the statute of limitations for claims of IIED is one year. *Overall v. Estate of Klotz,* 52 F.3d 398, 403 (2d Cir.1995). Therefore, Marciniak's IIED claim is barred by the one-year statute of limitations because she filed this lawsuit more than one year after her employment with RU ended on November 30, 2021. FAC ¶¶ 210-212.

### VI.    NYSHRL and NYCHRL

Plaintiffs allege that RU violated the NYSHRL and NYCHRL by (1) engaging in disparate impact (Count II) and (2) perpetuating a quid pro quo and hostile work environment (Count III). The NYSHRL makes it unlawful for an employer "to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment" on the basis of race. N.Y. Exec. Law § 296(1)(a). Like the NYSHRL, Section 8–107(1)(a) of the NYCHRL makes it "an unlawful discriminatory practice ... [f]or an employer or an employee or agent thereof, because of the ... race ... of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment." N.Y.C. Admin. Code § 8–107(1)(a); *see also*

*Weerahandi v. Am. Stat. Ass'n*, No. 14 CIV. 7688 AT, 2015 WL 5821634, at *7 (S.D.N.Y. Sept. 30, 2015).NYSHRL and NYCHRL claims are subject to a three-year statute of limitations.

### i.    Count II

This Court finds that Plaintiffs' claims for disparate impact under the NYSHRL and NYCHRL fail as a matter of law. Plaintiffs' allegations prior to December 28, 2019 are untimely because they do not allege a "consistent pattern" or "continuing policy" of discrimination that would invoke the continuing violation exception. FAC ¶¶ 42-46, 48. In their opposition, Plaintiffs further argue that filing a charge with the NYSDHR provides a basis for the Court to toll their NYSHRL claim "because [Marciniak] asked the NYSDHR to dismiss the charge due to administrative convenience." ECF No. 97 at 10-11, FAC ¶ 13.  When Marciniak requested a dismissal of her NYSHR complaint for administrative convenience, she has also waived her election of remedies between asserting any state claims(s) in a court of appropriate jurisdiction or through an administrative complaint. FAC ¶ 13; *see also Bishop v. Henry Modell & Co*., No. 08 CIV. 7541 (NRB), 2009 WL 3762119, at *8 (S.D.N.Y. Nov. 10, 2009), aff'd sub nom. *Bishop v. Henry Modell & Co*., 422 F. App'x 3 (2d Cir. 2011). Regardless of the procedure posture, N.Y. Executive Law § 297(9) makes clear that 'any judicial proceedings are subject to New York's general three-year statute of limitations, measured from the occurrence of the discrimination, with no tolling for the period in which the claim was pending in the administrative process." N.Y. Exec. Law § 297(9). Therefore, Marciniak's right to subsequently bring suit in "a court of appropriate jurisdiction shall be limited by the statute of limitations in effect in such court at the time the complaint was initially filed with the division." N.Y. Exec. Law § 279(9). Therefore, Plaintiff's claims for disparate impact against RU under the NYSHRL and NYCHRL are not entitled to tolling.

### i.  Count III

This Court similarly finds that Plaintiffs' claims of *quid pro bono* and hostile work environment under NYSHRL and NYCHRL fail as a matter of law. The allegations that form the basis of this cause of action all occurred prior to December 28, 2019 and therefore fall outside of the three year statute of limitations. FAC ¶¶ 56-60. Nor has the Plaintiffs in their opposition sufficiently argued that these allegations should fall within the continuing violations doctrine. Notably, the sole argument offered in their opposition brief is that Marciniak "relies upon the aforementioned continuing violations [sic] doctrine" that she invoked regarding her Title VII claims. ECF No. 97 at 13. As a result, this Court is not persuaded that her NYSHRL claims against RU are sufficient to extend the tolling period under the continuing violation doctrine.

## VII.  TVPA

This Court finds that Marciniak fails to assert claims against Defendants for violations of the TVPA (Count I). Title 18 U.S.C. § 1591, the TVPA punishes whoever knowingly, in or affecting interstate commerce, (1) "recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person," (2) "knowing…that means of force, threats of force, fraud, coercion…or any combination of such means will be used," (3) "to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a); *see also Noble v. Weinstein*, 335 F. Supp. 3d at 517-519. By its terms, the statute does not limit its application to any particular set of facts. The elements, comprised of clear and unambiguous language, contain two statutory definitions (of "coercion" and "commercial sex act"). 18 U.S.C. § 1591 (e)(2), (3). Indeed, the TVPA's civil remedy provision allows "a victim of a violation of" 18 U.S.C. §§ 1581–1597 to bring a claim against either a "perpetrator" or against "whoever knowingly benefits . . . from participation in a

venture which that person knew or should have known has engaged in" a qualifying offense. *Id.* at § 1595(a).

Marciniak's allegations fail to plead a TVPA claim. First, Marciniak does not allege that Defendants forced her to perform labor under the threat of coercion. *See Taylor v. Children's Vill.*, 2021 WL 1581568, at *5 (S.D.N.Y. Apr. 21, 2021) (dismissing § 1589 claim where plaintiff failed to plausibly allege that she was forced to perform work). Instead, the FAC pleads facts that argue that she was deprived of future employment, received insufficient support, and felt pressured to work in Freiwald's laboratory because she wanted a visa. FAC ¶ 20, 23, 25, 26, 29. Similarly, Marciniak also fails to allege that a commercial sex act took place through force, threat of fact, or fraud. *See* 18 U.S.C. § 1591(a). Indeed, the FAC is devoid of alleged facts that suggest that Freiwald propositioned her for sex in exchange for something of value or threat of serious harm. *See Corradino v. Liquidnet Holdings, Inc.*, 2021 WL 2853362, at *3 (S.D.N.Y. July 8, 2021) (holding that executives propositioning plaintiff for sex on several occasions without a *quid pro quo* was insufficient to meet TVPA's definition of commercial sex act. *See* 18 U.S.C. § 1591(a)(3).

Furthermore, Marciniak fails to plausibly plead an underlying TVPA violation that Defendants "benefited" from. The beneficiary claim under § 1595(a) succeeds where a plaintiff alleges that the defendant (1) knowingly benefited (2) from participating in a venture that violated the TVPA as to plaintiff (3) with constructive or actual knowledge that the venture violated the TVPA as to the plaintiff. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 167–69 (S.D.N.Y. 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 523–24 (S.D.N.Y. 2018). Here, Marciniak does not allege that Defendants knowingly benefitted nor that Defendants understood the connection between any purported benefits and any alleged

trafficking scheme. Marciniak also does not sufficiently allege that Defendants participated in any overt acts in furtherance of any alleged trafficking scheme. Therefore, these facts fail to plead a TVPA claim.

**VIII.    Conspiracy to interfere with civil rights**

This Court finds that Plaintiffs fail to state a conspiracy to interfere with civil rights under 42. U.S.C. § 1985 (Count X). 42 U.S.C. § 1985(2) prohibits two or more persons from conspiring to obstruct justice by intimidating a party, witness, or juror in any court of the United States. To plausibly state a claim under 42 U.S.C.A. § 1985(3), plaintiffs have to allege: (1) the existence of conspiracy, (2) for purpose of depriving him, either directly or indirectly, of equal protection of the laws, or of equal privileges and immunities under the laws, (3) act in furtherance of conspiracy, and (4) injury in his person or property or deprivation of any right of a citizen of the United States. 42 U.S.C.A. § 1985(3). Furthermore, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *United Brotherhood of Carpenters & Joiners of America v. Scott,* 463 U.S. 825, 829 (1983). In addition, § 1985(3) does not create any substantive rights in and of itself. Rather, it **"**provides a civil cause of action only when some other defined federal right has been violated." *Howell v. Port Chester Police Station*, No. 09-CV-1651(CS)(LMS), 2010 WL 930981, at *7 (S.D.N.Y. Mar. 15, 2010) (quoting *Knight v. City of New York*, 303 F. Supp. 2d 485, 501) (S.D.N.Y. 2004).

Here, Marciniak fails to state a cause of action under §1985(2)-(3) on numerous grounds. First, Marciniak does not allege that Defendants conspired to interfere with any federal proceeding and obstruct justice through intimidation. In maintain an action under §1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that

39

defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000) (citation omitted). Not only does Marciniak fail to allege particularized facts that suggest that Defendants entered into an agreement to conspire against her, but she also fails to that they acted with discriminatory intent, which is a necessary element of a § 1985(3) claim. FAC ¶¶ 188, 192; *see also Joyner v. Alston & Bird LLP*, 2022 WL 6244417, at *5 (2d Cir. 2022).

Second, Marciniak fails to allege that Defendants committed any misconduct due to racial, ethnic, or other class-based discriminatory animus. Instead, Marciniak alleges that Harvard and MIT refused the option of conducting a formal investigation because they were wanted to "avoid bad publicity" FAC ¶ 189. Notably, for the first time, Marciniak asserts in the opposition brief that Defendants' motivation to conspire against her was that Marciniak "was subordinate to men because she was a Polish woman completing research for her German superiors." ECF No. 95 at 15. These facts alleging ethnic-based discriminatory animus, however, are not in the FAC. Indeed, the FAC is devoid of allegations that rise to the level of sufficiently pleading race or class-based discriminatory animus against Marciniak. Finally, Marciniak fails to allege facts that suggest how she was deprived of equal access to her civil rights as required to allege a § 1985(3) claim. The Opposition similarly fails to address to this deficiency and instead states in a conclusory manner that "Marciniak was deprived equal access to her civil rights" without further details or cites to the FAC. ECF No. 95 at 16. Therefore, these §1985 claims alleging that Defendants conspired to interfere with civil rights fail.

## IX.    RICO

This Court finds that Marciniak fails to allege facts sufficient to state a plausible RICO claim (Count XI). Under 18 U.S.C. §1962(c), to state a civil RICO claim a plaintiff must allege

"(1) conduct, (2) of an enterprise, (3) through a pattern of racketeering activity." *Lundy v.*

*Catholic Health Sys. of Long Island, Inc*., 711 F.3d 106, 119 (2d Cir.2013) (citing *Anatian v.*

*Coutts Bank* (Switz) Ltd., 193 F.3d 85, 88 (2d Cir.1999). A "pattern of racketeering activity"

requires that Plaintiffs plausibly allege *each defendant*—not merely the Enterprise as a whole—

engaged in at least two predicate acts. *Buhannic v. Am. Arbitration Ass'n*, No. 18-cv-2430 (ER),

2019 WL 4735005, at *5, 2019 U.S. Dist. LEXIS 167073, at *14–15 (S.D.N.Y. Sep. 27, 2019)

Section 1962(d) makes it unlawful for "any person to conspire to violate" the earlier provisions

of section 1962. If a plaintiff fails to state a claim under section 1962(c), a claim under section

1962(d) must fail as well. *Capital Asset Mgmt., Inc. v. Satinwood, Inc*., 385 F.3d 159, 182 (2d

Cir.2004). Indeed, a plaintiff's burden when pleading RICO allegations is high. *Sanchez v.*

*Hoosac Bank*, 2014 WL 1326031, at *4 (S.D.N.Y. Mar. 31, 2014).

  Marciniak fails to plead a RICO claim on numerous grounds. First, she fails to plead an

injury to her business or property. Plaintiffs alleging RICO claims must: (1) establish, by clear

and convincing evidence, a violation of the criminal RICO provision, 18 U.S.C. § 1962, see

*Hecht v. Commerce Clearing House Inc.,* 897 F.2d 21, 23 (2d Cir.1990); (2) show an injury to

his business or property, see *id.;* and, (3) prove causation—that the violation of the criminal

RICO statute caused the injury to his business or property. *Tsipouras v. W&M Properties, Inc*., 9

F. Supp. 2d 365, 367 (S.D.N.Y. 1998). In the opposition brief, Marciniak argues for the first time

that her research, hours of work, and professional reputation constitute her business for purposes

of a RICO claim. ECF No. 17-18. She also states that her business suffered a negative financial

impact after Freiwald terminated her for refusing his sexual advances. These alleged facts are not

in the FAC and therefore cannot be considered. Indeed, the plaintiff bringing RICO claims "must

allege *actual,* quantifiable injury," and "[c]ourts have required that the plaintiff show concrete

financial loss in order to show injury under RICO." *Kerik v. Tacopina,* 64 F.Supp.3d 542, 560 (S.D.N.Y.2014) (internal quotation marks omitted). These generalized allegations do not quantify the extent of Marciniak's financial loss nor shows concrete financial loss.

       Second, Marciniak fails to allege that Defendants engaged in a pattern of racketeering activity. A "pattern of racketeering activity" requires that Plaintiffs plausibly allege *each defendant*—not merely the Enterprise as a whole—engaged in at least two predicate acts. *Buhannic v. Am. Arbitration Ass'n*, No. 18-cv-2430 (ER), 2019 WL 4735005, at \*5, 2019 U.S. Dist. LEXIS 167073, at \*14–15 (S.D.N.Y. Sep. 27, 2019). The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1), and they must be "related, and [either] amount to or pose a threat of continuing criminal activity." *Cofacrèdit, S.A. v. Windsor Plumbing Supply Co.,* 187 F.3d 229, 242 (2d Cir.1999). Here, Marciniak fails to identify the predicate crimes committed nor the statutory provisions that Defendants violated in the FAC.  Third, Marciniak fails to allege relatedness and continuity in the Defendant's pattern of racketeering activity. The "continuity" requirement for RICO claims can be satisfied either by showing a "closed-ended" pattern—a series of related predicate acts extending over a substantial period of time—or by demonstrating an "open-ended" pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed. *H.J. Inc. v. Nw Bell Tel Co.,* 492 U.S.229, 241 (1989).

       Marciniak maintains that her March 2019 complaint regarding the 2017 sexual assault, Azevedo's subsequent harassment, and September 2020 complaint for alleged retaliation are related because Defendants had a common incentive to improperly address the inappropriate sexual misconduct which was motivated by discriminatory animus. She also argues that Defendants were aware of misconduct across multiple years (2019-2022), which therefore meet

the continuity requirements for RICO claims. Both fail to allege predicate acts that are both related and continuous. To sufficiently plead a RICO claim, Marciniak must allege that Defendants committed multiple predicate acts over a lengthy span of time where the plaintiff sustained a continuing threat of criminal conduct. *See Kilkenny v. L. Off. of Cushner & Garvey, L.L.P.*, 2012 WL 1638326, at \*7 (S.D.N.Y. May 8, 2012). There was no continuous threat to her because she was no longer working for Defendants. Therefore, these facts fail to state a civil RICO claim.

## CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is hereby **GRANTED**. Plaintiffs are hereby **GRANTED** leave to file an amended complaint on or before October 21, 2024. The Clerk of Court is hereby ordered to terminate ECF Nos. 78, 80, 84, and 86.

**SO ORDERED.**

**Dated:**      **September 30, 2024**
                **New York, New York**      _____
                                            **ANDREW L. CARTER, JR.**
                                            **United States District Judge**

43