# EXHIBIT A

Dr. Karolina Agra
500 E. 63rd Street, Apt. 13F
New York, New York 10065
(646) 770-2045
marciniak.kar@gmail.com

December 11, 2024

**Via Pro Se Intake Unit**
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Courtroom 435
New York, New York 10007
ALCarterNYSDChambers@nysd.uscourts.gov

      Re:    **Marciniak-Domingues Goncalves Agra, et al. v. Massachusetts Institute of Technology, et al.
Case No. 1:23-cv-10959-ALC**

Dear Judge Carter:

      I, Plaintiff, pro se, write in response to Defendants President and Fellows of Harvard College ("Harvard"), Massachusetts Institute of Technology ("MIT") and The Rockefeller University ("RU") pre-motion letters seeking relief requesting dismissal of the Second Amended Complaint dated October 21, 2024 (ECF No. 112-114). Additionally, I write to the Court in a matter of the recent filing by Ms. Clancy, my former attorney, seeking leave to withdraw from this action (ECF No. 115).

      Unfortunately, Ms. Clancy's negligence and incompetence caused me to discharge her as my attorney as soon as I realized that Ms. Clancy's conduct violated the New York Rules of Professional Conduct (specifically Rule 1.1 and 1.8), on December 4, 2024.

      I retained Ms. Clancy on August 23, 2023 for the purpose of pursuing this action, which was already filed, *Marciniak I*. Specifically, Ms. Clancy was retained to seek amendment of my *pro se* initial filings in that case, to pursue all available claims, including those under the Adult Survivors Act and Gender-Motivated Violence Act, and to include the individual defendants, Winrich Freiwald, and Frederico Azevedo, sexual harassment perpetrators. However, as soon as I signed with Ms. Clancy's law firm, Shegerian and Associates, from August 23, 2023, I did not have control over Ms. Clancy's following actions on my behalf.

      Instead of seeking to amend *Marciniak I*, on November 22, 2023 Ms. Clancy filed a separate lawsuit, *Marciniak II*, which I neither authorized nor had any chance of reviewing. Later, when given the Court's leave to cure the issue of claim splitting, which emerged as a direct result of Ms. Clancy's error, she failed to properly rectify the situation. Instead of seeking dismissal of *Marciniak II* without prejudice, she simply refiled the existing claims without modification and added a new one, which originally was to be raised in *Marciniak I*, again, without seeking my authorization or review. Neither had I the chance to authorize or review the Second Amended Complaint in this action. Ms. Clancy's conduct frustrated the justice. For now, I intend to proceed *pro se*, until contracting a new attorney.

I respectfully request this Court for leave to file amended pleadings to:

(i) assert Title VII, NYSDHR, and NYCHRL claims of sexual harassment and retaliation, which in *Marciniak I* are currently stated only against corporate Defendants, also against Mr. Freiwald. In *Marciniak II*, these claims are asserted in I- VI Causes of Action, and I respectfully requested that the Court in *Marciniak II* dismiss those without prejudice,

(ii) assert Civil Battery under the New York Adult Survivors Act against all Defendants. This claim, solely as to Mr. Azevedo, is asserted in *Marciniak II* as VII Cause of Action, and I respectfully requested that the Court in *Marciniak II* dismiss this without prejudice,

(iii) assert the claim under NYC Gender-Motivated Act against all Defendants. This claim was asserted only in Second Amended Complaint in *Marciniak II* as IX Cause of Action, and I respectfully requested that the Court in *Marciniak II* dismiss this claim also without prejudice,

I rely on relation back doctrine, as (i) both, new and old claims arose out of the same conduct, transaction or occurrence, (ii) the new parties are "united in interest" with the original Defendants and by reason of that relationship, can be charged with such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits; and (iii) the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well, fulfilling a three-pronged test utilized by the courts to determine whether relation back is applicable under CPLR 203. See *In Brock v. Bua,* 83 A.D.2d 61(2d Dept. 1981).

I believe the amendment will serve the interests of justice by allowing the timely resolution of claims that would otherwise be barred by the statute of limitations. These claims, particularly those under the Adult Survivors Act and Gender-Based Violence Act, are of significant public interest. Had it not been for Ms. Clancy's errors, these claims would have been ultimately included in the original complaint.

In my amendment, I also intend to persuade the Court that the core issue being asserted in my complaint, the "nexus", is based in New York, at Defendant Rockefeller University, in connection to Defendants' joined venture, and concerns sexual harassment and retaliation from Winrich Freiwald, Rockefeller University's Professor, the issue I was consistently bringing in my complaints, including the New York State Division of Human Rights, which investigated my complaint and issued a probable cause determination **(EXHIBIT A).**

Specifically, I rely on recent ruling, *Sutton v. Tapscott,* No. 22-2327 (2d Cir. 2024), to argue for this Court's jurisdiction over the sexual assault event, which happened outside of New York. The Second Circuit court overturned dismissal of the former model's sex abuse lawsuit against her former modeling agents, which she brought in the S.D.N.Y pursuant to Child Victims Act, the analogous statute to the Adult Survivors Act. The district court concluded that the CVA did not apply to her claims because the abuse she suffered occurred outside of New York, in Paris. The Second Circuit court however ruled that the district court conclusion was erroneous in light of subsequent state-court decisions, which have clarified that the CVA revived claims arising from the out-of-state abuse of children who were residents of New York at the time their causes of action accrued. Here, Plaintiff was a full-year resident of New York when the abuse in Massachussetts in 2017 happened.

     For the foregoing reasons, I respectfully request that the Court grant leave to file an amended complaint. The amended complaint will include all potential claims arising from the Defendants' conduct. I am confident that, even with my current resources, I can fairly present my case to the Court.

     Respectfully submitted,

     Dr. Karolina Agra
     (Plaintiff *pro se*)

     */s/ Karolina Agra*
     -----------------------------------
     500 E 63rd St, Apt 13F
     New York, NY 10065
     (646) 770 2045
     marciniak.kar@gmail.com

# EXHIBIT A

# NEW YORK STATE
# DIVISION OF HUMAN RIGHTS

TO:     Files

FROM:   Joyce Yearwood-Drury
        Director O.S.H.I.

REGION: O.S.H.I.

DATE: December 31, 2021

SDHR CASE NO: 10212022-21-E-SO-E

Federal Charge No. 16GC101854

SUBJECT:    Karolina M. Marciniak v. The Rockefeller University, Winrich Freiwald

---

## FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

### I.    CASE SUMMARY

This is a verified complaint, filed by complainant, Karolina M. Marciniak, on Tue 5/18/2021. The complainant, who is female, and who filed civil rights complaints, charges the respondents with unlawful discriminatory practices in relation to employment because of sex, opposed discrimination/retaliation.

### II.   SUMMARY OF INVESTIGATION

Complainant's Position:

Complainant, Dr. Karolina M. Marciniak, is a neuroscientist, and was a postdoctoral fellow with Respondent The Rockefeller University (the "University"). Dr. Winrich Freiwald was her supervisor. Complainant alleges that she was sexually assaulted in 2017, in Massachusetts by an MIT postdoctoral researcher at a Center for Brains, Minds and Machines ("CBMM") conference. CBMM is an academic partner of the University. Beginning in 2019, Complainant filed complaints for the sexual assault with various entities, including the University. Complainant believes that Dr. Freiwald terminated her project, Neuromechanisms of Intuitive Physics, because she wrote in an email that she was going to persist with her Title IX complaint about the sexual assault against CBMM, and also because she alluded to Dr. Freiwald's sexually harassing practice of inviting her to professional meetings in restaurants. Complainant alleges other sexually inappropriate behavior by him such as: shortening physical distance with Complainant; suggestively smiling; telling sexually suggestive jokes about a banana; and opening his legs and exposing his arousal at a one-on-one meeting. Complainant was terminated shortly after her May 2020 emails. Complainant alleges sexual harassment and retaliation.

Respondents' Position:

There is absolutely no evidence that anyone at the University, including Dr. Freiwald, discriminated or retaliated against Complainant. Complainant claims that Dr. Freiwald discriminated and retaliated against her because he was aware of the Title IX complaint that she filed with another institution when he decided to discontinue her research in his lab. Dr. Freiwald made this decision more than one year after he learned of the protected activity and in response to Complainant telling him that she wanted to pursue opportunities elsewhere. On September 1, 2016, Complainant joined the University as a Postdoctoral Associate in the Laboratory of Neural Systems, headed by Dr. Freiwald, currently, a tenured Professor. Dr. Freiwald's laboratory studies face recognition to understand how the brain works. Dr. Freiwald has eight postdoctoral researchers, including Complainant. Complainant's research is divided into two projects. Project one was anticipated to be completed in less than two years (i.e., before September 2018). Complainant has not completed project one and estimated that it would take her until about November 2021 to complete her analysis and have a first version of a manuscript for publication ready. In addition, Complainant's project one results would likely cause issues if she embarked on project two.

Dr. Freiwald and the University consistently supported Complainant. In 2017, Complainant attended a summer course sponsored by the Center for Brains, Minds and Machines ("CBMM") in Massachusetts, a non-profit institution and affiliate of the University of Chicago. CBMM is a multi-institutional Science and Technology Center. The CBMM partners with institutions, including Rockefeller, Harvard University, Massachusetts Institute of Technology ("MIT"), and various of their researchers, including Dr. Freiwald, are listed as CBMM faculty. On May 21, 2019, Complainant told Virginia Huffman, Vice President, Human Resources at the University, that she had been sexually assaulted by an MIT postdoctoral researcher while she was at the CBMM summer course over two years earlier in 2017, and that the University of Chicago had started its investigation. Ms. Huffman indicated that the University would pay for social worker services. In mid-July 2019, Complainant also told Dr. Freiwald, who offered his support.

Regarding Dr. Freiwald's behavior, Complainant identifies two specific instances in which he allegedly made her uncomfortable in connection with professional meetings held off-campus. First, she claims that Dr. Freiwald asked to hold a meeting with her while he walked to the post-office (instead of in his office) in 2017. Dr. Freiwald notes it is not unusual for him to ask a laboratory member to walk with him so they can have their scheduled meeting. She also claims that Dr. Freiwald embarrassed her when he came to look for her in the postdoctoral office before a lunch meeting with Josh Tenenbaum from CBMM on May 14, 2019. Complainant omits important facts. She was eager to meet with Dr. Tenenbaum for her research. Dr. Tenenbaum asked if they could meet at a restaurant downtown. Complainant and Dr. Freiwald traveled separately to the meeting at the restaurant. Complainant makes other vague allegations about Dr. Freiwald's conduct while she was meeting with him in his office. Dr. Freiwald emphatically denies any allegations of inappropriate conduct.

On May 25, 2020, Complainant informed Dr. Freiwald that because she was "anticipating the global effects of pandemic and likely economical shortages in scientific sectors," she was starting to look for a "second postdoctoral training" following her current training in Dr.

Freiwald's laboratory. On May 27, 2020, Complainant stated that she had concerns about whether there would be sufficient funds to cover her project until the end and reiterated that she wanted to secure backup options. Complainant also told Dr. Freiwald that she had two "main" concerns - that she could not rely on CBMM because her Title IX complaint was still pending. Dr. Freiwald responded that she should not worry "about the fellowship, CBMM financially. That will be fine even if push came to shove." By this, Dr. Freiwald meant that he would find another funding source to pay her salary. After further reflection, Dr. Freiwald realized that Complainant's discontinuation would be in her best professional interest, due to the slow progress on her project. On June 4, 2020, Dr. Freiwald explained his rationale over Zoom.

Investigator's Observations:

Complainant's Documents:

Complainant submitted thousands of pages of documents to the investigations. However, the core evidence to support her claim of a retaliatory termination by Dr. Freiwald is the email documentation submitted with the Complaint, to show a change of direction from the beginning of the email exchange to after Complainant purportedly referenced Dr. Freiwald's inappropriate boundaries, as well as insisted on pursuing a Title IX claim against CBMM, to which he is connected. It's noted that these are the same emails that Respondents focus on in support of the academic/professional justification for the termination of Complainant's project and position.

Witness Interviews:

███████████, Ph.D., was Complainant's same level colleague in Respondent's lab. She stated that Respondents claimed that they were terminating Complainant based on a lack of progression on her project, but that conclusion did not seem reflective of the science. Complainant had good and potentially publishable data sets. Dr. ███████ also noted that Dr. Freiwald had told Complainant that her project did not have a problem with funding, and then all of a sudden she was terminated. Dr. ███████ stated that the real reason was that Complainant had raised the sexual complaint issues in the email a week prior to her termination. Dr. ███████ said that she was familiar with the emails and that there was a change in tone over their course (to the negative). Dr. ███████ also stated that after Complainant's termination, Complainant confided in her about certain behaviors from Dr. Freiwald: instances in which he wanted to meet outside of the campus for lunch; inappropriate looks; sexually suggestive jokes about a banana. [Dr. ███████'s full interview is in CMS.]

Piedro Agra, Complainant's husband since 2018, reported that Complainant had contemporaneously told him about Dr. Freiwald's sexual harassment of her since around March/April 2019 when Complainant started making official complaints about the 2017 sexual assault at CBMM. This is when Complainant opened up about everything. Mr. Agra stated that Dr. Freiwald had been chasing Complainant, trying to go outside to restaurants to be alone with her. Mr. Agra wanted Complainant to quit, but she explained that she needed the job for her career advancement. Mr. Agra brought up specific incidents like Dr. Freiwald spreading his legs and revealing his arousal to Complainant during a one-on-one office meeting. Mr. Agra remembered it as occurring on Valentine's Day 2020 and felt that was deliberate. Later that

month, Complainant told Mr. Agra about the incident where Dr. Freiwald made a sexual joke about banana, right after it happened. [Piedro Agra's full interview is in CMS.]

Submitted by: _____
Michael Peel
Human Rights Specialist II

### III. BASIS FOR DETERMINATION

Complainant, Dr. Karolina M. Marciniak, who is a neuroscientist and who was a postdoctoral fellow with Respondent The Rockefeller University (the "University"), and who was supervised by Dr. Winrich Freiwald, has alleged distinct and overlapping theories of sexual discrimination against Dr. Freiwald and the University. Complainant alleges that Dr. Freiwald terminated her project, Neuromechanisms of Intuitive Physics, and effectively fired her in June 2020 as retaliation against her stating that she was continuing to pursue her claim of sexual assault in 2017, in Massachusetts by an MIT postdoctoral researcher at a Center for Brains, Minds and Machines ("CBMM") conference. The Rockefeller University is in partnership with CBMM, as are other academic institutions, such as Harvard, and MIT. Respondent acknowledges that Dr. Freiwald is listed as CBMM faculty.

Further, Complainant alleged that the same email exchange which stated her intentions to continue her Title IX claims against her alleged assaulter, alluded to Dr. Freiwald's inappropriate sexual behavior toward Complainant. Consequently, Complainant alleges that Dr. Freiwald has been her long-term sexual harasser and retaliated against Complainant to protect himself, directly, and not just the relationship with CBMM and other entities.

Respondents submitted a response which argues that the University and Dr. Freiwald were supportive of Complainant's 2017 sexual assault allegation, and also that Dr. Freiwald did not engage in inappropriate sexual behavior toward Complainant, and that the termination of Complainant's project was done for scientific/academic reasons (Complainant's project was taking a long time), and not because Complainant had reported her 2017 sexual assault claim to human resources in May 2019, and to Dr. Freiwald in July 2019, which is about a year removed from Dr. Freiwald's termination decision.

Complainant's allegations are supported in the record by the late-May/early-June 2020 email exchange between Complainant and Dr. Freiwald. On May 27th, Complainant wrote, among other things, that she was afraid of a lack of funding to continue her project to the end given her Title IX complaint against CBMM, a funder. Early on May 28th, Dr. Freiwald told Complainant, among other things, "Do not worry about the fellowship, CBMM financially. That will be fine even if push came to shove." The next day, Complainant thanked Dr. Freiwald for his reassurance and continued to discuss the Title IX matter and her determination to see it through. She also discussed how her work situation necessitated boundaries, like no professional meetings in restaurants. That part of the email implicated Dr. Freiwald, as Complainant would explain in

her Division interviews, because it alluded to one of his behaviors. Shortly after Complainant's May 29, 2020 email, Dr. Freiwald invited her to a Zoom meeting where he fired her.

Complainant asked Dr. Freiwald, in a June 8th email for a reason. Dr. Freiwald stated that it took him a couple of days from the beginning of the email exchange to realize what made the most sense for Complainant - personally and scientifically. Dr. Freiwald said that they [the University] were not in a position to progress to phase II of the project; that the risk of doing so would be too high for Complainant's career. A few days later, Dr. Freiwald wrote, "Given the current status of the project and results, it is almost guaranteed that if you continue into phase II, it will be the end of your career."

Complainant's witness and former colleague, Pooja Viswanathan, Ph.D., stated in a Division interview that Respondents' reason for terminating Complainant did not seem reflective of the science. Complainant had good data sets that could have potentially been published. According to Dr. Viswanathan, Complainant had made a lot of progress, and her project was going better than it had in prior years. Additionally, Dr. Viswanathan stated that Complainant was the only one of her peers terminated. Dr. Viswanathan believes that Complainant was fired shortly after her email discussion about her Title IX claims, because of those emails.

Complainant husband, Piedro Agra, corroborated Complainant's allegation of sexual harassment from Dr. Freiwald, in that Complainant would contemporaneously report incidents to him. Mr. Agra stated that he asked Complainant to quit many times but that she explained that her academic world is small, and she needed to put in the time in this position before she could move forward. Mr. Agra stated that Dr. Freiwald would often maneuver to be alone with Complainant, trying to get her to go to professional meetings in restaurants. Mr. Agra also stated that in February 2020, Dr. Freiwald invited Complainant to his office and later spread his legs and revealed his arousal. Later that month, Dr. Freiwald told a joke, where he sexualized a monkey eating a banana. Dr. Viswanathan similarly reported that about a month after her termination, Complainant confided in her about some of the alleged incidents, including the phallic banana joke, and Dr. Freiwald's pressure to go to restaurants.

The Division's Investigation reveals that considering the emails submitted to the record, witness interviews, and the timeline, Complainant, at this juncture, has met her burden for a probable cause determination. Complainant's discrimination claims, and Respondents' denials of their substance, are issues of fact to be determined at an administrative hearing before a trier of fact. Any issues of credibility should be determined at an administrative hearing, and not at the regional level.

For workplace harassment alleged to have occurred on or after October 11, 2019, or alleged to have continued until or beyond that date, the legal standard for actionable harassment, including but not limited to sexual harassment, has been changed by an amendment to the Human Rights Law. To be an unlawful discriminatory practice, harassment is no longer required to be "severe or pervasive." The amendment added the following new paragraph:

    1. It shall be an unlawful discriminatory practice:
    (h) For an employer, licensing agency, employment agency or labor organization to subject any individual to harassment because of an individual's age, race, creed, color, national origin, sexual

orientation, gender identity or expression, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, domestic violence victim status, or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, testified or assisted in any proceeding under this article, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. The fact that such individual did not make a complaint about the harassment to such employer, licensing agency, employment agency or labor organization shall not be determinative of whether such employer, licensing agency, employment agency or labor organization shall be liable. Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared. It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences.

Executive Law, art. 15 (Human Rights Law) § 296.1(h). These new standards have been applied in order to make a determination in this case as to whether there is probable cause to believe that unlawful discrimination has occurred, based on the evidence obtained from the investigation.

This matter should proceed to public hearing. Probable cause to believe that unlawful discrimination occurred exists when, after giving credence to the Complainant's version of the facts, some evidence of discrimination exists. A complaint may not be dismissed for lack of probable cause unless the facts revealed generate conviction in and persuade a fair and detached fact finder that there is no substance in the complaint. A determination of probable cause is not a final adjudication, but merely a determination that there should be a formal hearing on the matter.

A review of the record reveals that there are material issues of fact involved which are best resolved at a public hearing before an administrative law judge, where testimony is taken under oath, witnesses are subject to cross-examination and a full record is made.

Reviewed & Approved: _____
Joyce Yearwood-Drury
Director O.S.H.I.

## IV. DETERMINATION

Based on the foregoing, I find Probable Cause to support the allegations of the complaint.

_____
Joyce Yearwood-Drury
Director O.S.H.I.

- 6 -



**Division of Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

---

NEW YORK STATE DIVISION OF
HUMAN RIGHTS on the Complaint of

KAROLINA M. MARCINIAK,

                          Complainant,

                v.

THE ROCKEFELLER UNIVERSITY, WINRICH
FREIWALD,

                          Respondents.

---

DETERMINATION AFTER
INVESTIGATION

Case No.
10212022

Federal Charge No. 16GC101854

        On 5/18/2021, Karolina M. Marciniak filed a verified complaint with the New York State Division of Human Rights ("Division"), charging the above-named Respondents with an unlawful discriminatory practice relating to employment because of sex, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

        After investigation, the Division has determined that it has jurisdiction in this matter and that <u>PROBABLE CAUSE</u> exists to believe that the Respondents have engaged in or are engaging in the unlawful discriminatory practice complained of.

        Pursuant to the Human Rights Law, this matter is recommended for public hearing. The parties will be advised of further proceedings.

Dated: 1/11/22
        Brooklyn, New York

STATE DIVISION OF HUMAN RIGHTS

By: _____
Joyce Yearwood-Drury
Director O.S.H.I.