Dr. Karolina Agra
500 E. 63rd Street, Apt. 13F
New York, New York 10065
(646) 770-2045
marciniak.kar@gmail.com

RECEIVED
SDNY PRO SE OFFICE

2024 DEC 23 PM 4:01

December 20, 2024

**Via Pro Se Intake Unit**
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Courtroom 435
New York, New York 10007
ALCarterNYSDChambers@nysd.uscourts.gov

>   Re:   **Marciniak-Domingues Goncalves Agra, et al. v. Massachusetts Institute of Technology, et al.**
>   **Case No. 1:22-cv-10959-ALC**

Dear Judge Carter:

    Plaintiff, *pro se*, writes in accordance with Rule 2. A. of Your Honor's Individual Practices to request a conference with the Court before filing the Motion for the Court's leave to file amended complaint. In addition, this letter addresses Defendant Massachusetts Institute of Technology ("MIT")'s opposition to Plaintiff's request to file an amended complaint, dated December 17, 2024 [ECF No. 121].

    Plaintiff categorically denies MIT's suggestion that she authorized Ms. Clancy's actions or intentionally delayed seeking a resolution. As a layperson, Plaintiff relied on Ms. Clancy's professional expertise and trusted her to navigate the legal process effectively. Under the attorney-client contract, Ms. Clancy had advanced authority in filing motions and pleadings on Plaintiff's behalf without consulting her first, however Plaintiff and Ms. Clancy agreed at the outset that her first step would be to seek to add the individual perpetrators, and add a claim for Civil Battery under the New York Adult Survivors Act ("ASA"), and a claim under the New York City Gender-Motivated Violence Act ("GMVA") against MIT. Plaintiff had no reason to anticipate that Ms. Clancy would breach this agreement and file a separate lawsuit, 1: 23-cv-10305 ("Marciniak II") instead of amending the existing complaint, a decision that has significantly undermined this case.

    Contrary to MIT's assertions, Plaintiff was actively involved in the litigation process. Plaintiff assisted Ms. Clancy by contacting witnesses and obtaining their affidavits. Plaintiff also provided input and suggestions during the Motion to Dismiss stage, which Ms. Clancy unfortunately disregarded. Furthermore, Plaintiff contributed significantly to the drafting of the Second Amended Complaint ("SAC") [ECF No. 110] including suggesting the inclusion of a Gender-Based Violence Act (GMVA) claim. However, Ms. Clancy filed the SAC without Plaintiff's review or authorization. Subsequently, Ms. Clancy pressured Plaintiff to agree to Defendant's Notice of Sanctions, misrepresenting the inclusion of the GMVA claim and Ms. Clancy's intention to file amendment in this action, the conduct which eroded Plaintiff's trust in her judgment and undermined her confidence in Ms. Clancy's ability to

effectively represent Plaintiff's interests. Ms. Clancy sabotaged this case, either unintentionally due to her negligence or incompetence, or intentionally with malicious intent, through colluding with the opposing party. Given these circumstances, I was compelled to discharge Ms. Clancy, and intend to file a complaint with the First Judicial Department Attorney Grievance Committee against Ms. Clancy for breach of fiduciary duty and violation of the New York Rules of Professional Conduct.

Furthermore, MIT's assertion that Plaintiff is merely seeking a 'do-over' is unfounded. Plaintiff seeks to rectify the situation caused by Ms. Clancy's mistakes and ensure a fair opportunity to pursue Plaintiff's legitimate claims. To suggest otherwise is to disregard the serious harm caused by Ms. Clancy's actions. Courts liberally grant leave to file amended complaint when justice so requires, therefore Plaintiff's request to file Third Amended Complaint ("TAC") should be granted

The amendment is beneficial, as it will allow the Court to address the critical issue of individual perpetrators' actions and MIT's liability for the harm caused by these individuals under a claim for Civil Battery pusuant t the New York Adult Survivors Act ("ASA") and a claim under the New York City Gender-Motivated Violence Act ("GMVA") against MIT, the claims asserted timely but by a mistake of law asserted in Marciniak II, the action currently pending Judge Cronan's dismissal without the final adjudication on the claims' merit. As the claim revives otherwise untimely conduct, the amendment will directly resolve the complaint's deficiencies pointed by MIT in their pre-motion letters that "many of Plaintiff's claims are procedurally untimely". [ECF 113, p.3]. In filing TAC, Plaintiff prevails on the relation back doctrine in asserting new claims against MIT, because the new claims arose out of the same conduct, transaction or occurrence, MIT was on notice of those claims in Marciniak II, and they would have been named in this action but for Ms. Clancy's misrepresentation of the claim-splitting doctrine, the conduct constituting a mistake of law warranting the doctrine's application. See *Nemeth v. K-Tooling*, 40 N.Y.3d 405, 407-08, N.Y. Slip Op. 05349, 2023 WL 69764452023 (2023), citing Buran v Coupal, 87 NY2d 173, 178 [1995].

While MIT cannot be directly liable for the sexual offenses of MIT's employee, Frederico Azevedo ("Azevedo"), it can be held liable under theories of vicarious liability, aiding and abetting, and negligent supervision and retention. See *Griffin v. Sirva Inc.*, 858 F.3d 69 (2d Cir. 2017) (aiding and abetting liability extends to local and out-of-state third parties even if they have no employment relationship with plaintiff if they imposed discriminatory practices)).; See also *Singh v. Memorial Sloan Kettering Cancer Center et al*, 2019 WL 6977106 (S.D.N.Y. Dec. 20, 2019) (employer liable under negligence theories).

MIT's vicarious liability is not limited by the motive test. Given Azevedo's position as a faculty member at MIT program, the power dynamics inherent in the academic setting, the isolated, remote location of places where the program takes place and the pressures Plaintiff, and other junior female scientists faced, MIT should have reasonably foreseen the potential for such misconduct. Aiding and abetting liability also applies, as MT knew or should have known about Azevedo's propensity for such behavior and failed to take appropriate action. MIT's staff had "red flags about Azevedo", who participated in the program before and was known from initializing a "locker-room" type conversations among male faculty and students which, according to witnesses, were of sexual nature and degraded women. [SAC ¶ 362, 400].

MIT should have reasonably foreseen that Azevedo might engage in such behavior against female course participants, given his prior acts, his job duties and the work environment. This is especially relevant in light of Plaintiff's allegations of a pervasive culture of sexual harassment and misconduct at MIT's program and lack of MIT's compliance with the nondiscriminatory policies. See

*Gaines v. Bellino*, 173 N.J. 301 (N.J. 2002) (a triable issue whether company's anti-harassment programs must be fully functional for the task of discouraging harassment within the organization; to avoid liability, the company must adopt formal policies and complaint procedures, train the employees, monitor the workplace and enforce policies and procedures fairly and consistently).

Because Azevedo's actions were foreseeable and motivated by his position as a faculty member at MIT program, the university is vicariously liable for the harm caused by those actions. This is particularly relevant in academic settings where faculty members, like Azevedo, are granted significant authority over students and junior researchers. TAC will put the issue of MIT's liability in sexual offenses, the issue of particular occurrence in a current model of academia and male-dominated hierarchies, at trial. MIT delegated authority to Azevedo to control important aspects of Plaintiff's life and livelihood, including her accommodation during conferences where the sexual assaults occurred (SAC, ¶ 109-111, 121-122). This delegation of authority, coupled with the foreseeable nature of the harm, makes MIT liable for Azevedo's actions.

MIT's argument that Plaintiff's complaint will not survive MIT's motion to dismiss, because Plaintiff "can not include facts to show that, inter alia, [Azevedo's and Freiwald's] misconduct was motivated by gender" fails. An allegation of rape or sexual assault sufficiently shows the requisite animus of the victim's gender. See Breest v. Haggis, 180 A.D.3d 83, 94 (1st Dep't 2019) (finding that "[m]alice or ill will based on gender is apparent from the alleged commission of the [rape or sexual assault] itself. Animus inheres where consent is absent.").

In TAC, Plaintiff will perfect her pleadings warranting this Court's personal jurisdiction over MIT pursuant to CPLR § 302(a)(3), in light of New York's Long-Arm Jurisdiction extending its reach. In a case involving academic collaborations between the resident and out-of-state entities the New York Court of Appeals reversed the Appellate Division's decision, founding that a contract between a Michigan-headquartered Delaware corporation and the State University of New York at Stony Brook ("SUNY Stony Brook"), to deliver medical supplies in Madagascar via drone, provided the contacts necessary to establish jurisdiction over the corporation in New York state court, finding "the fact that [Vayu's CEO] traveled to New York to meet with [a Stony Brook professor] in furtherance of the ongoing business relationship" to be significant. See *State v. Vayu, Inc.*, 2023 WL 1973001 (N.Y. Feb. 14, 2023), Relying on *Presidential Realty Corp. v Michael Sq. W., Ltd.*, 44 N.Y.2d 672, 673, 405 N.Y.S.2d 37, 376 N.E.2d 198 [1978], the Court held that "the nature and purpose of a solitary business meeting conducted for a single day in New York may supply the minimum contacts necessary to subject a nonresident participant to the jurisdiction of our courts." *Vayu*, 2023 WL 1973001, at *3. The SAC adequately pleads that MIT's employees traveled to New York on multiple occasions to meet with Plaintiff, the meeting which were part of a far reaching and long-standing relationship between MIT and the Rockefeller University ( SAC¶ 59, 69). In addition, Azevedo's role as a researcher acting on behalf of MIT at a conference in New York, during which he sexually assaulted Plaintiff, do provide a basis for asserting jurisdiction over MIT even if Azevedo acted without the express knowledge or consent of the university. The theory of apparent authority or agency by estoppel is applicable, particularly because MIT had taken steps to create the appearance that Azevedo had authority to act on MIT's behalf. MIT delegated Azevedo to represent MIT in New York at the conference to promote MIT's research, and potentially building relationship with other institutions and researchers. In academic context, the attendance at the conference advanced the university's mission by sharing knowledge, collaborating with other scholars, and staying updated on the latest research and trends in their field, and the professional development ultimately benefits the university by enhancing their teaching and research capabilities. Based on above, Azevedo's travel to New York as MIT's agent is

alone sufficient to establish the requisite nexus between MIT's conduct and Plaintiff's injury in New York.

In summary, Plaintiff's proposed TAC is fruitful and serves the justice, especially in light of public policy authorized by ASA and GMVA. I intend to proceed pro se until I retain legal counsel. However, I do not believe I am obligated to immediately secure legal representation. I intend to file a motion to amend the complaint *pro se.*

Respectfully submitted,

Dr. Karolina Agra
(Plaintiff *pro se*)

*Karolina Agra*
-----------------------------------
500 E 63rd St, Apt 13F
New York, NY 10065
(646) 770 2045
marciniak.kar@gmail.com