# EXHIBIT H

OCI1MARC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   KAROLINA MARCINIAK-DOMINGUES
     GONCALVES AGRA, et al.,
 4
                    Plaintiffs,
 5
                 v.                        23 Civ. 10305 (JPC)
 6
     MASSACHUSETTS INSTITUTE OF
 7   TECHNOLOGY, et al.,

 8                  Defendants.            Conference
     ------------------------------x
 9                                         New York, N.Y.
                                           December 18, 2024
10                                         3:45 p.m.

11   Before:

12                     HON. JOHN P. CRONAN,

13                                         District Judge

14                          APPEARANCES

15   SHEGERIAN & ASSOCIATES
          Attorneys for Plaintiffs
16   BY:  OLIVIA M. CLANCY, ESQ.(Present Via Speakerphone)

17   DR. KAROLINA MARCINIAK-DOMINGUES GONCALVES AGRA
     MR. PEDRO HENRIQUE MARCINIAK-DOMINGUES GONCALVES AGRA
18        Pro Se Plaintiffs

19   GOODWIN PROCTER, LLP
          Attorneys for Defendant MIT
20   BY:  MARCO Y. WONG, ESQ.

21   PROSKAUER ROSE LLP
          Attorneys for Defendants Rockefeller, Winrich Freiwald
22   BY:  NOA M. BADDISH, ESQ.
          PATRICK J. LAMPARELLO, III, ESQ.
23
     BOND, SCHOENECK & KING PLLC
24        Attorneys for Defendant Federico Azevedo
     BY:  THOMAS A. MARTIN, ESQ.
25
```

OCI1MARC

1          (Case called)

2          THE DEPUTY CLERK:  Can counsel, starting with the

3    plaintiff, please state your name for the record.

4          MS. CLANCY:  Your Honor, Olivia Clancy, plaintiff's

5    counsel.

6          THE COURT:  This is Judge Cronan.  Good afternoon,

7    Ms. Clancy.

8          And the plaintiff is here as well, I believe?

9          DR. MARCINIAK:  Yes.  Karolina Marciniak, plaintiff.

10          THE COURT:  Good afternoon, Ms. Marciniak.

11          And for the defendants, we'll start on my right, the

12    far left.

13          MR. WONG:  This is Marco Wong of Goodwin Procter on

14    behalf of MIT.

15          MS. BADDISH:  Noa Baddish on behalf of Rockefeller

16    University and Dr. Winrich Freiwald.

17          THE COURT:  Good afternoon.

18          MS. BADDISH:  And I have my colleague Pat Lamparello

19    with me as well.

20          THE COURT:  Good afternoon.

21          MR. LAMPARELLO:  Good afternoon.

22          MR. MARTIN:  Thomas Martin, Bond, Schoeneck & King,

23    for defendant Federico Azevedo.

24          THE COURT:  And good afternoon.  I'm sorry.  I missed

25    your name just now.  Your name again?

OCI1MARC

1          MR. MARTIN:  Thomas Martin.

2          THE COURT:  Martin.  Okay.  Thank you.

3          So I wanted to call this conference, and I'll note

4   that Ms. Clancy is appearing remotely via telephone because I

5   understand she is under the weather, but are you able to hear

6   us okay, Ms. Clancy?

7          MS. CLANCY:  Yes, I can hear you well, your Honor,

8   yes.  Thank you.

9          THE COURT:  So I wanted to have this conference for a

10  few reasons——first, to discuss Ms. Clancy's representation of

11  the plaintiff, and also to discuss efforts to try to figure out

12  the terms of a dismissal of this case.

13         Ms. Goncalves, do I understand from your letter and

14  other submissions that I've received that you have decided to

15  discharge Ms. Clancy as your attorney in this matter?

16         DR. MARCINIAK:  Yes, that's correct, your Honor.

17         THE COURT:  And Ms. Clancy filed a motion to be

18  relieved as counsel as well.

19         One complication here, which I think is easily dealt

20  with, is that there is a suggestion——probably more than a

21  suggestion——that the defendants may move for Rule 11 sanctions

22  against Ms. Clancy based on the filing of the amended

23  complaint.  Maybe I should check first with the defendants

24  whether that is still a possibility of a Rule 11 motion in this

25  case?

1          MS. BADDISH:  Your Honor, I think that it is,

2     especially if the claims against our clients, Rockefeller and

3     Dr. Freiwald, are not dismissed with prejudice, subject to the

4     carveouts we discussed a couple of weeks ago.

5          THE COURT:  Okay.  So I will relieve Ms. Clancy, but

6     in doing so, I specifically reserve jurisdiction over any

7     subsequent Rule 11 sanctions motion against her.  Ms. Clancy,

8     do you understand that?

9          MS. CLANCY:  Yes, I do.

10          THE COURT:  Okay.  So let me try to understand whether

11     it's possible to reach an agreement on the terms of dismissal.

12     The issue continues to be whether the claims in this case are

13     dismissed with or without prejudice, I take it?  Nothing has

14     changed there?

15          MS. BADDISH:  Yes.  Yes, your Honor.

16          THE COURT:  And Ms. Baddish, has it been discussed

17     with the plaintiff herself?

18          MS. BADDISH:  We have not engaged in any further

19     discussions with the plaintiff because she was still

20     technically represented by Ms. Clancy.

21          THE COURT:  That's what I suspected.

22          MR. WONG:  And—sorry, your Honor—we did engage with

23     plaintiff on this specific issue, for MIT, and we were unable

24     to reach agreement.

25          THE COURT:  So to the extent I might be able to help a

OCI1MARC

```
 1    bit, what is the area of disagreement here?  Go ahead.

 2         MS. BADDISH:  I mean, I think I can explain what it

 3    is.  I think plaintiff wants to be able to, now that she——she

 4    filed two duplicative lawsuits, which we know.  And now she

 5    wants to basically avoid any consequences for doing so, and she

 6    wants to amend her complaint in Marciniak I, where we've all

 7    filed premotion letters to dismiss already for the second time,

 8    and she wants to amend the claims that were in this case, so

 9    she would avoid any consequence of the dismissal and what she

10    has put all of the defendants through with respect to extensive

11    motion practice already, a number of substantive premotion

12    letters, Rule 11 letters, and she wants to basically avoid all

13    consequences for what she and her counsel have done, and we

14    just do not think that's acceptable.

15         THE COURT:  And at our last conference we had

16    discussed the possibility of language that would dismiss the

17    claim in this case with prejudice but with the understanding

18    that it would not affect the ability to proceed on those same

19    claims before Judge Carter in Marciniak I.  Is that still

20    something the defendants would be amenable to?

21         MS. BADDISH:  To the extent that those claims are

22    currently asserted in the second amended complaint, which is

23    the third complaint she filed in Marciniak I.  We don't think

24    she should be able to now, after over a year of briefing and

25    going back and forth on this action, to just add those claims
```

1    that were dismissed in this action to *Marciniak I.*

2              THE COURT:  Ms. Goncalves, did you have a chance to

3    read my opinion in this case on your claim?

4              DR. MARCINIAK:  Yes, I did.

5              THE COURT:  And you certainly should read it and focus

6    on exactly what I said there, but essentially the issue was

7    that the claims in this case were very much the same as those

8    that are before Judge Carter in your other case and therefore I

9    concluded that they cannot continue here.  I then gave you the

10   opportunity to file an amended complaint, which your lawyer

11   did, and the argument of the defendants is that this doesn't

12   cure any of the issues that I identified in my opinion, and

13   giving a look to that complaint, it seems like there may be

14   some merit to what they are arguing.  You can continue to bring

15   your claims that you have before Judge Carter.  He's obviously

16   a different judge in a different case.  But the concern of the

17   defendants is that they don't want to be in a position where

18   the claims are dismissed without prejudice, then we're back

19   here again with new claims being brought.  Do you understand

20   what I'm saying?

21             DR. MARCINIAK:  I understand that the concern is that

22   I will bring another action, like *Marciniak II*?

23             THE COURT:  Is that right, more or less?

24             MS. BADDISH:  Yes, and we also have the additional

25   issue of Dr. Freiwald.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

OCI1MARC

1          THE COURT:  Okay.

2          MS. BADDISH:  And we think all claims against him

3     should be dismissed with prejudice.

4          THE COURT:  So I cannot require parties to enter into

5     a stipulation, although it did seem to me at our last

6     conference that we were very, very close.  Ms. Goncalves, is

7     there a reason you would not be agreeable to stipulation in

8     this case that says that this action is dismissed with

9     prejudice except to the extent that a dismissal with prejudice

10    in this case would not affect any current claims that you have

11    brought in your other case?  Is that not acceptable to you?

12         DR. MARCINIAK:  That will be acceptable with respect

13    to the defendant Rockefeller University because I am proceeding

14    Title IX——title VII claims in the first lawsuit against the

15    institutional defendant.  However, I am claiming that I'm

16    eligible to bring my claims against the individuals, and I

17    wanted to bring Dr. Freiwald and Dr. Azevedo in the first claim

18    as well, in the first complaint as well.

19         THE COURT:  Part of the problem with that is that——I

20    discussed Dr. Azevedo's situation in my prior opinion.  Is

21    there a reason why he was not named in the first case that you

22    brought?

23         DR. MARCINIAK:  Yes.  I was proceeding pro se.  I

24    didn't have any adequate knowledge to——to know how to properly

25    name defendants, and nevertheless, I wanted to acknowledge that

```
 1    I——I was diligent in my amendments.  The first amendment that I
 2    did process, that I filed in front of Judge Carter, in April
 3    last year, was focused specifically to address defendants'
 4    concern about exhaustion of administrative remedies.  I was
 5    able to collect right to sue letters and I was able to bring
 6    allegations to the extent I was capable at that point.
 7    However, as I mentioned in my letter, due to Ms. Clancy's
 8    negligence and incompetence——I mean, the idea to amend the
 9    first complaint to bring the individuals, that was the purpose
10    that I engaged the firm, and Ms. Clancy specifically, and it
11    was——it was assumed, if not for the mistake of Ms. Clancy, a
12    mistake of law, which is allowed to bring the claims based on
13    the relation back doctrine, I would be able to add defendant
14    Freiwald and defendant Azevedo successfully in the first
15    complaint.
16              THE COURT:  And this is to the defendants:  Who is not
17    named before Judge Carter that was named here?  Is it just——
18              MS. BADDISH:  Dr. Freiwald and Azevedo.
19              DR. MARCINIAK:  Dr. Azevedo.
20              THE COURT:  Dr. Azevedo too?
21              There's a gentleman raising his hand in the courtroom.
22    I don't know who he is.
23              UNIDENTIFIED SPECTATOR:  I'm Karolina's husband.  Can
24    I tell her something?
25              THE COURT:  You may sit next to your wife if you wish,
```

1    although I do want to make sure only she speaks, so you may do

2    that.  As you speak to her, I do want the defendants to think

3    about what you propose as the course of action here, since it

4    is a bit of an unusual posture.

5              MS. BADDISH:  I have a proposal, your Honor.

6              THE COURT:  Please.

7              MS. BADDISH:  And I also note that the plaintiff named

8    Dr. Freiwald as a defendant in her New York State Division of

9    Human Rights charge, so to me this seems like an intentional

10   strategic decision that she did not name him in any of her

11   complaints in *Marciniak I*, and then she chose to name him in

12   *Marciniak II* in an attempt to distinguish the two cases so that

13   she could proceed on two lawsuits.  So I don't think that that

14   conduct should be rewarded, and I just would be remiss if I

15   didn't say that.

16             One proposal that I had is that you could dismiss the

17   claims against Dr. Freiwald with prejudice except to the extent

18   that Judge Carter finds that she can add him as a defendant in

19   that case.  I do not believe that she will be able to establish

20   that the relation back doctrine applies.  She can't bring a

21   Title VII claim against him.  Title VII doesn't recognize

22   individual liability.  As to the New York State and New York

23   City Human Rights Law, the statute of limitations is three

24   years.  She stopped working at Rockefeller on November 30,

25   2021.  Her claims are time barred.

1          Given what has gone on and the procedural mess that

2   was created in this case, it's clear that she chose to name

3   Dr. Freiwald in *Marciniak II* as opposed to *Marciniak I* to gain

4   a strategic advantage.  There's a New York State Court of

5   Appeals case that says that relation back doctrine does not

6   apply in those circumstances.  Happy to make that argument in

7   front of Judge Carter if you would like to reserve that issue

8   for him.  But I think that would be a just result.

9          THE COURT:  Let me hear from plaintiff.

10          DR. MARCINIAK:  Yes.  I am happy to explain.  And I

11   think the argument that intention——it was my intentional

12   conduct is just absurd.  And your Honor, my engagement with

13   Shegerian & Associates culminating in attorney-client contract

14   signed on August 10 last year, which I mentioned in my letter,

15   was a result of thorough evaluation of my case by the firm, and

16   this process included an initial intake interview and more

17   in-depth consultation, and a comprehensive review of relevant

18   documentation, including ongoing *Marciniak I* complaint.  So

19   there was confidence in me winning the case that caused the

20   contract to emerge.  And during my initial call with

21   Mrs. Clancy on August 14th, she represented to be very familiar

22   with the case and that she was working on amending the original

23   complaint to add Mr. Freiwald and Mr. Azevedo as defendants,

24   and to assert claim under the newly enacted Gender-Motivated

25   Violence Protection Act and Adult Survivors Act, the legal

1  avenues I was previously unaware of.  Mrs. Clancy refused my

2  proposal to help with amendments, and she delegated the crucial

3  task of gathering witness statements to me, a layperson with no

4  legal training, which I subsequently did.  And I did it

5  diligently.  Ms. Clancy was active on the case, as she was

6  entering potential victims, and for example, on September 27,

7  2023, Ms. Clancy reached out to seek permissions of the

8  potential——permission, seek my permission to forward the first

9  complaint to the——to one of the potential victims.  I agreed.

10       On November 6, 2023, the court in *Marciniak I* entered

11  a briefing schedule for defendants' motion to dismiss, and only

12  then Ms. Clancy filed her notice of appearance, more than three

13  months after signing the contract.  And even at that point I

14  had no reason to suspect Ms. Clancy actions were not ones

15  seeking to amend the complaint.

16       On November 17, 2023, with a deadline to file claims

17  under the Adult Survivors Act approaching, I contacted

18  Ms. Clancy about the "next steps regarding adding the

19  individual perpetrators," meaning Mr. Freiwald and Mr. Azevedo,

20  to the lawsuit.  Ms. Clancy responded by informing me that she

21  had begun drafting a new complaint to address these issues,

22  stating, "I have begun composing a complaint which includes the

23  same factual statements alleged in your first amended complaint

24  to bring claims against the individual perpetrators.  This new

25  action will be filed Monday or Tuesday, ahead of the deadline,"

1   and we will motion to consolidate the matter.  And she said

2   it's the easiest—— "It's the easiest way to add these two new

3   defendants, given the extensive number of defendants and the

4   soon-to-be-filed motion to dismiss."  Ms. Clancy further

5   directed me to the task of contacting the witnesses.

6          I was surprised by the decision, as our prior

7   discussions had focused on amending the existing *Marciniak I*

8   complaint.  I was not provided with the opportunity to review

9   or discuss this new course of action before Ms. Clancy

10  proceeded with filing *Marciniak II*.  Me, as a client, I relied

11  on her, my attorney, for strategic decisions, and I did not

12  have the same level of control and understanding of legal

13  procedures as the attorney.  I simply relied on Ms. Clancy's

14  expertise.

15         Ms. Clancy also did not discuss with me her timeline

16  and why she waited until January 5th to file motion to

17  consolidate the two cases and requested a stay motion, which

18  was already pending.

19         On December 15, defendants in *Marciniak I* moved to

20  dismiss the complaint.

21         On December 18, I offered to assist Ms. Clancy in

22  preparing the opposition to defendants' motion to dismiss

23  *Marciniak I*, and throughout the following weeks I provided

24  detailed suggestions and comments, but my input was not

25  incorporated into the final filings ultimately proving

1    detrimental to the case.

2          Ms. Clancy moved to consolidate the two matters, as I

3    mentioned, only on January 5, but because defendants' motion to

4    dismiss was pending, the court denied Ms. Clancy's request.

5          Ms. Clancy did not discuss with me her strategy going

6    forward.  Although I kept writing my comments and suggestions

7    on opposing defendants' motion to dismiss in *Marciniak II*,

8    Ms. Clancy did not implement my input as she promised she will

9    make sure she will.

10          Following your Honor's order from September 29 and

11    Judge Carter's order on September 30 this year, I contacted

12    Ms. Clancy to discuss the next steps in the litigation.  I

13    inquired, "What will be the next step?  I guess we could

14    request an extension of time to file amended pleadings."  When

15    I received no response, I followed up three days later, on

16    October 3rd, and I emphasized the urgency of the situation,

17    stating "Could you please provide an update on the next steps.

18    My husband and I understand that submitting amended pleadings

19    is our last opportunity for justice."  I requested a call to

20    discuss the matter further, which Ms. Clancy scheduled for the

21    following day.  And during that call, Ms. Clancy indicated that

22    she would not be focusing on amending *Marciniak I*.  She stated

23    that she would instead focus on correcting issues in *Marciniak*

24    *II*, suggesting that this approach was easier and required less

25    work.  She also indicated that as she would not require my

1    assistance in *Marciniak II*, my help was welcome in providing

2    input to *Marciniak I*, which I did, including adding gender

3    violence claim.

4        In the following two weeks, I was providing Ms. Clancy

5    with my comments, suggestions, and draftings on the pleadings

6    in *Marciniak I*.  However, I did not receive any draft pleadings

7    from Ms. Clancy for my review, nor her final version for my

8    approval, as she had previously promised.  I reached out to

9    Ms. Clancy to inquire the status of the amended complaint for

10    *Marciniak II* at one point, and she responded only on the day of

11    the filing, on October 29, indicating that the amendment would

12    focus solely on adding the New York City Gender-Motivated

13    Violence Act claim to address the claim-splitting issue and

14    send me a draft which she was about to file.  While Ms. Clancy

15    initially agreed to review some of my suggestions, she

16    ultimately declined my comments and filed the amended complaint

17    as originally drafted by her.

18        On November 1st, the defendants Rockefeller and MIT

19    submitted letter to——for extension of time in this action,

20    which was granted by your Honor until December 12th this year.

21    On November 12th, Ms. Clancy failed to inform me of a

22    significant development in the case and notice of sanctions

23    from defendants Rockefeller and Freiwald, which was asking to

24    dismiss *Marciniak II* in its entirety with prejudice by

25    December 3.

OCI1MARC

1           Your Honor, the first time I saw this letter was as a

2    exhibit to the letter submitted by the defendants, because

3    Ms. Clancy never forwarded me.  I never saw this letter from

4    her.  Furthermore, Ms. Clancy missed the deadline to respond to

5    a premotion letter filed by defendant Azevedo that day, on

6    November 12th, seeking dismissal of *Marciniak II* as duplicative

7    of *Marciniak I*.  The court sua-sponte granted her three days to

8    file opposition to Azevedo's premotion letters.  She filed her

9    opposition on November 21, again, without any consultation with

10   me, in which she requested that the court consolidate *Marciniak*

11   *II* with *Marciniak I*.  She wrote, "Plaintiff puts forth her

12   amendments to her pleading, addresses the claim-splitting

13   issue, and denies her amended complaint is duplicative."

14          And following this, as per Court's order, the

15   conference was scheduled on December 4th.

16          On November 25, Ms. Clancy reached out for a call

17   tomorrow afternoon to discuss the two ongoing matters.  During

18   the call on November 26, now for the first time, Ms. Clancy

19   said that her intent was to dismiss *Marciniak II* and to

20   continue with *Marciniak I*, and mentioned that defendants

21   Rockefeller and Freiwald contacted her to ask to dismiss the

22   claims as to them.  She didn't mention that they wanted to

23   dismiss with prejudice.  She slipped with——she slipped about

24   the conference.  She slipped her tongue about the conference,

25   and provided the wrong time, saying it's not important and that

1    it's only about defendant Azevedo's motion.  Ms. Clancy did not

2    tell me that the other party wanted us to agree for dismissal

3    with prejudice by the time of the conference.  And also, as I

4    mentioned, she did not forward me the sanction letter.

5          On December 2nd, I received an email that she was

6    planning to dismiss *Marciniak*——"was planning to dismiss

7    *Marciniak II* in its entirety without prejudice and continue

8    with *Marciniak I*," where she said we will look what other

9    claims can be added.  And she confirmed also this on subsequent

10   phone call in late afternoon, December 3rd.  However,

11   Ms. Clancy was pressuring me into making a quick decision to

12   agree with dismissal of *Marciniak II* to proceed with *Marciniak*

13   *I*, and she represented that the gender violence claim was

14   already a particular one and only the individuals had to be

15   added.  I insisted she send me a draft of the stipulation

16   first, and she did, and it was the draft of the dismissal

17   without prejudice.  I confirmed in writing that I agree with

18   this.  However, an hour later she sent another email seeking my

19   agreement to dismiss *Marciniak II* without explicitly stating

20   that the dismissal will be without prejudice.  Ms. Clancy

21   insisted "For confirming in an email your consent to presenting

22   this stipulation of dismissal to the opposing counsel."  I saw

23   this message only the following morning and my concerns grew.

24   I also verified that the Gender-Motivated Violence Act was not

25   there in *Marciniak I* as Mrs. Clancy told me, because Ms. Clancy

1    removed this suggested amendment and brought it in her——in

2    *Marciniak II* complaint.

3         I attended the conference on my own, obtaining its

4    details from Pacer monitor.  During the conference, I learned

5    that Ms. Clancy did not represent her next move as she said to

6    me, and she was not seeking to add the individuals to *Marciniak*

7    *I*.  Was waiting to craft dismissal with prejudice, and it was

8    solely in the court's initiative to dismiss any of *Marciniak II*

9    should not jeopardize *Marciniak I*.

10        I followed up with Ms. Clancy immediately after the

11   conference, informing her that I did not authorize entering

12   into stipulation of dismissal with prejudice and asked her to

13   inform me immediately about her next moves.

14        Lacking her response, later that day, I terminated in

15   writing my attorney-client contract.  I informed that I will do

16   the subsequent filings, which are due on December 11th, and I

17   did not authorize Ms. Clancy's subsequent——Ms. Clancy's

18   filings, which she did on her own, updating the Court about the

19   status.

20        In summary, your Honor, Ms. Clancy sabotaged my case,

21   either unintentionally, due to her negligence or incompetence,

22   or intentionally with malicious intent through colluding with

23   opposing party.  Ms. Clancy's conduct throughout our

24   representation fell short with the standard of care.  Instead

25   of actively pursuing amendment of *Marciniak I* as we had

OCI1MARC

 1    discussed, she filed a duplicative lawsuit and subsequently

 2    failed to mitigate the situation.  Even after the Court's

 3    feedback and instructions, Ms. Clancy failed to communicate

 4    with me about crucial case development and provided me with

 5    false or misleading information.  Ms. Clancy's conduct has been

 6    failing to act in my best interests.  As soon as I realized

 7    that the trust was inevitably broken, I acted diligently.  Any

 8    suggestion that I authorized Ms. Clancy's action or

 9    intentionally delayed seeking resolution is inaccurate and

10    misleading.  As a layperson, I relied on her expertise and I

11    trusted her to navigate the legal process effectively.  I had

12    no reason to suspect that Ms. Clancy would file a separate

13    lawsuit instead of amending the existing complaint, a decision

14    that has significantly harmed my case.

15            Furthermore, the decision that I'm merely seeking a

16    do-over is also unfounded.  I seek to rectify this situation

17    caused by Ms. Clancy's negligence and ensure a fair opportunity

18    for me to pursue my claims, and to suggest otherwise is to

19    disregard the serious harm that for sure her conduct caused

20    this case and to justice.

21            THE COURT:  So I certainly understand, Ms. Goncalves,

22    that you have a lot of frustration with Ms. Clancy.  I don't

23    know what went on during her representation of you, but it's

24    clear that you're very dissatisfied with how she represented

25    you.  The problem, though, is that really doesn't involve the

OCI1MARC

1   case before me here, or at least not with respect to the

2   problems in the case that I identified in my opinion.

3   Essentially, my conclusion in the opinion was that this case

4   was impermissibly duplicative of *Marciniak I*, the case before

5   Judge Carter.  And that is because of this doctrine called

6   claim-splitting, as I know you've become familiar with.  And

7   essentially that doctrine means that a person cannot bring two

8   different actions on the same subject against the same

9   defendants or defendants in privity with each other.  *Marciniak*

10  *I* involves claims that are still pending and were brought

11  against MIT and RU, and this action does as well, in addition

12  to Azevedo and Freiwald.  Now the problem with Azevedo and

13  Freiwald, as I mentioned, is that the allegations against RU

14  arose from Freiwald's conduct; the allegations against MIT

15  arose from Azevedo's conduct.  So that's why you can't

16  maintain, at least in my view——I may be wrong, and you could

17  appeal me and the Second Circuit may disagree with me, but in

18  my view, that's why this case cannot continue before me, this

19  is why your case has to be before Judge Carter, and that's

20  really the fundamental problem here.  And the concern that I'm

21  hearing from the defendants is dismissing this case without

22  prejudice doesn't give them any comfort because there may be

23  then just another case filed against them, when you only really

24  can proceed before Judge Carter here.

25          DR. MARCINIAK:  Yes, your Honor.  I wanted to address

1    this issue.  So I wanted to stress out that it was my

2    intention, always was my intention to bring the claims to

3    the——to the court in one place.  I diligently followed the

4    suggestions of NYLAG at that time when I was proceeding pro se

5    and I was submitting the first amended complaint, *Marciniak I*.

6    I mean, I——I was aiming to stay on the *Marciniak I* action.  It

7    was not my intention never to file the separate action.  And as

8    I was describing the events that happened around the

9    representation with the firm Ms. Clancy, Shegerian &

10    Associates, it was——I have proof with the emails.  And I was

11    under the belief that she would amend *Marciniak I* and will

12    amend this complaint.  So she did the action that was not

13    authorized by me and which caused the problems that shouldn't

14    be here in the first place, and the case and the claims which

15    are allegedly made should not be compromised, jeopardized by

16    this mistake, and your Honor viewed that, yes, this case should

17    proceed in *Marciniak I.*  I agree.  And your Honor also ruled in

18    the order that the case would be dismissed without prejudice,

19    and it was indicative to just let this order be executed and

20    not file any amendment, instead just continuing with *Marciniak*

21    *I*, and that was the proper case——that was the proper course of

22    justice.  So it was again Ms. Clancy's mistake in filing the

23    amended complaint, and again, reiterating the problem of the

24    claim-splitting, as I said, the huge incompetence and

25    negligence and her decision on which I didn't have much

1    influence.  Therefore, the defendants' argument that it was my

2    intentional conduct is absurd.  I am providing evidence,

3    providing the timeline, and I also have emails with Ms. Clancy,

4    showing that I really didn't have any authority over her

5    actions, which were errors and punished by the Court.

6          THE COURT:  But in light of that, why are you not

7    willing to dismiss this case with prejudice with the

8    understanding——and I'll go back to the defendants to see if

9    this would be agreeable——with the understanding that the

10   dismissal here would not affect any claims currently before

11   Judge Carter or which you may seek to bring before Judge Carter

12   in an amended complaint and he'll decide whether or not to

13   allow them?  Why is that not okay?

14         DR. MARCINIAK:  No.  I agree.  I agree.  I agree that

15   under this condition, that any additional claims that I could

16   bring would be only brought in *Marciniak I*, and under the Judge

17   Carter's opinion, I think it's reasonable.

18         THE COURT:  Now, Ms. Baddish, Mr. Wong, what about

19   that?  What if this case is dismissed with prejudice except

20   that the dismissal here would not affect any current or future

21   claims before Judge Carter in *Marciniak I*?  In other words,

22   Ms. Goncalves could request to amend her complaint in that case

23   and Judge Carter could decide whether to allow the amended

24   complaint or not, but she would not be precluded from doing so

25   based on the dismissal here.

OCI1MARC

1          MS. BADDISH:  Your Honor, I think that that's fine.  I

2    just want to be clear that we're concerned about adding

3    additional parties, and she has to demonstrate that she has a

4    legal basis to do so, and she actually has since filed a

5    premotion letter seeking leave to amend her complaint in

6    *Marciniak I*.  And we filed a response to that, which we sent to

7    your Honor yesterday.

8          THE COURT:  Yes.

9          MS. BADDISH:  Yeah.  So I think that would be fine.

10    So all claims in this case dismissed with prejudice, and she

11    can bring claims in *Marciniak*, except to the extent that

12    they're currently asserted in *Marciniak I* or Judge Carter

13    grants her leave to assert them in *Marciniak I*, is that——

14          THE COURT:  Correct.  Correct.

15          Mr. Wong?

16          MR. WONG:  Your Honor, I think MIT would be okay with

17    that.  I mean, we would just note that just now, in the course

18    of the plaintiff's submission, she noted that she had added the

19    Gender-Motivated Violence Act claim "to address the

20    claim-splitting issue," and so to the extent that that was,

21    like, the whole reason for it, just seems that——I guess it

22    seems that there's not any reason to permit her to kind of

23    allege that as a new claim in the existing action given all of

24    the opportunities that she had, but we're okay with——

25          THE COURT:  And I think the point there is really,

OCI1MARC

1   that's for Judge Carter to decide and not me.

2           Mr. Martin?

3           MR. MARTIN:  Yes, your Honor, with the provisos that

4   have been expressed, that's certainly acceptable to

5   Dr. Azevedo.

6           THE COURT:  And are you in a position to sign off on

7   that for your clients, the language?  And I'll repeat the

8   language again.  But I don't want to put you on the spot if you

9   need to go back to your clients and discuss this any further.

10          MS. BADDISH:  I would feel more comfortable if we just

11  had the opportunity to go back to them.  I don't anticipate

12  that there will be an issue.

13          THE COURT:  So let me read to you basically what I

14  have in mind as to the language of the dismissal, and you can

15  let me know if this is agreeable:

16          "The instant action is dismissed with prejudice except

17  to the extent that the dismissal in this case would not affect

18  any current or future claims brought in *Goncalves v.*

19  *Massachusetts Institute of Technology*, No. 22 Civ. 10959 (ALC)

20  (S.D.N.Y.)."  So that essentially would be the language that I

21  would be thinking about.

22          MS. BADDISH:  Your Honor, I was just going to suggest,

23  would you be amenable to adding something that says that this

24  order is not to be construed as plaintiff being permitted to

25  add any claims or parties in *Marciniak I*?

OCI1MARC

1          DR. MARCINIAK:  No, but your Honor, just a second.  I

2   think we agreed that I would be permitted to add the claims——

3          MS. BADDISH:  No.  Absolutely not.

4          THE COURT:  That's absolutely not correct.

5          DR. MARCINIAK:  ——against the individuals.

6          THE COURT:  Ms. Goncalves, let me explain this to you

7   again.  Let me take a step back.

8          In federal court, different judges resolve different

9   cases on their dockets.  My point here is that this case should

10  never have been before me because you already have a case

11  before Judge Carter, who is another judge in this district, but

12  he has his own docket and his own cases.  I can't decide what

13  Judge Carter decides; only Judge Carter can do that.  So you

14  can make your request to Judge Carter to add claims or add

15  defendants in that case, but that is for him to decide and not

16  me.  Do you understand that?

17         DR. MARCINIAK:  Yes, your Honor, I understand.  I

18  would just be more comfortable if the language speaks to——about

19  additional claims and defendants.

20         THE COURT:  "Nothing in this order is to be construed

21  as offering any view as to whether the plaintiff should be

22  permitted to add any claims or defendants in *Marciniak I*?"

23         MS. BADDISH:  Permitting plaintiffs to add?

24         At this point she has to make——she has to satisfy a

25  burden to amend her complaint in *Marciniak I*.

OCI1MARC

1          THE COURT:  Correct.

2          MS. BADDISH:  And I want to make sure that this order

3     is not going to be construed or, you know, misrepresented as

4     saying, you know, Judge Cronan indicated that she would be able

5     to add new claims and parties, so I just want to be clear that

6     it shouldn't be construed as permitting her to do so, to Judge

7     Carter.

8          THE COURT:  How about this then:  "Nothing in this

9     order should be construed as the undersigned taking a position

10    as to whether the plaintiff should be permitted to add any

11    claims or defendants in *Marciniak I*," we'll call it?

12         MS. BADDISH:  That's okay.  Thank you, your Honor.

13         MR. WONG:  And your Honor, just to be clear, this is

14    still reserving your jurisdiction on the Rule 11 issues; is

15    that right?

16         THE COURT:  It is.  I guess one question for that is,

17    on the Rule 11 issue, has the time to withdraw under Rule 11

18    elapsed by now?

19         MS. BADDISH:  Yes.  It was December 3rd.

20         THE COURT:  Do you have a sense as to whether you

21    still intend to proceed on that at this point, or you need to

22    think about that some more?

23         MS. BADDISH:  I think we need to confer with our

24    client.  At least we do.

25         THE COURT:  Yes.  And I don't envision this order,

OCI1MARC

1  assuming everyone is on board with it, expressing any view on

2  the Rule 11 motion, and a motion like Rule 11 is generally

3  considered an ancillary matter that I would still have

4  jurisdiction over even after I terminate the case.

5         Ms. Goncalves, the language that I just mentioned

6  again, is that agreeable to you?

7         DR. MARCINIAK:  Yes.  I don't have any objections.

8         THE COURT:  Okay.  And at the risk of really testing

9  the reporter's patience——thank you——let me just read the

10  language one last time, so everyone is on board.  This is the

11  language that I'll ask you to go back and confirm that your

12  clients are okay with.  And based on Ms. Goncalves's

13  representation, I will assume, unless she says otherwise, she

14  is okay with this language as well.

15         I would issue an order dismissing the case, and the

16  order would read:  "The instant action is dismissed with

17  prejudice except to the extent that the dismissal in this case

18  would not affect any current or future claims brought in

19  *Marciniak-Domingues Goncalves Agra v. Massachusetts Institute*

20  *of Technology*, No. 22 Civ. 10959 (ALC) (S.D.N.Y.) ("*Marciniak*

21  *I*").  Nothing in this order should be construed as the

22  undersigned taking a position as to whether the plaintiff

23  should be permitted to add any claims or defendants in

24  *Marciniak I*."

25         And does everyone have that?

OCI1MARC

1          Ms. Goncalves, that language is agreeable to you,

2    correct?

3          DR. MARCINIAK:  I think we also said that the language

4    defendants should be added, or the parties.  So I didn't hear

5    that this was included, not only claims but also the parties.

6          THE COURT:  The last sentence says, "Nothing in this

7    order shall be construed as the undersigned taking a position

8    as to whether plaintiff should be permitted to add any claims

9    or defendants in *Marciniak I*."  Does that work?

10          DR. MARCINIAK:  Yes.

11          THE COURT:  How long do you think you would need to

12    consult with your clients to confirm whether that language

13    works?

14          MS. BADDISH:  I would say no more than a week.  I

15    mean, well, it's the holiday, so I think by the end of next

16    week?

17          THE COURT:  End of next week is fine.

18          MS. BADDISH:  If that's okay with everyone else.

19          THE COURT:  That would be December 27th.  And

20    Mr. Martin, that works for you as well?

21          MR. MARTIN:  I can make it work, your Honor, yes.

22          THE COURT:  If I do not hear from you, can I assume

23    that your clients are on board, if I don't hear anything by

24    December 27th?

25          MR. MARTIN:  That's acceptable to me, your Honor.

OCI1MARC

1            MS. BADDISH:  Yes, your Honor.

2            MR. WONG:  Yes, your Honor.

3            THE COURT:  Great.  So I'll either hear from you to

4    confirm by December 27th or let me know for whatever reason

5    that does not work, or if I don't hear anything, I'll assume

6    that everyone is on board and issue an order along those lines.

7            Okay.  Anything further, then, we should take up

8    today?

9            MS. BADDISH:  Sorry.  How should we contact you?

10           THE COURT:  Oh.  I'll issue a minute entry.  It should

11   be a letter filed on the docket, but I'll put that on the

12   record, on the docket as well, to let you know that's how you

13   should communicate it.  Okay?

14           Is there anything further then we should take up

15   today?  I think we've covered everything.

16           Great.

17           MS. BADDISH:  Thank you, your Honor.

18           THE COURT:  Thank you, all, and have a good rest of

19   the day.  Take care.

20           THE DEPUTY CLERK:  All rise.

21                              o0o

22

23

24

25