Dr. Karolina Agra
500 E. 63rd Street, Apt. 13F
New York, New York 10065
(646) 770-2045
marciniak.kar@gmail.com

August 18, 2025

**Via ECF**
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Courtroom 435
New York, New York 10007

Re:  Marciniak-Domingues Goncalves Agra v. Rockefeller University, Frederico Azevedo and Winrich Freiwald; Case No. 1:22-cv-10959-ALC

Dear Judge Carter:

I respectfully submit this letter in Opposition to Defendant Frederico Azevedo's ("Azevedo") request for leave to file a motion to dismiss the Third Amended Complaint ("TAC"), ECF 172. Azevedo's arguments—predicated on misapplications of res judicata, manufactured timeliness objections, and a willful misreading of pleading standards—ignore binding precedent, factual reality, and the gravity of the gender-motivated violence alleged. For the reasons below, the Court should deny leave and uphold the TAC.

I. CURTIS V. CITIBANK DOES NOT BAR THE TAC: CLAIM-SPLITTING IS INAPPLICABLE TO PROCEDURALLY CURED ERRORS

Azevedo's argument erroneously contending that *Marciniak II* (23-cv-10305) precludes this action under claim-splitting and res judicata doctrines fails at its foundation: no final judgment on the merits exists to trigger preclusion. Marciniak II was dismissed via stipulation (ECF 94) without adjudication of the merits, rendering res judicata inapplicable. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994) (preclusion requires "final judgment on the merits").

Azevedo's reliance on *Curtis v. Citibank,* 226 F.3d 133 (2d Cir. 2000), misconstrues both the holding and purpose of the claim-splitting doctrine. *Curtis* prohibits plaintiffs from "maintain[ing] two actions on the same subject in the same court, against the same defendant at the same time" (id. at 139) (emphasis added). Here, three dispositive distinctions defeat Azevedo's argument:

First, *Marciniak II* (23-cv-10305) was a ministerial nullity, not a substantive lawsuit. Plaintiff's counsel erroneously filed a new action (*Marciniak I*I) instead of amending the original complaint (*Marciniak I*). This procedural defect was judicially cured when: (i) Judge Cronan dismissed *Marciniak II* without prejudice to claims in *Marciniak I*; and (ii) this Court expressly permitted amendment of *Marciniak I* to add Azevedo and GMVA claims (Docket entry: 02/20/2025, 03/03/2025). Thus, only one operative action (*Marciniak I*) ever existed post-amendment.

Second, *Curtis* expressly carves out exceptions for claims arising post-complaint. The Second Circuit held: "Events arising after the filing of the complaint [...] may be brought in a later suit" (226 F.3d at 139). The GMVA claim accrued when the statutory revival window opened (N.Y.C. Admin. Code § 10-1104), long after Marciniak I's initial filing.

Third, the claims are not "identical" under *Curtis*'s "same subject" test, as TAC alleges materially distinct facts and legal theories absent in *Marciniak II*, satisfying *Breest v. Haggis*, 180 A.D.3d 83 (1st Dep't 2019), including:

- Hate crime violations under N.Y. Penal Law § 485.05, predicated on Azevedo's ethnic slurs ("All Polish women I met in Germany were cleaning ladies," TAC ¶ 63) and neo-Nazi rhetoric (self-identification as "Fuhrer" in CBMM forums, TAC ¶ 61);
- Biologically weaponized gender violence via deliberate HPV transmission during sexual assault, causing cervical dysplasia and cancer risk (TAC ¶¶ 58–59), exploiting female anatomy to inflict gendered harm;
- Expanded retaliatory conduct post-Marciniak II, including witness intimidation and evidence spoliation (TAC ¶¶ 81, 136–137).
- 

These allegations transform the claims into distinct hate crimes under N.Y. Penal Law § 485.05., constituting "different transactional facts" that defeat claim preclusion. *Curtis v. Citibank*, 226 F.3d 133, 139 (2d Cir. 2000). Moreover, Azevedo's privity argument ignores that Marciniak II's dismissal expressly preserved Plaintiff's right to pursue claims in this action. Granting leave to dismiss would thus violate the "elementary fairness" doctrine underpinning res judicata. *Stone v. Williams*, 970 F.2d 1043, 1054 (2d Cir. 1992). (cf. *Whitfield v. City of New York*, 181 A.D.3d 551 [1st Dep't 2020])

II. THE GMVA REVIVAL STATUTE OVERRIDES RULE 16(b) "GOOD CAUSE" CONCERNS

Azevedo's timeliness argument ignores the New York City Victim Gender-Motivated Violence-Protection Law's ("VGMVPL") statutory mandate, modeled on federal Gender-Motivated Violence Act ("GMVA"), 42 U.S.C. § 13981(b). Enacted in January 2022, the GMVA 2022 Amendment & Lookback Window opened from March 1, 2023, to February 28, 2025. N.Y.C. Admin. Code § 10-1104. The VGMVPL's provision revives time-barred claims for gender violence, creating an independent jurisdictional basis untethered to Rule 16(b)[1], See generally *Doe v. Hartford Roman Catholic Diocesan Corp.*, 119 A.3d 462, 510 (Conn. 2015) (discussing the impact of state constitutional restrictions on the ability of state legislatures to revive a time-barred claim through the retroactive extension of statutes of limitations). Plaintiff filed the TAC on February 28, 2025—the final day of the revival window—rendering it timely as a matter of law. Even under Rule 16(b), "good cause" exists. Amendment cured jurisdictional defects from counsel's erroneous *Marciniak II* filing, consolidated claims per the Court's directive to avoid duplicative litigation, and incorporated critical new evidence (e.g., WhatsApp logs proving neo-Nazi animus).This satisfies *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000), which requires only "diligence" in advancing judicial economy. Azevedo's reliance on *Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.,* 304 F.R.D. 170 (S.D.N.Y. 2014), is inapposite: Unlike parties seeking tactical advantage, Plaintiff acted to correct procedural errors in service of statutory objectives.

---

1  Whether referring to Rule 16(b), the concept of "good cause" when seeking to modify a schedule or deadline in litigation revolves around demonstrating a legitimate and diligent effort to comply with the existing schedule, and presenting a compelling reason why a modification is necessary and justifiable under the circumstances.

III. THE TAC PLEADS GENDER ANIMUS WITH FACTUAL SPECIFICITY UNDER *BREEST* AND HATE CRIME PRECEDENT

      Azevedo's commission of Forcible Touching (N.Y. Penal Law § 130.52) and Rape in the Third Degree (N.Y. Penal Law § 130.25(3)) during the March 2018 assault in Plaintiff's New York City apartment at Rockefelelr University (TAC ¶ 59), and during the August 2017 assault in Woods Hole, MA, at CBMM Summer School[2], elevated to aggravated offenses under N.Y. Penal Law § 130.70(1)(a) due to the biological weaponization effect, because Azevedo knowingly exposed Plaintiff to cancer-causing HPV ("reckless endangerment" (N.Y. Penal Law § 120.25), "depraved indifference assault" (N.Y. Penal Law § 120.10(3)), collectively constitute biologically weaponized hate crimes that per se violate the federal Gender-Motivated Violence Act, 42 U.S.C. § 13981(b), as acts of violence committed "because of gender" and motivated by gender-based animus through the exploitation of female biological vulnerabilities.

      Azevedo's *Twombly/Iqbal* challenge regarding sufficiency of facts plead in TAC, which could demonstrate Azevedo's gender animus in committing these acts, disregards binding GMVA jurisprudence. It had been settled under the Violence Against Women Act, the federal civil rights remedy, that the animus element covered at least "sex-based intent" and any "strong emotional response to the victim's gender or sexual identity." *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000). "[A]ll rapes and sexual assaults" are thus "necessarily animated by gender-animus." *Id.*; see also *id*. at 1203 ("With respect to rape and attempted rape, at least, the nature of the crime dictates a uniform, affirmative answer to the inquiry."); *accord Breest v. Haggis*, 180 A.D.3d 83, 92-93 (1st Dep't 2019)(allegations of rape and sexual assault are, taken together, sufficient to establish animus).

      *Breest v. Haggis* holds that gender animus may be inferred from derogatory statements during assaults (180 A.D.3d at 89), exploitation of biological vulnerabilities (id.), or pattern of gender-based conduct (id. at 90). The TAC surpasses this standard through granular allegations. First, Azevedo exhibited direct evidence of animus in his gender-derogatory statements during assaults. During the 2017 rape, he was mocking Plaintiff's relationship: "How does it feel to cheat on your boyfriend?", weaponizing gendered relationship norms (TAC ¶ 42); In 2018, he was taunting her HPV diagnosis: "Welcome to the population of people with STDs" (TAC ¶ 58), and was throwing ethnic slurs targeting Polish women "All Polish women I met in Germany were cleaning ladies" (TAC ¶ 63). These allegations far exceed "labels and conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Breest v. Haggis*, 180 A.D.3d 83 (1st Dep't 2019), cited by Azevedo, actually supports sufficiency here: Like the "misogynistic statements" in *Breest,* Azevedo's slurs and HPV mockery reveal animus "because of gender." *Id*. at 89. The GMVA requires only that gender be "a motivating factor," not the sole cause. *Doe v. Smith*, 2023 WL 4565442, at *6 (S.D.N.Y. 2023). In addition, Azevedo's intentional transmission of cancer-linked HPV constitutes per se gender animus. HPV's disproportionate harm to women transforms this into depraved indifference assault (N.Y. Penal Law § 120.10[3]), and hate crime enhancement under § 485.05(1)(a) (targeting gender).

---

2    The Second Circuit's recent decision in *Sutton v. Tapscott,* No. 22-2327 (2d Cir. 2024), squarely confirms that tortious acts committed outside New York—including sexual assault—cause cognizable injury within New York when the victim is a state resident. There, the court held the Child Victims Act revived claims for out-of-state abuse because the plaintiff was a New York resident when her cause of action accrued. Id. at [Page]. Here, Plaintiff was a full-year resident of New York during and after Azevedo's August 2017 rape in Woods Hole. Like the CVA, the GMVA targets gender-motivated violence against New York residents, and its protections extend to out-of-state torts where the victim suffers enduring harm in New York. Sutton thus reinforces that Azevedo's Massachusetts assault satisfies § 302(a)(3)'s requirement of 'injury within the state.

Finally, totality of circumstances confirms animus. *Fierro v. Taylor,* 2012 WL 6965719, at *1 (S.D.N.Y. Oct. 22, 2012); *Jugmohan v. Zola*, 2000 U.S. Dist. LEXIS 1910, 2000 WL 222186, at *3-4 (S.D.N.Y. Feb. 2000). For example, 'extensive history of acting in a humiliating, abusive, or degrading sexual manner exclusively toward other women' that included criminal charges' establishes required animus. *Id*, *accord*: Azevedo's history of sexual misconduct towards other women, see TAC ¶ 37-38, 50, 62, 65-66, 80, 88, 98. *Fierro v. Taylor*, 2012 WL 6965719 (S.D.N.Y. Oct. 22, 2012), directs courts to examine: (i) lack of provocation (*accord*: here, Plaintiff was a non-consenting victim); (ii) severity of attack: (*accord*: here, forcible rape + HPV transmission); and (iii) history of similar conduct (accord: Azevedo's history of misconduct, (TAC ¶ 37-38, 50, 62, 65-66, 80, 88, 98), his Neo-Nazi rhetoric (TAC ¶ 61) and stalking (TAC ¶ 87)).These facts satisfy the GMVA's "motivating factor" standard by sufficiently alleging that Azevedo acted "because Plaintiff is a woman" *Breest v. Haggis*, 180 A.D.3d 83 (1st Dep't 2019).

IV. PUBLIC POLICY

Congress enacted the GMVA to combat violence that "restricts women's movement [and] employment" (S. Rep. 103-138, at 54). Dismissing claims pleading of i(i) nstitutional enablement, i.e., CBMM's "men's club" culture (TAC ¶ 66), (ii) federal funding violations: Title IX, 20 U.S.C. § 1681, and (iii) weaponized public health risks (HPV transmission), would frustrate the statute's remedial purpose. *Sutton v. Tapscott,* No. 22-2327 (2d Cir. 2024) (revival statutes remedy systemic injustice). Dismissal would defy the GMVA's intent to redress "violence restrict[ing] women's movement and employment." S. Rep. 103-138, at 54 (1993).

CONCLUSION
For the foregoing reasons, Azevedo's request for leave to dismiss should be denied. The TAC is procedurally proper, timely under the GMVA revival statute, factually and legally sufficient to state a claim., and essential to vindicating the GMVA's public policy objectives. Permitting further motion practice would sanction Azevedo's strategy of evasion and prejudice Plaintiff's pursuit of justice. The Court should instead set a briefing schedule for Plaintiff's motion for default judgment against Azevedo.

I appreciate the Court's understanding and consideration of this request.

Respectfully submitted,

*Karolina Agra*

--------------------------------------------
Dr. Karolina Agra
(Plaintiff *pro se*)
500 E. 63rd Street, Apt. 13F
New York, New York 10065
(646) 770-2045
marciniak.kar@gmail.com