Dr. Karolina Agra
500 E. 63rd Street, Apt. 13F
New York, New York 10065
(646) 770-2045
marciniak.kar@gmail.com

August 27, 2025

**Via ECF**
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Courtroom 435
New York, New York 10007

> Re:   Marciniak-Domingues Goncalves Agra v. Rockefeller University, Frederico Azevedo and Winrich Freiwald; Case No. 1:22-cv-10959-ALC

Dear Judge Carter:

Pursuant to the Court's grant of leave, Plaintiff Dr. Karolina Agra respectfully submits this sur-reply to address Defendant Azevedo's new and procedurally improper argument—raised for the first time in his reply letter (ECF 186 at 3–4)—that Plaintiff must file a new, "discrete" pleading to assert claims based on the August 2017 Woods Hole assault. This argument is a meritless procedural diversion designed to obscure the core facts: Azevedo is a non-domiciliary who deliberately injected himself into New York to continue a campaign of gender-motivated violence that began in Massachusetts. For the reasons below, and those stated in Plaintiff's prior opposition, Azevedo's request for leave to dismiss should be denied in its entirety.

## I. THE TAC ADEQUATELY PLEADS A UNIFIED GMVA CLAIM BASED ON A CONTINUOUS COURSE OF PREDATORY CONDUCT

The Third Amended Complaint ("TAC") pleads a single, unified claim under the New York City Gender-Motivated Violence Act ("GMVA") based on a continuous pattern of predatory conduct. The 2017 Woods Hole assault (TAC ¶¶ 36–49) is not an isolated incident but the critical, foundational act in this pattern. It established Azevedo's motive, his method of isolation, and inflicted the biological harm (the cancer-linked HPV infection) that he later weaponized during the New York assault, mocking Plaintiff with, "Welcome to the population of people with STDs" (TAC ¶ 58). To sever this act from the New York assault would artificially fracture a cause of action that is inextricably linked by his intentional, predatory conduct. The GMVA encompasses a "course of conduct," and the TAC provides more than adequate notice of the "who, what, where, and when" of the Woods Hole assault. Azevedo's demand for atomized pleading finds no support in the Federal Rules or the statute. This is not a new allegation, as evidenced by Plaintiff's official report to Massachusetts authorities in 2019, which documented the assault and its connection to the subsequent New York assault, for which an NYPD report was also filed. Azevedo's demand for a 'discrete' pleading is an attempt to artificially fracture this integrated course of conduct." Falmouth Police Department Report, Incident #19-7622-OF, NYPD

Complaint Report, #2022-019-008886. This pattern of conduct proves Azevedo "should reasonably have expected the act to have consequences in the state" of New York (CPLR § 302(a)(3)(ii)).

## II. THIS COURT HAS PERSONAL JURISDICTION OVER AZEVEDO FOR THE WOODS HOLE ASSAULT

A. <u>The Woods Hole assault caused foreseeable, severe, and enduring injury in NY to a NY- resident</u>

Azevedo's demand for a "specific long-arm theory" (ECF 186 [TAC],¶ 3) ignores the allegations already in the TAC and this Circuit's precedent. Personal jurisdiction is properly pled under CPLR § 302(a)(3), as the Woods Hole assault caused a foreseeable, severe, and enduring injury in New York to a New York resident. Azevedo knew Plaintiff, his victim, was a New York resident at the time of the assault, making it entirely foreseeable that the injury from that out-of-state tort would be suffered in New York. Plaintiff's contemporaneous New York address (XXX E XXSt, 100XX New York, NY), listed in the Falmouth Police Report, provides critical evidence for personal jurisdiction under CPLR § 302(a)(3).

Azevedo's intentional tortious conduct in Massachusetts (the August 2017 rape in Woods Hole) caused continuing, foreseeable harm to Plaintiff within New York. His pattern of predatory conduct—beginning in Woods Hole and continuing through his purposeful availment of New York's forum—was directed at her with the expectation that she would suffer the entirety of her harm in New York. This harm is not abstract; it is documented, severe, and ongoing.

One week post-assault, on September 5, 2017, she presented with physical symptoms (dysuria, discharge) consistent with trauma. She was prescribed pain medication, antibiotics, and contraceptives. A Pap smear performed that day revealed cellular changes, diagnosed as a pre-cancerous condition, Low-Grade Squamous Intraepithelial Lesion (LGSIL/CIN1), highly suggestive of an active HPV infection. An HPV DNA test returned negative, which was expected due to the short incubation period, confirming she did not have HPV prior to the assault. This evidence of tangible physiological harm diagnosed and treated in New York is detailed in the medical record, which from her September 5, 2017 visit reveals a diagnosis of a pre-cancerous condition, Low-Grade Squamous Intraepithelial Lesion (LGSIL/CIN1), highly suggestive of a new, active HPV infection just one week post-assault (Exhibit 1, pp. 5-7, 24).

This harm was not only physical but also profound psychological trauma, which was dramatically exacerbated by his subsequent conduct. As detailed in the TAC, shortly after the assault, Azevedo callously dismissed Plaintiff's lack of consent and described his own history of sexually assaulting an intoxicated individual, an admission Plaintiff reasonably interpreted as a threat and act of intimidation (TAC ¶ 50). This confrontation, coupled with the assault itself, inflicted severe and enduring psychological injury that manifested in New York.

The stress and fear stemming from Azevedo's ongoing conduct, including the anticipatory anxiety of his impending return to New York for a conference, directly contributed to acute medical events, such as the Stage 2 Hypertension[1] (156/103) diagnosed on March 1, 2018[2]- the same visit that returned the first confirmed positive HPV test, definitively linking the infection to the assault (Exhibit

---

[1] Plaintiff was immediately sent for further medical examination
[2] The examination on March 1, 2018, provides another critical, objective corroboration of the assault. This exam returned the first positive HPV test—a result fully consistent with medical expectation, as the virus had by then replicated to a detectable level following the August 2017 assault. Critically, Plaintiff had no other sexual contact during this period, creating a medically conclusive chain of causation from the assault to the infection. This positive test definitively confirms that the pre-cancerous LGSIL/CIN1 diagnosed on September 5, 2017, was an early cellular indicator of this new HPV infection. The timeline—an initial negative HPV test days after the assault (confirming no prior infection), followed by cellular changes and a subsequent positive test months later—constitutes compelling and unambiguous medical proof that the infection was a direct result of the defendant's tortious conduct.

1, pp. 6, 28). Chronological HPV tests over the following two years, supported by contemporaneous Pap tests (see Exhibit 1), consistently align as objective medical proof that the HPV infection was a direct result of the assault, with a lasting duration that aligns with the expected recovery period.

      The medical timeline proves the HPV infection—a direct result of the assault—was diagnosed, treated, and endured in New York, as objectively documented by a positive HPV test result every six months for over two years following the assault (Exhibit 1, p. 24), constituting a "cognizable injury within the state" under *Sutton v. Tapscott*, No. 22-2327 (2d Cir. 2024). Like the Child Victims Act reviewed in *Sutton*, the GMVA protects New York residents, and its jurisdictional reach extends to out-of-state torts where the victim suffers enduring harm in New York. Plaintiff, a full-year resident of New York during and after the rape, suffered the entirety of her emotional, psychological, and professional harm in New York. This is sufficient to confer jurisdiction under § 302(a)(3). See Id. Azevedo's request for a more "specific" theory is a demand for a level of pleading specificity not required at this stage.

B. Azevedo Purposefully Availed Himself of New York.

      Azevedo's deliberate and sustained contacts with New York in his official, recognized role within the CBMM's administrative structure, satisfy constitutional due process. He did not simply commit an isolated act in Massachusetts; he deliberately pursued his victim into her home forum, leveraging his professional affiliation to create opportunities for further abuse.

      Following the Woods Hole assault, Azevedo actively inserted himself into New York. He did not passively await an invitation; he proactively leveraged his role as a CBMM coordinator to initiate travel to New York for RU-sponsored events. In Fall 2017, he invited himself on multiple occasions, specifically requesting lodging from Plaintiff to attend Rockefeller University's Halloween and Holiday Feasts. A February 15, 2018, email identifies Azevedo as an official CBMM coordinator, proving he wasn't just a random academic visitor but held an official, ongoing role within a consortium that had significant ties to New York through Rockefeller University (EXHIBIT 2: *Sullivan/Freiwald Email*). Paragraph 56 details the task Freiwald gave Plaintiff to manage connections for CBMM seminars, where Azevedo was identified as an organizer (ECF 136 [TAC], ¶ 56). Paragraph 57 then details Azevedo's subsequent trip to New York for a conference, where he assaulted Plaintiff (*Id*,¶ 57). Azevedo's role was official and his presence in the CBMM structure involved direct business communication with New York, making his travel to New York for related events a foreseeable part of his role. Azevedo's use of his academic status to insert himself into the New York academic community, gain proximity to Plaintiff, and network with other researchers constitutes a "pattern of purposeful activity" directed at the state. His role as an official CBMM coordinator, as demonstrated by his inclusion on official CBMM correspondence to Freiwald at Rockefeller University (EXHIBIT 2: *Sullivan/Freiwald Email*), and his repeated, self-initiated trips establish the "ongoing business relationship" with the New York-based academic community required for jurisdiction. See *State v. Vayu*, 39 N.Y.3d 330 (2023) (attending in-person meetings in New York constitutes transacting business); *People v. JUUL Labs, Inc*., 212 A.D.3d 414 (1st Dep't 2023) (attending New York-based social events for business development satisfies § 302(a)(1)). By requesting and accepting lodging from a New York resident, he availed himself of a local benefit for his professional convenience, akin to retaining a local firm. See *4069 Rosen Assoc.*, 2022 N.Y. Slip Op. 03864 (1st Dep't).

      Critically, the cause of action for the claims arising from the March 2018 rape in Plaintiff's New York apartment literally arose from this in-state business activity. Azevedo's attendance at the conference was the direct pretext that placed him in New York and provided the opportunity for the assault. The nexus is exceptionally strong: but for his business trip to New York, he would not have been in Plaintiff's apartment to commit the assault. On March 15, 2018, during this conference, he mocked Plaintiff's HPV diagnosis and sexually assaulted her. Azevedo was not a passive invitee but an

aggressive instigator who exploited his professional travel to commit a tort, as corroborated by the sworn affidavit of his contemporaneous behavior in the apartment (EXHIBIT 3: *Hacisuleyman Aff.*).

His conduct demonstrates a "calculated maneuver" and a "pattern of self-initiated contact" that shows a deliberate intent to avail himself of the benefits of New York and to maintain proximity to his victims. This was not an isolated pattern directed solely at Plaintiff. As alleged, Azevedo engaged in similar sexual harassment behavior towards other women in the CBMM community, including a Rockefeller University student. (ECF 1, Compl., ¶ 121). This evidence of a broader pattern of predatory behavior reinforces that his travel to New York was a purposeful part of a calculated strategy, making it entirely foreseeable that he could be haled into court here for torts committed against its residents. Because he deliberately injected himself into New York's academic community, his actions were 'purposefully directed' at the state, thus satisfying the requirements of New York's long-arm statute, CPLR § 302(a)(1). Furthermore, exercising jurisdiction is consistent with constitutional due process requirements. Azevedo 'should reasonably anticipate being haled into court' in New York, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), as he deliberately traveled to the forum state and the tortious conduct occurred there, see also *Calder v. Jones*, 465 U.S. 783, 789–90 (1984). This is especially reasonable given New York's paramount interest in protecting its residents from gender-motivated violence perpetrated within its borders.

### III. NEW EVIDENCE OVERWHELMINGLY ESTABLISHES GENDER ANIMUS

Azevedo's challenge to the pleading of gender animus is demolished by new, objective evidence that proves both motive and the tangible, lasting injury suffered in New York. Critically, this misconduct occurred within the scope of his official duties. His role as an official CBMM coordinator, as demonstrated by his inclusion on official CBMM correspondence to Freiwald at Rockefeller University (EXHIBIT 2: *Sullivan/Freiwald Email*), provided him the platform and authority to interact with junior researchers like Plaintiff. He exploited this official capacity to initiate inappropriate contact, adding Plaintiff to a WhatsApp group for a CBMM retreat game where he immediately began using hateful rhetoric, referring to himself and others as "Führer" (EXHIBIT 4: *CBMM Führer WhatsApp Logs*). This was not a private joke among friends but documented evidence of discriminatory animus in a professional forum, which provides the motive for his subsequent actions. His attempt to involve Plaintiff in this "social" activity—which his messages indicate he intended to culminate in a bar ("let's meet in my office and then go to a bar to drink a beer")—mirrors a pattern of using CBMM events to create opportunities for inappropriate conduct. This pattern of retaliatory hostility is clear: when Plaintiff later refused during an official CBMM retreat to enable his sexual pursuit of students, he immediately retaliated in his official capacity with an ethnic slur, publicly demeaning her Polish heritage (TAC ¶ 62). This retaliatory conduct was not unique to Plaintiff; as sworn testimony confirms, he displayed similar unusual rudeness and aggression towards other women, including her roommate (EXHIBIT 3: *Hacisuleyman Aff.* ¶ 5-7), a pattern that subsequent evidence will further corroborate. Second, the assault caused a severe, gendered biological injury. The medical timeline (EXHIBIT 1: *Medical Record*) provides scientific proof that the Woods Hole assault caused an HPV infection—a harm that disproportionately threatens women with cancer—which Plaintiff diagnosed, treated, and suffered from in New York. Azevedo then weaponized this very injury during the New York rape, mocking her diagnosis. His conduct—abusing his official role to engage in a pattern of bigoted and retaliatory behavior and to inflict and mock a gendered injury—constitutes per se gender animus.

### IV. AZEVEDO'S ARGUMENT IS A PROCEDURALLY IMPROPER PIVOT

Azevedo's suggestion that Plaintiff must now seek leave to amend is a transparent attempt to delay these proceedings. The TAC was filed with the Court's permission on February 28, 2025, within the GMVA's statutory revival window, and explicitly incorporates the Woods Hole allegations. The

time to object to the amendment's scope or timeliness was in opposition to the motion to amend, not in a reply brief on a pre-motion to dismiss. Azevedo cannot use a reply letter to functionally challenge the Court's prior order allowing the amendment. The argument is both procedurally improper and substantively meritless.

## CONCLUSION

Azevedo's new argument is a confession against interest. He seeks to avoid the full picture of his conduct: a predator who committed an assault in Massachusetts and then purposefully pursued his victim into New York, causing severe and continuing injury within this state. The Woods Hole assault is an integral part of a single, continuous GMVA claim. The new evidence—of his self-initiated travel, his bigoted communications, and the medical proof of harm suffered in New York—leaves no doubt that this Court has personal jurisdiction and that the TAC amply pleads a vicious pattern of gender-motivated violence.

For these reasons, and those stated in Plaintiff's prior opposition, Azevedo's request for leave to dismiss should be denied in its entirety.


Dated: August 27, 2025


Respectfully submitted,

*Karolina Agra*
-------------------------------------

DR. KAROLINA AGRA
(Plaintiff Pro Se)
500 E. 63rd Street, Apt. 13F
New York, New York 10065
(646) 770-2045
marciniak.kar@gmail.com