*Submitted via email to <u>ALCarterNYSDChambers@nysd.uscourts.gov</u> & <u>prose@nysd.uscourts.gov</u>*

*Pro se defendant*
Frederico Augusto Casarsa de Azevedo
10 Emerson Place, apt. 21D
Boston, Massachusetts 02114
Tel. 857.999.1396
fazevedo@mit.edu

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAROLINA MARIA MARCINIAK-DOMINGUES GONCALVES AGRA,<br><br>                    Plaintiff,<br><br>     -against-<br><br>ROCKEFELLER UNIVERSITY; FREDERICO AZEVEDO and WINRICH FREIWALD,<br><br>                    Defendants. | No. 22-cv-10959 (ALC)(SN) |

**DEFENDANT DR. AZEVEDO'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION IN LIMINE TO PRECLUDE AND TO STRIKE THE MBL/UC REPORT (ECF 206–207)**

i

**TABLE OF CONTENTS**

Page(s)

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENTS ................................................................................................................................ 1

    I.    Admissibility: Non-Hearsay Purposes; FRE 803(6) (Business Records); and FRE 803(8) (Public Records)................................................................................................ 1

        A.    Non-Hearsay Uses ................................................................................................ 2

        B.    Business records (FRE 803(6))—MBL/UC outcome letter ........................................ 2

        C.    Public records (FRE 803(8))—OECR determinations; Independent review confirms procedural regularity. ......................................................................... 3

        D.    Trustworthiness is satisfied; Plaintiff's objections go to weight, not admissibility ..... 5

        E.    Conclusion on Hearsay and Qualifications.................................................. 6

    II.    Fed. R. Evid. 403 does not support exclusion................................................................. 7

        A.    The probative value is substantial and not substantially outweighed by any danger of unfair prejudice ....................................................................................... 7

        B.    "Inherent unreliability" is contradicted by the record.................................. 7

        C.    No "trial within a trial" ........................................................................................ 8

        D.    Conclusion under Rule 403 ................................................................................. 8

    III.    Rules 412/404 Do Not Warrant Exclusion; Any Character-Evidence Concerns Are Addressed by Tailoring, Not Striking................................................................................. 8

        A.    What the official outcome letter does—and does not—do. ............................... 8

        B.    Rules 412 and 404 regulate trial use of sexual-history/propensity evidence; they do not bar neutral process records. ............................................................................ 9

        C.    If the Court has concerns, targeted redactions—not exclusion—are the proper remedy...................................................................................................... 9

        D.    Independent agency review reinforces reliability and does not implicate 412/404....... 9

        E.    Conclusion under Rules 412/404. ....................................................................... 10

    IV.    No Basis for a Preemptive Strike or Sanctions; the Record Reflects Permissible Use, Not Misuse.................................................................................................................. 10

        A.    There is no "pattern of misuse." ........................................................................... 10

        B.    Striking is neither authorized nor warranted................................................... 10

        C.    The materials are not being used to "try the merits" or to tell the Court what result to reach. ............................................................................................................. 11

        D.    Default-vacatur and "meritorious defense." ...................................................... 11

        E.    Relevance to retaliation and "state of mind." ................................................... 11

      F.     Rule 11 sanctions are uncalled for and procedurally improper. ................................ 12

      G.    Conclusion on the requested preemptive order ........................................................... 12

V.    No "Alternative" Basis for Exclusion: Authentication, Foundation, and Completeness Are Satisfied ................................................................................................................. 12

      A.    Authentication and foundational showing are easily met. ........................................... 12

      B.    The "partial/misleading" argument misfires; Rule 106 supports supplementation, not exclusion. ..................................................................................................................... 13

      C.    Reliability objections go to weight, not admissibility. ................................................ 13

      D.    Conclusion on alternative grounds .............................................................................. 14

CONCLUSION ................................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009)..................................................................6

Old Chief v. United States, 519 U.S. 172, 180 (1997)....................................................................7

United States v. Oates, 560 F.2d 45 (2d Cir. 1977).....................................................................2, 6

**Rules**

Fed. R. Civ. P. 11 ..........................................................................................................................12

Fed. R. Civ. P. 12(f) ...........................................................................................................1, 10, 14

Fed. R. Civ. P. 55(c).......................................................................................................................11

Fed. R. Civ. P. 65 ........................................................................................................................7, 8

Fed. R. Civ. P. 7(a).........................................................................................................................10

Fed. R. Evid. (FRE) 104(e) ............................................................................................................13

Fed. R. Evid. (FRE) 105 ............................................................................................................8, 14

Fed. R. Evid. (FRE) 106 ....................................................................................................1, 13, 14

Fed. R. Evid. (FRE) 401 ................................................................................................................13

Fed. R. Evid. (FRE) 402 ................................................................................................................13

Fed. R. Evid. (FRE) 403 .........................................................................................1, 7, 8, 13, 14

Fed. R. Evid. (FRE) 404 .............................................................................................1, 8, 9, 10, 14

Fed. R. Evid. (FRE) 412 .............................................................................................1, 8, 9, 10, 14

Fed. R. Evid. (FRE) 801(c) ...........................................................................................................13

Fed. R. Evid. (FRE) 803 .......................................................................1, 2, 3, 4, 5, 6, 9, 11, 13, 14

Fed. R. Evid. (FRE) 901 ............................................................................................1, 12, 13, 14

Fed. R. Evid. (FRE) 902(11) .........................................................................................................13

## PRELIMINARY STATEMENT

Plaintiff asks the Court to (i) strike Exhibit F to ECF 178—the official outcome letter of the Title IX investigation conducted **jointly** (emphasis added) by the Marine Biological Laboratory ("MBL") and the University of Chicago ("UC")—and (ii) preclude Defendant Azevedo, and all other parties, from using, citing, referring to, or offering at any hearing, motion, or trial: (a) the MBL/UC outcome letter (in whole or in part); (b) any findings, conclusions, or evidence from the MBL investigative process; and (c) any argument that an institutional investigation "exonerated" Defendant or adjudicated the merits. As explained below, the federal rules and the record do not support that relief. **Argument I** shows admissibility: the outcome letter is offered for proper non-hearsay purposes (institutional notice and to explain subsequent actions); it qualifies as a business record under FRE 803(6); and the OECR determinations qualify as public records under FRE 803(8). Under FRE 803(6)(E) and 803(8)(B), Plaintiff bears the burden to show untrustworthiness and has not met it. **Argument II** shows Rule 403 favors admission: these neutral, administrative records carry substantial probative value on issues Plaintiff herself raises (institutional handling, chronology, and equitable factors) and do not invite decision on an improper basis or create a "mini-trial." **Argument III** explains why Rules 412/404 are not implicated; to the extent any isolated phrasing could be misconstrued, targeted redactions—not exclusion—cure any concern. **Argument IV** shows no basis for striking, preclusion, or sanctions: Rule 12(f) does not apply, inherent-authority striking is unwarranted, and Defendant's limited use has been proper. **Argument V** confirms that authentication, foundation, and completeness are satisfied under Rules 901 and 106. For these reasons, defendant respectfully requests that the Court deny Plaintiff's motion in its entirety.

## ARGUMENTS

I. **Admissibility: Non-Hearsay Purposes; FRE 803(6) (Business Records); and FRE 803(8) (Public Records)**

1

A.     **Non-Hearsay Uses**

Plaintiff expressly references and relies on the MBL/UC outcome (TAC ¶ 84), so the Court may consider the complete official outcome letter—ECF 178 ex. F—as incorporated by reference. The letter is offered to show institutional notice and to explain subsequent institutional actions (e.g., issuance and maintenance of a mutual no-contact directive years later lifted by MBL, and the fact and timing of the communicated "insufficient evidence" outcome). Those are classic, permissible non-hearsay uses, and Plaintiff cannot selectively invoke the outcome while blocking the Court from reviewing the document itself.

B.     **Business records (FRE 803(6))—MBL/UC outcome letter**

The outcome letter and related process records were made and kept in the ordinary course of a **joint** (emphasis added) Title IX investigation conducted by the Marine Biological Laboratory and the University of Chicago under MBL's written procedures (§ 7.0), co-led by Bridget Collier (UC Associate Provost for Equal Opportunity Programs) and Ann Egan (MBL Human Resources Director). They were created at or near the time, by officials with a duty to record, and maintained in institutional files—hallmarks of Rule 803(6) reliability. Plaintiff's suggestion that a Title IX outcome letter is not part of MBL's "regularly conducted activity" misconstrues Rule 803(6), which covers routine administrative records (including universities' Title IX files), not only core scientific work. Nor does the possibility of later litigation defeat 803(6) where, as here, the records were created for administrative compliance, not for this or any lawsuit. Plaintiff's reliance on United States v. Oates is inapposite; Oates addressed government law-enforcement reports and Confrontation Clause concerns, not private institutional records in a civil case.

2

C.  **Public records (FRE 803(8))—OECR determinations; Independent review confirms procedural regularity.**

The National Science Foundation (NSF) Office of Equity and Civil Rights (OECR) determinations are public records that set out factual findings from a legally authorized investigation and are admissible unless the opponent shows lack of trustworthiness (FRE 803(8)(A)(iii), (B)). OECR independently corroborates the core process facts reflected in the MBL/UC outcome letter: coordinated jurisdictional handling among the Massachusetts Institute of Technology (MIT), Harvard Medical School (HMS), the Marine Biological Laboratory (MBL), and the University of Chicago (UC); use of MBL's written procedures (§ 7.0) with UC Title IX support; issuance of a mutual no-contact directive; interviews of identified witnesses within institutional authority; and notice and communication of an insufficient evidence for sexual assault outcome (see ECF No. 207-3 at 12, 14). OECR further concludes that the institutions' handling did not violate Title IX and describes the process as prompt and equitable. These agency findings satisfy Rule 803(8) and reinforce the reliability and probative value of the institutional record. Even if the Court were to limit use of the MBL/UC letter, the OECR public records establish these process facts in their own right.

Contrary to Plaintiff's assertion that UC, MBL, and MIT investigations were procedurally deficient, OECR thoroughly investigated those claims and found no Title IX violation. In NSF-ODI-APC-20-0001 (July 1, 2022), OECR concluded that UC/MBL "conducted a prompt and equitable investigation" of the 2017 Summer Course complaint and that the preponderance of the evidence did not establish a Title IX violation (see ECF No. 207-3 at 2–8 and excerpt below). In NSF-OECR-ACB-20-0002 (Mar. 17, 2022), OECR likewise found no Title IX violation by MIT, including MIT's jurisdictional referral and interim-measures handling (see ECF No. 207-3 at 9–15 and excerpt below). As discussed supra, OECR documents across both determinations: (i) coordinated handling among MIT/HMS/MBL/UC under written procedures; (ii) interviews of all identified witnesses within institutional reach; (iii) issuance of a mutual

3

no-contact directive; and (iv) appropriate notice and outcome communications to both parties, culminating in the communicated "insufficient evidence" result. Plaintiff offers no concrete basis to meet her Rule 803(8)(B) burden to show untrustworthiness.

ECF 207-3, pp. 2-8, § I: Case number NSF-ODI-APC-20-0001; July 1, 2022.

*"Dr. Marciniak, The National Science Foundation (NSF or the Foundation), Office of Equity and Civil Rights1 (OECR), has completed its investigation of the complaint you filed with our office on October 1, 2019, and accepted for investigation on February 21, 2020. In that complaint, you alleged that the University of Chicago (UC) and the Marine Biological Laboratory (MBL), hereafter collectively referred to as the Respondents, violated Title IX of the Education Amendments of 1972 (Title IX), 20 USC §1681 et seq., effectuated by NSF regulation at 45 CFR §618, when the Respondents failed to conduct a prompt and equitable investigation of a complaint you originally filed with the Massachusetts Institute of Technology (MIT), which was referred to the Respondents, alleging sexual misconduct (sexual assault) by a teaching assistant while attending the NSF-funded, Brains, Minds & Machines (BMM) 2017-Summer Course (the Summer Course) held at the MBL in Woods Hole, Massachusetts. After a thorough review of all gathered information, OECR has concluded that the preponderance of evidence does not establish a violation of Title IX with respect to your allegations against the Respondents. OECR's findings and conclusions are detailed below. Hereinafter, you will be referred to as the Complainant."*

ECF 207-3, pp. 9-15, § I: Case number NSF-OECR-ACB-20-0002; March 17, 2022.

*"Dr. Marciniak, The National Science Foundation (NSF or the Foundation), Office of Equity and Civil Rights1 (OECR), has completed its investigation of the complaint you (the Complainant) filed with our office on October 1, 2019, which was accepted for investigation on February 24, 2020. In that complaint, you alleged that the Massachusetts Institute of Technology (MIT or the Respondent) violated*

4

*Title IX of the Education Amendments of 1972 (Title IX), 20 USC §1681 et seq., effectuated by NSF regulation at 45 CFR §618, when the Respondent failed to conduct a prompt and equitable investigation of a complaint you filed with MIT alleging sexual misconduct (sexual assault) by a teaching assistant (the accused party) while attending the NSF-funded, Brains, Minds & Machines (BMM) 2017-Summer Course (the 2017 Summer Course) held at the Marine Biological Laboratory (MBL) in Woods Hole, Massachusetts. Specifically, you allege that after filing a complaint with the MIT Title IX & Bias Response Office2 in March 2019, the Respondent determined it lacked jurisdiction to accept the complaint and referred the issue to another institution within the BMM collaboration. You also allege that the Respondent failed to impose interim measures in May 2019 to prevent contact between you and the accused party during an event hosted at MIT. After a thorough review of all gathered information, OECR has concluded that the preponderance of evidence does not establish a violation of Title IX with respect to your allegations against the Respondent. […]"*

### D.     Trustworthiness is satisfied; Plaintiff's objections go to weight, not admissibility

Under FRE 803(6)(E) and 803(8)(B), the burden to show untrustworthiness rests with the opponent: business records are excluded only if "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness" (FRE 803(6)(E)), and public records only if "the opponent shows that the source of information or other circumstances indicate a lack of trustworthiness" (FRE 803(8)(B)). That showing has not been made.

**Claimed "ad hoc/weaker" process.** The independent OECR review found no Title IX violation in how MIT or MBL/UC handled the complaint and described a coordinated, prompt, and equitable process under written procedures (see § I.C). That federal determination undercuts claims that the process was structurally untrustworthy

**Police-records release.** Requiring law enforcement to obtain legal process (e.g., a subpoena or

5

court order) before releasing sensitive student/party materials is standard institutional practice and says nothing about the reliability of records created years earlier in the ordinary course of Title IX administration.

**Witnesses and procedures.** Campus Title IX processes typically lack authority to compel participation by non-affiliated witnesses. The record shows that investigators interviewed the parties and witnesses within their institutional reach, provided appropriate notices, and issued formal outcome letters. Established Title IX procedures afford both parties equal access to the evidence and adequate time to respond before a determination; providing the respondent with the complainant's submissions is a routine fairness safeguard, not a procedural defect (much as service of a complaint in civil litigation affords a defendant notice and an opportunity to answer).

**"Prepared for litigation."** These records were created contemporaneously to administer a Title IX complaint—before this or any other related lawsuit—and for administrative compliance, not as trial affidavits. Confrontation Clause concerns addressed in *Melendez-Diaz* do not apply in this civil context. These features support admission under Fed. R. Evid. 803(6); in any event, the materials are also offered for non-hearsay purposes (institutional notice and subsequent actions).

### E.  Conclusion on Hearsay and Qualifications

The official MBL/UC outcome letter is offered for proper non-hearsay purposes (institutional notice and to explain subsequent institutional actions). In the alternative, it qualifies as a business record under FRE 803(6), and the OECR determinations qualify as public records under FRE 803(8)(A)(iii), (B). Plaintiff has not carried her burden to show "lack of trustworthiness" under FRE 803(6)(E) or 803(8)(B), and her authorities (e.g., *Oates*; *Melendez-Diaz*) are inapposite to these private institutional records in a civil case and to agency determinations admitted under Rule 803(8). Accordingly, Defendant respectfully requests that the Court overrule Plaintiff's hearsay objection.

6

## II. Fed. R. Evid. 403 does not support exclusion

### A. The probative value is substantial and not substantially outweighed by any danger of unfair prejudice

The materials show who handled the complaint, what measures were taken (including the issuance and later status of a mutual no-contact directive), when actions occurred, and how the process concluded (a preponderance "insufficient evidence" outcome). Those process facts are central to issues Plaintiff raises (alleged institutional mishandling; adequacy and timeliness of response) and to the Rule 65 factors (irreparable harm; need for additional restraints). The documents are neutral, administrative records—not propensity or sexual-history evidence—and they do not tell the Court what result to reach. They are not cumulative: they provide unique, contemporaneous institutional records not otherwise captured by party declarations or duplicative filings and will streamline, not prolong, the presentation of facts. Especially at this equitable stage, the Court can assign the appropriate weight and cabin any risk of misuse. Their probative value is substantial and is not substantially outweighed by any danger of unfair prejudice, confusing the issues, misleading the Court, undue delay, wasting time, or needless presentation of cumulative evidence. See Old Chief v. United States, 519 U.S. 172, 180 (1997) (defining "unfair prejudice" as an undue tendency to prompt decision on an improper—often emotional—basis).

### B. "Inherent unreliability" is contradicted by the record

As summarized in § I.B, Plaintiff's reliability critique is contradicted by the independent OECR determinations, which found no Title IX violation in how MIT or MBL/UC handled the complaint and described a coordinated process conducted under written procedures. This third-party administrative review supports trustworthiness; any methodological disagreements with the investigators' choices go to weight, not admissibility.

7

C.    No "trial within a trial"

Admitting these materials for non-hearsay purposes—such as providing institutional notice and explaining subsequent institutional actions—does not require relitigating the investigation's merits. Excluding this context risks misleading the Court about what the institutions knew, when they knew it, and how they responded. And to the extent the Court has concern about any isolated phrasing, targeted redactions and limiting use (see § III.C) neutralize any conceivable 403 risk without wholesale exclusion, and any residual risk can be addressed by a limiting instruction under Fed. R. Evid. 105.

D.    Conclusion under Rule 403

The challenged materials provide essential, contemporaneous context on issues Plaintiff has put at stake and on the Rule 65 factors. They are neutral administrative records, not propensity or sexual-history evidence; they do not invite decisions on an improper basis; and they are not cumulative. Any critique sounds in weight, not exclusion. On this record, the Rule 403 balance favors admission; exclusion is unwarranted. Accordingly, Defendant respectfully requests that the Court deny Plaintiff's request for exclusion under Rule 403.

III.  **Rules 412/404 Do Not Warrant Exclusion; Any Character-Evidence Concerns Are Addressed by Tailoring, Not Striking**

A.    What the official outcome letter does—and does not—do.

The joint MBL/UC outcome letter applies a preponderance standard, notes that both parties agree sexual activity occurred on August 30, 2017 but dispute consent, and explains that the determination relied on contemporaneous September–November 2017 messages (the same as ECF 198-2). It concludes: "Therefore, we conclude that you did not violate the MBL's Policy or Code of Conduct." The letter is an administrative record of process and disposition. It is not offered to prove any sexual "predisposition" or

8

to invite a propensity inference. Its relevant use is to show institutional notice and the fact, timing, and basis of institutional actions and outcome.

### B. Rules 412 and 404 regulate trial use of sexual-history/propensity evidence; they do not bar neutral process records.

Rules 404(a) and 412 limit using character or sexual-behavior evidence to prove conduct. Defendant is not offering sexual-history evidence. The outcome letter is offered for non-hearsay purposes (notice and subsequent institutional actions) and, alternatively, under the business-records exception (see § I.A.1–2). Using the letter to establish institutional chronology and the administrative decision does not convert it into barred character evidence. To the extent the letter reports that investigators reviewed time-proximate messages when assessing consent, that is a description of what the institution considered—not an attempt to prove Plaintiff's character or sexual predisposition.

### C. If the Court has concerns, targeted redactions—not exclusion—are the proper remedy.

Any isolated phrasing that could be read as sexual-history detail (e.g., specific descriptors quoted from the contemporaneous messages) can be narrowly redacted while preserving the undisputed process facts: the standard applied, that consent was disputed, that contemporaneous communications were considered, the "insufficient evidence" determination, and the final administrative conclusion. Tailoring fully addresses any speculative 412/404 concern without depriving the Court of probative context.

### D. Independent agency review reinforces reliability and does not implicate 412/404.

As explained supra (see § I.C), the NSF OECR determination letters—public records admissible under Rule 803(8)—independently corroborate the coordinated, written-procedure process and the communicated outcome, and find no Title IX violation in the institutions' handling. Those agency records

9

do not rely on sexual-history content and further support admission.

### E. Conclusion under Rules 412/404.

Because Defendant is not offering sexual-history or propensity evidence—and any arguable references can be narrowly redacted—Rules 412 and 404 provide no basis to strike the MBL/UC outcome letter or to preclude reference to the OECR determinations. Any residual concern is addressed by targeted redactions, not exclusion. Accordingly, Defendant respectfully requests that the Court overrule Plaintiff's 412/404 objection.

## IV. No Basis for a Preemptive Strike or Sanctions; the Record Reflects Permissible Use, Not Misuse

### A. There is no "pattern of misuse."

Defendant's references to the MBL/UC outcome letter—and to materials Plaintiff herself filed (TAC ¶ 84; OECR letters at ECF 207-3)—have been for limited, proper purposes: institutional notice, chronology, and the fact and timing of an administrative outcome. Citing documents the opposing party has put into the case is ordinary motion practice, not "abuse." If the Court views any past inclusion as extraneous to a scheduling request, the proportionate remedy is simply to disregard it in that context—not to impose a sweeping preclusion order.

### B. Striking is neither authorized nor warranted.

Rule 12(f) permits striking matter from a pleading, and "pleadings" are defined in Rule 7(a); exhibits to motion papers are not pleadings. Plaintiff therefore invokes only the Court's inherent authority, a power exercised sparingly. Courts typically require a showing that the material (1) has no admissible use, (2) bears no relation to any live issue, and (3) would cause unfair prejudice that cannot be mitigated by narrower measures (e.g., redaction or simply declining to consider it for a particular purpose). Plaintiff

10

makes none of these showings. As §§ I–III demonstrate, the outcome letter and OECR materials have clear non-hearsay uses, independently qualify under FRE 803(6) and 803(8), bear directly on issues Plaintiff raises (institutional handling, chronology, and equitable factors), and have been redacted where appropriate. Any residual concern is addressable by narrow tailoring, not the extraordinary step of striking or blanket preclusion.

### C. The materials are not being used to "try the merits" or to tell the Court what result to reach.

Defendant does not offer the outcome letter to prove the truth of any contested allegation of misconduct. The submission provides neutral context—who handled the complaint, what measures were taken (including a mutual no-contact directive later lifted by MBL), when actions occurred, and how the process concluded. That limited use neither invites unfair prejudice nor creates a "mini-trial."

### D. Default-vacatur and "meritorious defense."

Plaintiff's suggestion that the outcome letter is being "bootstrapped" into a dispositive ruling misstates the Rule 55(c) standard. At most, Defendant must proffer a colorable, legally sufficient defense—not prove it. The institutional record, along with other proffers, shows disputed material facts and a non-frivolous defense. In any event, the Court can evaluate vacatur on the traditional factors (including excusable neglect) without imposing a gag order on process materials Plaintiff herself placed in the record.

### E. Relevance to retaliation and "state of mind."

Defendant does not offer the MBL/UC outcome to prove the truth of any disputed misconduct allegation or to argue "exoneration." Its limited purpose is to show what the institutions knew, when they knew it, and how they responded (e.g., the issuance and later status of a mutual no-contact directive, and

11

the timing/content of the administrative outcome)—permissible non-hearsay uses (effect on the institutional decision-makers). Any "state of mind" relevance lies with those institutions, not with Defendant's subjective belief.

### F.   Rule 11 sanctions are uncalled for and procedurally improper.

Sanctions require a separate motion and compliance with the Rule 11(c)(2) safe-harbor procedure; an in-limine request is not the vehicle. Using record materials that Plaintiff cited and filed—for circumscribed, lawful purposes—has a reasonable basis in fact and law and is not an "improper purpose." There is no basis for sanctions.

### G.   Conclusion on the requested preemptive order

Because these materials are authentic, relevant, and admissible for the limited purposes identified—and because any marginal concern can be addressed by targeted redactions—the extraordinary remedies of striking, blanket preclusion, or sanctions are unwarranted. Accordingly, Defendant respectfully requests that the Court deny Plaintiff's request for a preemptive order, decline to strike Exhibit F from ECF 178, and deny any request for sanctions.

## V.  No "Alternative" Basis for Exclusion: Authentication, Foundation, and Completeness Are Satisfied

### A.   Authentication and foundational showing are easily met.

Authentication under FRE 901(a) is a low threshold—"evidence sufficient to support a finding" that the document is what it purports to be. That showing is met: (i) MBL transmitted identical copies of the outcome letter to both parties; (ii) Defendant can authenticate by declaration as the recipient attesting this is the true and correct copy he received from MBL (FRE 901(b)(1)); (iii) the letter bears distinctive characteristics—official letterhead, identified signatories, the parties, dates, and the stated outcome—

12

supporting authenticity (FRE 901(b)(4)); and (iv) Plaintiff pleads and relies on the outcome (TAC ¶ 84) and filed the NSF OECR determinations (ECF 207-3) that independently recount the coordinated MBL/UC process and its "insufficient evidence" result, corroborating provenance. Rule 901 does not require live testimony from the preparers where other competent evidence establishes identity and origin. Any residual foundation concern can be cured with a short recipient declaration and, if desired, a custodian certification under FRE 902(11).

### B. The "partial/misleading" argument misfires; Rule 106 supports supplementation, not exclusion.

Defendant offers the complete outcome letter—not a snippet—and for process-focused purposes (institutional notice, who handled the complaint, measures taken including a mutual no-contact directive later lifted by MBL, timing, and the communicated outcome). FRE 106 is a fairness-and-timing rule: if Plaintiff believes additional writings are needed to avoid a misleading impression, the remedy is contemporaneous supplementation with those portions that "in fairness ought to be considered," not striking the exhibit. Nothing in Rule 106 converts a neutral administrative outcome into an all-or-nothing mini-trial on every underlying interview or note.

### C. Reliability objections go to weight, not admissibility.

Plaintiff's "structural flaw" criticisms do not defeat authentication or foundation; they are disagreements with investigative judgments. As shown in § I.C, the OECR determinations (public records) recount the same coordinated process and found no Title IX violation in how the complaint was handled—reinforcing the reliability of the institutional record. Under FRE 401–403 and 104(e)—and once Plaintiff has not carried her burden under FRE 803(6)(E)/803(8)(B)—any methodological criticisms go to weight, not admissibility, particularly given the non-hearsay uses permitted by FRE 801(c).

    **D.**    **Conclusion on alternative grounds.**

The MBL/UC outcome letter is authenticated, adequately founded, and not a misleading fragment. If the Court desires additional formalities, any perceived gap can be addressed by a brief recipient declaration, a custodian certification, or targeted redactions—not exclusion. Accordingly, Defendant respectfully requests that the Court deny Plaintiff's "alternative grounds" request to strike or preclude.

## CONCLUSION

For the reasons discussed supra, Plaintiff's requested relief—striking Exhibit F and imposing a blanket preclusion order— is unwarranted. The materials are admissible for proper non-hearsay purposes (institutional notice and to explain subsequent actions) and, in the alternative, under FRE 803(6) (business records) and FRE 803(8) (public records based on the OECR determinations). Plaintiff has not met her burden under FRE 803(6)(E) or 803(8)(B) to show untrustworthiness. The Rule 403 balance favors admission: these are neutral, administrative process records with substantial probative value that do not invite decision on an improper basis or create a "mini-trial." Rules 412/404 are not implicated by the limited uses at issue, and any arguable references can be addressed through narrow redactions or an appropriate limiting instruction under FRE 105. Rule 12(f) does not authorize striking exhibits and the standards for inherent docket-management relief are not met. Finally, Rule 901's low authentication threshold and Rule 106's completeness principle are satisfied; any remaining critiques go to weight, not admissibility. Accordingly, Defendant respectfully requests that the Court deny Plaintiff's motion in its entirety.

Respectfully submitted,

/s/ *Frederico Augusto Casarsa de Azevedo*
Frederico Augusto Casarsa de Azevedo (*pro se*)
10 Emerson Place, apt. 21D
Boston, Massachusetts 02114
Tel. 857.999.1396
fazevedo@mit.edu

October 13, 2025
Boston, MA

14