Dr. Karolina Marciniak-Domingues Agra
500 E. 63rd Street, Apt. 13F
New York, New York 10065
(646) 770-2045
marciniak.kar@gmail.com

October 28, 2025

**Via ECF**
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Courtroom 435
New York, New York 10007

      Re:    Marciniak-Domingues Goncalves Agra, et al. v. Massachusetts Institute of Technology, et al.
             Case No. 1:22-cv-10959-ALC

Dear Judge Carter,

I, Plaintiff Karolina Maria Marciniak-Domingues Goncalves Agra, respectfully submit this letter in response to the RU Defendants' letter of October 23, 2025 (ECF No. 216). Their opposition mischaracterizes the record, ignores binding legal precedent and the established doctrine of retaliatory eviction, and relies on factual inaccuracies. For the reasons below, my requests should be granted.

**I. LEAVE TO AMEND SHOULD BE GRANTED.**

**A. The Amendment Is Not Futile: The Termination is Actionable Post-Employment Retaliation.**

**1. The Action Constitutes Post-Employment Retaliation.**

The RU Defendants' attempt to segregate their role as a landlord is a legal fiction. For a postdoctoral researcher, university-provided housing is a functional extension of the workplace, managed by the University's Human Resources department. This was a term and condition of my appointment. The law has long recognized that wielding landlord power to retaliate for legal action is unlawful. Since *Edwards v. Habib*, 397 F.2d 687 (D.C. Cir. 1968), courts have prohibited retaliatory eviction, recognizing that allowing punishment for reporting violations "would stand as a warning to others that they dare not be so bold," defeating the enforcement of protective statutes. *Id.* at 612; see also *Motive and Retaliatory Eviction of Tenants*, 1974 U. ILL. L. FORUM 610, 610 (1974). This doctrine explicitly protects tenants engaged in "litigation against the landlord." *McQueen v. Drucker*, 438 F.2d 781, 784 (1st Cir. 1971). RU's claim of exemption from the Good Cause Eviction Law, N.Y. Real Prop. Law § 214(13), because its housing is a "dormitory owned and operated by an institution of higher education" only underscores my point: this is not a standard tenancy but a unique, institutionally-integrated benefit. RU cannot claim this special status to avoid state tenant protections while simultaneously hiding behind a "landlord" label to evade federal anti-retaliation liability. By weaponizing this specific, employment-derived benefit to punish ongoing litigation, RU engages in the very essence of Title VII post-employment retaliation condemned by *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). Threatening a *pro se* litigant with homelessness for prosecuting her case is a severe adverse action that fits the deterrence-based and deliberately broad governing standard from *Burlington Northern:* would the action "dissuade a reasonable worker from making or supporting a charge

of discrimination?" *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 68 (2006), and finds strong analogical support in the established doctrine of retaliatory eviction.

**2.     Plaintiff's     Mid-Litigation     Filings     Are     Protected     Activity.**
The RU Defendants erroneously claim a lack of recent protected activity. This Court has held that filing a brief in opposition to a dispositive motion in one's own discrimination case constitutes protected activity. *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 359 (E.D.N.Y. 2008). My substantive filings in August 2025 (ECF 182, 183)—including my Memorandum of Law in Opposition (ECF 182) and Declaration (ECF 183) filed in direct opposition to Defendants' Motion to Dismiss— are precisely the type of protected, mid-litigation participation that *Infantolino* shields[1]. To hold otherwise would be to insulate defendants from retaliation claims precisely when a plaintiff is most vigorously prosecuting her case.

**3.     Causation     Is     Plausibly     Alleged     and     Pretext     is     Evident.**
The 90-Day Notice was served on September 10, 2025, just 23 days after my primary opposition filings (ECF Nos. 182-186). This direct temporal proximity is "strong circumstantial evidence of retaliation." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013). RU's nearly four years of post-termination inaction, including accepting a $37,426 ERAP payment that barred eviction for a year, makes its sudden, severe action at this critical litigation juncture profoundly suspect and indicative of pretext. Any suggestion that the termination was due to arrears is a pretext for retaliation, especially given our demonstrated good faith efforts to resolve the housing debt[2].

**4.     RU's     Reliance     on     *Wanamaker*     and     *Mira*     Is     Misplaced.**
RU contends post-employment retaliation must "impair future employment prospects," citing *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) and *Mira v. Kingston*, 218 F. Supp. 3d 229, 235-36 (S.D.N.Y. 2016). This argument fails because the retaliatory eviction here does precisely what the actions in *Wanamaker* and *Mira* did not: it directly impairs future employment prospects, as rendering a scientist immediately homeless actively sabotages her professional future: it disrupts the ability to maintain a professional appearance, reliably communicate with potential employers, and present a stable professional identity. It forces a diversion of all energy and finite resources from the job search to mere survival. An employer cannot terminate an employee's housing while she is actively seeking new employment and then claim the retaliation does not "impair future employment prospects.". The action is, by its very nature, designed to cripple that very prospect. Crucially, both *Wanamaker* and *Mira* involved actions with no plausible connection to the plaintiff's ability to vindicate their rights in court. In contrast, the retaliatory

---

[1] The *Infantolino* Court reasoned that the term "participation" in anti-retaliation statutes must be given an "expansive meaning." *Id.* (citing *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 174 (2d Cir. 2005)). If merely being named as a voluntary witness in a lawsuit is protected participation, then "it must also cover a plaintiff's filing of a responsive memorandum in a discrimination suit, which involves deliberate, affirmative action." *Id.* Crucially, the "primary purpose of anti-retaliation provisions… is to 'maintain[] unfettered access to statutory remedial mechanisms,'" and a court must not "frustrate that purpose by interpreting [the statute] to protect a plaintiff's efforts to file a suit but not his efforts to win it." *Id.* (quoting *Robinson*, 519 U.S. at 346); see also *See Richardson v. N.Y.S. Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999) (serving deposition notices is protected); *Treglia v. Town of Manlius*, 313 F.3d 713, 720-21 (2d Cir. 2002) (collecting witness evidence during litigation is protected)

[2] Our good faith is demonstrated by: (i) proactively seeking rent relief during the pandemic (ECF 204, Reply Decl. ¶ 3); (ii) agreeing to downsize to a smaller apartment, compromising family planning (id. at ¶ 4); (iii) securing $15,000 in housing scholarships from RU (id. at ¶¶ 5, 9; Ex. p.9); and (iv) spearheading an ERAP application that resulted in a $37,426 payment to RU, which contractually barred eviction for one year (id. at ¶¶ 24-26; ECF 204-1, Ex. pp.10-12). We further acknowledged the arrears and outlined a payment plan (ECF 204-1, Ex. p.14), to which RU never responded. In stark contrast, RU acted in bad faith and retaliation by: (I) failing to act on safety concerns and obstructing a criminal investigation (ECF 196, Pl. Decl. ¶¶ 29-32); (ii) refusing to provide a landlord letter, falsely denying the tenancy and causing a loss of benefits (ECF 204, Reply Decl. ¶ 30; ECF 204-1, Ex. p.17); (iii) fostering a hostile environment through harassing housing staff (ECF 204-1, Ex. pp.19-21); and (iv) issuing the 90-Day Termination Notice on September 10, 2025—just five days after I filed my declaration (ECF 196)—after nearly four years of inaction. This was a calculated escalation to punish litigation.

eviction here is directly targeted at the litigation itself. Threatening a *pro se* litigant with homelessness in the midst of complex federal litigation does not merely create 'unpleasant' personal circumstances (*Mira*); it actively impairs her capacity to research, write, and prepare for court, draining finite financial and emotional resources. An action designed to sabotage a plaintiff's ability to effectively prosecute her case is the quintessential deterrent the anti-retaliation provision was designed to prevent. RU's assertion that my lack of a reinstatement request severs the connection between this housing matter and employment is factually and logically flawed. Of course, I want to return to my scientific career at Rockefeller University. It was only after its explicit denial by Defendants that I was forced to retain my rights and pursue this litigation. I would welcome the opportunity to return to RU, even in a different laboratory, but the Defendants' actions have made litigation necessary to vindicate my rights. This eviction is a direct continuation of that same dispute, weaponizing a key employment benefit to punish the litigation that stemmed from the employment action itself. The relationship is inextricable. Therefore, even under RU's own flawed and unduly narrow reading of the case law, the retaliatory eviction here constitutes a classic and severe adverse action. This action, made possible only by the prior employment relationship, fits the deterrence-based standard of *Burlington*. At the pleading stage, this Court should reject RU's attempt to evade liability under a standard that its own conduct fails to meet.

**B. The Amendment Is Not Prejudicial.**

Plaintiff's request for leave to amend is neither a repleading of old facts nor a dilatory tactic, but a necessary response to a severe, new act of retaliation—the 90-Day Termination Notice served on September 10, 2025—that post-dates the Third Amended Complaint. To deny leave would force Plaintiff to litigate this case while enduring ongoing punishment for bringing it, all while preventing the Court from considering the Defendants' most egregious retaliatory act. The Defendants' claim of prejudice—expending resources to respond to a new complaint—is minimal and self-serving when balanced against the profound prejudice to the Plaintiff and the Court's truth-seeking function. The core of the proposed amendment is discrete: it concerns the Termination Notice and the facts immediately surrounding it[3]. Plaintiff has acted with dispatch, seeking amendment promptly after the termination notice was issued. Defendants' claimed prejudice—that they "await a judgment"—is not a cognizable hardship but an admission that they seek to insulate their ongoing misconduct from review. The minimal burden of responding to a discrete new claim is outweighed by the profound prejudice to Plaintiff if she cannot challenge this pivotal retaliatory act. Denying amendment would effectively grant Defendants *de facto* immunity for retaliatory conduct committed after the filing of the TAC, eviscerating the core deterrent purpose of anti-retaliation law. The law mandates a liberal standard. Under Rule 15(a)(2), leave to amend should be "freely given," and the Second Circuit has instructed that pro se litigants, in particular, should generally be granted leave to amend at least once when a valid claim might be stated. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Justice requires that this new and material event be included in the operative pleadings.

**II. LEAVE TO FILE A SUR-REPLY SHOULD BE GRANTED.**

The RU Defendants claim their reply (Dkt. 208) raised "no new facts or legal theories." This is incorrect. A sur-reply is warranted to address several new arguments and factual attacks raised for the first time, including: (i) a new, specific argument that my May 29, 2020, email is not protected activity because it "does not complain about discrimination because of a protected characteristic"; (ii) a new rebuttal attacking

---

3   While the Plaintiff may have taken the opportunity to make other, minor clarifications, the Defendants are not prejudiced by having to address a new, straightforward claim. They have been on notice of this specific issue since the Plaintiff sought a TRO. Their resources are not unduly taxed by responding to a logically connected, newly arisen claim. The true and overwhelming prejudice lies with the Plaintiff.

the weight and relevance of the NYSDHR's preliminary finding; (iii) new, detailed factual attacks on specific paragraphs of the TAC (e.g., ¶¶ 15-30) and a new request to strike them under Federal Rule of Civil Procedure 12(f); (iv) a new interpretation of the "mistake" requirement for relation back, arguing my omission of Dr. Freiwald was "strategic, not a legal mistake". Given these new issues, a sur-reply is essential to ensure the Court has a complete and accurate record.

**CONCLUSION**

For the foregoing reasons, the 90-Day Termination Notice constitutes a clear case of post-employment retaliation. The proposed amendment is neither futile nor prejudicial. I respectfully request that the Court grant my motion for leave to file a Fourth Amended Complaint or, alternatively, grant leave to file a sur-reply.

I appreciate the Court's consideration of this matter.

>Respectfully submitted,
>
>/s/ *Karolina Agra*
>
>**Dr. Karolina Marciniak- Domingues Goncalves Agra**
>Plaintiff Pro Se
>
>500 E 63rd St, Apt 13F
>New York, NY 10065
>(646) 770-2045
>marciniak.kar@gmail.com

**cc:** All Counsel of Record (via ECF)