**PROSKAUER ROSE LLP**
Elise M. Bloom
Patrick J. Lamparello
Noa M. Baddish
Eleven Times Square
New York, New York 10036-8299
Tel. 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
plamparello@proskauer.com
nbaddish@proskauer.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| KAROLINA MARIA MARCINIAK-DOMINGUES GONCALVES AGRA,<br><br>                              Plaintiffs,<br><br>             -against-<br><br>ROCKEFELLER UNIVERSITY; FREDERICO AZEVEDO and WINRICH FREIWALD,<br><br>                              Defendants. | No. 22-cv-10959 (ALC) |

**DEFENDANTS THE ROCKEFELLER UNIVERSITY AND DR. WINRICH FREIWALD'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

PLAINTIFF'S FACTUAL ALLEGATIONS IN THE 4AC ........................................4

    A.    Plaintiff's Employment, Her Allegations Regarding Azevedo, and Her Allegations Regarding Dr. Freiwald ................................................................4

    B.    Plaintiff's Post-Termination Occupancy of RU Housing and Her Admissions Regarding Arrears ...............................................................................5

PLAINTIFF's ATTEMPTS TO CIRCUMVENT PRIOR RULINGS ..........................6

    A.    Plaintiff's Administrative Complaints and Procedural Elections ...........................6

    B.    This Action, Marciniak II, and Plaintiff's Request to Consolidate .........................6

    C.    This Court Dismisses the FAC and Plaintiff Files Two Subsequent Pleadings ......7

    D.    The Housing Proceedings, the Preliminary Injunction Motions and the 4AC ........7

ARGUMENT .............................................................................................................8

I.    The 4AC Should Be Dismissed In Its Entirety Because It Violates Rule 8 .......................8

II.    Plaintiff's Untimely Discrimination Claims (First and Second Causes of Action) Should Be Dismissed ..................................................................................10

III.    Plaintiff Fails to State a Claim For *Quid Pro Quo* Harassment (First Cause of Action) ...............................................................................................11

    A.    Plaintiff Does Not State a Claim for *Quid Pro Quo* Harassment Under Title VII ...............................................................................................11

    B.    Plaintiff's NYSHRL and NYCHRL *Quid Pro Quo* Claims Fail ...........................12

IV.    Plaintiff Fails to State A Claim For Hostile Work Environment Under Title VII (Second Cause of Action) ...........................................................................14

V.    Plaintiff Fails to State a Claim for Hostile Work Environment Under the NYSHRL and the NYCHRL (Second Cause of Action) ......................................................15

VI.    Plaintiff's Title VII, NYSHRL and NYCHRL Retaliation Claims (Third Cause of Action) Largely Fail As a Matter of Law ...............................................................17

    A.    Retaliation Claims Based on Untimely Conduct Should Be Dismissed ...............17

    B.    Apart from Her Claim Based on the Termination of Her Employment, Plaintiff Does Not Plausibly Allege Actionable Retaliation During Her

Employment..................................................................................................................18

    C.    Plaintiff's Post-Employment Retaliation Claims Fail in Their Entirety ...............19

    D.    Separately, Plaintiff's Title VII Retaliation Theories Based on Post-Employment Housing-Related Conduct Fail for Failure to Exhaust ....................21

VII.    Plaintiff Fails to State a Claim Under the FHA (Fifth Cause of Action)...........................21

    A.    Plaintiff's FHA Discrimination Claim Fails As a Matter of Law.........................21

        1.    Plaintiff Does Not Allege Discrimination.................................................21

        2.    Plaintiff Does Not Allege that She is Disabled.........................................22

    B.    Plaintiff's FHA Failure-to-Accommodate Claim Fails As a Matter of Law .........23

    C.    Plaintiff's FHA Retaliation Claim Fails As a Matter of Law ...............................24

        1.    Plaintiff Does Not Allege FHA-Protected Activity ..................................25

        2.    Plaintiff Does Not Plausibly Allege Causation..........................................26

VIII.    Plaintiff's Claims Against Dr. Freiwald (First-Fourth Causes of Action) Should Be Dismissed With Prejudice..............................................................................................27

    A.    Adding Dr. Freiwald to This Case Is an Improper Attempt to Circumvent This Court's Prior Ruling Declining Consolidation. .............................................27

    B.    Plaintiff's Title VII Claims Against Dr. Freiwald Fail As A Matter of Law.........28

    C.    Plaintiff's NYSHRL and NYCHRL Claims Against Dr. Freiwald Are Time-Barred and Do Not Relate Back to The Original Complaint. ...............................28

    D.    Plaintiff Does Not State A GMVL Claim Against Dr. Freiwald...........................29

CONCLUSION..................................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. Jenkins*,
    2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005)........................................................ 30

*Alfano v. Costello*,
    294 F.3d 365 (2d Cir. 2002) ................................................................................................. 14

*Avila v. Acacia Network, Inc.*,
    2025 WL 2622619 (S.D.N.Y. Apr. 3, 2025), *adopted by*, 2025 WL 2233987
    (S.D.N.Y. Aug. 6, 2025)....................................................................................................... 24

*Barsella v. United States*,
    135 F.R.D. 64 (S.D.N.Y.1991)............................................................................................. 9

*Bellino v. Tallarico*,
    2024 WL 1344075 (S.D.N.Y. Feb. 21, 2024) ...................................................................... 30

*Benzo v. N.Y. State Div. of Hum. Rts.*,
    1997 WL 37961 (S.D.N.Y. Jan. 31, 1997), *aff'd*, 141 F.3d 1151 (2d Cir. 1998)................................. 8

*Birl v. Estelle*,
    660 F.2d 592 (5th Cir. 1981) ................................................................................................. 2

*Blitz v. BLDG Mgmt. Co.*,
    2023 WL 6162295 (S.D.N.Y. Sep. 21, 2023) ............................................................... 24, 26

*Breest v. Haggis*,
    180 A.D.3d 83 (1st Dep't 2019)........................................................................................... 30

*Buran v. Coupal*,
    87 N.Y.2d 173 (1995)........................................................................................................... 29

*Chamberlain v. Splashlight, LLC*,
    2024 WL 5170266 (S.D.N.Y. Oct. 10, 2024)...................................................................... 14

*Chodos v. F.B.I.*,
    559 F. Supp. 69 (S.D.N.Y. 1982), *aff'd*, 697 F.2d 289 (2d Cir. 1982)................................... 9

*Currin v. Glenwood Mgmt. Corp.*,
    2021 WL 4710485 (S.D.N.Y. Oct. 8, 2021)................................................................... 23, 24

*DeJohn v. Wal-Mart Stores E., LLP*,
    2013 WL 1180863 (N.D.N.Y. Mar. 20, 2013) .................................................................... 10

*Dickerson v. BPP PCV Owners LLC*,
    2022 WL 4538281 (S.D.N.Y. Sep. 28, 2022) ..................................................................... 25

*Donovan v. City of New York*,
1994 WL 603210 (2d Cir. 1995), *aff'd*, 141 F.3d 1151 (2d Cir. 1998)..............................................8-9

*Dozier v. Deutsche Bank Tr. Co. Ams.*,
2011 WL 4058100 (S.D.N.Y. Sep. 1, 2011) ................................................................................. 4

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd,* 525 F. App'x 26 (2d Cir. 2013).................................... 14

*Figueroa v. RSquared NY, Inc.*,
89 F. Supp. 3d 484 (E.D.N.Y. 2015)................................................................................................ 28

*Flood v. Cappelli*,
2019 WL 3778736 (S.D.N.Y. Aug. 12, 2019)...................................................................... 19

*Frank v. Plaza Constr. Corp.*,
186 F. Supp. 2d 420 (S.D.N.Y. 2002) .................................................................................... 11

*Gadson v. Riverbay Corp.*,
2025 WL 2452353 (S.D.N.Y. Aug. 26, 2025)..................................................................... 25

*Garcia v. Comprehensive Ctr., LLC*,
2018 WL 3918180 (S.D.N.Y. Aug. 16, 2018)..................................................................... 30

*Gomez v. N.Y.City Police Dep't*,
191 F. Supp. 3d 293 (S.D.N.Y. 2016) ................................................................................. 21

*Greenbaum v. Svenska Handelsbanken, N.Y.*,
979 F. Supp. 973 (S.D.N.Y. 1997) ....................................................................................... 8

*Grewal v. Cuneo Gilbert & LaDuca LLP*,
2017 WL 1215752 (S.D.N.Y. Mar. 31, 2017)................................................................... 17

*Haight v. NYU Langone Med. Ctr., Inc.*,
2014 WL 2933190 (S.D.N.Y. June 27, 2014) ................................................................... 12

*Hartley v. United Student Rentals*,
2025 WL 26769 (N.D.N.Y. Jan. 3, 2025) *adopted by*, 2025 WL 438195 (N.D.N.Y.
Feb. 7, 2025)................................................................................................................... 22, 23

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*,
2016 WL 11318241 (E.D.N.Y. Mar. 3, 2016) *report and recommendation adopted*,
2018 WL 1603872 (E.D.N.Y. Mar. 30, 2018), *aff'd*, 2019 WL 1749179 (2d Cir. Apr.
16, 2019)............................................................................................................................. 15

*Hernandez v. Premium Merch. Funding One, LLC*,
2020 WL 3962108 (S.D.N.Y. July 13, 2020)................................................................... 12

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018) ............................................................................ 29, 30

*In re Nemeth v. K-Tooling*,
40 N.Y.3d 405 (2023)........................................................................................................ 29

iv

*Jones v. Nat'l Commc'ns & Surveillance Networks*,
266 F. App'x 31 (2d Cir. 2008) .................................................................................................. 9

*Jones v. Volunteers of Am. Greater N.Y.*,
2022 WL 768681 (S.D.N.Y. Mar. 14, 2022) .............................................................................. 22

*Joseph's House & Shelter, Inc. v. City of Troy, N.Y.*,
641 F. Supp. 2d 154 (N.D.N.Y. 2009) ...................................................................................... 26

*Karibian v. Columbia Univ.*,
14 F.3d 773 (2d Cir. 1994) ........................................................................................................ 11

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991) ........................................................................................................ 3

*Lee v. Saul*,
2022 WL 1051216 (S.D.N.Y. Feb. 10, 2022) ............................................................................ 19

*Levine v. Dep't of Soc. Servs.*,
22 F.3d 1090 (2d Cir. 1994) ........................................................................................................ 9

*Male v. Tops Mkts., LLC*,
2010 WL 4319769 (W.D.N.Y. Oct. 29, 2010) ........................................................................... 20

*Mandavia v. Columbia Univ.*,
912 F. Supp. 2d 119 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014) ......................... 19

*Mathirampuzha v. Potter*,
548 F.3d 70 (2d Cir. 2008) ........................................................................................................ 21

*Mazzocchi v. Windsor Owners Corp.*,
2013 WL 5295089 (S.D.N.Y. Sep. 17, 2013) ........................................................................... 25

*McCormick v. Donovan*,
365 F. App'x 247 (2d Cir. 2010) ............................................................................................... 18

*Mercer v. N.Y. City Hous. Auth.*,
2021 WL 230124 (S.D.N.Y. Jan. 22, 2021) .............................................................................. 23

*Mira v. Kingston*,
218 F. Supp. 3d 229 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017) ................... 15, 20

*Monterroso v. City of New York*,
2024 WL 360816 (S.D.N.Y. Jan. 31, 2024) .............................................................................. 24

*Moody v. Related Co., L.P.*,
620 F. Supp. 3d 51 (S.D.N.Y. 2022) ......................................................................................... 22

*Myers v. Doherty*,
2022 WL 4477050 (2d Cir. 2022) ............................................................................................. 15

*Noe v. Realty*,
  2024 WL 5508198 (S.D.N.Y. July 22, 2024), *adopted by*, 2025 WL 958407
  (S.D.N.Y. Mar. 31, 2025) ................................................................................................ 26

*Osborne v. Moody's Invs. Serv., Inc.*,
  2018 WL 1441392 (S.D.N.Y. Mar. 22, 2018) ................................................................. 14

*Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.*,
  2011 WL 1655575 (E.D.N.Y. May 2, 2011) ...................................................................... 4

*Pianoforte v. Little Red Sch. House*,
  2022 WL 2713659 (S.D.N.Y. July 13, 2022) .................................................................. 28

*Prezzi v. Berzak*,
  57 F.R.D. 149 (S.D.N.Y. 1972) ......................................................................................... 9

*Qorrolli v. Metro. Dental Assocs.*,
  124 F.4th 115 (2d Cir. 2024) ........................................................................................... 18

*Reed v. Fortive Corp.*,
  2023 WL 4457908 (W.D.N.Y. July 11, 2023), *aff'd*, 2024 WL 1756110 (2d Cir.
  2024) ................................................................................................................................ 13

*Ronen v. RedRoute, Inc.*,
  763 F. Supp. 3d 319 (E.D.N.Y. 2025) ............................................................................. 18

*Rossbach v. Montefiore Med. Ctr.*,
  2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) ................................................................... 30

*Salute v. Stratford Greens Garden Apartments*,
  136 F.3d 293 (2d Cir. 1998) ............................................................................................ 24

*Sass v. MTA Bus Co.*,
  6 F. Supp. 3d 238 (E.D.N.Y. 2014) ................................................................................... 8

*Senno v. Elmsford Union Free Sch. Dist.*,
  812 F. Supp. 2d 454 (S.D.N.Y. 2011) ............................................................................. 21

*Simon v. City of New York*,
  2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) ................................................................... 16

*Sutton v. Stony Brook Univ.*,
  2022 WL 4479509 (2d Cir. Sep. 27, 2022) ..................................................................... 13

*Traguth v. Zuck*,
  710 F.2d 90 (2d Cir. 1983) ................................................................................................ 2

*Turner v. Suffolk Cnty.*,
  2022 WL 3357944 (E.D.N.Y. Aug. 15, 2022) ................................................................. 29

*Wanamaker v. Columbian Rope Co.*,
  108 F.3d 462 (2d Cir. 1997) ...................................................................................... 19, 20

*Whittlesey v. Union Carbide Corp.*,
   742 F.2d 724 (2d Cir. 1984) ........................................................................................... 8

*Williams v. New York City Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) ...................................................................................... 16

**STATUTES**

42 U.S.C. § 3613(c)(1) ........................................................................................................ 8

42 U.S.C. § 3604 ............................................................................................................... 25

42 U.S.C. § 3617 ............................................................................................................... 25

N.Y. Exec. Law § 279(9) .................................................................................................. 10

**OTHER AUTHORITIES**

8 C.F.R. § 214.2(h)(11)(i)(A) ........................................................................................... 19

C.P.L.R. § 214(2) ......................................................................................................... 10, 28

Fed. R. Civ. P. 8(a) ............................................................................................................. 8

N.Y.C. Admin. Code § 8-502(d) ................................................................................... 10, 28

N.Y.C. Admin. Code § 10-1103 ....................................................................................... 30

## PRELIMINARY STATEMENT

Defendants The Rockefeller University ("RU") and Dr. Winrich Freiwald ("Dr. Freiwald") (collectively, "RU Defendants") respectfully move to dismiss Plaintiff Karolina Maria Marciniak-Domingues Goncalves Agra's ("Marciniak" or "Plaintiff") Fourth Amended Complaint (the "4AC," Dkt. 227)[1] in its entirety, with prejudice. This action is referred to herein as "*Marciniak I*." Plaintiff's separately filed action, No. 23-cv-10305, is referred to herein as "*Marciniak II*."

The 4AC is Plaintiff's fifth pleading in *Marciniak I* and seventh overall. Plaintiff filed it more than three years after this litigation began, yet her case remains at the pleading stage. That is no accident. Rather than filing a streamlined complaint that addresses the deficiencies identified by this Court, Plaintiff has repeatedly amended, filed duplicative proceedings, hired and fired counsel, and, after each failed procedural attempt, responded by adding new parties, new claims, and new legal theories, all of which remain legally deficient.

Even on her *seventh* try, the 4AC still does not provide the short and plain statement required by Federal Rule of Civil Procedure 8. Plaintiff has never cured (because she cannot) this Court's September 2024 dismissal of her employment claims as untimely and inadequately pleaded, nor its rejection of her continuing violation theory. Despite that the Court rejected her January 2026 request for preliminary injunction, holding that her housing-related claims belong in state landlord-tenant court, Plaintiff has now confusingly intermeshed claims under the Fair Housing Act ("FHA") with her employment discrimination dispute. The 4AC is also rife with allegations unmoored even from the employment and housing disputes, such as those concerning Defendant Frederico Azevedo ("Azevedo") who is not affiliated with RU, and asides about her

---

[1] A true and correct copy of the 4AC is attached as Exhibit B to the accompanying declaration of Elise M. Bloom, Esq., filed contemporaneously herewith (the "Bloom Decl.").

medical issues ranging from kidney stones to anaphylaxis.  The sprawling, meandering structure of the 4AC obscures which facts are alleged to support which claims, in what capacity RU purportedly acted – as employer, landlord, or both, and what each defendant allegedly did or failed to do.

The solicitude afforded to *pro se* litigants such as Plaintiff "does not exempt a [plaintiff] from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983) (citing *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). After repeated warnings and multiple opportunities to replead, the 4AC should be dismissed, with prejudice, on Rule 8 grounds alone.

The claims in the 4AC fail substantively as well.  Plaintiff's discrimination causes of action are labeled "*quid pro quo* sexual harassment" (First Cause of Action), "hostile work environment" (Second Cause of Action), and "retaliation" (Third Cause of Action).  Each of these asserts its discrimination theory pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

Plaintiff's *quid pro quo* and hostile work environment causes of action fail because:

- Plaintiff's harassment claims remain untimely in substantial part, and the Court has already rejected Plaintiff's continuing violation theory.

- For her Title VII *quid pro quo* and hostile work environment claims, the only timely allegations of sexual conduct after the July 22, 2020 limitations cutoff – concerning project and appointment decisions, allocation of opportunities, and Plaintiff's termination – allege, at most, workplace dissatisfaction and management friction, not sex-based discrimination, harassment or retaliation.

- While the NYSHRL and NYCHRL have a slightly longer, three-year limitations period, that longer period brings in only two additional allegations concerning two events over the course of a single month (February 2020), which are legally insufficient to state viable claims under the applicable standards.

2

- Plaintiff's *quid pro quo* harassment theories further fail because the 4AC does not plausibly connect any alleged sexual conduct to a tangible employment consequence, and the facts Plaintiff actually pleads affirmatively undercut, rather than support, the inference required.

- The NYSHRL and NYCHRL hostile work environment claims fail because, even under those statutes' more liberal standards, Plaintiff does not plausibly allege she was treated less well because of her sex.

Plaintiff's retaliation claims (Third Cause of Action) likewise fail in substantial part. Other than her claim based on her termination effective November 30, 2021, all other retaliation theories either are untimely, do not constitute adverse actions as a matter of law, are not plausibly connected to protected activity, or were never exhausted before the EEOC.

Plaintiff's FHA claims (Fifth Cause of Action), added for the first time in the 4AC following the denial of injunctive housing relief, are not employment claims. They are asserted against RU in its capacity as Plaintiff's landlord and challenge RU's housing decisions after Plaintiff's employment ended. Those claims independently fail because the 4AC does not plausibly allege discriminatory animus in connection with RU's housing decisions, does not identify a specific accommodation request that RU knew of and denied, and does not allege FHA-protected activity preceding RU's termination notice.

The claims against Dr. Freiwald also fail. The harassment and retaliation claims (First-Third Causes of Action) as pleaded against him fail because Title VII does not permit individual liability and the NYSHRL and NYCHRL claims are time-barred and do not relate back. The New York City Gender-Motivated Violence Law ("GMVL") claim (Fourth Cause of Action) does not plausibly allege gender-based animus or the serious risk of physical injury.

For all these reasons and as discussed further below, the 4AC should be dismissed in its entirety, with prejudice.[2]

---

[2] The Court may also take judicial notice that Plaintiff's husband Mr. Agra, with whom she resides, whom the 4AC alleges witnessed various material events, and who was a named plaintiff in the first two complaints here, has filed a

## PLAINTIFF'S FACTUAL ALLEGATIONS IN THE 4AC[3]

### A.  Plaintiff's Employment, Her Allegations Regarding Azevedo, and Her Allegations Regarding Dr. Freiwald

Plaintiff was employed by RU as a postdoctoral researcher in Dr. Freiwald's laboratory from September 2016 until November 30, 2021. (4AC ¶¶ 29, 121.) Plaintiff alleges that in 2017 and 2018 she was raped by Azevedo, a postdoctoral scientist affiliated with MIT, not RU. (*Id*. ¶¶ 35-40, 55-57.) Plaintiff asserts that after the 2017 incident she told Dr. Freiwald only that she had a "bad encounter," not that she had been sexually assaulted or raped. (*Id.* ¶ 46.) In March 2019, Plaintiff filed a Title IX complaint against Azevedo with MIT regarding the 2017 incident. (*Id.* ¶ 70.) In May 2019, Plaintiff informed RU of the alleged assaults, and RU provided her with mental health resources. (*Id*. ¶¶ 73, 76-77.)

Plaintiff separately alleges that in February 2020, during a meeting in Dr. Freiwald's office, she saw that he had a "visible erection," he stated that the future of her project depended on her "desired course of action," and that, as she left the meeting, he touched her buttocks. (*Id.* ¶¶ 97-98.) She further alleges that on February 27, 2020, he made a sexual hand gesture during a work discussion. (*Id.* ¶ 99.) Plaintiff alleges that in May 2020 she "set a firm professional boundary" with Dr. Freiwald "requesting that future work meetings not be held in restaurants . . . ." (*Id.* ¶ 148.)

___

separate federal employment discrimination action, *Agra v. Dolci*, Case No. 23-cv-10255 (S.D.N.Y. Nov. 11, 2023). *See Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."). Mr. Agra's claims are based on allegations strikingly similar to those advanced here, including sexual coercion tied to professional opportunities and visa sponsorship, retaliation, and alleged resulting PTSD and career-related harm. Defendants in Mr. Agra's case allege his complaint is frivolous and parrots the claims advanced by Plaintiff here.

[3] The truth of Plaintiff's allegations is assumed for purposes of this motion to the extent the allegations in her 4AC do not contradict the allegations set forth in her prior pleadings. However, the Court need not and should not accept as true the contradictory factual embellishments absent Plaintiff has added here that were absent from her earlier complaints. *See Dozier v. Deutsche Bank Tr. Co. Ams.*, 2011 WL 4058100, at *2 (S.D.N.Y. Sep. 1, 2011); *Palm Beach Strategic Income, LP v. Stanley P. Salzman, P.C.*, 2011 WL 1655575, at *5–6 (E.D.N.Y. May 2, 2011).

Plaintiff further alleges that on June 4, 2020, Dr. Freiwald told her it would be best for her to "move to a different place and different environment," and on June 9, 2020, told her she should wrap up her work and look for another job. (*Id.* ¶¶ 102, 104.) She admits, however, that Dr. Freiwald agreed to extend her appointment for another six months and instructed her to focus on finishing her current experiments. (*Id.* ¶ 106.) Plaintiff also alleges that he assigned a guest lecture opportunity to a male postdoc, reassigned a collaboration opportunity, and diverted resources to another postdoc. (*Id.* ¶¶ 108-110.) At the same time, Plaintiff alleges that in February 2021, Dr. Freiwald gave her an opportunity to write a review paper and that RU sponsored a three-year H-1B visa for Plaintiff and her husband. (*Id*. ¶ 113.)

Plaintiff also alleges that in August 2020 Dr. Freiwald addressed the results of an anonymous lab climate survey indicating that respondents were not "really having fun" and felt they could not talk to him about personal concerns. (*Id.* ¶ 107.)

RU terminated Plaintiff's employment in August 2021, effective November 30, 2021. (*Id.* ¶ 121.) RU terminated her access to her RU email account five days later and filed paperwork to withdraw its sponsorship of her H-1B visa, as was its legal obligation after her employment ended. (*Id.* ¶¶ 126, 132.)

### B. Plaintiff's Post-Termination Occupancy of RU Housing and Her Admissions Regarding Arrears

Plaintiff alleges that she lived in an on-campus apartment she rented from RU. (*Id.* ¶ 12.) She acknowledges that on December 8, 2021, after her employment ended, RU demanded that she surrender the apartment. (*Id.* ¶ 128.) She further alleges that on December 16, 2021, she informed RU that she would remain notwithstanding her termination. (*Id.* ¶ 129.)

Plaintiff admits that she thereafter remained in RU housing. (*Id*. ¶ 134.) She further alleges that RU later accepted an ERAP payment on her behalf in early 2023, covering 14 months of arrears and that, consistent with ERAP requirements, RU agreed not to pursue eviction

for one year after receipt of the ERAP payment. (*Id.*) During the January 16, 2026 hearing on Plaintiff's first motion for preliminary injunctive relief, Plaintiff also acknowledged on the record that she was at least approximately $43,000 in arrears. (Bloom Decl. Ex. C at 22:5-14.)

## PLAINTIFF'S ATTEMPTS TO CIRCUMVENT PRIOR RULINGS

### A.    Plaintiff's Administrative Complaints and Procedural Elections

In May 2021, Plaintiff filed an administrative complaint against RU and Dr. Freiwald with the New York State Division of Human Rights ("NYSDHR") and cross-filed the charge with the Equal Employment Opportunity Commission ("EEOC"). (4AC ¶ 9.) At Plaintiff's request, the NYSDHR dismissed the charge for administrative convenience on April 7, 2023. (*Id.*; Third Amended Complaint ("TAC") ¶ 6(a).) The EEOC then dismissed her charge and issued a notice of right to sue on March 21, 2023. (*Id.*; TAC ¶ 6(b).)

### B.    This Action, *Marciniak II,* and Plaintiff's Request to Consolidate

Plaintiff and her husband, Mr. Agra, commenced this action *pro se* on December 29, 2022 but did not name Dr. Freiwald as a defendant. (Dkt. 1.) After filing a First Amended Complaint ("FAC") in April 2023, again without naming Dr. Freiwald, Plaintiff retained counsel, and RU moved to dismiss. (Dkts. 65, 69, 84, 85, 87.)

On November 22, 2023, Plaintiff and Mr. Agra, through counsel, commenced *Marciniak II* against RU, Dr. Freiwald, MIT and Azevedo, which asserted overlapping employment claims based on the same underlying events as *Marciniak I*. (Bloom Decl. Ex. D.)[4] Plaintiff sought to consolidate the two actions, and this Court denied that request on January 11, 2024. (Bloom Decl. Ex. E) Judge Cronan later dismissed *Marciniak II* with prejudice as duplicative, except insofar as the dismissal would not affect current or future claims in this action.  (Bloom Decl. Ex. H.)

---

[4] On September 29, 2024, Judge Cronan dismissed Plaintiff's first complaint in *Marciniak II* in its entirety, noting that it recounted the same factual allegations, causes of action and named many of the same parties as the then-operative complaint in *Marciniak I*. (Bloom Decl. Ex. F.) Nevertheless, on October 29, 2024, Plaintiff filed an amended complaint that was virtually identical to the original *Marciniak II* complaint. (Bloom Decl. Ex. G.)

**C.** **This Court Dismisses the FAC and Plaintiff Files Two Subsequent Pleadings**

On September 30, 2024, this Court granted RU's motion to dismiss the FAC, holding that her Title VII, NYSHRL and NYCHRL claims were time-barred and inadequately pleaded and rejecting her reliance on the continuing violation doctrine. (Bloom Decl. Ex. A; Dkt. 107 at 30-37.) Plaintiff then filed the Second Amended Complaint ("SAC") in this action, dropping Mr. Agra as co-plaintiff and still not naming Dr. Freiwald. (Dkt. 108.) After Plaintiff's counsel withdrew, Plaintiff sought leave to add Dr. Freiwald and a GMVL claim in this action. (Dkts. 115, 127, 129.) On February 28, 2025, Plaintiff filed the TAC, naming Dr. Freiwald here for the first time and asserting employment and GMVL claims against him. (Dkt. 136.)

**D.** **The Housing Proceedings, the Preliminary Injunction Motions and the 4AC**

On September 10, 2025, RU served Plaintiff with a 90-Day Notice of Termination of Tenancy ("Termination Notice"), advising her that RU was formally terminating her tenancy as of January 6, 2026. (4AC ¶ 138.) Plaintiff then moved for a temporary restraining order and preliminary injunction to prevent RU from commencing eviction proceedings and to require RU to implement a safety plan regarding Azevedo. (Dkt. 195.) RU opposed that motion.

On September 15, 2025, this Court denied Plaintiff's TRO. (Dkt. 197.)  On January 16, 2026, the Court denied Plaintiff's request for a PI, holding that the tenancy dispute belonged in state court and observing that Plaintiff's right to housing ended when her employment ended. (Bloom Decl. Ex. C at 23:25-24:13.) The Court also declined to order the requested safety plan. (*Id.* at 24:4-7.) The same day, the Court granted Plaintiff leave to file a fourth amended complaint and stated that absent good cause, it would be her final amendment. (*Id.* at 5:5-11.)

On January 30, 2026, Plaintiff filed her 4AC – her fifth complaint in this action and seventh complaint overall – and, for the first time, added claims under the FHA for failure to accommodate her alleged disability of post-traumatic stress disorder ("PTSD"), sex- and

7

disability-based discrimination, and retaliation, as well as a request for reinstatement to her employment under the employment discrimination laws.[5] Plaintiff added those FHA claims after the Court denied her motion for TRO/PI, ruling that the tenancy dispute belonged in state court.

RU commenced a holdover proceeding in state housing court on January 29, 2026, after Plaintiff remained in the apartment following the expiration of the Termination Notice. Plaintiff later renewed her request for a TRO and PI on February 17, 2026, again seeking to halt the eviction and require RU to implement a safety plan. (Dkts. 232-234.) RU opposed that renewed motion on February 25, 2026, and Plaintiff filed her reply on March 4, 2026.  (Dkts. 238-241, 243, 244.)  The Court denied the TRO on February 15. (Dkt. 237.)  The request for PI remains *sub judice*.

## ARGUMENT

### I.     The 4AC Should Be Dismissed In Its Entirety Because It Violates Rule 8.

Although this is Plaintiff's *seventh* attempt at a pleading – including three when represented by counsel – the 4AC still fails to provide a "short and plain statement" required by Fed. R. Civ. P. 8(a). As Rule 8 does not permit a plaintiff to force the Court and defendants to reconstruct a viable complaint from a sprawling narrative, especially after repeated opportunities to replead, the 4AC should be dismissed with prejudice.

Courts in this District consistently have dismissed complaints filed by *pro se* litigants, "which ramble, [] needlessly speculate, accuse, and condemn, and which contain circuitous diatribes far removed from the heart of the claim." *Benzo v. N.Y. State Div. of Hum. Rts.*, 1997

---

[5] Courts in this Circuit have routinely held that reinstatement is impractical or inappropriate in discrimination and retaliation cases. *See, e.g., Greenbaum v. Svenska Handelsbanken, N.Y.*, 979 F. Supp. 973, 987 (S.D.N.Y. 1997); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727-29 (2d Cir. 1984); *Sass v. MTA Bus Co.*, 6 F. Supp. 3d 238, 253 (E.D.N.Y. 2014). Moreover, the FHA's remedial provision does not encompass reinstatement to employment. *See* 42 U.S.C. § 3613(c)(1).

WL 37961, at *3 (S.D.N.Y. Jan. 31, 1997) (citing *Donovan v. City of New York*, 1994 WL 603210 at *1 (2d Cir. 1995)), *aff'd*, 141 F.3d 1151 (2d Cir. 1998); *Levine v. Dep't of Soc. Servs.*, 22 F.3d 1090 (2d Cir. 1994)); *accord Barsella v. United States*, 135 F.R.D. 64, 65-66 (S.D.N.Y.1991) (citing *Prezzi v. Berzak*, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); *Chodos v. F.B.I.*, 559 F. Supp. 69, 71-72 (S.D.N.Y. 1982) (citing *Prezzi*, 57 F.R.D. at 151), *aff'd*, 697 F.2d 289 (2d Cir. 1982).

To be sure, the 4AC remains laden with irrelevant, inflammatory, and speculative allegations that obscure rather than clarify the factual basis of Plaintiff's claims. (*See, e.g.*, 4AC ¶¶ 16-17, 18-28, 87.) But the more fundamental defect is that the 4AC improperly fuses a landlord-tenant dispute into what was previously an employment discrimination case. The result is a complaint that does not clearly delineate which facts support which causes of action, what conduct allegedly violates which statute, or in what capacity RU is alleged to have acted – employer, landlord, or both – at any point in the narrative. The 4AC thus fails to give fair notice of what RU allegedly did, when it allegedly did it, in what role it was acting, and under what legal theory Plaintiff seeks relief.

Defendants and this Court have repeatedly advised Plaintiff that her prior pleadings failed to satisfy Rule 8, and she has been given repeated opportunities to correct those deficiencies. (Dkts. 15, 22, 24, 27, 32, 42, 47, 50, 57, 107, 112, 113, 114, ; *see* RU's motion to dismiss Plaintiff's FAC, Dkts. 84, 85, 87; *see* RU Defendant's motion to dismiss Plaintiff's TAC, Dkts. 148, 148, 151.) She has not done so. Instead, the 4AC expands the case, adds new statutory theories, and makes the pleading more confusing than before. Under these circumstances, dismissal with prejudice is warranted. *See Jones v. Nat'l Commc'ns & Surveillance Networks*, 266 F. App'x 31, 33 (2d Cir. 2008). Alternatively, if the Court does not dismiss the 4AC in its entirety, the plainly irrelevant and prejudicial allegations discussed above should be stricken.

9

II.     **Plaintiff's Untimely Discrimination Claims (First and Second Causes of Action)**
        **Should Be Dismissed.**

As this Court previously held, Plaintiff's Title VII claims arising prior to July 22, 2020 –

300 days before she filed her charge with the EEOC on May 18, 2021 – are untimely. (Dkt. 107

at 31-32, 34.) What remains timely under Title VII, therefore, are only discrete, non-sexual

employment actions that occurred on or after July 22, 2020: (1) Dr. Freiwald's alleged July 30,

2020 demotion of Plaintiff; (2) the alleged late 2020 deprivations of professional opportunities to

a male postdoc; and (3) the August 21, 2021 termination of Plaintiff's employment effective

November 30, 2021. (4AC ¶¶ 108-112, 121.) Notably, none of the timely Title VII allegations

involve any sexual advance or rejection of one – the last alleged sexual advance is the February

27, 2020 hand gesture, and the latest alleged rejection is the May 29, 2020 "boundary" email,

both of which predate July 22, 2020. (4AC ¶¶ 97, 99, 101.)

Similarly, Plaintiff's NYSHRL and NYCHRL claims arising prior to December 28, 2019

– three years before Plaintiff commenced this action – are untimely. C.P.L.R. § 214(2);[6] N.Y.C.

Admin. Code § 8-502(d). The timely allegations under the NYSHRL and NYCHRL are: (1) the

January 20, 2020 denial of Plaintiff's fellowship application; (2) the February 14, 2020 incident

in which Dr. Freiwald allegedly displayed a visible erection, referred to Plaintiff's desired course

of action," and touched her buttocks as she left his office; (3) the February 27, 2020 hand

gesture; (4) the May 29, 2020 "boundary" email; (5) Dr. Freiwald's June 4 and June 9, 2020

directives to Plaintiff to abandon her project and look for another job; and (6) the August 2021

---

[6] As this Court previously held, Plaintiff's NYSHRL claims are subject to a three-year statute of limitations because Plaintiff requested that the NYSDHR dismiss her complaint for administrative convenience, and the pendency of the proceeding therefore did not toll the limitations period. *See* N.Y. Exec. Law § 279(9); *DeJohn v. Wal-Mart Stores E., LLP*, 2013 WL 1180863, at *4 (N.D.N.Y. Mar. 20, 2013). Plaintiff expressly alleged that fact in the TAC. (TAC ¶ 6.) Although Plaintiff omits that allegation in the 4AC, that omission does not change the analysis.

termination of Plaintiff's employment, effective November 30, 2021. (4AC ¶¶ 91, 93-94, 97, 99, 101, 102, 104, 121.)

### III.    Plaintiff Fails to State a Claim For *Quid Pro Quo* Harassment (First Cause of Action).

Plaintiff's *quid pro quo* harassment claim (First Cause of Action) against RU fails under Title VII, the NYSHRL, and the NYCHRL. As to Title VII, the claim is untimely because all the alleged sexual conduct and Plaintiff's alleged rejection of it predate July 22, 2020. As to the NYSHRL and the NYCHRL, the claim likewise fails because Plaintiff still does not plausibly link any alleged sexual conduct to any job consequence.

### A.    Plaintiff Does Not State a Claim for *Quid Pro Quo* Harassment Under Title VII.

This Court previously held that Plaintiff's Title VII *quid pro quo* claim against RU was time-barred because the alleged unwelcome and sexual conduct and adverse employment action predated July 22, 2020 and because Plaintiff had not adequately pleaded a continuing violation. (Dkt. 107 at 31-32, 34.) The 4AC does not cure those defects.

To state a Title VII *quid pro quo* claim, Plaintiff must plausibly allege that a supervisor linked a tangible job benefit to the acceptance or rejection of sexual advances. *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994); *see also Frank v. Plaza Constr. Corp.*, 186 F. Supp. 2d 420, 426-27 (S.D.N.Y. 2002).

As set forth above, the alleged sexual incidents on which Plaintiff's Title VII *quid pro quo* theory rests predate July 22, 2020. The last alleged sexual advance occurred on February 27, 2020, and Plaintiff's only alleged rejection of any such advance is her May 29, 2020 "boundary" email which, in reality, does not allege such rejection. [7] (4AC ¶¶ 99, 101.) The later allegations

---

[7] As explained in Section III(B), *infra*, the May 29, 2020 email requested that meetings be held in "more professional" settings does not constitute an alleged rejection of a sexual advance.

concern workplace decisions regarding Plaintiff's project, appointment term, opportunities, resources, and eventual termination. (*Id.* ¶¶ 106, 108-113, 121, 149.) But those later allegations do not make the claim timely, because Plaintiff does not allege any timely sexual advance or timely rejection of one.

Nor does the July 30 allegation change that result. Although Plaintiff now alleges for the first time that Dr. Freiwald "formally demoted" her on that date (*id.* ¶ 149(b)), her own pleading still places the relevant decision in June 2020, when she alleges that Dr. Freiwald told her to move to a different project, wrap up her work, and look for another job. (*Id.* ¶¶ 102, 104, 149(a).) And in any event, Plaintiff still does not plead facts plausibly showing that the July 30 action – or any later tangible employment action – was taken because she rejected sexual advances. *See Hernandez v. Premium Merch. Funding One, LLC*, 2020 WL 3962108, at *13 (S.D.N.Y. July 13, 2020); *Haight v. NYU Langone Med. Ctr., Inc.*, 2014 WL 2933190, at *13 (S.D.N.Y. June 27, 2014).

Accordingly, Plaintiff's Title VII *quid pro quo* claim should be dismissed with prejudice.

### B.      Plaintiff's NYSHRL and NYCHRL *Quid Pro Quo* Claims Fail.

As this Court previously held, Plaintiff's *quid pro quo* claims under the NYSHRL and the NYCHRL are time-barred insofar as they rely on conduct occurring before December 28, 2019.[8] (Dkt. 107 at 37.) The 4AC does not cure that defect. What remains are the February 2020 incidents – the alleged "visible erection," the reference to her "desired course of action," the alleged touching of her buttocks as she left Dr. Freiwald's office, and the alleged "sexual" hand

---

[8] Some of Plaintiff's allegations are undated and to the extent those allegations occurred prior to December 28, 2019, they are untimely. Furthermore, all of Plaintiff's NYSHRL and NYCHRL claims against Dr. Freiwald are time-barred for the reasons set forth in Section II, *supra*.

gesture – and Plaintiff's May 29, 2020 "boundary" email as the supposed rejection. (4AC ¶¶ 97-113, 147-150.)

Those allegations still do not plausibly state a quid pro quo claim under the NYSHRL. Plaintiff does not plausibly allege that Dr. Freiwald requested sexual favors, conditioned any job benefit on sexual compliance, or that her May 29, 2020 email actually rejected a sexual advance. Her theory instead rests on her own characterization of workplace interactions rather than facts plausibly showing that she rejected a sexual advance. *See Reed v. Fortive Corp.*, 2023 WL 4457908, at \*26 (W.D.N.Y. July 11, 2023) (dismissing *quid pro quo* claim based on plaintiff's "subjective characterization" of workplace interaction), *aff'd*, 2024 WL 1756110 (2d Cir. 2024); *see also Sutton v. Stony Brook Univ.*, 2022 WL 4479509, at \*2 (2d Cir. Sep. 27, 2022) (affirming dismissal where "sexual advances" were conclusory characterizations that did not plausibly allege sexual behavior).

Even if Plaintiff had plausibly alleged that Dr. Freiwald made a sexual advance and that she rejected it, the 4AC still does not plausibly link that rejection to any adverse employment consequence. To the contrary, Plaintiff alleges that after the February 2020 incidents and the May 2020 "boundary" email, Dr. Freiwald extended her appointment for another six months and instructed her to focus on finishing her current experiments; later gave her an opportunity to write a review paper, and, together with RU, continued to sponsor an H-1B visa for Plaintiff and her husband. (4AC ¶¶ 106, 113.) Those factual allegations affirmatively undermine, rather than support, any inference that job benefits were conditioned on sexual compliance or withheld because of a rejection.

The NYCHRL does not change this result. Even under its more liberal standard, Plaintiff must plausibly allege that the purported sexual conduct was linked to unequal treatment because of her gender – not merely that she is dissatisfied with workplace decisions that followed an

13

interaction she characterizes as sexual. *See, e.g., Fattoruso v. Hilton Grand Vacations Co., LLC,* 873 F. Supp. 2d 569, 577-78 (S.D.N.Y. 2012), *aff'd,* 525 F. App'x 26 (2d Cir. 2013) . Therefore, a plaintiff cannot manufacture a NYCHRL *quid pro quo* claim from conclusory assertions and subjective interpretations of ambiguous events alone. *See Chamberlain v. Splashlight, LLC*, 2024 WL 5170266, at *1 (S.D.N.Y. Oct. 10, 2024) (rejecting NYCHRL *quid pro quo* claim based on "incomplete, threadbare, and conclusory allegations"). Here, even under the NYCHRL, Plaintiff does not plausibly allege that Dr. Freiwald conditioned any employment benefit on sexual compliance, that he requested sexual favors, or that the decisions she complains of were made because of her sex rather than the ordinary challenges of managing a research laboratory.

Accordingly, Plaintiff's NYSHRL and NYCHRL *quid pro quo* claims against RU should be dismissed with prejudice.

IV.     **Plaintiff Fails to State A Claim For Hostile Work Environment Under Title VII (Second Cause of Action).**

This Court has previously held that Plaintiff's Title VII hostile work environment claim against RU (Second Cause of Action) was untimely to the extent based on pre-July 22, 2020 conduct, that Plaintiff had not adequately pleaded a continuing violation, and that the timely allegations then identified did not plausibly allege a severe or pervasive hostile work environment because of sex. (Dkt. 107 at 32-33.) The 4AC does not cure those defects.

To state a claim for hostile work environment under Title VII, Plaintiff must allege conduct that is objectively severe or pervasive enough to alter the conditions of employment and that occurred because of her sex. *Osborne v. Moody's Invs. Serv., Inc.*, 2018 WL 1441392, at *5 (S.D.N.Y. Mar. 22, 2018). In other words, Plaintiff must plead either a single extraordinarily severe incident or a series of incidents sufficiently continuous and concerted to have altered the conditions of her working environment. *Alfano v. Costello*, 294 F.3d 365, 373-74 (2d Cir. 2002).

14

As discussed above, all specifically alleged sexual incidents are untimely under Title VII. *See* Section II, *supra*. What remains are later allegations concerning the lab survey, project management, allocation of opportunities and resources, the end of collaborations, and Plaintiff's eventual termination. (4AC ¶¶ 107-114, 121, 160.) Those allegations do not describe sex-based harassment at all, much less conduct so severe and pervasive as to alter the conditions of Plaintiff's employment because of sex. They sound in workplace dissatisfaction, management style, and discrete employment decisions. *See Myers v. Doherty*, 2022 WL 4477050, at *3 (2d Cir. 2022); *Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 2016 WL 11318241, at *10-11 (E.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2018 WL 1603872 (E.D.N.Y. Mar. 30, 2018), *aff'd*, 2019 WL 1749179 (2d Cir. Apr. 16, 2019).

Nor do the 4AC's new allegations about RU's response to Azevedo or its post-termination housing conduct cure the defects this Court previously identified. Once Plaintiff's employment ended, she was no longer in RU's workplace, and post-employment housing disputes cannot establish that Plaintiff was subjected to a hostile work environment. *Mira v. Kingston*, 218 F. Supp. 3d 229, 235 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017).

Accordingly, Plaintiff's Title VII hostile work environment claim should be dismissed in its entirety, with prejudice.

## V.      Plaintiff Fails to State a Claim for Hostile Work Environment Under the NYSHRL and the NYCHRL (Second Cause of Action).

Plaintiff's hostile work environment claims under the NYSHRL and NYCHRL (Second Cause of Action) should likewise be dismissed. Allegations predating December 28, 2019 are time-barred. What remains are the alleged February 2020 incidents, later allegations concerning workplace issues, and Plaintiff's eventual termination.

Even under the more liberal NYCHRL standard – and under the same standard for NYSHRL conduct after its October 2019 amendment – Plaintiff still must plausibly allege that

she was treated less well because of sex, rather than merely subjected to workplace friction, petty slights, or dissatisfaction with supervision. *See Simon v. City of New York*, 2019 WL 916767, at *10 (S.D.N.Y. Feb. 14, 2019) (granting motion to dismiss NYCHRL hostile work environment claim where the plaintiff failed to allege that stray remarks had any discriminatory motive or that the alleged employment actions were because of her sex).

Here, the timely allegations of arguably sexual nature consist of the events of February 14, 2020 and February 27, 2020. (4AC ¶¶ 97-99, 156(e)-(f).) But these allegations are sexualized solely through Plaintiff's own subjective interpretation.  For example, her assertion that the phrase "desired course of action" constituted an explicit linkage of her career prospects to sexual compliance, or that the later hand gesture was sexual, are Plaintiff's subjective interpretations. Courts need not accept a plaintiff's characterization of ambiguous events as sufficient to establish that conduct was motivated by sex. *See Simon v. City of New York*, 2019 WL 916767 (S.D.N.Y. Feb. 14, 2019) (holding that allegations that alleged harasser invaded personal space, told plaintiff that plaintiff liked him, and asked when plaintiff was leaving work were insufficient to allege that plaintiff received unequal treatment based on gender). Even accepting Plaintiff's interpretation, these incidents — occurring across a single month — are a small number of isolated occurrences insufficient to establish a hostile work environment even under the NYCHRL. *See Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78-79 (1st Dep't 2009) (explaining that the NYCHRL does not operate as a general civility code).

The remaining timely allegations do not salvage Plaintiff's claims. They concern management friction and workplace dissatisfaction, not sex-based conduct. (4AC ¶¶ 102-113, 118, 123-124, 160(b).)  The NYCHRL does not convert every workplace grievance into actionable discrimination simply because the plaintiff is a woman. *Mihalik*, 715 F.3d at 110.

Finally, post-employment housing conduct cannot contribute to a hostile work environment once Plaintiff was no longer employed. *Grewal v. Cuneo Gilbert & LaDuca LLP,* 2017 WL 1215752, at \*13 (S.D.N.Y. Mar. 31, 2017). RU's post-termination housing actions are therefore not actionable employment discrimination.

Accordingly, Plaintiff's NYSHRL and NYCHRL hostile work environment claims should be dismissed with prejudice.

## VI.    Plaintiff's Title VII, NYSHRL and NYCHRL Retaliation Claims (Third Cause of Action) Largely Fail As a Matter of Law.

Plaintiff alleges that RU retaliated against her under Title VII, the NYSHRL, and the NYCHRL (Third Cause of Action). Except to the extent her retaliation claim is based on the termination of her employment, the remaining allegations cannot state a retaliation claim and should be dismissed because they are untimely and/or do not plausibly allege actionable retaliation either during or after Plaintiff's employment.[9]

### A.    Retaliation Claims Based on Untimely Conduct Should Be Dismissed.

As this Court previously held, Plaintiff's Title VII retaliation claims are untimely to the extent they arise before July 22, 2020.  (Dkt. 107 at 34.) Likewise, to the extent Plaintiff's NYSHRL and NYCHRL retaliation claims rely on conduct occurring before December 28, 2019, those allegations are untimely under the applicable three-year statute of limitations. (*See* Dkt. 107 at 36-37.)

Accordingly, under Title VII, Dr. Freiwald's alleged June 4 and June 9, 2020 directives that Plaintiff move off her project and look for another job are untimely and cannot support a retaliation claim.  (4AC ¶¶ 102, 104, 164(a).) Under the NYSHRL and NYCHRL, any retaliatory

---

[9] As noted in Section VIII(B), *infra*, the retaliation claims against Dr. Freiwald also fail because Title VII does not recognize individual liability and the NYSHRL and NYCHRL claims are untimely.

conduct predating December 28, 2019 – including RU's alleged earlier failure to respond to Plaintiff's complaints about Azevedo – is also time-barred.

### B. Apart from Her Claim Based on the Termination of Her Employment, Plaintiff Does Not Plausibly Allege Actionable Retaliation During Her Employment.[10]

What remains, then, are limited categories of allegedly retaliatory conduct: during Plaintiff's employment, the alleged July 30, 2020 "demotion," the undated withdrawal of opportunities or resources, the (undated) termination of Plaintiff's CBMM collaboration,[11] and the August 2021 decision to terminate her employment effective November 30, 2021; and after Plaintiff's employment ended, RU's alleged conduct relating to ERAP, H-1B withdrawal, recommendations, housing and the September 10, 2025 Termination Notice.  As noted below, apart from her termination itself, none of these allegations can state a claim for retaliation.

To plead retaliation under Title VII, Plaintiff must allege protected activity, an adverse action, and a causal connection between the two. *McCormick v. Donovan*, 365 F. App'x 247, 249 (2d Cir. 2010). Under the NYSHRL and NYCHRL, the causation standard is less demanding, but Plaintiff still must plausibly allege that she suffered actionable retaliation because she opposed unlawful employment practices. *Ronen v. RedRoute, Inc.*, 763 F. Supp. 3d 319, 333 (E.D.N.Y. 2025); *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122 (2d Cir. 2024).

Measured against those standards, Plaintiff's retaliation theories as to alleged conduct during her employment largely fail. The only clearly identified protected activity during her employment is her filing of an administrative charge with the NYSDHR and EEOC in May 2021. But, except for the termination of her employment, the allegedly retaliatory actions she

---

[10] RU, however, reserves all rights to challenge Plaintiff's claim that her termination was retaliatory in subsequent stages of this litigation.

[11] Plaintiff's undated allegations are also untimely to the extent they occurred prior to July 22, 2020 and December 28, 2019, respectively.

identifies during her employment either predate that charge or are not pleaded with enough specificity to support a plausible inference of retaliation.

The alleged July 30, 2020 "demotion" plainly predates Plaintiff's May 2021 administrative charge and cannot plausibly have been retaliatory in response to it. The same is true of the June and July 2020 workplace allegations. To the extent Plaintiff relies on allegations concerning the withdrawal of opportunities or resources or the end of her CBMM collaboration, the 4AC does not plead those events with sufficient specificity to show that they occurred after Plaintiff engaged in protected activity, as opposed to before it, or to support a plausible inference that they were caused by such activity. Undated or vaguely timed allegations do not provide a plausible basis for retaliation. *Lee v. Saul,* 2022 WL 1051216, at *10 (S.D.N.Y. Feb. 10, 2022); *Flood v. Cappelli*, 2019 WL 3778736, at *8 (S.D.N.Y. Aug. 12, 2019).

### C. Plaintiff's Post-Employment Retaliation Claims Fail in Their Entirety.

Plaintiff's post-employment retaliation claims fail because she does not plausibly allege, as is required, acts tied to her current employment or that substantially interfere with the plaintiff's ability to obtain future employment. *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997).

First, some of Plaintiff's post-employment allegations fail because the 4AC itself shows they are not adverse or not retaliatory. Plaintiff alleges that RU failed to timely assist her with her ERAP application (4AC ¶ 125), yet she admits that RU in fact submitted the paperwork that enabled her to receive ERAP benefits. (*Id*. ¶ 134.) Plaintiff also alleges that RU withdrew her H-1B visa sponsorship (*id*. ¶ 132), ignoring that RU was legally required to do so upon her termination. *See* 8 C.F.R. § 214.2(h)(11)(i)(A); *Mandavia v. Columbia Univ.*, 912 F. Supp. 2d 119, 133 (S.D.N.Y. 2012), *aff'd*, 556 F. App'x 56 (2d Cir. 2014).

19

Second, Plaintiff's remaining post-employment allegations do not plausibly show interference with future employment. She alleges that RU denied her husband campus access, that RU's counsel did not provide a landlord letter, that housing staff "intimidated" her husband, and that Dr. Freiwald did not provide a positive recommendation. (4AC ¶¶ 124, 136, 165.) But Plaintiff does not plausibly allege facts showing that any of those acts substantially interfered with her ability to obtain future employment. *See Wanamaker*, 108 F.3d at 466; *Mira v. Kingston*, 218 F. Supp. 3d 229, 235-36 (S.D.N.Y. 2016), *aff'd*, 715 F. App'x 28 (2d Cir. 2017). Her conclusory assertion that these acts caused "career destruction" is insufficient. (4AC ¶ 167.) As to the alleged recommendation, Plaintiff does not allege that she actually requested one, when she did so, whether Dr. Freiwald refused, or what recommendation, if any, was provided. [12]

Third, Plaintiff's theory based on the September 10, 2025 Termination Notice fails because that notice arose from a separate post-employment housing dispute, not from Plaintiff's employment. Plaintiff alleges that RU demanded surrender of the apartment in December 2021 because her employment had ended, that she refused to leave, and that she thereafter remained in the apartment as a "tenant-at-sufferance." (4AC ¶¶ 128-129, 134.) She also admitted during the preliminary injunction hearing that she had not paid all rent due and that at least approximately $43,000 remained unpaid. (Bloom Decl. Ex. C at 22:5-14.) Against that backdrop, the September 10, 2025 Termination Notice concerned Plaintiff's post-employment tenancy in RU housing, not her employment, and does not plausibly allege retaliation affecting Plaintiff's future employment.

---

[12] The fact that Plaintiff alleges that her subsequent job "applications were unsuccessful" (4AC ¶ 124), and her belief that Dr. Freiwald did "not provide a positive recommendation" (*id*.), "does not, by itself, amount to a plausible claim for post-termination retaliation." *Male v. Tops Mkts., LLC,* 2010 WL 4319769, at *3 (W.D.N.Y. Oct. 29, 2010).

Accordingly, except for Plaintiff's retaliation claim based on the termination of her employment effective November 30, 2021, Plaintiff's retaliation claims should be dismissed.

### D. Separately, Plaintiff's Title VII Retaliation Theories Based on Post-Employment Housing-Related Conduct Fail for Failure to Exhaust.

Even if Plaintiff could otherwise state a Title VII retaliation claim based on RU's post-employment housing-related conduct – including the September 10, 2025 Termination Notice – those theories fail for failure to exhaust. Plaintiff alleges that she filed her administrative charge in May 2021. (4AC ¶ 163(c).) The housing-related acts on which she now relies, by contrast, occurred years later, after her employment ended. Plaintiff therefore did not present any Title VII retaliation claim based on RU's later housing conduct to the EEOC, and she never filed a new or amended charge addressing that conduct. *See Gomez v. N.Y.City Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016).

Nor are those housing-related allegations reasonably related to the original charge. Plaintiff's charge concerned alleged workplace harassment and retaliation. It did not mention post-employment housing-related allegations, which are distinct acts arising in a different context and years later that could not reasonably be expected to grow out of an EEOC investigation into Plaintiff's employment claims. *See Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 470 (S.D.N.Y. 2011); *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008).

### VII. <u>Plaintiff Fails to State a Claim Under the FHA (Fifth Cause of Action)</u>.

Plaintiff's FHA claims (Fifth Cause of Action) also fail as a matter of law because the 4AC does not plausibly plead the elements of discrimination, failure to accommodate, or retaliation against RU in its role as landlord.

### A. Plaintiff's FHA Discrimination Claim Fails As a Matter of Law.

1. <u>Plaintiff Does Not Allege Discrimination.</u>

21

Plaintiff's FHA discrimination claim fails first and foremost because the 4AC does not plausibly allege disparate treatment, i.e., that RU took any housing-related action because of Plaintiff's sex or alleged PTSD. Plaintiff does not identify any similarly situated tenant – male, non-disabled, or otherwise – who was treated more favorably. Nor does she plead facts giving rise to any inference of discriminatory animus. *See Jones v. Volunteers of Am. Greater N.Y.*, 2022 WL 768681, at *9 (S.D.N.Y. Mar. 14, 2022) (granting motion to dismiss FHA discrimination claim where plaintiff did not " identify other individuals, disabled or not, . . . who were treated differently than he was"); *Moody v. Related Co., L.P.*, 620 F. Supp. 3d 51, 56 (S.D.N.Y. 2022) (granting motion to dismiss FHA discrimination claim where plaintiff did "not adequately plead[] a comparator who [was] similarly situated but treated better . . . .").

Instead, the 4AC alleges only that RU terminated Plaintiff's housing after her employment ended (in accordance with her lease), demanded that she surrender the apartment, and later pursued termination of her post-employment tenancy. Plaintiff further admitted to this Court that she has not paid rent and is at least $43,000 in arrears. (Bloom Decl. Ex. C at 22:5-14.) Plaintiff's allegations do not plausibly support an inference that RU acted because of Plaintiff's sex or alleged PTSD. And the facts that her lease required her to vacate her apartment upon its termination and she admits that she has not paid rent demonstrate that RU had legitimate non-discriminatory reasons for its actions. Simply put, there is nothing in the 4AC connecting RU's housing actions to discriminatory animus. *Hartley v. United Student Rentals*, 2025 WL 26769, at *4 (N.D.N.Y. Jan. 3, 2025) (dismissing FHA claim where plaintiff alleged "*no connection* between any act of defendants and plaintiff's [mental health] impairments") (emphasis added), *adopted by*, 2025 WL 438195 (N.D.N.Y. Feb. 7, 2025).

      2.      <u>Plaintiff Does Not Allege that She is Disabled</u>.

22

The claim independently fails because Plaintiff does not plausibly allege that she is disabled within the meaning of the FHA. Although she alleges that she was diagnosed with PTSD (4AC ¶¶ 140, 176), she pleads only conclusory assertions that PTSD affects her "sleeping, working, and feeling secure in her home." (*Id.* ¶ 181.) She does not allege facts explaining how her condition substantially limits any major life activity. Such threadbare allegations are insufficient. *See Mercer v. N.Y. City Hous. Auth.*, 2021 WL 230124, at *3 (S.D.N.Y. Jan. 22, 2021) (dismissing FHA claim where plaintiff did not describe what major life activity was impaired or how it was substantially limited); *Hartley*, 2025 WL 26769, at *4.

Accordingly, Plaintiff's FHA discrimination claim should be dismissed.

**B.  Plaintiff's FHA Failure-to-Accommodate Claim Fails As a Matter of Law.**

To state a *prima facie* case for failure to reasonably accommodate, Plaintiff must allege that: (1) she is disabled within the meaning of the FHA; (2) RU knew or reasonably should have been expected to know of her disability; (3) accommodation of the disability was likely necessary to afford her an equal opportunity to use and enjoy the dwelling; (4) such accommodation was reasonable; and (5) RU refused to make it. *See Currin v. Glenwood Mgmt. Corp.*, 2021 WL 4710485, at *3 (S.D.N.Y. Oct. 8, 2021).

Plaintiff's accommodation theory appears to be twofold. First, she appears to seek a bespoke "safety plan" excluding Azevedo from RU's campus. (4AC ¶ 185.) Second, she appears to seek, in substance, permission to remain in university housing without complying with the conditions of her post-employment tenancy. Neither theory states a claim.

As with her discrimination claim, Plaintiff does not plausibly allege that she is disabled within the meaning of the FHA. (*See* Section VII(A)(2)*, supra.*) She also does not plausibly allege a specific housing-related accommodation request that RU knew about and denied.

23

To the extent Plaintiff relies on a requested "safety plan," the 4AC does not allege when, how, or to whom she made such a housing-related accommodation request, or when RU denied it. That is fatal. *See, e.g.*, *Monterroso v. City of New York*, 2024 WL 360816, at \*5 (S.D.N.Y. Jan. 31, 2024); *Avila v. Acacia Network, Inc.*, 2025 WL 2622619, at \*4 (S.D.N.Y. Apr. 3, 2025), *adopted by*, 2025 WL 2233987 (S.D.N.Y. Aug. 6, 2025). And to the extent Plaintiff contends that her August 2019 request for RU's "assistance in obtaining a no-contact order" against Azevedo (4AC ¶ 81) was a request for accommodation, such allegation fails because she also alleges that she did not "formally disclose[] her PTSD diagnosis" to RU until August 2025. (*Id.* ¶ 182.) She therefore does not allege that RU knew or reasonably should have known of any disability when she made the earlier request. *Currin*, 2021 WL 4710485, at \*3.

To the extent Plaintiff seeks an accommodation allowing her to remain in university housing without satisfying the requirements of her tenancy, that theory also fails as a matter of law. The FHA does not require landlords to subsidize housing or excuse rent obligations as an accommodation. *Blitz v. BLDG Mgmt. Co.*, 2023 WL 6162295, at \*8 (S.D.N.Y. Sep. 21, 2023); *see also Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 301 (2d Cir. 1998) (holding the FHA "addresses the accommodation of handicaps, not the alleviation of economic disadvantages that may be correlated with having handicaps.").

Accordingly, Plaintiff's FHA failure-to-accommodate claim should be dismissed.

**C.  Plaintiff's FHA Retaliation Claim Fails As a Matter of Law.**

The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right

24

granted or protected by section . . . 3604 [of the FHA]."[13]  42 U.S.C. § 3617. To state a *prima facie* retaliation claim, Plaintiff must allege that (1) she engaged in protected activity by opposing conduct prohibited by the FHA; (2) RU knew of that activity; (3) RU thereafter took adverse action against her; and (4) a causal connection exists between the protected activity and the adverse action. *Gadson v. Riverbay Corp.*, 2025 WL 2452353, at *8 (S.D.N.Y. Aug. 26, 2025). Plaintiff does not plausibly allege either protected activity under the FHA or causation.

1.      Plaintiff Does Not Allege FHA-Protected Activity.

Plaintiff's asserted "protected activity" is not protected by the FHA.  She identifies workplace-related complaints and litigation activity in this employment case – most notably, a "major declaration" she filed in August 2025, which she says presented "direct evidence" of workplace harassment and retaliation and materials concerning Azevedo's supposed affiliation with RU.  (4AC ¶¶ 138, 187(c); Dkts. 195, 196.) But those allegations involve employment-related disputes, not opposition to a discriminatory housing practice or the exercise of any right protected by the FHA. *See Dickerson v. BPP PCV Owners LLC*, 2022 WL 4538281, at *6 (S.D.N.Y. Sep. 28, 2022) ("To prevail on a claim of retaliation under the FHA," the plaintiff must establish, among other elements, that she "engaged in protected activity by ***opposing conduct prohibited under the FHA***.") (emphasis added); *Mazzocchi v. Windsor Owners Corp.*, 2013 WL 5295089, at *12 (S.D.N.Y. Sep. 17, 2013) (granting motion to dismiss FHA retaliation claim where "the amended complaint fail[ed] to show that [plaintiff] was protesting or opposing discrimination prohibited under the FHA").

---

[13] Section 3604 of the FHA makes clear that Section 3617 – the FHA's anti-retaliation provision – applies to conduct that interferes with a person's opposition to discriminatory housing practices or enjoyment of housing rights free from discrimination.  *See* 42 U.S.C. § 3604.

Plaintiff does not identify any housing-related protected activity before RU served the Termination Notice. That is fatal. An employment dispute does not become FHA-protected activity simply because Plaintiff seeks to use it to challenge a later tenancy dispute.

### 2.    Plaintiff Does Not Plausibly Allege Causation.

Even if Plaintiff had alleged FHA-protected activity, her retaliation claim would still fail because the 4AC does not plausibly allege any causal connection between that activity and RU's housing actions. Plaintiff alleges that the September 10, 2025 Termination Notice as the "ultimate" adverse action.[14] (4AC ¶ 188.) But the chronology pleaded in the 4AC defeats any inference of retaliatory motive.

Plaintiff alleges that her employment ended on November 30, 2021, and that shortly thereafter RU notified her that she was no longer eligible for university housing and directed her to surrender the apartment. (*Id.* ¶¶ 121, 128.) She did not do so. Thus, by Plaintiff's own allegations, RU's asserted basis for recovering possession arose in 2021 – years before the August 2025 filing activity she now labels as protected activity. (*Id.* ¶¶ 138, 187(c).)

The 4AC also affirmatively undermines any inference that RU acted in retaliation for litigation activity. Plaintiff commenced this action in December 2022 and litigated it actively through multiple amended pleadings and motion practice. She also commenced *Marciniak II* in 2023. Yet RU did not initiate eviction proceedings at those earlier junctures. If RU were

---

[14] Plaintiff also appears to allege that RU retaliated by "refus[ing] to provide a standard landlord letter" and by "subject[ing] [her] and her husband to intimidating, threatening statements . . . ." (4AC ¶¶ 187(a)-(b).) Those allegations do not materially advance her FHA retaliation claim. Plaintiff does not plausibly allege that the purportedly "intimidating" statements constituted an adverse action within the meaning of the FHA, or that they would have deterred a reasonable person from exercising FHA rights. *See Joseph's House & Shelter, Inc. v. City of Troy, N.Y.*, 641 F. Supp. 2d 154, 159 (N.D.N.Y. 2009); *Noe v. Realty*, 2024 WL 5508198, at *17 (S.D.N.Y. July 22, 2024), *adopted by*, 2025 WL 958407 (S.D.N.Y. Mar. 31, 2025). Nor does Plaintiff plausibly allege that either of these acts chilled her exercise of any FHA right; to the contrary, she continued actively litigating and pressing her claims. *See Blitz v. BLDG Mgmt. Co.*, 2023 WL 6162295, at *12 (S.D.N.Y. Sep. 21, 2023). In any event, the only clearly identified housing-related adverse action in the 4AC is RU's service of the Termination Notice.

retaliating against Plaintiff for her litigation activity, one would expect such action far earlier – not only after years of her occupation of the apartment after her employment ended. Moreover, Plaintiff alleges RU accepted an ERAP payment in January 2023 and agreed not to evict for a year thereafter, which further undercuts any inference of retaliatory motive. Plaintiff also admitted during the TRO proceedings that she is substantially in arrears on rent – at least approximately $43,000 – which further underscores the existence of an obvious non-retaliatory reason for RU's decision to seek repossession of the apartment.

In short, the 4AC alleges a straightforward non-retaliatory chronology of events: Plaintiff's employment ended, RU asserted that her right to university housing ended with it, Plaintiff remained in possession without paying rent, and RU later moved to recover the apartment. That chronology does not plausibly support an FHA retaliation claim. To the contrary, it demonstrates that RU had legitimate, non-retaliatory reasons for its actions.

Accordingly, Plaintiff's FHA retaliation claim should be dismissed.

## VIII. <u>Plaintiff's Claims Against Dr. Freiwald (First-Fourth Causes of Action) Should Be Dismissed With Prejudice.</u>

Plaintiff's claims against Dr. Freiwald (First-Fourth Causes of Action) should be dismissed with prejudice. Plaintiff's decision to add Dr. Freiwald in this case – after previously suing him separately in *Marciniak II* and unsuccessfully seeking to consolidate that action with this one – improperly attempt to circumvent this Court's prior ruling declining consolidation. In any event, Plaintiff's harassment claims against Dr. Freiwald (First-Third Causes of Action) fail because Title VII does not permit individual liability and the NYSHRL and NYCHRL claims against him are untimely.  The GMVL claim (Fourth Cause of Action) fails because it does not plead the required elements.

### A.    Adding Dr. Freiwald to This Case Is an Improper Attempt to Circumvent This Court's Prior Ruling Declining Consolidation.

27

Plaintiff's addition of Dr. Freiwald to this action is an improper end-run around this Court's prior order declining to consolidate *Marciniak II* with *Marciniak I*. Plaintiff chose to name Dr. Freiwald in *Marciniak II* while omitting him from multiple prior pleadings in this case. She then sought to consolidate the two actions, and this Court denied that request, holding that Plaintiff had not shown good cause for filing a separate action and then seeking consolidation rather than moving to amend in *Marciniak I*. (Dkt. 93 at 2.)

Having failed to obtain consolidation, Plaintiff should not now be permitted to accomplish indirectly what the Court declined to allow directly. Her later decision to add Dr. Freiwald here – after *Marciniak II* was dismissed and after her strategy of pursuing duplicative actions failed – confirms that adding him to this case is part of the same effort to circumvent the Court's earlier ruling. For that reason alone, the claims against Dr. Freiwald should be dismissed.

**B.      Plaintiff's Title VII Claims Against Dr. Freiwald Fail As A Matter of Law.**

Plaintiff's Title VII claims against Dr. Freiwald (First-Third Causes of Action) should be dismissed with prejudice because Title VII does not recognize individual liability. *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484, 492-93 (E.D.N.Y. 2015). They are also untimely.[15]

**C.      Plaintiff's NYSHRL and NYCHRL Claims Against Dr. Freiwald Are Time-Barred and Do Not Relate Back to The Original Complaint.**

As noted above, Plaintiff's NYSHRL and NYCHRL claims against Dr. Freiwald (First-Third Causes of Action) are untimely. They are governed by a three-year statute of limitations period, C.P.L.R. § 214(2), N.Y.C. Admin. Code § 8-502(d), and arise from Plaintiff's employment with RU, which ended on November 30, 2021. Yet Plaintiff did not add Dr.

---

[15] The EEOC issued Plaintiff a notice of right to sue regarding her Title VII claims on June 7, 2022. (TAC ¶ 6.) Plaintiff therefore had 90 days (until September 5, 2022) to file a lawsuit against Dr. Freiwald under Title VII, which she did not do. *See e.g.*, *Pianoforte v. Little Red Sch. House*, 2022 WL 2713659, at *5 (S.D.N.Y. July 13, 2022) ("The Second Circuit generally enforces the 90-day filing deadline specified in an EEOC Right-to-Sue letter even where a plaintiff is *pro se*."). Plaintiff filed the TAC naming Dr. Freiwald on February 28, 2025, more than 90 days after the right to sue notice and cannot relate-back claims against Dr. Freiwald to any of her prior complaints for the reasons set forth in Section VIII(C), *infra*.

Freiwald as a defendant until February 28, 2025 – more than three years later.[16] Those claims are therefore time-barred.

Relation back does not apply. Plaintiff was aware of Dr. Freiwald's identity and alleged involvement from the outset, yet chose not to name him in several earlier pleadings here, even while naming him in her administrative charge and in *Marciniak II*. That was a deliberate litigation choice, not a mistake. *Buran v. Coupal*, 87 N.Y.2d 173, 181 (1995); *see also In re Nemeth v. K-Tooling*, 40 N.Y.3d 405, 407 (2023). And because Plaintiff repeatedly omitted Dr. Freiwald from earlier complaints in this action, he could not have reasonably understood that, but for a mistake, he would have been sued here. *See Turner v. Suffolk Cnty.*, 2022 WL 3357944, at *8 (E.D.N.Y. Aug. 15, 2022).

Because Plaintiff's NYSHRL and NYCHRL claims against Dr. Freiwald are untimely and do not relate back, they should also be dismissed with prejudice.

### D.    Plaintiff Does Not State A GMVL Claim Against Dr. Freiwald.

Plaintiff's GMVL claim against Dr. Freiwald fails as a matter of law. To state such a, Plaintiff must allege that the challenged conduct constituted a misdemeanor or felony against her, presented a serious risk of physical injury, was committed because of and in part because of animus toward her gender and resulted in injury. *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018). Plaintiff's allegations fail at least the second, third and fourth elements. Even accepting as true Plaintiff's allegations that Dr. Freiwald "slapped her buttocks" (4AC ¶¶ 94, 98),[17] Plaintiff still does not allege facts showing that the conduct was

---

[16] To the extent Plaintiff asserts a post-termination retaliation claim against Dr. Freiwald based on his alleged "refus[al] to provide a positive recommendation" (4AC ¶¶ 124, 164(e)), that claim fails for the reasons explained in Section VI, *supra*.

[17] Notably, as discussed in n. 1, *supra*, Plaintiff did not assert any such allegation in her first two complaints in this matter and only added this allegation in her SAC after this Court dismissed her FAC. Additionally, in Plaintiff's SAC she only alleged that Dr. Freiwald made physical contact with her buttocks incidentally when he let her pass him first as they exited a train whereas now she has added that "he repeatedly tried to stand close to her" and then "slapped" her buttocks.  (*Compare* 4AC ¶ 94, *with* FAC ¶ 59, *and* SAC ¶ 132.)

motivated by hostility towards women or Plaintiff's gender. Courts repeatedly reject GMVL claims absent such allegations. *See Hughes* 304 F. Supp. 3d at 455 (S.D.N.Y. 2018); *see also Rossbach v. Montefiore Med. Ctr.*, 2021 WL 930710, at \*11 (S.D.N.Y. Mar. 11, 2021); *Garcia v. Comprehensive Ctr., LLC*, 2018 WL 3918180, \*5 (S.D.N.Y. Aug. 16, 2018); *Adams v. Jenkins*, 2005 WL 6584554 (Sup. Ct. N.Y. Cnty. Apr. 22, 2005).[18]

The claim also fails because Plaintiff alleges only "a serious risk of psychological injury" (4AC ¶ 173), not the serious risk of physical injury required by the statute.[19] *See Rossbach*, 2021 WL 930710, at \*10-11; *Bellino v. Tallarico*, 2024 WL 1344075, at \*1 (S.D.N.Y. Feb. 21, 2024).

Accordingly, the GMVL claim against Dr. Freiwald should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the RU Defendants respectfully request that this Court enter an Order dismissing: (i) the 4AC in its entirety, with prejudice; or alternatively, (ii) Plaintiff's *quid pro quo* claims (First Cause of Action), with prejudice; (iii) Plaintiff's hostile work environment claims (Second Cause of Action), with prejudice; (iv) Plaintiff's retaliation claim (Third Cause of Action), except for that relating to her November 30, 2021 termination of employment, with prejudice; (v) Plaintiff's FHA (Fifth Cause of Action) claim, with prejudice; (vi) all claims against Dr. Freiwald (First-Fourth Causes of Action), with prejudice; and (vii) granting such other and further relief as the Court deems just and proper.

Dated: March 31, 2026
      New York, New York

                           Respectfully submitted,

---

[18] While the Appellate Division, First Department has held that allegations of rape and sexual assault are, taken together, sufficient to establish animus, *Breest v. Haggis*, 180 A.D.3d 83, 92-94 (1st Dep't 2019), such allegations are absent here. *See Rossbach*, 2021 WL 930710, at \*11 (noting Plaintiff "points to no authority indicating that the requisite animus element may be inferred in GMVPL cases not premised on rape").
[19] N.Y.C. Admin. Code § 10-1103 (emphasis added).

/s/ Elise M. Bloom
Elise M. Bloom
Patrick J. Lamparello
Noa M. Baddish
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
plamparello@proskauer.com
nbaddish@proskauer.com

*Attorneys for Defendants*
*The Rockefeller University and Dr. Winrich*
*Freiwald*

31

**LOCAL RULE 7.1(c) WORD COUNT CERTIFICATION**

Pursuant to Rule 7.1(c) of the Joint Local Rules for the Southern District of New York and Eastern District of New York ("Local Rule"), the undersigned hereby certifies that this Memorandum of Law was prepared with a computer; contains 9,974 words (excluding the caption, table of contents, table of authorities, signature blocks, and this certification), including footnotes.

Dated:  New York, New York
        March 31, 2026

                                        */s/ Elise M. Bloom*
                                        Elise M. Bloom

32