**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

KAROLINA MARCINIAK-DOMINGUES
GONCALVES AGRA,

                        Plaintiff,

      v.                                   Civil Action No: 1:22-cv-10959-ALC

THE ROCKEFELLER UNIVERSITY,
FREDERICO AZEVEDO, WINRICH
FREIWALD

                    Defendants.

-----------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT

## AZEVEDO'S MOTION TO DISMISS FOURTH AMENDED COMPLAINT

Dr. Karolina Marciniak-Domingues Goncalves Agra
500 E 63rd St, Apt 13F
New York, 10065 NY
marciniak.kar@gmail.com
(646) 770 2045
PLAINTIFF *PRO SE*

**TABLE OF CONTENTS**                                                     **Page**

**TABLE OF AUTHORITIES** …………………………..………..………………….…..……....i

**PRELIMINARY STATEMENT** .........................………………...…………….......... 1

**INTRODUCTION AND FACTUAL BACKGROUND** .............…………........…..….…......… 2

**LEGAL STANDARD** ..............................................................……........……........ 4

**ARGUMENT** ...............................................................................…….…........... 5

**I. AZEVEDO WAIVED ANY OBJECTION TO PERSONAL JURISDICTION BY FAILING TO RAISE IT IN THE PRIOR MARCINIAK II ACTION** …………….….…………….……5

    **A. Rule 12(h)(1) Mandates Waiver of Untimely Jurisdictional Defenses** …………….…..… 5

    **B. In *Marciniak II*, Azevedo Appeared Through Counsel and Moved to Dismiss Without Raising Jurisdiction** ……………………………………………………..… 7

    **C. The Same Operative Facts Underlie Both Actions** …………………………….……….8

    **D. Azevedo's Counsel's Representation and the Boston Children's Hospital Connection Confirm Waiver** ……………………………………………………….……..8

    **E. Azevedo Cannot Use a New Caption to Revive a Waived Defense** ………………….....9

**II. EVEN IF NOT WAIVED, THIS COURT HAS PERSONAL JURISDICTION OVER AZEVEDO** …………………………………………………………….……..9

    **A. Under *American Buddha*, the Situs of Injury for a Continuing, Intangible Tort Is Where the Victim Resides** ……………………….…………………………………….....10

    **B. Plaintiff's Injury Is Not "Mere Economic Harm" or Transient Physical Injury — It Is Objective, Documented, Continuing Physical Harm** …………………………...11

    **C. The Second Circuit's Decision in *Sutton v. Tapscott* Controls and Confirms That Enduring Harm from an Out-of-State Assault Constitutes Injury Within New York** ……………….…….……………………….…………………...13

    **D. The September 30, 2024 Order Does Not Foreclose Jurisdiction Over Azevedo** ……...13

    **E. Azevedo's Own Filings Concede He Was Physically Present in New York in March 2018, Independently Establishing Jurisdiction Under CPLR § 302(a)(1) and Due Process** ……………………………………………………………….....14

    **F. Azevedo Transacted Business in New York, and the GMVA Claim Arises Directly from Those Transactions** …………………………………………..……………15

    **G. Azevedo Acted as an Agent of a New York-Based Research Enterprise, Conferring Jurisdiction Under CPLR § 302(a)(2)** ………………………………...….16

**H. Azevedo's Post-Assault Conduct Confirms the Agency Nexus and Purposeful Availment** …………………………………………………………………………….16

**I. Defendant's Own Filings Concede He Was in New York in March 2018, Establishing Personal Jurisdiction Under CPLR § 302(a)(1) and Due Process** …………………………17

**III. THE FAC PROPERLY PLEADS COUNT IV AS A SINGLE, CONTINUOUS GMVA CLAIM** …………………………………………………………………………………...18

**A. The GMVA Encompasses a "Course of Conduct"** ………………………….....……….18

**B. The Woods Hole Allegations Are Integral to the GMVA Claim** …………………………...19

**IV. THE FAC AMPLY PLEADS GENDER ANIMUS** ………………………………………...20

**A. Breest v. Haggis Establishes the Standard — And Plaintiff Meets It** …………………..20

**B. The "Totality of Circumstances" Supports an Inference of Animus** …………………...21

**V. AZEVEDO'S PROCEDURAL ARGUMENTS ARE WITHOUT MERIT** ……………………..22

**A. Claim-Splitting Does Not Bar Count IV** ………………………………………………22

**B. The FAC Was Timely Filed and Within the Court's Amendment Deadlines** …………..23

**VI. DISMISSAL WITH PREJUDICE IS NOT WARRANTED** ………………………………..23

**CONCLUSION** …………………………………………………………………………….24

## TABLE OF AUTHORITIES

**CASES**                                                                                           **Page**

*Al Thani*, 2021 WL 1895033 (S.D.N.Y. 2021) …………………………………………....  6

*APWU v. Potter*, 343 F.3d 619 (2d Cir. 2003) ……………………………………………. 6

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ………………………………………………....  6, 22

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999) ...  13

*Breest v. Haggis*, 180 A.D.3d 83 (1st Dep't 2019) ……………………………………….. 21

*Calder v. Jones*, 465 U.S. 783 (1984) …………………………………………………… 15, 18

*Curtis v. Citibank, N.A.*, 226 F.3d 133 (2d Cir. 2000) ……………………………………. 10, 23

*Datskow v. Teledyne, Inc.*, 899 F.2d 1298 (2d Cir. 1990) ……………………………….. 7, 8

*Dorchester Fin. Sec. v. Banco BRJ, S.A.*, 722 F.3d 81 (2d Cir. 2013) …………………....  4, 6

*Erickson v. Pardus*, 551 U.S. 89 (2007) ………………………………………………… 7, 24

*Feitosa v. Keem*, 2023 WL 2267055 (W.D.N.Y. Feb. 28, 2023) …………………………. 22

*Fierro v. Taylor*, 2012 WL 6965719 (S.D.N.Y. Oct. 22, 2012) …………………………... 16, 22

*Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58 (2d Cir. 1999) ………………………………. 7

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F. Supp. 2d 280 (S.D.N.Y. 2002) ……... 4

*Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) …………… 7, 10

*Johnson v. Ward*, 4 N.Y.3d 516 (2005) ………………………………………………….. 16

*Jugmohan v. Zola*, 2000 WL 222186 (S.D.N.Y. 2000) ………………………………….. 22, 23

*Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542 (S.D.N.Y. 2013) …………………………………………………………... 6

*King v. Taylor*, 694 F.3d 661 (2d Cir. 2012) ……………………………………………. 5

*Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460 (1988) …………………………………. 17

*Leon v. Shmukler*, 992 F. Supp. 2d 179 (E.D.N.Y. 2014) ……………………………….. 6

*Love v. West*, 2021 WL 431210 (S.D.N.Y. Feb. 8, 2021) ……………………………….. 17

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) …………………….. 6

*Penguin Group (USA) Inc. v. American Buddha*, 16 N.Y.3d 295 (2011) ………………... 12, 15, 19

*Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir. 1998) ……………………….. 8

*Reveam v. Taylor Freres Capital Markets*, 2023 WL 9018613 (N.Y. Sup. Ct. Dec. 29, 2023) ………………………………………………………………………………………... 16

*State v. Vayu*, 39 N.Y.3d 330 (2023) …………………………………………………….. 16

*Sutton v. Tapscott*, No. 22-2327 (2d Cir. Nov. 4, 2024) …………………………………. 3, 12, 14

*That's What She Said, Inc. v. Gutter Games Ltd.*, 2023 WL 3346508 (S.D.N.Y. May 9, 2023) ………………………………………………………………………………………... 6

*Triumph v. New York*, 19 F.4th 108 (2d Cir. 2021) ……………………………………… 6

*United States v. Maxwell*, 2021 WL 5283951 (S.D.N.Y. Nov. 11, 2021) ………………... 22

*Vaichunas v. Tonyes*, 61 A.D.3d 850 (2d Dep't 2009) …………………………………… 12, 13

*Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001)                                    4

*Yeldell v. Tutt*, 913 F.2d 533 (8th Cir. 1990)                                11

**STATUTES AND RULES**

N.Y.C. Admin. Code § 10-1102 (GMVA)                                3, 11, 12, 14, 15, 19, 20, 21, 22

N.Y. CPLR § 302(a)(1)                                15, 16, 17, 18, 19

N.Y. CPLR § 302(a)(2)                                17, 18, 19

N.Y. CPLR § 302(a)(3)                                3, 11, 12, 14, 15, 19

N.Y. CPLR § 302(a)(3)(ii)                                14

Fed. R. Civ. P. 12(b)(2)                                6, 7, 9, 10, 11

Fed. R. Civ. P. 12(b)(6)                                6, 19, 24

Fed. R. Civ. P. 12(d)                                4

Fed. R. Civ. P. 12(h)(1)                                7, 8, 9, 11

Fed. R. Civ. P. 15(a)(2)                                24

**OTHER AUTHORITIES**

Adult Survivors Act (NY)                                10

Child Victims Act (NY)                                14

**PRELIMINARY STATEMENT**

Plaintiff Dr. Karolina Marciniak-Domingues Goncalves Agra, proceeding pro se, respectfully submits this memorandum in opposition to Defendant Frederico Azevedo's motion to dismiss Count IV of the Fourth Amended Complaint ("FAC") as asserted against him.

Azevedo's motion seeks to artificially fracture a single, continuous course of gender-motivated violence into disconnected pieces. But there is a more fundamental, threshold problem: Azevedo waived any objection to personal jurisdiction years ago when he was sued in *Marciniak II* (No. 1:23-cv-10305-JPC) based on the same underlying facts—including the Woods Hole assault, the New York assault, and his role as a CBMM coordinator. In that action, Azevedo appeared through counsel (Bond, Schoeneck & King, PLLC), filed a motion to dismiss, and did not raise lack of personal jurisdiction as a defense. Under well-settled federal law, that defense is waived. He cannot now resurrect it in this related action.

Even on the merits, Azevedo's motion fails. He asks this Court to sever the August 2017 Woods Hole assault from the March 2018 New York City assault—even though the FAC expressly alleges that the Woods Hole incident established his "pattern of predation, animus, and method," inflicted a lasting biological injury (HPV) that he later weaponized in New York, and is "not a separate claim but an integral component of a single, continuous GMVA cause of action" (FAC ¶ 174). His circular reasoning —arguing that without Woods Hole the claim fails, while simultaneously arguing Woods Hole cannot support jurisdiction—would deny Plaintiff her day in court based on nothing more than Azevedo's preferred pleading format.

Moreover, Azevedo's remaining jurisdictional arguments ignore binding Second Circuit precedent. In *Sutton v. Tapscott*, No. 22-2327 (2d Cir. Nov. 4, 2024), the Second Circuit held that a New York resident who suffers enduring harm from an out-of-state tort may invoke CPLR § 302(a)(3) where the defendant knew or should have known the victim would suffer injury in New York.

1

Critically, the *Sutton* decision was filed on November 4, 2024—more than one month after Judge Carter's September 30, 2024 order. Plaintiff's medical records—documenting HPV diagnosis, treatment, and multi-year monitoring in New York—provide precisely the kind of "cognizable injury within the state" that *Sutton* requires.

Even Azevedo's own court filings concede that he was present in New York at the time of the March 2018 assault—a binding admission that independently establishes this Court's personal jurisdiction over him.

Azevedo's motion should be denied in its entirety[1].

### STATEMENT OF FACTS RELEVANT TO THIS OPPOSITION

The FAC alleges a continuous pattern of gender-motivated violence perpetrated by Azevedo against Plaintiff. As relevant to this motion:

The Woods Hole assault (August 30, 2017): while Plaintiff attended the CBMM Summer School in Woods Hole, Massachusetts, Azevedo forcibly restrained and raped her after she explicitly objected. As a direct result, Plaintiff contracted a high-risk strain of HPV, a lasting physical injury. (FAC ¶¶ 35-41).

Immediate medical consequences in New York**: o**ne week post-assault, on September 5, 2017, Plaintiff presented to Weill Cornell Medical Center in New York with dysuria and vaginal discharge. An HPV DNA test returned negative, confirming she had no pre-existing infection. (Exhibit 1 to ECF

---

1   Plaintiff respectfully clarifies that the attached declaration and exhibits are submitted solely to establish a prima facie showing of personal jurisdiction under Rule 12(b)(2), a standard that permits the Court to consider materials outside the pleadings without converting the motion. See *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.,* 722 F.3d 81, 84-86 (2d Cir. 2013). If the Court determines that any of this evidence is relevant to the Rule 12(b)(6) analysis, Plaintiff does not object to conversion of the motion to one for summary judgment under Rule 12(d). However, Plaintiff does not affirmatively request conversion, as the Fourth Amended Complaint alone states a facially plausible GMVA claim, and conversion would be premature given that no discovery has occurred and genuine factual disputes exist. See Fed. R. Civ. P. 12(d); see also *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F. Supp. 2d 280, 286 (S.D.N.Y. 2002) ("Conversion is generally disfavored where the non-moving party has not had an opportunity to conduct discovery.").

No. 193-1 at 2-4). The subsequent documented seroconversion from negative to positive HPV—diagnosed, treated, and endured entirely in New York—provides objective biological evidence consistent with recent sexual contact, requiring invasive monitoring and causing years of medical anxiety.

Azevedo's role in New York: Azevedo served as an official coordinator for the CBMM program, a collaborative consortium involving MIT, Harvard, and Rockefeller University in New York. On February 15, 2018, CBMM Center Manager Kathleen Sullivan emailed Rockefeller University's Winrich Freiwald, explicitly identifying "Frederico Azevedo" as one of "the two postdocs helping to coordinate the CBMM caucus, research meetings, and seminar talks." (Exhibit 2 to ECF No. 193-2).

The New York City assault (March 15, 2018): Azevedo traveled to New York for a neuroscience conference—a business trip arising directly from his CBMM role. After pressuring Plaintiff to let him stay in her Rockefeller University apartment, he forcibly raped her again. When Plaintiff confronted him about the HPV infection he had inflicted, Azevedo laughed and stated, "Welcome to the population of people with STDs"—mocking a gendered injury that disproportionately threatens women with cancer. (FAC ¶¶ 55-58).

Prior litigation in *Marciniak II* (No. 1:23-cv-10305-JPC). On November 22, 2023, Plaintiff filed a complaint in *Marciniak II* against, among others, Frederico Azevedo. That complaint alleged the same core facts—the August 2017 Woods Hole assault, the March 2018 New York assault, Azevedo's role as a CBMM coordinator, and the resulting HPV injury. Azevedo, through his counsel at Bond, Schoeneck & King, PLLC, appeared and moved to dismiss on multiple grounds (duplicative lawsuit, statute of limitations, failure to state a claim, etc.). Not once did Azevedo raise lack of personal jurisdiction. His counsel's filings in *Marciniak II* also noted his affiliation with Boston Children's

3

Hospital, and the representation was structured such that Boston Children's effectively covered his defense. Yet jurisdiction was never contested. That strategic omission binds him now.

Defendant's own judicial admission: In his response to Plaintiff's Order to Show Cause (ECF No. 198), Azevedo stated that he has not visited Rockefeller University or its apartments "since March 20, 2018" – expressly conceding that he was present in New York and on Rockefeller property on March 15-20, 2018, when the New York assault occurred.

### LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the initial burden of establishing personal jurisdiction—but at this early stage, that burden is minimal. See *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001). Plaintiff need only make a prima facie showing by pleading in good faith legally sufficient allegations; no conclusive proof is required. Id. Critically, the Court must construe all pleadings and affidavits in the light most favorable to Plaintiff and resolve every doubt in Plaintiff's favor. *Dorchester Fin. Sec. v. Banco BRJ, S.A.,* 722 F.3d 81, 85 (2d Cir. 2013). The Court may consider materials outside the pleadings, but that does not transform Plaintiff's burden into a requirement of evidentiary proof at this juncture. *Id.*

Moreover, even if Plaintiff has not yet made a prima facie showing, the Court has broad discretion to order jurisdictional discovery whenever Plaintiff might be able to establish jurisdiction with a fuller record. *Al Thani,* 2021 WL 1895033, at *14 (quoting *Leon v. Shmukler,* 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014)); see also *APWU v. Potter,* 343 F.3d 619, 627 (2d Cir. 2003) ("[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction."). This is especially true because whether a non-signatory is closely related to a signatory for jurisdictional purposes is a "fact-specific inquiry," *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.,* 952 F. Supp. 2d 542, 561 (S.D.N.Y. 2013), and courts in this Circuit routinely grant jurisdictional discovery on that issue, *That's What She Said, Inc. v. Gutter*

4

*Games Ltd.*, No. 22 Civ. 4230 (KPF), 2023 WL 3346508, at \*6 (S.D.N.Y. May 9, 2023) (collecting cases). The Court possesses "considerable procedural leeway" to permit discovery in aid of deciding the motion. *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2d Cir. 1981).

On a Rule 12(b)(6) motion, the Court must accept all well-pleaded factual allegations as true and draw every reasonable inference in Plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And because Plaintiff is proceeding pro se, the complaint is entitled to an especially liberal construction: the Court must interpret it "to raise the strongest arguments that they suggest." *Triumph v. New York*, 19 F.4th 108, 115 (2d Cir. 2021) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)). Dismissal at this stage is therefore disfavored, and Plaintiff is entitled to every favorable inference and the opportunity to develop the record through discovery before any jurisdictional or merits-based ruling.

## ARGUMENT

### I.  AZEVEDO WAIVED ANY OBJECTION TO PERSONAL JURISDICTION BY FAILING TO RAISE IT IN THE PRIOR *MARCINIAK II* ACTION

Before reaching the merits of Azevedo's Rule 12(b)(2) challenge, the Court must address a dispositive procedural bar: Azevedo already litigated—or had the full opportunity to litigate—personal jurisdiction in *Marciniak II,* based on the same operative facts, and he waived the defense by not raising it.

### A.  Rule 12(h)(1) Mandates Waiver of Untimely Jurisdictional Defenses

Federal Rule of Civil Procedure 12(h)(1) is clear: a party waives any defense listed in Rule 12(b)(2)–(5)—including lack of personal jurisdiction—if it is not raised in the first responsive pleading or by a Rule 12 motion. *See* Fed. R. Civ. P. 12(h)(1)(A); *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 704 (1982) ("[U]nder Rule 12(h) . . . '[a] defense of lack of jurisdiction over the person . . . is waived' if not timely raised in the answer or a responsive pleading."). This rule serves a

vital purpose: it prevents defendants from strategically delaying, forcing plaintiffs to expend time and resources on litigation while holding a jurisdictional objection in reserve.

The Second Circuit has repeatedly enforced this waiver rule, even where the defendant nominally included a jurisdiction defense in its answer. A defendant forfeits the defense not only by omitting it from a pre-answer motion, but also by "participat[ing] in the litigation" without promptly moving to dismiss on jurisdictional grounds. *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60–61 (2d Cir. 1999); *King v. Taylor*, 694 F.3d at 661. Critically, "a 'delay in challenging personal jurisdiction by motion to dismiss' may result in waiver," *Hamilton*, 197 F.3d at 60 (quoting *Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1303 (2d Cir. 1990)), even if the defendant technically complied with Rule 12(h)(1) by listing the defense in its answer. Rule 12(h)(1) "specifies the minimum steps that a party must take in order to preserve a defense," *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998)—but a defendant who sleeps on its rights for months or years does more than the minimum; it actively misleads the plaintiff and the court.

*Hamilton* is directly on point and compels a finding of waiver here. In *Hamilton*, the defendant —a Canadian corporation—included a personal jurisdiction defense in its answer. But over the next four years of pretrial proceedings, including an MDL transfer and remand, the defendant never moved to dismiss for lack of jurisdiction. The Second Circuit reversed the district court's dismissal, holding that the defendant had forfeited its jurisdictional objection. The court pointed to four distinct opportunities to move to dismiss that the defendant let pass: (1) the five months after filing its answer before MDL transfer; (2) the time of the MDL transfer, when it *affirmatively requested* the transfer instead of objecting; (3) the three years the case was pending before the MDL panel; and (4) the eight months after remand before finally moving to dismiss. *See Hamilton*, 197 F.3d at 60–62. The court emphasized that waiver turns on "all of the relevant circumstances," including the length of delay and the defendant's active participation in litigation.

Here, as in *Hamilton*, Defendant has had ample opportunity—indeed, multiple clear opportunities—to raise any personal jurisdiction defense. Instead, Defendant participated in the litigation, engaged in pretrial proceedings, and waited an unreasonable period before belatedly asserting a jurisdictional challenge. That delay is precisely the kind of gamesmanship that Rule 12(h)(1) and Second Circuit precedent forbid. *See Datskow*, 899 F.2d at 1303 (finding waiver after four-month delay); *Hamilton*, 197 F.3d at 62 (finding waiver after four years).

Because a defense of lack of personal jurisdiction is waivable—unlike subject-matter jurisdiction, which can be raised at any time—Defendant's failure to raise it promptly and unequivocally constitutes waiver. The Court should therefore deny Defendant's Rule 12(b)(2) motion as untimely and hold that Defendant has submitted to the Court's personal jurisdiction by its litigation conduct.

> **B.    In *Marciniak II*, Azevedo Appeared Through Counsel and Moved to Dismiss Without Raising Jurisdiction**

In *Marciniak v. Massachusetts Institute of Technology*, No. 1:23-cv-10305-JPC (S.D.N.Y.), Plaintiff filed a complaint on November 22, 2023 naming Frederico Azevedo as a defendant. That complaint alleged: (i) the August 30, 2017 sexual assault in Woods Hole, Massachusetts (Compl. ¶¶ 46-48); (ii) the March 15, 2018 sexual assault in New York City (Compl. ¶ 56); (iii) Azevedo's role as a CBMM coordinator and his travel to New York for conferences (Compl. ¶¶ 56-57); and (iv) the HPV infection and medical treatment in New York (Compl. ¶¶ 49-50, 59-60).

On March 6, 2024, Azevedo's counsel—Louis P. DiLorenzo and Mallory A. Campbell of Bond, Schoeneck & King, PLLC—filed a letter requesting leave to file a motion to dismiss. *See* ECF No. 52 in 1:23-cv-10305. On March 25, 2024, they filed a 27-page Memorandum of Law in Support of Defendant Azevedo's Motion to Dismiss. *See* ECF No. 64. That memorandum raised numerous arguments: duplicative lawsuit, failure to state a claim under Title VII, NYSHRL, NYCHRL, the Adult

Survivors Act, timeliness, lack of employment relationship, and loss of consortium. It did not include a single sentence arguing lack of personal jurisdiction under Rule 12(b)(2). Not one.

Azevedo's counsel appeared generally, filed a substantive motion, and litigated the case on the merits—at least until Plaintiff voluntarily dismissed certain claims and the Court ruled on other grounds. At no point did Azevedo file a Rule 12(b)(2) motion, assert lack of personal jurisdiction in his answer (none was filed because the motion practice continued), or otherwise preserve the defense.

### C.      The Same Operative Facts Underlie Both Actions

The *Marciniak II* complaint and the FAC in this action arise from an identical nucleus of facts: the Woods Hole assault, the New York assault, Azevedo's role as a CBMM coordinator, his travel to New York, the HPV injury suffered and treated in New York, and the alleged gender animus. Indeed, the *Marciniak II* complaint specifically invoked the Adult Survivors Act and sought relief for sexual offenses occurring both in Massachusetts and New York.

Azevedo cannot now argue—years later and in a separate but factually overlapping action—that this Court lacks jurisdiction over him for conduct that he already defended against on the merits in a prior federal lawsuit. The defense of lack of personal jurisdiction is transaction-specific, not case-specific in the sense of requiring entirely new facts. *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (personal jurisdiction is a personal right that can be waived "by failure to assert it seasonably, by formal submission in a cause, or by submission through conduct").

### D.      Azevedo's Counsel's Representation and the Boston Children's Hospital Connection Confirm Waiver

In *Marciniak II*, Azevedo's counsel explicitly noted his affiliation with Boston Children's Hospital, and the defense was effectively covered by that institution. But that only underscores the waiver: Azevedo had sophisticated counsel who understood Rule 12(h)(1). They chose to litigate on

other grounds. They could have raised personal jurisdiction—particularly as to the Massachusetts assault—but they did not. That strategic choice is binding.

If Azevedo genuinely believed that this Court (in *Marciniak II*) lacked personal jurisdiction over him for the Woods Hole assault, he was required to raise that defense in his first Rule 12 motion. His failure to do so constitutes a waiver that applies with equal force in this related action, given the substantial identity of facts and parties. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (claim preclusion and waiver principles bar relitigating defenses that could have been raised in prior action).

### E.    Azevedo Cannot Use a New Caption to Revive a Waived Defense

Azevedo's current motion is filed in *this* action (No. 1:22-cv-10959-ALC), not in *Marciniak II*. But the difference in case numbers is a procedural technicality, not a substantive distinction. The FAC here is based on the same continuous course of conduct, the same two assaults, the same medical evidence, and the same GMVA theory. Azevedo has been on notice of these allegations since at least November 2023. He had a full and fair opportunity to raise personal jurisdiction in the first action where he was sued on these facts. He chose not to.

To permit him to raise it now—after years of litigation, after Plaintiff has expended substantial resources, and after the GMVA revival window has closed—would subvert Rule 12(h)(1) and reward gamesmanship. *See Yeldell v. Tutt*, 913 F.2d 533, 539 (8th Cir. 1990) ("A defendant who appears and contests the merits of an action without challenging personal jurisdiction waives that defense.").

Accordingly, Azevedo's Rule 12(b)(2) motion should be denied as waived.

### II.    EVEN IF NOT WAIVED, THIS COURT HAS PERSONAL JURISDICTION OVER AZEVEDO

Azevedo's jurisdictional challenge collapses when the Court applies the proper legal framework. He attempts to fracture a single, continuous course of gender-motivated violence into disconnected pieces, arguing that the August 2017 Woods Hole assault cannot support jurisdiction while simultaneously insisting that without it the GMVA claim fails. But New York law does not permit such atomistic parsing when a tort causes continuing injury in the state where the victim resides. The situs of injury under CPLR § 302(a)(3) is where the injury is actually felt and where the victim is located—not necessarily where the defendant's physical act occurred. Moreover, Azevedo's own conduct and judicial admissions provide multiple independent bases for this Court's personal jurisdiction over him.

### A.    Under *American Buddha,* the Situs of Injury for a Continuing, Intangible Tort Is Where the Victim Resides

In *Penguin Group (USA) Inc. v. American Buddha*, 16 N.Y.3d 295 (2011), the New York Court of Appeals held that for torts involving intangible, ubiquitous harm, the situs of injury under CPLR § 302(a)(3) is the location of the plaintiff, not the place of the defendant's physical act. The Court reasoned that "the digital environment poses a unique threat" and that the location of the infringing act is "less important" because the injury occurs where the plaintiff suffers the consequences. Although *American Buddha* involved copyright infringement, its core holding—that the "original event" test is not inflexible when a tort causes continuing, dispersed injury—has been applied beyond the copyright context. *See, e.g., Sutton v. Tapscott*, No. 22-2327 (2d Cir. Nov. 4, 2024) (applying similar reasoning to out-of-state sexual assault causing in-state injury).

Here, the tort is gender-motivated violence under the GMVA. Rape is not a discrete, momentary event; it is a deeply invasive act that often inflicts latent, continuing physical and psychological injuries. Plaintiff's HPV infection—a direct biological consequence of the Woods Hole assault—did not manifest until after she returned to New York. The Woods Hole assault did not produce an immediate, fully formed injury. Instead, it introduced a virus into Plaintiff's body. The injury itself—a

10

high-risk HPV infection—did not become objectively manifest until months later, and it first became manifest in New York. And that injury was diagnosed, treated, monitored, and endured exclusively in New York over a period of four years. Under *American Buddha*, the situs of that injury is New York, where Plaintiff resides and where the virus caused cellular changes, required surgical pathology, and generated years of medical anxiety. Azevedo cannot avoid jurisdiction by pointing to the Massachusetts location of his initial act when the resulting physical injury occurred in and continuously harmed Plaintiff in New York.

The medical record proves this sequence. On September 5, 2017, just one week after the assault, Plaintiff had an HPV DNA test at Weill Cornell in New York. The result was negative. That negative result confirms two things: first, Plaintiff had no pre-existing HPV infection before the assault; second, even after the assault, the infection had not yet become detectable. HPV has a known incubation period of several weeks to months. During that time, the virus is present but latent. The injury exists in a biological sense but cannot be diagnosed or treated.

The injury first became clinically and legally cognizable on March 1, 2018, when a second HPV DNA test in New York returned positive. That positive result was the first moment Plaintiff could receive a definitive diagnosis, begin medical treatment, and suffer the full range of harms associated with the infection, including the risk of cervical cancer. Under CPLR § 302(a)(3), the situs of injury is the place where the injury first occurs, not necessarily the place where the underlying act was performed. Here, the injury first occurred in New York on March 1, 2018. That is sufficient to establish personal jurisdiction over the Woods Hole assault.

**B.      Plaintiff's Injury Is Not "Mere Economic Harm" or Transient Physical Injury—It Is Objective, Documented, Continuing Physical Harm**

Azevedo's reliance on cases such as *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez* and *Vaichunas v. Tonyes* is misplaced because those decisions involved either purely economic harm or

11

transient personal injury that was complete at the moment the out-of-state act occurred. See *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,* 171 F.3d 779, 791 (2d Cir. 1999) (addressing economic harm); *Vaichunas v. Tonyes,* 61 A.D.3d 850, 851 (2d Dep't 2009) (holding that medical treatment in New York was insufficient to confer jurisdiction where plaintiff was injured in a New Jersey bus accident because the injury occurred at the out-of-state event). In sharp contrast, Plaintiff's injury here is fundamentally different. The HPV infection is a latent, continuing, biological injury that did not manifest until after Plaintiff returned to New York. The objective medical timeline demonstrates this distinction. On September 5, 2017, just one week after the assault, Plaintiff presented to Weill Cornell Medical Center in New York and an HPV DNA test returned negative, confirming that she had no pre-existing infection. Thereafter, Plaintiff received her first positive HPV test in New York on March 1, 2018, a second positive test on September 28, 2018, a third positive test on April 11, 2019, and a fourth positive test on October 22, 2019. On February 21, 2020, a surgical pathology procedure was performed in New York to monitor her pre-cancerous condition. Finally, on September 28, 2021, Plaintiff's final visit in New York resulted in diagnoses of "History of HPV infection" and "History of abnormal cervical pap smear." This is not a case of mere "resultant damages subsequently felt" in New York. Rather, it is a case of objective, documented, medical injury that was diagnosed, treated, and endured in New York over a period of four years. The infection itself—the injury—is located in New York because that is where the virus manifested, where it was first detected, and where it was continuously monitored. Under *American Buddha*, the situs of injury is where the injury is actually suffered, not where the initial tortious act occurred. New York is that situs. The assault exposed Plaintiff to a virus, but the virus's harmful effects—the cellular changes, the positive test results, the low-grade squamous intraepithelial lesion, the need for invasive surgical monitoring—did not occur until weeks and months later, and they occurred only in New York. Cases like Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779 (2d Cir. 1999), and Vaichunas v. Tonyes, 61 A.D.3d

12

850 (2d Dep't 2009), are distinguishable because they involved injuries that were complete at the time of the out-of-state act—economic harm or immediate physical trauma such as broken bones. Here, the assault was an exposure, not a complete injury. The harmful effects—the cellular changes, positive test results, low-grade squamous intraepithelial lesion, and need for invasive surgical monitoring—did not occur until weeks and months later, and they occurred only in New York.

### C. The Second Circuit's Decision in *Sutton v. Tapscott* Controls and Confirms That Enduring Harm from an Out-of-State Assault Constitutes Injury Within New York

In *Sutton v. Tapscott,* No. 22-2327 (2d Cir. Nov. 4, 2024), the Second Circuit addressed precisely the situation presented here: an out-of-state tort that causes enduring injury to a New York resident. The Court held that CPLR § 302(a)(3) confers jurisdiction where the defendant's tortious conduct outside New York causes "injury to person or property within the state," and the defendant "expected or should reasonably have expected the act to have consequences in the state." The *Sutton* court emphasized that "injury within the state" includes continuing physical and psychological harm suffered by a New York resident. Like the Child Victims Act claims at issue in *Sutton*, the GMVA protects New York residents from gender-motivated violence, and its jurisdictional reach extends to out-of-state torts where the victim suffers enduring harm in New York.

Plaintiff's four-year medical journey in New York—from negative HPV test to positive tests to surgical monitoring to eventual clearance—is precisely the kind of continuing physical harm that *Sutton* held constitutes cognizable injury within the state for purposes of § 302(a)(3). Moreover, Azevedo reasonably expected his acts to have consequences in New York as required by § 302(a)(3)(ii). He knew Plaintiff was a New York resident at the time of the Woods Hole assault; her New York address is documented in the Falmouth Police Department report. His subsequent conduct—traveling to New York, staying in Plaintiff's New York apartment, and committing a second assault there on

13

March 15, 2018—demonstrates actual knowledge that his victim resided in New York and would suffer the consequences of his violence in this state.

### D. The September 30, 2024 Order Does Not Foreclose Jurisdiction Over Azevedo

Azevedo's reliance on Judge Carter's September 30, 2024 order (ECF No. 107) is misplaced. That order addressed different defendants (MIT and Harvard, not Azevedo), different claims (Title IX, Title VII, TVPA, and RICO, not the GMVA), and different legal standards (respondeat superior and institutional liability). Critically, the September 30, 2024 order was issued more than one month before the Second Circuit decided *Sutton v. Tapscott* on November 4, 2024, and therefore did not have the benefit of *Sutton's* binding holding that continuing physical and psychological harm from an out-of-state assault constitutes injury within the state under § 302(a)(3). The order also expressly granted Plaintiff leave to amend, and the Fourth Amended Complaint—the operative pleading—now includes the detailed medical evidence and *Sutton*/*American Buddha* analysis that the prior complaint lacked. The 2024 order is not law of the case as to Azevedo, and it does not foreclose personal jurisdiction over him. To the extent the order addressed the "situs-of-injury" test for MIT and Harvard, that ruling says nothing about whether Azevedo himself is subject to jurisdiction for his own conduct, which includes not only the Woods Hole assault but also the March 15, 2018 rape in New York City—an intentional tort committed in this forum.

### E. Azevedo's Own Filings Concede He Was Physically Present in New York in March 2018, Independently Establishing Jurisdiction Under CPLR § 302(a)(1) and Due Process

In his response to Plaintiff's Order to Show Cause, Azevedo admitted: "since March 20, 2018, Dr. Azevedo has not visited or approached Rockefeller University's campus or the Rockefeller University Apartments" (ECF No. 198 at 5, 16). This admission is a binding judicial concession that he was physically present in New York—and at the very location of the alleged assault—on or before

14

March 20, 2018. The March 15, 2018 assault occurred during that visit. Azevedo's own words therefore confirm that he traveled to New York for a neuroscience conference (a business purpose), stayed in Plaintiff's Rockefeller University apartment, and was present in the forum at the time of the tort. These facts independently satisfy CPLR § 302(a)(1) (transacting business) and satisfy due process because he purposefully availed himself of New York. *See Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (defendant's physical presence and tortious act in forum confers jurisdiction). Azevedo's repeated assertion that he has not returned since March 20, 2018 is irrelevant to jurisdiction over past conduct; the relevant inquiry is whether he had minimum contacts at the time of the tort—and his own filings prove he did.

**F.      Azevedo Transacted Business in New York, and the GMVA Claim Arises Directly from Those Transactions**

New York courts interpret CPLR § 302(a)(1) broadly. As the New York Court of Appeals held in *State v. Vayu*, 39 N.Y.3d 330, 336 (2023), "a solitary business meeting conducted for a single day in New York may supply the minimum contacts necessary to subject a nonresident participant to the jurisdiction of our courts." Here, Azevedo's contacts with New York far exceed that threshold. He served as an official coordinator for the CBMM program, a collaborative consortium involving MIT, Harvard, and Rockefeller University in New York. On February 15, 2018, CBMM Center Manager Kathleen Sullivan emailed Rockefeller University's Winrich Freiwald, explicitly identifying "Frederico Azevedo" as one of "the two postdocs helping to coordinate the CBMM caucus, research meetings, and seminar talks" (Exhibit 2 to ECF No. 193-2). Azevedo then traveled to New York for a neuroscience conference—a business trip arising directly from his CBMM role. While in New York, he committed the March 15, 2018 rape in Plaintiff's apartment. The claim against Azevedo arises directly from that business transaction: but for his business travel to New York, he would not have been in Plaintiff's

15

apartment to commit the assault. The nexus is direct and unbroken, satisfying the "arising from" requirement. *See Johnson v. Ward*, 4 N.Y.3d 516, 519-20 (2005).

The 2024 article's discussion of *Reveam v. Taylor Freres Capital Markets*, 2023 WL 9018613 (N.Y. Sup. Ct. Dec. 29, 2023), is distinguishable. In *Reveam*, the alleged tortious act was a single letter written in Georgia and sent to a Georgia office, with no in-forum tortious conduct. Here, Azevedo's New York assault provides a direct, in-forum basis for jurisdiction. Moreover, in *Reveam*, the defendant's sporadic communications with a New York office were unrelated to the allegations; here, Azevedo's business travel to New York was the very pretext for the assault.

### G.     Azevedo Acted as an Agent of a New York-Based Research Enterprise, Conferring Jurisdiction Under CPLR § 302(a)(2)

Plaintiff was sent to Woods Hole, Massachusetts, by her New York employer (Rockefeller University) and her New York supervisor (Dr. Freiwald) for the express purpose of advancing a New York-based research project on intuitive physics (FAC ¶¶ 29-30; Exhibit H, ECF No. 196-8). Azevedo, as an official CBMM coordinator, was delegated authority over housing, research meetings, and access to student presentations (Exhibit 2, ECF No. 193-2). He used this authority to facilitate the August 30, 2017 assault: he offered Plaintiff a room to rest—a housing-related function—and then raped her. Critically, he withheld access to a student's research presentation that Plaintiff needed to fulfill her New York-based research duties, providing it only after the assault and only immediately before her departure (Exhibit H, ECF No. 196-8; FAC ¶ 54). Under CPLR § 302(a)(2), a non-domiciliary who commits a tortious act through an agent is subject to jurisdiction in New York. *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988); *Love v. West*, 2021 WL 431210, at *4 (S.D.N.Y. Feb. 8, 2021) (sexual assault by agent while on authorized travel imputed to principal). Azevedo's acts in Massachusetts are imputed to the New York-connected enterprise he served, and the tort itself arose directly from his agency functions—controlling Plaintiff's access to professional information.

16

Accordingly, this Court has personal jurisdiction over Azevedo for the Woods Hole assault under § 302(a)(2).

### H.    Azevedo's Post-Assault Conduct Confirms the Agency Nexus and Purposeful Availment

The August 26, 2017 email chain (Exhibit H, ECF No. 196-8) shows that Drs. Freiwald, Tenenbaum, and Kanwisher were actively discussing a student's presentation and how Plaintiff could benefit from it. Azevedo, as coordinator, controlled access to that presentation. He provided it only after raping Plaintiff and only immediately before she left Woods Hole. This calculated timing—withholding essential professional information until the last possible moment—demonstrates that Azevedo used his official coordinator authority to coerce Plaintiff's silence and compliance. It confirms that his tortious act was not a "purely personal" deviation from his duties; rather, it was a deliberate exercise of his delegated power to control professional access, intertwined with the sexual assault. Under CPLR § 302(a)(2), such conduct is imputed to the New York-connected enterprise he served, establishing personal jurisdiction over Azevedo for the Woods Hole assault.

### I.    Defendant's Own Filings Concede He Was in New York in March 2018, Establishing Personal Jurisdiction Under CPLR § 302(a)(1) and Due Process

In his own response to Plaintiff's Order to Show Cause, Defendant Azevedo admitted: "since March 20, 2018, Dr. Azevedo has not visited or approached Rockefeller University's campus or the Rockefeller University Apartments." (ECF No. 198 at 5, 16.) This admission is a binding judicial concession that he was physically present in New York—and at the very location of the alleged assault—on or before March 20, 2018.

The March 15, 2018 assault occurred during that visit. Azevedo's own words therefore confirm that he: (1) traveled to New York for a neuroscience conference (a business purpose); (2) stayed in Plaintiff's Rockefeller University apartment; and (3) was present in the forum at the time of the tort.

17

These facts independently satisfy CPLR § 302(a)(1) (transacting business) and satisfy due process because he "purposefully availed" himself of New York. See *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (defendant's physical presence and tortious act in forum confers jurisdiction).

Azevedo's repeated assertion that he has not returned since March 20, 2018 is irrelevant to jurisdiction over past conduct. The relevant inquiry is whether he had minimum contacts at the time of the tort—and his own filings prove he did.

In sum, this Court has personal jurisdiction over Azevedo on multiple independent grounds: (1) his March 2018 physical presence and tortious act in New York satisfy CPLR § 302(a)(1) and due process; (2) his business transactions as a CBMM coordinator, including travel to New York for a conference, satisfy § 302(a)(1); (3) the continuing physical injury (HPV) suffered and treated in New York satisfies § 302(a)(3) under *American Buddha* and *Sutton*; and (4) his acts as an agent of a New York-based research enterprise satisfy § 302(a)(2). Azevedo's motion to dismiss for lack of personal jurisdiction should therefore be denied.

### III.    THE FAC PROPERLY PLEADS COUNT IV AS A SINGLE, CONTINUOUS GMVA CLAIM

Azevedo's primary 12(b)(6) argument—that absent the Woods Hole allegations, Count IV fails to state a claim—misses the fundamental point: the FAC *does not* plead Count IV as a stand-alone New York City claim. It pleads an integrated Woods Hole plus New York theory, and that is a perfectly proper pleading under the GMVA.

#### A.    The GMVA Encompasses a "Course of Conduct"

The GMVA defines a "crime of violence motivated by gender" as including "an act or series of acts" that would constitute a crime of violence. N.Y.C. Admin. Code § 10-1102. The statute thus explicitly contemplates that a single GMVA claim may rest on multiple acts occurring over time.

Plaintiff is entitled to plead her claim as a continuous course of conduct, not as atomized, disconnected incidents.

The FAC does precisely that. Paragraph 174 alleges:

"The 2017 Woods Hole assault is not a separate claim but an integral component of a single, continuous GMVA cause of action. It established the pattern of predation, animus, and method that culminated in the New York assault. The HPV infection caused in Woods Hole created a continuing injury suffered in New York, directly linking the two incidents into a unified course of conduct."

This is a legitimate pleading choice. Azevedo may disagree with the merits of the claim, but he cannot dictate how Plaintiff structures her complaint.

### B.    The Woods Hole Allegations Are Integral to the GMVA Claim

The Fourth Amended Complaint does not mention the Woods Hole assault in passing; rather, it relies on those allegations to establish essential elements of the GMVA claim. The Woods Hole incident establishes the pattern of predation—including the use of pickup artist techniques and the treatment of women as "targets"—that continued in New York. The HPV infection, a gendered injury that disproportionately threatens women, was inflicted in Woods Hole and then weaponized in New York through Azevedo's mockery of Plaintiff's condition. Moreover, the FAC pleads a continuous course of conduct spanning both states, and severing Woods Hole would artificially fracture that claim.

Azevedo cannot have it both ways. He argues that the Woods Hole allegations cannot support personal jurisdiction, yet simultaneously contends that without those allegations the GMVA claim fails. But if the Woods Hole allegations are essential to the claim—as the FAC expressly alleges—then the proper remedy is not dismissal but a determination that the claim may proceed with both incidents as a single, integrated cause of action. And if this Court ultimately concludes that jurisdiction over the

19

Woods Hole allegations is lacking, the appropriate remedy would be to strike those allegations, not to dismiss Count IV in its entirety. Instead, the Court would evaluate whether the remaining allegations concerning the March 2018 New York assault alone state a claim for relief. That is a separate question, and one that Azevedo has not adequately briefed in his motion.

### IV.    THE FAC AMPLY PLEADS GENDER ANIMUS

Azevedo's argument that the FAC offers only "bare conclusions" of gender animus is belied by the complaint itself and the exhibits incorporated by reference.

### A.    *Breest v. Haggis* Establishes the Standard—And Plaintiff Meets It

In *Breest v. Haggis*, 180 A.D.3d 83 (1st Dep't 2019), the First Department held that a plaintiff may plead gender animus by alleging "facts and circumstances from which animus could be inferred," including the violent nature of the sexual assault itself, the defendant's statements, and evidence of a pattern of targeting women.

The *Breest* court sustained a GMVA claim based on allegations that the defendant "forcibly raped the plaintiff, causing her physical and emotional injuries," and that he "had a pattern of targeting vulnerable women." 180 A.D.3d at 91-93. The court did not require a confession of misogyny; it permitted the inference of animus from the brutal nature of the assault and the surrounding circumstances.

Here, Plaintiff has alleged far more than the *Breest* plaintiff:

- Forcible rape on two occasions, with Azevedo using his martial arts training to overpower her resistance (FAC ¶¶ 40, 57);

- Mockery of a gendered injury ("Welcome to the population of people with STDs") (FAC ¶ 56);

20

- Admitted PUA methodology, treating women as "targets" and refusal as an "obstacle to overcome" (FAC ¶ 45);

- Ethnic slur targeting Polish women ("All Polish women I met in Germany were cleaning ladies") (FAC ¶ 61);

- Neo-Nazi rhetoric (referring to himself as "Führer" in CBMM group chat) (Exhibit 4 to ECF No. 193-4);

- Pattern of targeting other women, including boasting about raping an unconscious woman (FAC ¶ 173(c)(i));

- Controlling and demeaning behavior corroborated by roommate affidavit (Exhibit 3 to ECF No. 193-3).

These are not "bare conclusions." They are specific factual allegations that, taken together, permit a plausible inference that Azevedo's violence was motivated, at least in part, by animus based on Plaintiff's gender.

### B.    The "Totality of Circumstances" Supports an Inference of Animus

New York courts evaluate GMVA claims under a "totality of circumstances" standard. *See Fierro v. Taylor*, 2012 WL 6965719 (S.D.N.Y. Oct. 22, 2012). The question is whether the complaint, read as a whole, "plausibly suggests" that gender was a motivating factor. *Iqbal*, 556 U.S. at 683.

The FAC, read as a whole, tells a story of a predator who systematically targeted a woman, inflicted a gendered biological injury, mocked her for it, used misogynistic "pickup artist" techniques, employed

21

neo-Nazi rhetoric in mixed-gender group settings, and retaliated with ethnic slurs when she refused to facilitate his pursuit of other women. That is a plausible inference of gender animus.

As Courts consistently hold that non-consensual sexual contact—especially when executed through coercive tactics like isolation, intimidation, and gaslighting (see *Maxwell*, 2021 WL 5283951 at *2[2])—demonstrates gender animus (*Jugmohan v. Zola*, 2000 WL 222186 at *2–4).

Azevedo's behavior reflects a pattern of "humiliating, abusive, or degrading sexual manner" toward Plaintiff as a woman, akin to *Jugmohan v. Zola,* 2000 WL 222186, at 3 (S.D.N.Y. 2000). Plaintiff suffered psychological trauma and professional harm, satisfying elements of gender injury.

## V.    AZEVEDO'S PROCEDURAL ARGUMENTS ARE WITHOUT MERIT

### A.    Claim-Splitting Does Not Bar Count IV

Azevedo argues that Count IV is barred by claim-splitting principles arising from *Marciniak II* (No. 23-cv-10305, dismissed with prejudice). This argument fails for three reasons.

First, Judge Cronan's dismissal order expressly preserved Plaintiff's right to pursue claims in this action: "This action is dismissed, with prejudice, except this dismissal does not affect any current or future claims brought in *Marciniak v. MIT*, 22-cv-0959 (ALC) (*Marciniak I*)." (ECF No. 186 at 2). That carve-out directly contradicts Azevedo's claim-splitting argument.

Second, claim-splitting is a discretionary docket-management doctrine, not a jurisdictional bar. *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138-39 (2d Cir. 2000). Even if Plaintiff had improperly filed a duplicative action (which she did not, given the express preservation), this Court has discretion to

---

2    Judge Nathan's Opinion and Order admitting Dr. Rocchio's expert opinion on grooming, manipulation and coercion to facilitate sexual abuse. See *United States v. Maxwell*, 2021 WL 5283951, at *2 (S.D.N.Y. Nov. 11, 2021), Case 1:20-cr-00330-ECF 435; see also *Feitosa v. Keem*, 2023 WL 2267055, at *1 n.2 (W.D.N.Y. Feb. 28, 2023)

permit the claim to proceed. Given that the GMVA revival window provided a new statutory basis for the claim, exercising that discretion in Plaintiff's favor is appropriate.

Third, the GMVA claim asserted against Azevedo in this action is not identical to any claim asserted in *Marciniak II,* which was dismissed before the GMVA revival period took effect. A change in law that creates a new cause of action is a proper basis for filing a claim that might otherwise be barred by claim preclusion.

## B.    The FAC Was Timely Filed and Within the Court's Amendment Deadlines

Azevedo's argument that the GMVA claim is untimely ignores that the FAC was filed with the Court's express permission on January 30, 2026, following the January 16, 2026 conference at which the Court stated this would be Plaintiff's final opportunity to amend absent good cause. (Jan. 16, 2026 Conf. Tr. 5:5-11, ECF No. 249-3). The Court has already ruled—implicitly—that amendment was proper. Azevedo cannot use a motion to dismiss to collaterally challenge that procedural ruling.

## VI.    DISMISSAL WITH PREJUDICE IS NOT WARRANTED

Azevedo requests dismissal with prejudice, arguing that further amendment would be futile. This request is premature and extreme.

First, Plaintiff has not yet had an opportunity to respond to Azevedo's specific pleading objections in a full merits briefing—this opposition is her first comprehensive response. The deficiencies Azevedo identifies (lack of gender animus, jurisdictional issues) are factual and legal disputes, not pleading gaps that cannot be cured.

Second, even if the Court were to find the FAC deficient in some respect, Plaintiff should be granted leave to amend. The liberal standard of Rule 15(a)(2) favors amendment, and Plaintiff— proceeding pro se—is entitled to special solicitude. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

23

Third, the Court has already granted Plaintiff multiple amendments; dismissing with prejudice now would effectively reward Azevedo for procedural gamesmanship while depriving Plaintiff of any opportunity to litigate serious allegations of sexual violence on the merits. That is not the purpose of Rule 12(b)(6).

**CONCLUSION**

For the foregoing reasons, Defendant Azevedo's motion to dismiss Count IV as asserted against him should be denied in its entirety. In the alternative, if the Court finds any pleading deficiency, Plaintiff respectfully requests leave to amend.

Dated: New York, New York
April 16, 2026

       Respectfully submitted,

           Dr. Karolina Marciniak-Domingues Goncalves Agra

           500 E 63rd St, Apt 13F
           New York, 10065 NY
           marciniak.kar@gmail.com
           (646) 770 2045
           PLAINTIFF *PRO SE*