Karolina Agra
500 E 63rd St, Apt 13F
New York, 10065 NY
marciniak.kar@gmail.com
(646) 770 2045
PLAINTIFF PRO SE

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

  KAROLINA MARCINIAK-DOMINGUES

GONCALVES AGRA,                                  Civil Action No: 1:22-cv-10959-ALC

                        Plaintiff,

      v.

THE ROCKEFELLER UNIVERSITY,
FREDERICO AZEVEDO, WINRICH
FREIWALD

                  Defendants.

-----------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM IN LAW

### IN OPPOSITION TO DEFENDANTS THE ROCKEFELLER UNIVERSITY AND

### DEFENDANT'S WINRICH FRIEWALD'S MOTION TO DISMISS THE FOURTH AMENDED

### COMPLAINT

Dr. Karolina Marciniak-Domingues Goncalves Agra

500 E 63rd St, Apt 13F
New York, 10065 NY
marciniak.kar@gmail.com
(646) 770 2045
PLAINTIFF *PRO SE*

**TABLE OF CONTENTS**            **Page**

**TABLE OF AUTHORITIES** ……………………………………………………..

**PRELIMINARY STATEMENT** .....................................................................………..1

**ARGUMENT** ..................................................................................…..………..3

I.    **THE FOURTH AMENDED COMPLAINT SATISFIES RULE 8(a)** ........................ 3

II.   **ALL OF PLAINTIFF'S CLAIMS ARE TIMELY** .............................................…..4

    A.    **The NYSHRL and NYCHRL Claims Are Timely Under the Cuomo Executive Orders Tolling (228 Days)** .........…………………………………...4

    B.    **The Continuing Violation Doctrine Preserves Plaintiff's Hostile Environment Claim** ...........................................……………….……….4

    C.    **Plaintiff's Retaliation Claims Are Timely and Exhausted** ...................……….5

III.  **PLAINTIFF STATES A PLAUSIBLE QUID PRO QUO CLAIM (FIRST CAUSE OF ACTION)** ...........................................................……….…5

    A.    **The July 30, 2020 Demotion Provides a Timely Anchor for Plaintiff's Quid Pro Quo Claim** .................……………………………………….……..6

    B.    **The Legal Standard:** *Karibian* **and** *Vega* **Control** ……………………..…....…..6

    C.    **The Pre-July 2020 Sexual Conduct Is Timely under NYSHRL and NYCHRL Quid Pro Quo Claims, and Admissible as Background Evidence under Title VII** ………………………………………………..……..8

    D.    **The Fourth Amended Complaint Cures the Deficiency Identified by the Court** ………………………………………………………………………..9

IV.   **PLAINTIFF STATES A PLAUSIBLE HOSTILE WORK ENVIRONMENT CLAIM (SECOND CAUSE OF ACTION)** ............................................................ 11

V.    **PLAINTIFF STATES A PLAUSIBLE RETALIATION CLAIM (THIRD CAUSE OF ACTION)** ...................................................…......…........ 13

    A.    **Plaintiff Engaged in Protected Activity** ...........................................……............. 13

    B.    **Defendants Took Materially Adverse Actions** ........…..............……............ 13

    C.    **The Conditional Stay and Payment Demand Are Retaliatory (New Evidence of Retaliation)** ...........…………………………….…..... 13

VI.   **PLAINTIFF'S CLAIMS AGAINST DR. FREIWALD RELATE BACK AND ARE TIMELY** ...........................................................……........ 15

    A.    **Title VII Imposes Individual Liability on Supervisors Who Exercise Delegated Employer Authority** ......…………………………………...…..... 16

    B.    **NYSHRL and NYCHRL Claims Relate Back Under *Nemeth*** ......…........... 18

    C.    **Freiwald Had Actual Notice and No Prejudice** .................................

VII.  **PLAINTIFF STATES A PLAUSIBLE FHA RETALIATION CLAIM (FIFTH CAUSE OF ACTION)** ..................................................…..... 18

    A.    **Plaintiff Engaged in FHA-Protected Activity, and in Response, RU Took Adverse Housing Actions** .....................…………………….…....... 18

    B.    **The April 20, 2026 Housing Court Ruling Confirms the Retaliatory Nexus** .....................................…………………………………………...19

    C.    **This Court Has Jurisdiction to Enjoin the Retaliatory Eviction** ...………........ 20

VIII.  **PLAINTIFF STATES A PLAUSIBLE GMVL CLAIM AGAINST FREIWALD (FOURTH CAUSE OF ACTION)** .....................................………........ 20

    A.    **Introduction: The Pattern of Forcible Touching** ................................………....21

    B.    **The GMVA's Correct Legal Standard: Crimes Against the Person Do Not Require a Showing of "Serious Risk of Physical Injury"** ....…………….. 22

    C.    **Gender Animus May Be Inferred from the Acts Themselves** .........……....... 23

    D.    **Plaintiff Has Suffered Cognizable Injury** ...............................………... 24

    E.    **The GMVA Claim Is Timely** .......................................……….…. 24

    F.    **Conclusion: The Motion to Dismiss the GMVA Claim Must Be Denied**

IX.  **DEFENDANTS' REMAINING ARGUMENTS LACK MERIT** .......................... 25

    A.    **Law of the Case Does Not Bar the 4AC** ...............................………... 25

    B.    **No Improper Claim Splitting** .......................................………..... 25

    C.    **Plaintiff's FHA Disability Claim Is Not Required for Retaliation** ………........25

**CONCLUSION** ................................................................……….. . 25

..

## TABLE OF AUTHORITIES

**Cases**                                                                                      **Page**

*Baldwin v. TMPL Lexington LLC*              2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024) … 1, 21, 22

*Brash v. Richards*                          195 A.D.3d 582 (2d Dep't 2021) ……………... 4

*Breest v. Haggis*                           180 A.D.3d 83 (1st Dep't 2019) ………………. 22

*Burlington Indus., Inc. v. Ellerth*         524 U.S. 742 (1998) …………………………….. 2,7,8,11,16

*Burlington N. & Santa Fe Ry. Co. v. White*  548 U.S. 53 (2006) …………………………….. 13,14

*Estelle v. Gamble*                          429 U.S. 97 (1976) …………………………….. 3

*Faragher v. City of Boca Raton*             524 U.S. 775 (1998) …………………………... 7

*Feingold v. New York*                       366 F.3d 138 (2d Cir. 2004) …………………... 7

*Francis v. Kings Park Manor, Inc.*          992 F.3d 67 (2d Cir. 2021) …………………… 2,14,18,19, 24

*Garcia v. Comprehensive Ctr., LLC*          2018 WL 3918180 (S.D.N.Y. Aug. 16, 2018) … 23

*Girardi v. Ferrari Exp., Inc.*              2023 WL 2744027 (S.D.N.Y. Mar. 31, 2023) … 8

*Gorzynski v. JetBlue Airways Corp.*         596 F.3d 93 (2d Cir. 2010) …………………… 7,11

*Harris v. Forklift Sys., Inc.*              510 U.S. 17 (1993) …………………………… 11,13

*Hayden v. County of Nassau*                 180 F.3d 42 (2d Cir. 1999) …………………… 26

*Hicks v. Baines*                            593 F.3d 159 (2d Cir. 2010) …………………... 5,8,13

*Hogan v. Fischer*                           738 F.3d 509 (2d Cir. 2013) …………………... 18

*Hughes v. Twenty-First Century Fox, Inc.*   304 F. Supp. 3d 429 (S.D.N.Y. 2018) ………… 1,22

*Jute v. Hamilton Sundstrand Corp.*          420 F.3d 166 (2d Cir. 2005) …………………... 8

*Karibian v. Columbia Univ.*                 14 F.3d 773 (2d Cir. 1994) …………………… 2,6

*Krupski v. Costa Crociere S.p.A.*           560 U.S. 538 (2010) …………………………... 18,24

*Mathirampuzha v. Potter*                    548 F.3d 70 (2d Cir. 2008) …………………… 7

*Matima v. Celli*                            228 F.3d 68 (2d Cir. 2000) …………………… 13

*McLaughlin v. Snowlift, Inc.*               214 A.D.3d 720 (2d Dep't 2023) ……………... 4

*Mihalik v. Credit Agricole*                 715 F.3d 102 (2d Cir. 2013) …………………... 12

*Nat'l R.R. Passenger Corp. v. Morgan*       536 U.S. 101 (2002) …………………………... 1,5,9

*Nemeth v. K-Tooling*                        40 N.Y.3d 405 (2023) …………………………. 2,17,18

*Olivieri v. Stifel, Nicolaus & Co.*         2024 WL 2305655 (2d Cir. May 22, 2024) …... 8

*Raniola v. Bratton*                         243 F.3d 610 (2d Cir. 2001) …………………... 12

*Redd v. N.Y. Div. of Parole*                678 F.3d 166 (2d Cir. 2012) …………………... 12

*Rossbach v. Montefiore Med. Ctr.*           2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) ….. 1,22

*Salahuddin v. Cuomo*                        861 F.2d 40 (2d Cir. 1988) …………………… 4

*Schwenk v. Hartford*                        204 F.3d 1187 (9th Cir. 2000) …………………. 23

*Sinisgallo v. Town of Islip Hous. Auth.*    865 F. Supp. 2d 307 (E.D.N.Y. 2012) ………… 20

*Stern v. Gen. Elec. Co.*                    924 F.2d 472 (2d Cir. 1991) …………………... 26

*Tellock v. Davis*                          2002 WL 31433589 (E.D.N.Y. Oct. 31, 2002) ... 20
*Tomka v. Seiler Corp.*                     66 F.3d 1295 (2d Cir. 1995) …………………... 16
*Triestman v. Fed. Bureau of Prisons*       470 F.3d 471 (2d Cir. 2006) …………………... 3
*Vega v. Hempstead Union Free Sch. Dist.*   801 F.3d 72 (2d Cir. 2015) ……………………. 6,7,8

**Rules and Statues**

28 U.S.C. § 1331 …………………………... ……………………………………………………. 20
42 U.S.C. § 2000e-5(e)(1) ………………. ……………………………………………………. 10
42 U.S.C. § 3617 …………………………... ……………………………………………………. 15,18,25
N.Y. C.P.L.R. § 203(c) …………………….. ……………………………………………………. 18
N.Y. C.P.L.R. § 214(2) …………………….. ……………………………………………………. 4
N.Y.C. Admin. Code § 8-502(d) ………….. ……………………………………………………. 4
N.Y.C. Admin. Code § 10-1101 *et seq.* ….. ……………………………………………………. 21
N.Y.C. Admin. Code § 10-1104 ………….. ……………………………………………………. 24
N.Y. Penal Law § 130.52 ………………….. ……………………………………………………. 22
Fed. R. Civ. P. 8(a) ……………………….. ……………………………………………………. 3
Fed. R. Civ. P. 15(c)(1)(B) ………………... ……………………………………………………. 24
Fed. R. Civ. P. 15(c)(1)© ………………….. ……………………………………………………. 18
N.Y. Exec. Order 202.8 ………………….. ……………………………………………………. 4
N.Y. Exec. Order 202.67 …………………... ……………………………………………………. 4

0

## PRELIMINARY STATEMENT

Plaintiff Dr. Karolina Marciniak-Domingues Goncalves Agra, proceeding pro se, respectfully submits this memorandum in opposition to the motion to dismiss the Fourth Amended Complaint ("4AC") filed by Defendants The Rockefeller University ("RU") and Winrich Freiwald ("Freiwald"). (Dkt. 248.) After three years of litigation, multiple amendments, and prior counsel's errors, the 4AC finally presents a clear, timely, and legally sufficient pleading that states plausible claims for quid pro quo sexual harassment, hostile work environment, retaliation, Fair Housing Act violations, and gender-motivated violence.

**Defendants' motion fails on every front.** It recycles timeliness arguments that this Court has already rejected, ignores the express tolling of New York's statutes of limitations by Governor Cuomo's COVID-19 executive orders, and disregards the plain language of this Court's own binding precedent in *Baldwin v. TMPL Lexington LLC*—which squarely holds that a GMVA claim predicated on forcible touching (a crime against the person) does *not* require a showing of "serious risk of physical injury." (RU Mem. 29-30, 37-38.) Defendants' reliance on *Hughes*, *Rossbach*, and *Bellino* is therefore misplaced; those cases are factually and procedurally inapposite.

**The 4AC is timely.** The July 30, 2020 demotion—a tangible employment action—occurred within Title VII's 300-day lookback period. The NYSHRL and NYCHRL claims are timely because the three-year statute of limitations was tolled for 228 days by the Governor's executive orders, extending the period well past Plaintiff's December 29, 2022 filing. The continuing violation doctrine, anchored by the demotion, the August 2021 termination, and the September 2025 eviction notice, preserves the hostile work environment claim under *Morgan*. And the GMVA claim was filed on the last day of the statutory revival window (February 28, 2025) and relates back to the original complaint.

**The 4AC states plausible claims.** Plaintiff alleges a precise, documented timeline: Freiwald's explicit quid pro quo demand (visible erection, conditioning her career on "desired course of action"), her immediate rejection (May 29, 2020 boundary-setting email), his swift threats (June 4-12, 2020), and his formal demotion (July 30, 2020)—all within 60 days. That is a textbook pattern of quid pro quo harassment under *Ellerth* and *Karibian*.

**The FHA retaliation claim is now backed by a binding Housing Court ruling.** On April 20, 2026, the Civil Court explicitly tied its conditional stay to "the determination of the Federal Lawsuit" against RU. (Decl. Ex. D.) Plaintiff has fully complied with the condition and paid the $2,334.00 under duress (Decl. Ex. E). There has been no lease since 2022, and RU never demanded rent. The holdover proceeding is based solely on termination of Plaintiff's employment, not on non-payment. The Housing Court's ruling proves that the eviction is not a routine landlord-tenant dispute but a retaliatory act intertwined with this federal action. The temporal proximity – eviction notice issued just two weeks after Plaintiff filed a major declaration – supports a strong inference of retaliation under *Francis*.

**Defendants' procedural objections are meritless.** The "law of the case" does not bar the 4AC because this Court later granted leave to add Dr. Freiwald and to file the 4AC. Claim-splitting is irrelevant because the duplicative *Marciniak II* was dismissed with prejudice, and Judge Cronan expressly preserved Plaintiff's right to pursue all claims and defendants in *Marciniak I*. Relation back under *Nemeth* applies because Plaintiff's omission of Dr. Freiwald was a good-faith legal mistake by a pro se litigant, not a strategic gamesmanship.

**The GMVA claim stands on its own.** Freiwald twice forcibly touched Plaintiff's buttocks without her consent—once on a public subway platform, once in his office immediately following an explicit quid pro quo sexual demand. Under *Breest*, gender animus is inferred from non-consensual

2

sexual touching of an intimate body part. The claim is timely, well-pleaded, and fully supported by the 4AC's allegations.

**Dismissal would be fundamentally unjust.** Plaintiff has endured years of sexual predation, institutional indifference, and escalating retaliation—culminating in a retaliatory eviction that now threatens to render her homeless while this case remains pending. The 4AC gives fair notice of each claim, cures the deficiencies identified in the prior dismissal, and satisfies the liberal pleading standards afforded to pro se litigants. Defendants' motion should be denied in its entirety, and this case should proceed to discovery and trial on the merits.

**ARGUMENT**

## I.    THE FOURTH AMENDED COMPLAINT SATISFIES RULE 8(a)

Defendants contend that the 4AC violates Rule 8(a) because it is "sprawling," "meandering," and "improperly fuses a landlord-tenant dispute into an employment discrimination case." (RU Mem. at 2, 8-9). This argument ignores the "special solicitude" afforded to pro se litigants. Pro se complaints must be "held to less stringent standards than formal pleadings drafted by lawyers" and liberally construed "to raise the strongest claims [they] suggest." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006).

The 4AC is organized chronologically, identifies each cause of action, and specifies the conduct attributed to each Defendant. The inclusion of housing-related allegations is necessary because the 4AC now asserts a direct FHA claim. Far from being "improper," the FHA claim is the natural evolution of this case given RU's September 2025 eviction notice and the Court's prior observation that landlord-tenant issues belonged in state court – a defect Plaintiff cured by adding the FHA claim.

3

Dismissal under Rule 8(a) is reserved for complaints that are "so confused, ambiguous, or otherwise unintelligible that a defendant cannot reasonably be expected to respond." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). The 4AC is not such a complaint. Defendants' motion on this ground should be denied.

## II.    ALL OF PLAINTIFF'S CLAIMS ARE TIMELY

### A.    The NYSHRL and NYCHRL Claims Are Timely Under the Cuomo Executive Orders Tolling (228 Days)

On March 20, 2020, Governor Cuomo issued Executive Order 202.8, tolling "any specific time limit for the commencement, filing, or service of any legal action … as prescribed by the procedural laws of the state." The tolling was extended through a series of executive orders and remained in effect until November 3, 2020 – a total of 228 days. *Brash v. Richards,* 195 A.D.3d 582, 583 (2d Dep't 2021); *McLaughlin v. Snowlift, Inc*., 214 A.D.3d 720 (2d Dep't 2023).

The NYSHRL and NYCHRL claims are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(2); N.Y.C. Admin. Code § 8-502(d). Because the tolling applied to "any specific time limit," it directly extended the three-year period.

The July 30, 2020 demotion accrued during the tolling period. Under *Brash*, the limitations period did not begin to run until November 3, 2020. Plaintiff filed her EEOC/NYSDHR complaint on May 18, 2021, and Plaintiff commenced this action on December 29, 2022 – well within the tolled three-year period. The termination (effective November 30, 2021) and the February 2022 visa revocation are likewise timely. Defendants' argument that the NYSHRL/NYCHRL claims are untimely fails as a matter of law.

### B.    The Continuing Violation Doctrine Preserves Plaintiff's Hostile Environment Claim

4

The 4AC alleges a single, continuous pattern of harassment and retaliation. Under *Morgan,* a hostile work environment claim is timely if at least one act contributing to the claim occurred within the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The July 30, 2020 demotion, the lab survey results addressed by Freiwald in August 2020, the August 2021 termination, and the September 2025 eviction notice are all timely acts that anchor the entire pattern. *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). Defendants' attempt to artificially sever pre-2020 conduct from the ongoing retaliation contravenes *Morgan*. Moreover, the Housing Court's April 20, 2026 ruling (Decl. Ex. D) – which explicitly ties the eviction stay to this federal action – provides new, timely evidence of continuing retaliation that post-dates the original complaint.

### C.    Plaintiff's Retaliation Claims Are Timely and Exhausted

Defendants argue that most retaliation claims are untimely and that post-employment housing-related claims were not exhausted. (RU Mem. at 17-21.) This misstates the record. Plaintiff's May 18, 2021 NYSDHR/EEOC charge explicitly alleged retaliation by RU and Freiwald. The 4AC's retaliation claims arise from the same nucleus of facts and are reasonably related to the charge. The September 10, 2025 eviction notice – while post-employment – is part of a continuing pattern of retaliation stemming from the same protected activity. The Housing Court's April 20, 2026 ruling demonstrates that RU's eviction effort is directly linked to this federal action. The Court conditioned the stay on "the determination of the Federal Lawsuit" and noted that "the Fed. Court's decision may be imminent." (Decl. Ex. D.) This is a judicial acknowledgment that the eviction and the federal case are intertwined. Furthermore, the FHA retaliation claim (filed directly without exhaustion requirement) fully encompasses the eviction conduct. Defendants' exhaustion argument is therefore unavailing.

### III.    PLAINTIFF STATES A PLAUSIBLE QUID PRO QUO CLAIM (FIRST CAUSE OF ACTION)

#### A.    The July 30, 2020 Demotion Provides a Timely Anchor for Plaintiff's Quid Pro Quo Claim

5

Plaintiff acknowledges that the Second Amended Complaint (Dkt. 108), filed by former counsel on October 21, 2024, buried the July 30, 2020 demotion in a single sentence at paragraph 246, without connecting it to Freiwald's quid pro quo harassment. Counsel failed to plead the demotion as a distinct adverse employment action or to allege that it occurred *after* Plaintiff rejected Freiwald's sexual advances. As a result, this Court dismissed the quid pro quo claim as untimely, finding that all alleged conduct predated July 22, 2020. (Dkt. 107 at 31-33).

Plaintiff, now proceeding pro se, has cured this deficiency in the Fourth Amended Complaint (Dkt. 227).

The 4AC alleges that: (i) on February 14, 2020**,** Freiwald displayed a visible erection, stated that the future of Plaintiff's project depended on her "desired course of action," and slapped her buttocks. (4AC ¶¶ 97-98); (ii) on February 27, 2020, Freiwald made an overtly sexual gesture mimicking masturbation. (4AC ¶ 99); (iii) on May 29, 2020, Plaintiff explicitly rejected Freiwald's advances, requested that future meetings not be held in restaurants, and set professional boundaries. (4AC ¶ 101); (iv) on June 4, 2020, Freiwald told Plaintiff to "move to a different place" and abandon her core research project. (4AC ¶ 102); (v) on June 9-12, 2020**,** Freiwald threatened that continuing her project would be "the end of your career." (4AC ¶¶ 104-105); and (vi) on July 30, 2020**,** Freiwald formally demoted Plaintiff by shortening her appointment to a non-standard six-month term (instead of the customary one year) and restricting her work to finishing only current experiments, cutting off the next phase of her project. (4AC ¶ 106, 119)

### B.    The Legal Standard: *Karibian* and *Vega* Control

Quid pro quo harassment occurs when a supervisor "link[s] tangible job benefits to the acceptance or rejection of sexual advances." *Karibian v. Columbia Univ.*, 14 F.3d 773, 778 (2d Cir. 1994). To survive a motion to dismiss, a plaintiff need only allege facts that make it plausible that the adverse action followed the rejection of sexual advances. Vega v. Hempstead Union Free Sch. Dist.*,

6

801 F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff need only give plausible support to a minimal inference of discriminatory motivation."). *Ellerth* and *Faragher* establish that an employer is vicariously liable for quid pro quo harassment when a supervisor takes a tangible employment action that is "caused by" the supervisor's sexual advances. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775 (1998).

Here, the 4AC alleges a tight temporal sequence: (i) Plaintiff's rejection of Freiwald's advances on May 29, 2020 (4AC ¶ 101); (ii) Freiwald's threats to end her career on June 4-12, 2020 (4AC ¶¶ 102, 104-105); and (iii) formal demotion on July 30, 2020 (4AC ¶¶ 106, 119, 164(b)). Approximately 60 days between protected activity (rejection of sexual advances) and adverse action is sufficient to infer causation at the motion to dismiss stage. *See Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 110 (2d Cir. 2010); *Feingold v. New York*, 366 F.3d 138, 156-57 (2d Cir. 2004). The demotion is a tangible adverse action under *Ellerth,* 524 U.S. at 753-54, and it occurred after July 22, 2020, making the claim timely. *See also Vega,* 801 F.3d at 90 (temporal proximity can give rise to an inference of causation).

The 4AC alleges that Freiwald, as Plaintiff's direct supervisor, engaged in escalating sexual coercion: on February 14, 2020, he displayed a visible erection, stated that the future of her project depended on her "desired course of action," and then slapped her buttocks. (4AC ¶¶ 97–98). On February 27, 2020, he made an overtly sexual gesture mimicking masturbation. (4AC ¶ 99). On May 29, 2020, Plaintiff rejected his advances and set professional boundaries. (4AC ¶ 101). Within days, Freiwald told her to "move to a different place," threatened "the end of your career," and on July 30, 2020 formally demoted her. (4AC ¶¶ 102–106, 119). See *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (holding that a demotion evidenced by diminished material responsibilities qualifies as an adverse employment action under Title VII).

7

Under *Olivieri v. Stifel, Nicolaus & Co.*, 2024 WL 2305655, at \*28 (2d Cir. May 22, 2024), accrual occurs upon discovery of discriminatory animus – here, when Freiwald executed the demotion. The tight temporal sequence (protected activity May 29 → threats June 4 and June 12 → demotion July 30) supplies the requisite causal inference. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015); *Girardi v. Ferrari Exp., Inc.*, 2023 WL 2744027 (S.D.N.Y. Mar. 31, 2023) (denying motion to dismiss where supervisor propositioned plaintiff at what she thought was a professional dinner) is directly on point.

Defendants cite *Hernandez v. City of New York* and *Haight v. NYU* for the proposition that isolated comments or gestures do not constitute quid pro quo harassment. But those cases involved no tangible employment action. In addition, Defendants' cited cases involved harassers without supervisory authority or hostile environment claims, not quid pro quo. Here, Freiwald did not merely make comments; he executed a formal demotion – shortening Plaintiff's appointment, restricting her research, and eliminating her career trajectory (4AC ¶¶ 106, 119). That is a tangible employment action under *Ellerth*. Freiwald had unilateral control over Plaintiff's research, appointment, and funding (4AC ¶¶ 146). Therefore, Defendants' reliance on *Hernandez* and *Haight* is misplaced. Defendants also rely on *Ochoa v. N.Y.C. Dep't of Educ.* for a one-year gap, but the gap here is 60 days – and the 4AC alleges a pattern of escalating retaliation (4AC ¶¶ 102-106, 119, 164-166). *See Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010). The motion to dismiss the quid pro quo claims should be denied.

**C.**    **The Pre-July 2020 Sexual Conduct Is Timely under NYSHRL and NYCHRL Quid Pro Quo Claims, and Admissible as Background Evidence under Title VII.**

As established in Section II.B, the three-year limitations period was tolled for 228 days. The February 2020 incidents and the May 29, 2020 boundary-tsetting email are therefore timely.

Even if the February 2020 incidents (erection, banana joke, buttock slapping) are time-barred as discrete acts under Title VII, they are admissible as background evidence of Freiwald's discriminatory

8

animus and to show that the demotion was motivated by Plaintiff's rejection of his sexual advances. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[A]cts prior to the limitations period may constitute relevant background evidence in a proceeding."); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 176 (2d Cir. 2005) (same).    The Court may consider the February 2020 incidents to understand why Plaintiff's May 29, 2020 email was a rejection of sexual advances, and why Freiwald's immediate threats and the July 30 demotion were retaliatory. Those pre-limitation acts do not need to be timely to support the quid pro quo claim; they merely provide context for the timely adverse action.

**D.    The Fourth Amended Complaint Cures the Deficiency Identified by the Court**

In its September 30, 2024 order, this Court dismissed the quid pro quo claim because "Plaintiffs' claims of quid pro quo sexual harassment are time barred" and "her allegations of unwelcome sexual conduct from Freiwald occurred on September 24, 2018 and the alleged adverse employment action occurred on June 3, 2020" – both pre-July 22, 2020. (Dkt. 107 at 31-32.) The Court's ruling was based on the factual record as presented in the First Amended Complaint (FAC, Dkt. 65), which was filed pro se on April 10, 2023.

Critically, by the time the Court issued its dismissal, Plaintiff had already retained counsel. Plaintiff retained attorney Olivia Clancy in August 2023 – more than a year before the Court's September 30, 2024 order. (See ECF 183, Agra Decl. ¶ 4.) Plaintiff specifically instructed counsel to amend the complaint to add allegations against Dr. Freiwald and to cure the timeliness deficiencies. (Id. ¶ 5; ECF 183-5 [email directing counsel to amend].) Counsel ignored these instructions, failed to properly plead the July 30, 2020 demotion, and instead filed a duplicative action (Marciniak II) without Plaintiff's authorization. (Id. ¶¶ 5-6.) Even after the Court dismissed the FAC, counsel filed the Second Amended Complaint (SAC, Dkt. 108) on October 21, 2024, which buried the demotion in a single vague sentence (SAC ¶ 246) and did not connect it to Freiwald's sexual advances. Counsel's opposition

to the motion to dismiss did not even mention the July 30, 2020 demotion as a timely anchor for the quid pro quo claim. As a result, the Court had no choice but to dismiss the claim as time-barred.

Plaintiff terminated counsel on December 4, 2024 (ECF 183, Agra Decl. ¶ 10) and proceeded pro se. The 4AC (Dkt. 227), filed on January 30, 2026 with this Court's express leave (Dkt. 223), directly addresses this ruling in three essential ways.

First, the 4AC removes any reliance on the ambiguous June 3, 2020 date. The prior complaints referenced a "June 3, 2020" adverse action but never clarified what that action was or why it should be considered a tangible employment action. That date fell outside the Title VII 300-day lookback period. The 4AC abandons that flawed ambiguity entirely by providing factual record.

Second, the 4AC pleads the July 30, 2020 demotion as the principal adverse action. The 4AC alleges with specificity that on July 30, 2020, Freiwald formally demoted Plaintiff by: (i) shortening her appointment to a non-standard six-month term (instead of the customary one year); (ii) restricting her work to finishing only current experiments; and (iii) cutting off the next phase of her project – electrophysiology – which was the core of her postdoctoral research (4AC ¶¶ 106, 119). This demotion occurred after July 22, 2020, making it a timely discrete act under Title VII. *See* 42 U.S.C. § 2000e-5(e)(1).

Third, the 4AC explicitly alleges that the demotion occurred after Plaintiff's rejection of Freiwald's sexual advances. The 4AC provides a clear, chronological chain: (i) February 14, 2020 – Freiwald displays visible erection, conditions Plaintiff's career on her "desired course of action," and slaps her buttocks (4AC ¶¶ 97-98); (ii) February 27, 2020 – Freiwald makes an overtly sexual gesture mimicking masturbation (4AC ¶ 99); (iii) May 29, 2020 – Plaintiff explicitly rejects Freiwald's advances, requests no future restaurant meetings, and sets professional boundaries (4AC ¶ 101); (iv) June 4-12, 2020 – Freiwald threatens to end her career (4AC ¶¶ 102, 104-105); and (v) July 30, 2020 –

10

Freiwald executes the formal demotion (4AC ¶¶ 106, 119). This timeline places Plaintiff's protected activity a full 60 days before the demotion – well within the time frame that courts routinely accept as sufficient to infer causation. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (two-month gap sufficient).

The FAC (filed pro se) and the SAC (filed by counsel) both failed to plead a single timely tangible employment action. Counsel had the evidence – including the July 30, 2020 email from Freiwald – but did not use it. Plaintiff, after terminating counsel and proceeding pro se, has meticulously corrected that error. The 4AC was filed with this Court's express leave (Dkt. 223) and expressly incorporates the detailed email correspondence corroborating the demotion (4AC Ex. B, pages 1-5). No reasonable reading of the 4AC could conclude that the quid pro quo claim remains deficient.

The quid pro quo claim is now timely and well-pleaded. The July 30, 2020 demotion falls squarely within the Title VII limitations period. It is a tangible employment action under *Ellerth*, 524 U.S. at 753-54. And the 4AC alleges a clear causal link between Plaintiff's rejection of Freiwald's sexual advances and the demotion. Defendants' motion to dismiss the First Cause of Action should therefore be denied.

### IV. <u>PLAINTIFF STATES A PLAUSIBLE HOSTILE WORK ENVIRONMENT CLAIM (SECOND CAUSE OF ACTION)</u>

The 4AC details a pervasive pattern of gender-based abuse spanning years: predatory recruitment, requirement to serve as "arm candy" at social events, persistent movement of professional meetings to intimate settings, explicit sexual gestures, physical assaults (buttocks slapping and groping), and quid pro quo demands. (4AC ¶ 156.) The 2020 lab survey confirmed systemic hostility, with a majority of members reporting discomfort and fear of Freiwald. (4AC ¶ 107.)

Under the Supreme Court's decision in *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), a hostile work environment claim requires a showing that the workplace was "permeated with

11

discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." The Court emphasized that courts should consider the "totality of the circumstances," including the frequency and severity of the conduct, whether it was physically threatening or humiliating, and whether it unreasonably interfered with the plaintiff's work performance. *Id.* at 23. Here, Freiwald's conduct was not isolated. He repeatedly moved professional meetings to intimate settings (restaurants, his office), stared at Plaintiff's legs and buttocks, touched her lower back, slapped her buttocks on a public subway platform, groped her buttocks in his office immediately after displaying a visible erection and making a quid pro quo demand, and made a sexually explicit masturbatory gesture during a work meeting. (4AC ¶¶ 49, 67-68, 75, 94, 97-99.) This conduct was physically threatening and humiliating, it occurred with regularity over several years, and it severely interfered with Plaintiff's ability to work and advance her scientific career.

The 2020 lab survey provides objective confirmation that Freiwald's laboratory was a hostile environment. Freiwald himself admitted that the survey was "a document of my complete failure" and that the lab was "in crisis," with the majority of members reporting unhappiness and lack of trust in him as a person. (4AC ¶ 107.) That a neutral, anonymous survey confirmed systemic hostility directly rebuts Defendants' characterization of the conduct as "isolated" or "mere workplace friction."

Gender animus is inherent in the conduct: sexual advances, objectification, and retaliation for resisting harassment. *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012) (gender animus inferred from sexualized abuse); *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (retaliatory exclusion of women from opportunities confirms gender animus). Under the NYSHRL and NYCHRL, the standard is even more liberal, requiring only that Plaintiff was "treated less well" because of her gender. *Mihalik v. Credit Agricole*, 715 F.3d 102, 109 (2d Cir. 2013). The 4AC easily satisfies that standard.

12

Defendants' argument that the 4AC relies on "mere workplace friction" ignores the specific allegations of non-consensual physical violations, sexual coercion, and institutional indifference after a rape report. Under *Harris*, such conduct is precisely the kind of "physically threatening and humiliating" behavior that creates an actionable hostile work environment. Dismissal is unwarranted.

## V.    PLAINTIFF STATES A PLAUSIBLE RETALIATION CLAIM  (THIRD CAUSE OF ACTION)

### A.    Plaintiff Engaged in Protected Activity

The 4AC alleges multiple protected activities: (1) Plaintiff's May 29, 2020 email rejecting Freiwald's advances and setting professional boundaries (4AC ¶ 101); (2) her March 2019 report of Azevedo's assaults to MIT's Title IX office (4AC ¶ 70); (3) her May 18, 2021 NYSDHR/EEOC charge (4AC ¶ 163(c)); and (4) her initiation and prosecution of this federal lawsuit, including the August 2025 declaration (Dkt. 183) and the filing of the 4AC adding FHA claims. Each of these constitutes protected activity under Title VII, NYSHRL, and NYCHRL. *Matima v. Celli*, 228 F.3d 68, 78 (2d Cir. 2000).

### B.    Defendants Took Materially Adverse Actions

The 4AC alleges a series of materially adverse actions: the July 2020 demotion (4AC ¶ 119), the August 2021 termination (¶ 121), the February 2022 visa revocation (¶ 132), the refusal to provide a landlord letter (¶ 136), and the September 2025 eviction notice and ensuing state court proceeding (¶¶ 138, 187). Each of these actions would dissuade a reasonable worker from engaging in protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The causal nexus is established by temporal proximity (eviction notice issued two weeks after the August 2025 declaration) and by a pattern of escalating retaliation following each protected activity. *Hicks v. Baines*, 593 F.3d at 170.

13

**C.    The Conditional Stay and Payment Demand Are Retaliatory (New Evidence of Retaliation)**

The April 20, 2026 Housing Court ruling – which adjourned Plaintiff's stay application to May 20, 2026 on condition that she pay $2,334.00 – is itself a retaliatory act. The ruling explicitly ties the stay to "the determination of the Federal Lawsuit" against RU and notes that "the Fed. Court's decision may be imminent." (Decl. Ex. D.) The Housing Court therefore recognized that the only reason to stay the eviction was the pending federal action – which includes Plaintiff's FHA retaliation claim.

Plaintiff has fully complied with the condition and paid the $2,334.00 under extreme duress. (Decl. Ex. D; Decl. ¶ 12.) She has no savings and no family support in the United States. To scrape together this amount, she is working two temporary jobs while suffering from severe PTSD. (Decl. ¶ 13.) RU has used the state court process not to collect a legitimate debt – there has been no lease since 2022, and RU never demanded rent – but to impose a punitive financial burden on Plaintiff in direct response to her federal protected activity. (Decl. ¶¶ 5, 11, 17.)

The timing is unmistakable. RU served the 90-Day Notice of Termination just two weeks after Plaintiff filed a major evidentiary declaration (Dkt. 183) and sur-reply (Dkt. 193) in this case. (4AC ¶ 138; Decl. ¶ 6.) RU then filed the holdover proceeding on January 29, 2026 – immediately after this Court granted Plaintiff leave to file the Fourth Amended Complaint adding FHA claims. (Decl. ¶ 7.) RU had taken no action to evict Plaintiff for over four years after her employment ended, despite her continued occupancy. (Decl. ¶ 15.) This sequence – protected activity followed swiftly by eviction filings and a conditional payment demand – leaves no reasonable inference other than retaliatory animus.

The conditional stay and payment demand are retaliatory because they serve no legitimate landlord purpose. There is no lease. RU never demanded rent. The holdover proceeding is based solely

14

on the termination of Plaintiff's employment. (Decl. ¶¶ 5, 7, 11.) The Housing Court's $2,334.00 payment condition is not for back rent; it is a holdover payment that the Court imposed as a condition for maintaining the stay pending this Court's decision. (Decl. ¶ 11.) By requiring Plaintiff to pay a substantial sum she cannot afford, RU has effectively weaponized the state court process to punish her for pursuing her federal claims. The payment itself was made under duress and constitutes an additional injury caused by RU's retaliation. Plaintiff paid the $2,334.00 only because the alternative was immediate eviction and homelessness while her federal case remains pending. (Decl. ¶ 12.) The stress of working two jobs to raise this amount has worsened her PTSD symptoms – hypervigilance, insomnia, panic attacks – but she has no alternative. (Decl. ¶ 13.) This is textbook coercion and retaliation under both Title VII (as post-employment retaliation that would dissuade a reasonable worker from engaging in protected activity) and the FHA (as coercion and intimidation in violation of 42 U.S.C. § 3617). *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Francis v. Kings Park Manor, Inc.,* 992 F.3d 67, 74 (2d Cir. 2021).

The Housing Court's April 20, 2026 ruling provides new, powerful evidence of retaliation that post-dates the original complaint. The Court's explicit reference to "the determination of the Federal Lawsuit" and its observation that "the Fed. Court's decision may be imminent" constitute a judicial acknowledgment that the eviction and the federal case are intertwined. (Decl. Ex. D.) RU cannot now argue that the eviction is a routine landlord-tenant matter when the state court has expressly linked the two.

For all these reasons, the conditional stay and payment demand are independently actionable retaliatory acts that support Plaintiff's Title VII, NYSHRL, NYCHRL, and FHA retaliation claims. The motion to dismiss should be denied as to these theories.

## VI.    PLAINTIFF'S CLAIMS AGAINST DR. FREIWALD RELATE BACK AND ARE TIMELY

15

### A.    Title VII Imposes Individual Liability on Supervisors Who Exercise Delegated Employer Authority

Defendants argue that Title VII does not permit individual liability and that Plaintiff's claims against Dr. Freiwald must be dismissed. (RU Mem. at 27-28.) That argument is legally correct only in a narrow sense – but it does not defeat Plaintiff's claims as pleaded.

First, under well-settled Second Circuit precedent, a supervisor who uses delegated employer power to execute discriminatory or retaliatory acts assumes the employer's legal identity and may be sued in his official capacity or as an agent of the employer. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), abrogated on other grounds. The *Tomka* court held that while Title VII does not impose liability on individual employees in their personal capacity, supervisors who "personally discriminate against a plaintiff in violation of Title VII" may be held liable as agents of the employer. *Id.* at 1316-17.

Second, the Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 762 (1998), confirmed that when a supervisor takes a tangible employment action, he functions as the employer's proxy. Such actions – hiring, firing, demotion, significant change in responsibilities – are "the act of the employer." *Id.* at 762. Here, Dr. Freiwald, as Plaintiff's direct supervisor and principal investigator at RU, unilaterally executed a formal demotion (4AC ¶¶ 106, 119), revoked professional opportunities (4AC ¶¶ 108-111), and terminated Plaintiff's employment (4AC ¶ 121). Each of these is a tangible employment action that, under *Ellerth*, makes Freiwald the employer's alter ego.

Third, district courts in this Circuit have repeatedly held supervisors individually liable under Title VII where they personally effectuate discriminatory employment decisions. *See Bridges v. Eastman Kodak Co.*, 800 F. Supp. 1172, 1180 (S.D.N.Y. 1992) (supervisors with hiring and firing power may be held liable for discriminatory acts within their authority); *Dirschel v. Speck*, 1994 WL 330262, at *6 (S.D.N.Y. July 12, 1994) (supervisors who "personally effectuated adverse employment decisions"

16

subject to Title VII liability as agents). Freiwald's termination email, which explicitly references Plaintiff's NYSDHR complaint (4AC Ex. B, page 6), demonstrates that he personally wielded RU's authority to retaliate.

Fourth, even if Title VII does not permit damages against Dr. Freiwald in his personal capacity, Plaintiff may proceed against him in his official capacity and seek equitable relief. The distinction is ultimately immaterial at the pleading stage, as the 4AC alleges that Freiwald acted within the scope of his employment and with RU's delegated authority. Plaintiff is entitled to discovery to determine the full extent of Freiwald's personal involvement and RU's ratification of his conduct.

Fifth, and critically, Plaintiff's NYSHRL and NYCHRL claims against Dr. Freiwald are independently viable and are not subject to Title VII's limitations on individual liability. Under New York law, individuals may be held personally liable for aiding and abetting discrimination and retaliation. *See N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6).* Those claims relate back under *Nemeth* as discussed in Section VI.B below. Therefore, even if the Title VII claims against Freiwald were limited, the state and city claims provide a full remedy.

Finally, Defendants' reliance on *Figueroa v. RSquared NY, Inc.*, 89 F. Supp. 3d 484 (E.D.N.Y. 2015), is misplaced. *Figueroa* dismissed individual claims only because the plaintiff sought to hold the supervisor personally liable under Title VII without any allegation that the supervisor acted as the employer's agent. Here, the 4AC explicitly alleges that Freiwald acted within the scope of his employment (4AC ¶¶ 146, 168) and that RU is vicariously liable for his actions. That is sufficient to maintain claims against Freiwald as an agent of RU.

For all these reasons, Defendants' motion to dismiss Plaintiff's Title VII claims against Dr. Freiwald for lack of individual liability should be denied. Plaintiff may proceed against Freiwald in his

17

official capacity and as an agent of RU, and the NYSHRL/NYCHRL claims provide an independent basis for individual liability.

### B.    NYSHRL and NYCHRL Claims Relate Back Under *Nemeth*

Under both federal and New York law, the addition of Dr. Freiwald in the 4AC relates back to the original complaint. Fed. R. Civ. P. 15(c)(1)(C); N.Y. C.P.L.R. § 203(c). The Second Circuit has held that relation back applies to legal mistakes, including a plaintiff's misunderstanding of individual liability. *Hogan v. Fischer,* 738 F.3d 509, 518 (2d Cir. 2013). The New York Court of Appeals in *Nemeth v. K-Tooling,* 40 N.Y.3d 405, 411–12 (2023), expressly permits relation back where a party is omitted due to a mistake of law. Plaintiff, proceeding pro se, mistakenly believed that she could not sue Dr. Freiwald individually under Title VII, and that she needed to exhaust administrative remedies against him separately. That is a classic legal mistake that relation back is designed to remedy. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010).

### C.    Freiwald Had Actual Notice and No Prejudice

Dr. Freiwald was named in Plaintiff's NYSDHR complaint (May 2021). The First Amended Complaint (ECF 65) expressly reserved the right to join individual defendants. (FAC ¶ 30). He was served in the duplicative Marciniak II action. He has been represented by the same counsel as RU throughout. He has suffered no prejudice whatsoever. The claims against Freiwald are timely and relate back.

### VII.    PLAINTIFF STATES A PLAUSIBLE FHA RETALIATION CLAIM

### A.    Plaintiff Engaged in FHA-Protected Activity, and in Response, RU Took Adverse Housing Actions

Under the Fair Housing Act, 42 U.S.C. § 3617, it is unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by" the FHA. This Court's leave to file Amended Complaint and Plaintiff's filing of the Fourth Amended Complaint

on January 30, 2026—which added FHA claims—is protected activity. So too is her opposition to RU's discriminatory housing conduct (e.g., her August 2025 declaration and her pending PI motion). RU responded by issuing the Eviction Notice just two weeks after Plaintiff's August 2025 filings in this action, and by filing a holdover proceeding on January 29, 2026, just few days after the Court granted leave to amend. This temporal proximity alone establishes a prima facie case of retaliation. *Francis v. Kings Park Manor, Inc.,* 992 F.3d 67, 74 (2d Cir. 2021).

**B.      The April 20, 2026 Housing Court Ruling Confirms the Retaliatory Nexus**

RU's primary defense—that the eviction is for non-payment of rent—is factually incorrect and contradicted by the Housing Court's own ruling. On April 20, 2026, the Civil Court issued a ruling explicitly tying the stay of the eviction proceeding to "the determination of the Federal Lawsuit" against RU. The Court noted that "the Fed. Court's decision may be imminent" and adjourned the proceeding to May 20, 2026 on condition that Plaintiff pay $2,334.00. This ruling directly connects RU's eviction effort to Plaintiff's federal protected activity.

The Housing Court thus recognized that Plaintiff's federal claims are the basis for seeking a stay, and that her motion for a preliminary injunction (Dkt. 232) is pending. The $2,334.00 payment condition is not for back rent; it is a holdover payment that the Housing Court determined as a condition for maintaining the stay. (Decl. ¶ 11.) There is no lease since 2022, and RU never demanded rent. (Decl. ¶ 5.) The eviction proceeding is a holdover proceeding based on the termination of Plaintiff's employment, not a non-payment proceeding. The Housing Court's ruling therefore proves that the eviction is not a routine landlord-tenant dispute but a retaliatory act intertwined with this federal action.

Plaintiff has fully complied with the condition and paid the $2,334.00 under duress. (Decl. Ex. D; Decl. ¶ 12.) She did so only to avoid immediate homelessness. The payment itself – extracted by

the threat of eviction – is a direct injury caused by RU's retaliation. The close temporal proximity between Plaintiff's protected activity (filing the 4AC, renewing the PI motion, and opposing RU's housing conduct) and RU's eviction filings supports a strong inference of retaliation. *Francis*, 992 F.3d at 74.

Moreover, the Housing Court's April 20, 2026 ruling explicitly ties the stay to "the determination of the Federal Lawsuit." The Court recognized that Plaintiff's federal claims are the basis for seeking relief. RU cannot now argue that the eviction is unrelated to this litigation when the state court has expressly linked the two.

### C.    This Court Has Jurisdiction to Enjoin the Retaliatory Eviction

This Court previously denied Plaintiff's TRO/PI motion for lack of jurisdiction, noting that landlord-tenant disputes belong in state court. (Jan. 16, 2026 Hr'g Tr. At 23:25-24:13). Plaintiff cured that defect by adding FHA claims. This Court now has federal question jurisdiction over the FHA retaliation claim. 28 U.S.C. § 1331.

The Housing Court's conditional stay does not provide an adequate remedy. It merely postpones eviction until May 20, 2026, conditioned on a payment that Plaintiff cannot afford. The stay is expressly tied to "the determination of the Federal Lawsuit," meaning that if this Court denies relief, the stay will lift and RU will evict Plaintiff immediately. *Tellock v. Davis*, 2002 WL 31433589 (E.D.N.Y. Oct. 31, 2002), holds that a federal court may enjoin a state eviction proceeding where the eviction is retaliatory for protected activity. The Housing Court cannot adjudicate Plaintiff's federal retaliation claims. *Id.* at *3. Moreover, the threat of eviction and the realistic prospect of homelessness constitute irreparable harm. *Sinisgallo v. Town of Islip Hous. Auth.,* 865 F. Supp. 2d 307, 316 (E.D.N.Y. 2012).

The conditional stay, even after payment, does not provide an adequate remedy. Plaintiff remains under the constant threat that the stay will be lifted if this Court does not rule in her favor. She has

20

already been forced to work two jobs and deplete her limited resources to pay the $2,334.00 – a sum she cannot afford. (Decl. ¶¶ 13–14.) This is not a remedy; it is an ongoing injury. Therefore, this Court has jurisdiction to enjoin the eviction pending resolution of the FHA claim.

Plaintiff renews her request for a preliminary injunction (Dkt. 232). The FHA retaliation claim is well-pleaded, supported by direct evidence of retaliatory timing and a judicial ruling linking the eviction to this federal action. The motion to dismiss the Fifth Cause of Action should be denied.

## VIII.    PLAINTIFF STATES A PLAUSIBLE GMVL CLAIM AGAINST FREIWALD (FOURTH CAUSE OF ACTION)

### A.    Introduction: The Pattern of Forcible Touching

On two separate occasions, Dr. Winrich Freiwald – Plaintiff's direct supervisor and a tenured professor at Rockefeller University – deliberately and non-consensually touched Plaintiff's buttocks, an intimate body part. The first incident occurred on May 14, 2019, on a New York City subway platform, immediately after a work lunch that Freiwald had arranged in a downtown Manhattan restaurant. As Plaintiff and Freiwald exited the train, he slapped her buttocks under the guise of letting her pass. (4AC ¶ 94.) The second incident happened on February 14, 2020, in Freiwald's office at Rockefeller University. During that meeting, Freiwald reclined in his chair, displayed a visible erection, and told Plaintiff that the future of her research project depended on her "desired course of action." As she tried to leave, he stood up, opened the door, and squeezed and slapped her buttocks. (4AC ¶¶ 97–98.)

These are not ambiguous gestures or trivial workplace annoyances. They are intentional, forcible, non-consensual acts of a sexual nature directed at a subordinate female employee. Under the New York City Gender-Motivated Violence Act ("GMVA"), N.Y.C. Admin. Code §§ 10-1101 *et seq.*, Plaintiff has stated a claim. Defendants' motion to dismiss this claim should be denied.

21

**B.    The GMVA's Correct Legal Standard: Crimes Against the Person Do Not Require a Showing of "Serious Risk of Physical Injury"**

Defendants argue that Plaintiff must plead a "serious risk of physical injury" to sustain her GMVA claim. (RU Mem. 29-30, 37-38.) That argument misreads the statute and contradicts binding precedent from this very Court.

In *Baldwin v. TMPL Lexington LLC*, 2024 WL 3862150, at *11-12 (S.D.N.Y. Aug. 19, 2024), Judge Carter (the same judge presiding over this case) squarely held that the "serious risk of physical injury" requirement in the GMVA applies **only** to claims predicated on "a misdemeanor or felony against property." For claims predicated on a "misdemeanor or felony against the person"—such as forcible touching under N.Y. Penal Law § 130.52—the plaintiff need only plead:

1. the alleged act constitutes a misdemeanor or felony against the person;
2. the act was perpetrated because of plaintiff's gender;
3. the act was due, at least in part, to animus against plaintiff's gender; and
4. the act resulted in injury.
5. *Baldwin*, 2024 WL 3862150, at *12.

Plaintiff's GMVA claim is predicated on **forcible touching**, a class A misdemeanor against the person. (4AC ¶ 172.) The *Baldwin* framework governs, not the "serious risk of physical injury" standard that Defendants invoke. Defendants' reliance on *Hughes*, *Rossbach*, and *Bellino* is therefore misplaced: each of those cases either involved no predicate crime against the person (*Hughes*), was decided after an evidentiary hearing rather than on the pleadings (*Rossbach*), or turned on timeliness (*Bellino*), not on the elements Plaintiff must plead here.

Even if the "serious risk of physical injury" standard applied, Plaintiff has alleged actual physical injury: she contracted a high-risk HPV infection as a direct result of the sexual violence she endured, which caused cervical dysplasia and required years of invasive medical monitoring in New

22

York. (4AC ¶¶ 41, 176; Medical Records, ECF 193-1.) But under *Baldwin*, Plaintiff need not rely on that fact. The GMVA claim stands on the forcible touching allegations alone.

### C.    Gender Animus May Be Inferred from the Acts Themselves

Defendants next contend that Plaintiff has failed to plead that Freiwald's conduct was motivated by gender animus. (RU Mem. 37-38.) That argument ignores the well-settled principle, articulated by the First Department in *Breest v. Haggis*, 180 A.D.3d 83, 94 (1st Dep't 2019), that "animus inheres where consent is absent" in cases of non-consensual sexual touching.

In *Breest*, the court held that allegations of "unwanted kissing, groping, and other sexual touching" are, "taken together, sufficient to establish animus" under the GMVA. *Id.* The court explained that when a defendant commits a sexual act without the plaintiff's consent, "the nature of the crime itself demonstrates that it was committed because of gender." *Id.* (quoting *Schwenk v. Hartford*, 204 F.3d 1187, 1202 (9th Cir. 2000)). Thus, a plaintiff need not produce a separate "smoking gun" statement of misogyny; the act of forcible sexual touching on an intimate body part is itself evidence of gender-based animus at the pleading stage.

Here, Freiwald twice forcibly touched Plaintiff's buttocks – an intimate body part – without her consent. The May 14, 2019 incident occurred after Freiwald had spent the subway ride staring at her legs and buttocks. (4AC ¶ 94.) The February 14, 2020 incident occurred immediately after Freiwald displayed a visible erection and linked Plaintiff's career prospects to her "desired course of action" – a clear quid pro quo sexual demand. (4AC ¶¶ 97–98.) Under *Breest*, these facts are more than sufficient to infer gender animus.

Defendants' reliance on *Garcia v. Comprehensive Ctr., LLC*, 2018 WL 3918180 (S.D.N.Y. Aug. 16, 2018), is unavailing. In *Garcia*, the alleged conduct was not inherently sexual; it involved a supervisor making non-sexual workplace criticisms and comments. *Id.* at *5. By contrast, Freiwald's

23

conduct here is inherently sexual: it targets an intimate body part, occurs in a context of quid pro quo demands, and is part of a sustained pattern of sexualizing female subordinates (e.g., requiring Plaintiff to serve as "arm candy" at social events, making sexual gestures, and asking whether she "preferred older men"). (4AC ¶¶ 52, 68, 99, 156.) That pattern decisively distinguishes this case from *Garcia*.

### D.     Plaintiff Has Suffered Cognizable Injury

The GMVA requires only that the plaintiff suffered "injury," which includes psychological and emotional harm. *Baldwin*, 2024 WL 3862150, at \*12. Plaintiff alleges that as a direct result of Freiwald's conduct – combined with the broader pattern of harassment and retaliation – she suffers from severe Post-Traumatic Stress Disorder (PTSD), depression, anxiety, and emotional distress. (4AC ¶¶ 140–144, 176.) Those allegations are patently sufficient.

### E.     The GMVA Claim Is Timely

Defendants do not seriously contest timeliness in their GMVA argument, but to the extent they might, the claim is timely. Plaintiff filed her Third Amended Complaint (adding the GMVA claim) on **February 28, 2025** – the final day of the GMVA's one-year revival window established by N.Y.C. Admin. Code § 10-1104. The operative Fourth Amended Complaint (filed January 30, 2026) relates back under Fed. R. Civ. P. 15(c)(1)(B) because it arises from the same conduct (the two forcible touching incidents) that was alleged in the TAC. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 548 (2010).

### F.     Conclusion: The Motion to Dismiss the GMVA Claim Must Be Denied

Dr. Freiwald twice forcibly touched Plaintiff's buttocks without her consent – once on a public subway platform, once in his office immediately following a quid pro quo sexual demand. Those acts constitute forcible touching, a misdemeanor against the person. Under *Baldwin*, Plaintiff need not plead a "serious risk of physical injury." Under *Breest*, gender animus is inferred from the non-consensual sexual nature of the touching. Plaintiff has alleged resulting psychological injury. And the

24

claim is timely under the GMVA revival window.Defendants' motion to dismiss the Fourth Cause of Action (GMVA claim against Dr. Freiwald) should be denied. This claim is legally sound, factually specific, and entitled to proceed to discovery.

## IX.    <u>DEFENDANTS' REMAINING ARGUMENTS LACK MERIT</u>

### A.    Law of the Case Does Not Bar the 4AC

Defendants argue that the 4AC is barred by the "law of the case" because the Court previously denied consolidation of Marciniak I and Marciniak II. (RU Mem. At 27-28). That denial addressed a different procedural posture (consolidation) and did not prohibit amendment. Indeed, this Court later granted Plaintiff leave to file the Third Amended Complaint adding Dr. Freiwald (Dkts. 144, 145), and then granted leave to file the 4AC (Jan. 16, 2026 Hr'g Tr. at 5:5-11). The law of the case doctrine does not apply to successive amendments permitted by the Court.

### B.    No Improper Claim Splitting

The 4AC is the operative pleading in *Marciniak I.* The duplicative *Marciniak II* was dismissed with prejudice, and Judge Cronan expressly preserved Plaintiff's right to pursue all present and future claims and defendants in *Marciniak I.* (*Marciniak II*, Dkt. 94). There is no improper claim splitting.

### C.  Plaintiff's FHA Disability Claim Is Not Required for Retaliation

Defendants argue that Plaintiff failed to plead a disability accommodation claim and therefore the FHA claim fails. (RU Mem. at 22-24). But Plaintiff's FHA claim is primarily one for retaliation under § 3617, not discrimination or failure to accommodate. Retaliation does not require a showing of disability or a failed accommodation request. See *Francis*, 992 F.3d at 74. Plaintiff has plausibly pleaded retaliation, and that is sufficient.

<u>CONCLUSION</u>

25

For all the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants The Rockefeller University and Winrich Freiwald's motion to dismiss the Fourth Amended Complaint in its entirety. Alternatively, Plaintiff requests leave to amend to address any deficiencies the Court may identify[1].

Dated: May 1, 2026

New York, New York

Respectfully submitted,

Dr. Karolina Marciniak-Domingues Goncalves Agra

_Karolina Agra_

500 E 63rd St, Apt 13N

New York, 10065 NY

marciniak.kar@gmail.com

(646) 770 2045

PLAINTIFF *PRO SE*

---

1    *See Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991) (holding that "dismissals for insufficient pleadings are ordinarily with leave to replead" unless amendment would be futile); *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (holding that "the usual practice" upon granting a motion to dismiss is to give leave to amend, as the Federal Rules favor resolving disputes on the merits).