**PROSKAUER ROSE LLP**
Elise M. Bloom
Patrick J. Lamparello
Noa M. Baddish
Eleven Times Square
New York, New York 10036-8299
Tel. 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
plamparello@proskauer.com
nbaddish@proskauer.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAROLINA MARIA MARCINIAK-DOMINGUES GONCALVES AGRA,<br><br>Plaintiff,<br><br>-against-<br><br>ROCKEFELLER UNIVERSITY; FREDERICO AZEVEDO and WINRICH FREIWALD,<br><br>Defendants. | No. 22-cv-10959 (ALC) |

**DEFENDANTS THE ROCKEFELLER UNIVERSITY AND DR. WINRICH FREIWALD'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT...................................................................................................................... 2

I.     The 4AC Still Fails to Give Fair Notice Under Rule 8.......................................... 2

II.    The COVID-19 Tolling Argument Does Not Save Her Claims. ....................................... 2

III.   Plaintiff Fails to State a Claim for *Quid Pro Quo* Harassment........................................... 3

IV.   Plaintiff Fails to State a Claim for Hostile Work Environment...................................... 4

V.    Plaintiff's Retaliation Theories Fail as Pleaded Except as to Her Termination. ................ 5

VI.   Plaintiff Fails to State a Claim Under the FHA. ...................................................... 7

VII.  Plaintiff's Claims Against Dr. Freiwald Should Be Dismissed With Prejudice.................. 8

   A.   Plaintiff Cannot Use Amendment to Circumvent the Consolidation Ruling...................... 8

   B.   Title VII Does Not Permit Individual Liability. ................................................................. 8

   C.   The NYSHRL and NYCHRL Claims Do Not Relate Back. .............................................. 9

   D.   Plaintiff's GMVL Claim Fails. ......................................................................................... 9

VIII. Plaintiff Should Not Be Permitted to Amend Her Complaint for a Fifth Time................ 10

CONCLUSION................................................................................................................... 11

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Baldwin v. TMPL Lexington LLC*,
  2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024) ............................................................................10

*Brandr Grp. v. Port Auth. of N.Y. & N.J.*,
  2020 WL 1489802 (S.D.N.Y. Mar. 26, 2020) ...............................................................................7

*Breest v. Haggis*,
  180 A.D.3d 83 (1st Dep't 2019) ................................................................................................10

*Buran v. Coupal*,
  87 N.Y.2d 173 (1995) ...................................................................................................................9

*BYD Co. Ltd. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1,
  2022) .............................................................................................................................................5

*Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*,
  641 F. App'x 60 (2d Cir. 2016) ...................................................................................................9

*Dickerson v. BPP PCV Owners LLC*,
  2022 WL 4538281 (S.D.N.Y. Sep. 28, 2022) ...............................................................................7

*Dirschel v. Speck*,
  1994 WL 330262 (S.D.N.Y. July 8, 1994) ................................................................................8, 9

*Fattoruso v. Hilton Grand Vacations Co., LLC*,
  873 F. Supp. 2d 569 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013) ..........................4

*Girardi v. Ferrari Express, Inc.*,
  2023 WL 2744027 (S.D.N.Y. Mar. 31, 2023) ...............................................................................4

*Grewal v. Cuneo Gilbert & LaDuca LLP*,
  2017 WL 1215752 (S.D.N.Y. Mar. 31, 2017) ...............................................................................5

*Haight v. NYU Langone Med. Ctr., Inc.*,
  2014 WL 2933190 (S.D.N.Y. June 27, 2014) ...............................................................................3

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*,
  2016 WL 11318241 (E.D.N.Y. Mar. 3, 2016) ...............................................................................4

*Hernandez v. Premium Merch. Funding One, LLC*,
  2020 WL 3962108 (S.D.N.Y. July 13, 2020) ................................................................................3

*Hughes v. Twenty-First Century Fox, Inc.*,
  304 F. Supp. 3d 429 (S.D.N.Y. 2018)...................................................................................10

*In re Nemeth v. K-Tooling*,
  40 N.Y.3d 405 (2023) ............................................................................................................9

*Isaac v. Schiff*,
  2023 WL 2058623 (S.D.N.Y. Feb. 16, 2023)......................................................................10

*Johnson v. City of N.Y.*,
  2024 WL 3520474 (S.D.N.Y. July 24, 2024) .........................................................................6

*Lucente v. Int'l Bus. Machs. Corp.*,
  310 F.3d 243 (2d Cir. 2002)..................................................................................................10

*Mathirampuzha v. Potter*,
  548 F.3d 70 (2d Cir. 2008).....................................................................................................7

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013)...................................................................................................5

*National Railroad Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002)................................................................................................................3

*Olivieri v. Stifel, Nicolaus & Co., Inc.*,
  112 F.4th 74 (2d Cir. 2024) ....................................................................................................3

*Selvam v. Experian Info. Sols., Inc.*,
  2015 WL 1034891 (E.D.N.Y. Mar. 10, 2015)......................................................................11

*Shin v. NBC Universal Media, LLC*,
  2025 WL 438297 (S.D.N.Y. Feb. 7, 2025).............................................................................3

*Smith v. Sillick*,
  2026 WL 257112 (S.D.N.Y. Jan. 29, 2026) ...........................................................................2

*Tomka v. Seiler Corp.*,
  66 F.3d 1295 (2d Cir. 1995)....................................................................................................9

*Turner v. Suffolk Cnty.*,
  2022 WL 3357944 (E.D.N.Y. Aug. 15, 2022)........................................................................9

*Wanamaker v. Columbian Rope Co.*,
  108 F.3d 462 (2d Cir. 1997)....................................................................................................6

*Withers v. Combs*,
  2026 WL 866837 (S.D.N.Y. Mar. 30, 2026).........................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(c) ............................................................................................................9

**PRELIMINARY STATEMENT**[1]

Plaintiff's opposition ("Opposition" or "Opp.") confirms that the 4AC should be dismissed. Having learned over more than three years of pleading and seven successive complaints of certain requisite elements of employment discrimination claims, Plaintiff stretches to relabel facts in the 4AC that, on their face and affording her all favorable inferences, do not constitute actionable conduct. As but a few examples, a six-month appointment extension is called a "demotion," an alleged request not to meet in restaurants is called rejection of sexual advances, employment-related litigation is called FHA-protected activity, and a routine request for use and occupancy payments during the pendency of a housing court proceeding is called retaliation. These labels cannot substitute for facts satisfying the elements of Plaintiff's claims, which are still lacking.

Nor does the Opposition counter the RU Defendants' dispositive arguments: the 4AC's blurred, meandering allegations do not provide the University with notice of the claims against it; the harassment claims lack the required causal connection to sex-based conduct; the non-termination retaliation theories fail as pleaded; the FHA retaliation claim identifies no FHA-protected activity; and the claims against Dr. Freiwald are time-barred or inadequately pled. Plaintiff's COVID-19 tolling argument does not alter any of this because the discrete events she identifies are already timely under the NYSHRL and the NYCHRL, and the New York State tolling orders do not apply to her Title VII claims.

The University should not expend more resources briefing futile amendments or engage in needless discovery. The 4AC should be dismissed with prejudice and without leave to amend.

---

[1] Unless otherwise defined herein, all capitalized and abbreviated terms have the same meanings as in the RU Defendants' memorandum of law in support of their motion to dismiss the 4AC.

1

**ARGUMENT**

I.      **The 4AC Still Fails to Give Fair Notice Under Rule 8.**

The Rule 8 defect is not just that the 4AC is difficult to read in the abstract; it is that Plaintiff collapses legally distinct theories into one continuous narrative, in a way that makes it impossible for the RU Defendants to have fair notice of the claims against them. Particularly, employment claims under Title VII, the NYSHRL and the NYCHRL require different protected activity, adverse action, causation, and remedies than housing claims under the FHA. Yet Plaintiff treats post-employment housing events as part of the workplace environment and employment-related complaints as FHA-protected activity. Adding allegations about Azevedo—a separate defendant who was not employed by RU—further obscures what conduct is attributable to the RU Defendants. The two factors Plaintiff cites in defense—that the 4AC is chronological and *pro se* litigants are afforded solicitude—do not cure that failure of fair notice. *See Smith v. Sillick*, 2026 WL 257112, at *1 (S.D.N.Y. Jan. 29, 2026) (Carter, J.).

After multiple amendments in two separate lawsuits over more than three years, Plaintiff still has not provided a short and plain statement that separates her employment theories against the RU Defendants from those against other defendants or from her housing theories. The 4AC should be dismissed in its entirety on this basis.

II.     **The COVID-19 Tolling Argument Does Not Save Her Claims.**

Plaintiff's COVID-19 tolling argument does not address, and therefore concedes, the actual grounds for dismissal. Plaintiff invokes New York State executive orders to argue that claims based on her July 2020 "demotion," November 2021 termination, and February 2022 visa withdrawal are timely. But those events are already within the NYSHRL and NYCHRL limitations periods, and the RU Defendants did not seek dismissal of claims based on those events on timeliness grounds. The RU Defendants sought dismissal because those allegations do not

2

plausibly state claims. Tolling does not cure that pleading defect. Nor does tolling apply to Plaintiff's Title VII claims, because the executive orders "did not purport to toll time periods prescribed by federal law," including Title VII's 300-day charge requirement. *Shin v. NBC Universal Media, LLC*, 2025 WL 438297, at *8 (S.D.N.Y. Feb. 7, 2025).

### III.        **Plaintiff Fails to State a Claim for *Quid Pro Quo* Harassment.**

Plaintiff's *quid pro quo* claims fail because the 4AC does not plausibly link any alleged rejection of sexual advances to any adverse employment action.[2] A *quid pro quo* claim requires facts showing that submission to or rejection of unwelcome sexual conduct was used as the basis for a tangible employment action. *See Hernandez v. Premium Merch. Funding One, LLC*, 2020 WL 3962108, at *13 (S.D.N.Y. July 13, 2020); *see also Haight v. NYU Langone Med. Ctr., Inc.*, 2014 WL 2933190, at *13 (S.D.N.Y. June 27, 2014).[3] Plaintiff pleads no such facts. Instead, her own allegations defeat causation: after the alleged February 2020 incidents and her May 2020 "boundary" email, Dr. Freiwald and RU extended her appointment by six months, offered her an opportunity to write a review paper, and continued to sponsor H-1B visas for her and her husband. (4AC ¶¶ 97-99, 101, 106, 113.) Those allegations are irreconcilable with the theory that the RU Defendants withdrew employment benefits because Plaintiff rejected sexual advances.

Plaintiff's contrary theory depends on relabeling of allegations that is inconsistent with the actual text of the 4AC. She calls the July 2020 extension a "formal demotion," but the 4AC pleads

---

[2] Plaintiff's Title VII *quid pro quo* claim also fails because the alleged sexual advances and alleged rejection all occurred before July 22, 2020. Plaintiff's reliance on the July 30, 2020 "demotion" is misplaced because a timely lawful employment decision cannot revive untimely alleged sexual conduct or supply a missing *quid pro quo* element. Contrary to Plaintiff's contention, *Olivieri v. Stifel, Nicolaus & Co., Inc.*, addressed HWE accrual under the Ending Forced Arbitration Act, not revival of time-barred sexual conduct. *See* 112 F.4th 74, 85-92 (2d Cir. 2024). And *National Railroad Passenger Corp. v. Morgan*, permits untimely acts to be considered as background evidence, not as a substitute for a missing element of a claim. 536 U.S. 101, 113 (2002).

[3] Plaintiff's distinction of *Hernandez* and *Haight* misses the point: labeling a later workplace decision a tangible employment action does not provide the requisite link to an alleged rejection of sexual advances.

3

an extension and direction to complete experiments.[4] She calls the June 2020 project-related statements "threats," but those statements do not plausibly allege that any job benefit was conditioned on sexual compliance.[5]

Even under the NYCHRL's liberal standard, Plaintiff must allege facts linking purported sexual conduct to unequal treatment because of gender. *See Fattoruso v. Hilton Grand Vacations Co., LLC*, 873 F. Supp. 2d 569, 577-78 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 26 (2d Cir. 2013). She has not done so. Accordingly, Plaintiff's *quid pro quo* claims under each statute should be dismissed with prejudice.

IV.     **Plaintiff Fails to State a Claim for Hostile Work Environment.**

Plaintiff's hostile work environment ("HWE") claims fail because her timely allegations do not plausibly describe sex-based hostility. As to her Title VII HWE claim, Plaintiff does not dispute that all alleged sexually inappropriate conduct – the alleged buttocks touching, hand gesture and restaurant meetings – occurred before July 22, 2020 and were thus untimely, and this Court has already held that Plaintiff failed to plead a continuing violation that could cure this defect. (Dkt. 107 at 32.) The 4AC does not alter that conclusion, and Plaintiff provides no basis to revisit it. What remains within the Title VII limitations period are allegations concerning project management, resource allocation, the lab survey, and Plaintiff's eventual termination—none of which constitute sexual harassment or sex-based conduct. The lab survey, on which Plaintiff heavily relies, allegedly reflected dissatisfaction with the management of the lab, not gender-based hostility. *See Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 2016 WL 11318241,

---

[4] *Girardi v. Ferrari Express, Inc.*, 2023 WL 2744027 (S.D.N.Y. Mar. 31, 2023) is inapposite. There, the supervisor explicitly propositioned plaintiff for sex and tied his advances to plaintiff's job security. *Id.*, at *7. Plaintiff alleges no comparable proposition or threat; she relies on ambiguous conduct she characterizes as sexual and a later appointment extension she labels a "demotion."

[5] These alleged statements are untimely under Title VII.

4

at *10-11 (E.D.N.Y. Mar. 3, 2016).

Plaintiff's NYSHRL and NYCHRL HWE claims fail for the same reason.[6] Plaintiff again points to project assignments, resource allocation, appointment length, career opportunities, and post-employment housing issues, but does not plead facts tying those issues to gender-based hostility. Her assertion that "gender animus is inherent in the conduct" is a bare legal conclusion, unsupported by factual allegations. Even under the NYCHRL, Plaintiff must allege more than ordinary workplace grievances or post-employment disputes untethered to discriminatory motive. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013); *Grewal v. Cuneo Gilbert & LaDuca LLP*, 2017 WL 1215752, at *13 (S.D.N.Y. Mar. 31, 2017). Accordingly, Plaintiff's HWE claims under each statute should be dismissed with prejudice.

## V.    Plaintiff's Retaliation Theories Fail as Pleaded Except as to Her Termination.

Plaintiff's Opposition does not change that her non-termination retaliation theories also fail. Her May 29, 2020 "boundary" email, by her own description, requested that future work meetings not be held in restaurants – which is a scheduling preference, not an opposition to unlawful employment practices. Her March 2019 MIT report regarding Azevedo is time-barred for the reasons stated in the RU Defendants' opening brief. And the assertion of housing-related claims under the FHA is not protected activity under Title VII, the NYSHRL or the NYCHRL, which address retaliation for opposing unlawful *employment* practices. Thus, the only timely protected activity that could support the challenged retaliation theories is Plaintiff's May 2021

---

[6] Plaintiff barely addresses the NYSHRL and NYCHRL HWE claims, asserting only that she "easily satisfies" the NYCHRL standard. Plaintiff's failure to oppose the University's motion on these claims "is deemed waiver of that issue." *BYD Co. Ltd. v. VICE Media LLC*, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022).

5

administrative charge.

That timing defeats most of the claim. The alleged July 30, 2020 "demotion" predates the May 2021 charge and therefore could not have been caused by it. *See Johnson v. City of N.Y.*, 2024 WL 3520474, at *6 (S.D.N.Y. July 24, 2024). Plaintiff's remaining employment theories –the alleged withdrawal of opportunities and termination of the CBMM collaboration – remain undated and conclusory, and Plaintiff does not address that deficiency.

Plaintiff's post-employment housing theories fare no better. She does not allege that any housing-related conduct interfered with her ability to obtain future employment, and her conclusory assertion of "career destruction" is insufficient. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997). Nor does the September 10, 2025 Termination Notice plausibly support retaliatory intent. The 4AC alleges that RU demanded surrender of the apartment in December 2021, Plaintiff refused, remained in possession without paying rent, and accumulated approximately $43,000 in arrears.[7] Those facts establish a non-retaliatory basis for seeking possession that arose years before Plaintiff's August 2025 litigation activity. RU's alleged forbearance does not support retaliation; it undermines it. And Plaintiff's citation to the April 20, 2026 housing court ruling postponing decision on her order to show cause based on the possibility that this Court would rule imminently on her motion for PI is moot (the housing court denied Plaintiff's OTSC on May 20, 2026 and has ordered pretrial proceedings to go forward in July, (Bloom Decl. **Exhibit A**)), and in any event, is not retaliation by RU.  Rather, it was a judicial act

---

[7] While not necessary to resolve this motion, the University notes that Plaintiff's actual arrears far exceed the amount she admits in the 4AC. (*See, e.g.*, Kogan Supp. Decl. in Opp. to Pl's Renewed Mot. for TRO/PI ¶ 12, Dkt. 240 (Feb. 25, 2026) (noting that Plaintiff owed more than $136,000 in unpaid rent and related housing charges as of February 25, 2026).)

6

by a court in response to Plaintiff's request for a stay of the housing court proceedings.

Finally, Plaintiff's Title VII retaliation theories based on post-employment housing conduct also fail for lack of exhaustion because her May 2021 charge could not have encompassed a housing holdover dispute arising years after her employment ended. *See Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008).

Plaintiff's non-termination retaliation theories should be dismissed as pleaded.[8]

### VI.    Plaintiff Fails to State a Claim Under the FHA.

Plaintiff has abandoned her FHA discrimination and failure-to-accommodate claims by conceding that her "FHA claim is primarily one for retaliation under § 3617, not discrimination or failure to accommodate." *See Brandr Grp. v. Port Auth. of N.Y. & N.J.*, 2020 WL 1489802, at *2 (S.D.N.Y. Mar. 26, 2020) (Carter, J.) (holding failure to support a claim in opposition brief is deemed abandonment of the claim).

The remaining retaliation claim fails because Plaintiff identifies no FHA-protected activity before the September 10, 2025 Termination Notice. To sustain an FHA retaliation claim, Plaintiff must allege "that she engaged in protected activity by opposing conduct prohibited under the FHA." *Dickerson v. BPP PCV Owners LLC*, 2022 WL 4538281, at *6 (S.D.N.Y. Sep. 28, 2022). Plaintiff relies on her employment-related litigation activity, the 4AC and her PI motion. But employment complaints are not FHA-protected activity, and the 4AC and the PI motion post-date the Termination Notice that forms the basis for the alleged retaliation.

Plaintiff's reliance on the April 2026 housing court ruling is misplaced. The housing court referenced this case only because Plaintiff sought a stay of the holdover proceeding based on it; the housing court did not find retaliation or establish any nexus. Nor does the use and occupancy

---

[8] The RU Defendants, however, reserve all rights to challenge the termination-based theory at a later stage.

condition support Plaintiff's theory. Requiring use and occupancy as a condition of a stay is a routine feature of holdover proceedings where, as here, the occupant seeks to remain in possession while not paying rent. Indeed, the housing court has since denied Plaintiff's request for a stay. (Bloom Decl. **Exhibit A**.) The 4AC instead pleads a non-retaliatory chronology: RU demanded possession in December 2021 after Plaintiff's employment ended, Plaintiff refused to leave, remained as a tenant-at-sufferance, accrued substantial arrears, and RU nevertheless accepted ERAP funds and delayed eviction.

Plaintiff's "renewed" request for injunctive relief is also improper: her PI motion seeking the same relief is already pending, the housing court has since denied her request for a stay of those proceedings, and an opposition brief is not another vehicle for duplicative relief.

The FHA claims should be dismissed with prejudice.

### VII.   <u>Plaintiff's Claims Against Dr. Freiwald Should Be Dismissed With Prejudice</u>.

#### A.   **Plaintiff Cannot Amend to Circumvent the Consolidation Ruling.**

Plaintiff's opposition does not justify adding Dr. Freiwald after repeatedly omitting him from this action. Contrary to Plaintiff's assertion, Dr. Freiwald does not argue that "law of the case" mechanically barred amendment; rather, Plaintiff is attempting by amendment to accomplish what this Court declined to permit through consolidation. Contrary to Plaintiff's suggestion, Judge Cronan's dismissal order preserved Plaintiff's claims in *Marciniak I* generally; it did not endorse adding Dr. Freiwald here or foreclose challenges to claims being brought against him.

#### B.   **Title VII Does Not Permit Individual Liability.**

Plaintiff also misstates the law governing individual liability under Title VII.  She argues, citing *Dirschel v. Speck*, 1994 WL 330262, at *6 (S.D.N.Y. July 8, 1994), that supervisors who "personally effectuated adverse employment decisions" are subject to Title VII liability as agents. (Pl. Opp. at 16.) But the Second Circuit explicitly overruled *Dirschel* in *Tomka v. Seiler Corp.*, 66

8

F.3d 1295 (2d Cir. 1995), resolving a split within the Circuit by holding, contrary to *Dirschel*, that "individual defendants with supervisory control over a plaintiff *may not be held personally liable* under Title VII." *Id.* at 1313. *See also Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 641 F. App'x 60, 62 (2d Cir. 2016).

### C.    The NYSHRL and NYCHRL Claims Do Not Relate Back.

Plaintiff's NYSHRL and NYCHRL claims are time-barred and do not relate back. *In re Nemeth v. K-Tooling*, 40 N.Y.3d 405 (2023) does not convert every assertion of legal confusion into a mistake justifying relation back. *See* Fed. R. Civ. P. 15(c). Here, there was no mistake. Plaintiff knew Dr. Freiwald's identity and alleged role, named him in her NYSDHR complaint and sued him in *Marciniak II*, yet omitted him from multiple pleadings here.[9] That was a strategic choice, not a mistake. *See Buran v. Coupal*, 87 N.Y.2d 173, 181 (1995). Relation back also fails because Dr. Freiwald could not have reasonably known that, but for a mistake, this action would have been brought against him. *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). Having been repeatedly omitted from this case while Plaintiff pursued claims against him elsewhere, Dr. Freiwald reasonably would have understood the omission as deliberate. *See Turner v. Suffolk Cnty.*, 2022 WL 3357944, at *8 (E.D.N.Y. Aug. 15, 2022). Nor do Plaintiff's boilerplate reservation of rights or shared-counsel argument cure that defect; at most, they suggest awareness of possible claims, not notice that Plaintiff's failure to sue him here was a mistake.[10]

### D.    Plaintiff's GMVL Claim Fails.

The GMVL claim also fails. Plaintiff relies on *Baldwin v. TMPL Lexington LLC*, 2024 WL

---

[9] Indeed, Plaintiff's decision to omit Dr. Freiwald from this action while naming him in *Marciniak II* suggests strategy, not mistake: by changing the parties, Plaintiff attempted to pursue a second, duplicative action in *Marciniak II* based on the same core allegations.

[10] Plaintiff's asserted legal "mistake" does not support relation back, even were she correct that legal confusion could constitute such a mistake.  She claims she omitted Dr. Freiwald because she believed Title VII barred individual liability and required separate exhaustion against him.  But Title VII *does* bar individual liability, *see*

9

3862150, at *11 (S.D.N.Y. Aug. 19, 2024) to avoid the "serious risk of  physical injury" requirement and on *Breest v. Haggis*, 180 A.D.3d 83 (1st Dep't 2019) to argue that gender animus may be inferred from the alleged acts themselves, but neither case saves her claim.[11] Even under *Baldwin*, Plaintiff must still plead facts establishing a predicate crime, gender animus, and injury caused by the predicate conduct. Plaintiff has not done so. And *Breest* does not hold that every alleged workplace touching automatically establishes gender animus; it involved allegations of forced oral sex, digital penetration, and rape, and expressly cautioned that other crimes do not inherently establish gender animus. 180 A.D.3d at 94 & n.12. Plaintiff's allegations that Dr. Freiwald twice "slapped her buttocks" are not comparable to *Baldwin* or *Breest.* She pleads no additional facts showing gender-based animus. *See, e.g.*, *Withers v. Combs*, 2026 WL 866837, at *8 (S.D.N.Y. Mar. 30, 2026). Nor does she plead injury caused by the alleged slaps; her claimed injuries are attributed to the broader employment narrative. *See Hughes*, 304 F. Supp. 3d at 455. The GMVL claim should be dismissed with prejudice.

## VIII.    <u>Plaintiff Should Not Be Permitted to Amend Her Complaint for a Fifth Time</u>.

Plaintiff's cursory request for leave to amend for a ***fifth*** time should be denied as futile. (Pl. Br. at 26.) The Court already cautioned Plaintiff that further amendment would require good cause, which she has not shown. (Bloom Decl. Ex. C at 5:3-11.) *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Isaac v. Schiff,* 2023 WL 2058623, at *4 (S.D.N.Y. Feb. 16, 2023) (dismissing *pro se* plaintiff's complaint and denying leave to amend); *see also, Selvam v. Experian Info. Sols., Inc.*, 2015 WL 1034891, at *4 (E.D.N.Y. Mar. 10, 2015).

---

Section VII.B, *supra*, and Plaintiff nevertheless asserted Title VII claims against Dr. Freiwald in *Marciniak II*. Her claimed confusion does not explain her failure to timely assert NYSHRL and NYCHRL claims against him here.

[11] The Court need not resolve whether a GMVL claim predicated on a crime against the person requires "serious risk of physical injury" *Compare Baldwin*, 2024 WL 3862150, at *11-12, *with Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018).  The claim fails for independent reasons.

**CONCLUSION**

For the foregoing reasons and those set forth in the RU Defendants' moving brief, the RU

Defendants respectfully request dismissal of the 4AC with prejudice, or alternatively, dismissal

with prejudice of all claims except Plaintiff's termination-based retaliation claim under Title VII,

the NYSHRL and the NYCHRL, together with any other relief the Court deems just and proper.

Dated: New York, New York
       May 29, 2026

Respectfully submitted,


/s/ Elise M. Bloom
Elise M. Bloom
Patrick J. Lamparello
Noa M. Baddish
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. 212.969.3000
Fax 212.969.2900
ebloom@proskauer.com
plamparello@proskauer.com
nbaddish@proskauer.com

*Attorneys for Defendants*
*The Rockefeller University and Dr. Winrich*
*Freiwald*

11

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies, pursuant to Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, that the foregoing brief contains no more than 3,500 words.

Specifically, the Microsoft Word "Word Count" tool indicates that the brief contains 3,385 words. That word count excludes the "caption, any index, table of contents, table of authorities, signature blocks, or any required certificates," but does include "material contained in footnotes or endnotes." Local Civil Rule 7.1.

Dated: New York, New York
May 29, 2026

/s/ Elise M. Bloom
Elise M. Bloom

12