Dr. Karolina Marciniak-Domingues Goncalves Agra
500 E. 63rd Street, Apt. 13F
New York, New York 10065
(646) 770-2045
marciniak.kar@gmail.com

November 3rd, 2026

**Via ECF**
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Courtroom 435
New York, New York 10007

**Re: Marciniak-Domingues Goncalves Agra v. Rockefeller University, et al.; Case No. 1:22-cv-10959-ALC**

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF LETTER MOTION FOR LEAVE (ECF NO. 273)**

Dear Judge Carter:

I write *pro se* in reply to RU's October 29 opposition (ECF No. 276). RU does not dispute—in a sentence, a clause, or a footnote—that the September 28 New Notice repeats the same false dormitory exemption and the same false "lawful termination" claim that RU was told were inaccurate in March 2026. Nor does it dispute that it served that notice on the evening of September 29, before the state court entered the dismissal of its prior defective petition. Because it cannot answer those facts, RU argues mootness, abandonment, Rule 408, and an unrelated case[1]. None of those arguments answers the question presented by this letter motion: whether these new and material developments warrant supplemental briefing in connection with the pending PI Motion (ECF No. 232) and the pending motion to dismiss (ECF No. 248), not a merits ruling.

**I. <u>The Settlement Drafts Are Admissible for a Purpose Rule 408 Permits.</u>**

RU argues that I offer the settlement drafts "to prove liability on her existing FHA claim." (ECF No. 276 at 3.) I do not. That purpose was stated when I sought leave: my proposed Supplemental Brief explains that RU's demand for a global release shows its "objective was not to resolve a tenancy dispute; it was to use the Housing Court settlement as a vehicle to strip me of my federal rights." (ECF No. 273-1 at 4; see also ECF No. 273-2 ¶¶ 51–54.) I offer them to prove RU's motive: that RU used the eviction as leverage to force me to abandon my federal claims—a separate wrong committed in the course of settlement. Rule 408(b) permits evidence offered for "another purpose," including intent or motive, and the rule is "inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions." *Scott v. Goodman*, 961 F. Supp. 424, 437 (E.D.N.Y. 1997)

1 RU cites an order from a separate case involving my husband. Agra v. Dolci, No. 1:23-cv-10255-AT-JW, ECF No. 150. I accept that ruling and have not filed in that case since. My letters there stated on their face that I am not an attorney, do not represent Mr. Agra, and was not filing on his behalf; the Court nonetheless sua sponte granted Mr. Agra an extension based on the information I provided (ECF No. 136). That order has no bearing on the questions here—RU's replacement notice, its settlement demands, and its refusal to provide landlord documentation—and RU's reliance on it, rather than on those facts, is an attempt to change the subject.

(Rule 408 inapplicable where claim rests on wrong committed during settlement); see also *Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1890384, at *3 (S.D.N.Y. May 11, 2012) (settlement correspondence admissible to establish "an independent violation (here, retaliation)"). RU's September 19 draft demanded that I withdraw my preliminary injunction "with prejudice" (¶ 9) and release "any and all claims … from the beginning of the world" (¶ 8) **EXHIBIT A**. My attorney's revision attempted to preserve the claims (**EXHIBIT B,** at ¶¶ 8-9), but RU reinstated the broad waiver in its final draft (**EXHIBIT C,** at ¶ 8[2]).

RU's sanctions threat is baseless. Rule 408 is a rule of evidence, not confidentiality, and does not bar describing settlement communications in a filing. See *Rinat v. BDO USA, LLP*, No. 22-cv-8853 (JPC) (RWL), Dkt. 120 (S.D.N.Y. Sept. 25, 2023) (denying sanctions) **EXHIBIT D**. RU's own September 28 draft reserved the right to use the stipulation "for any purpose in the Federal Action." **EXHIBIT C**, at ¶ 8. It cannot reserve that right for itself and demand sanctions when I do the same.

## II. <u>The Motion Is Not Moot</u>

RU's premise—that a notice is not a proceeding, so "nothing" remains to enjoin—misreads *Allen v. New York City Hous. Auth*., 2010 WL 1644956 (S.D.N.Y. Apr. 20, 2010). *Allen* is an Anti-Injunction Act ("AIA") case; it does not hold that a notice threatening a future proceeding fails to establish imminent harm. On nearly identical facts, *Gilvin v. Veneto Tuscan LLC*, No. 2:26-cv-00370-APG-EJY (D. Nev. Mar. 3, 2026) (**EXHIBIT E**), rejected RU's argument, holding that the absence of a pending unlawful detainer action "does not address the harm that an eviction proceeding itself may cause." *Id*. at 4. RU's New Notice demands that I vacate by December 31, 2026, and expressly states it will commence a proceeding if I do not. (ECF No. 273-4 at 3.) That is the next step in a sequence RU has already initiated. [3]

RU's fallback—that the AIA bars relief because I can raise my FHA claim as a defense in Housing Court (ECF No. 276 at 2)—is wrong for the reasons set out in Section I.B of my Renewed PI Memorandum (ECF No. 234 at 6–8) and Section I.B of my March 4 Reply (ECF No. 243 at 3–4): the AIA's "necessary in aid of jurisdiction" exception permits relief where the state forum cannot grant the full federal relief sought, *Sinisgallo v. Town of Islip Hous. Auth*., 865 F. Supp. 2d 307, 317–19 (E.D.N.Y. 2012)(holding turned on forum inadequacy, not defendant's status); *Tellock v. Davis*, 2002 WL 31433589, at *3–4 (E.D.N.Y. Oct. 31, 2002), and a summary holdover court limited to possession under RPAPL § 743 cannot award the damages, declaratory relief, or prospective injunction my claims require.

Most tellingly, RU's September 19 draft required me to withdraw my PI motion "with prejudice in light of this Stipulation" (¶ 9)—a demand it would have had no reason to make had it believed the motion became moot when the state case ended.

## III. <u>My Claims Are Not Abandoned</u>

RU's abandonment argument misapplies waiver. Waiver applies to arguments not raised in an opposition; this letter is not an opposition but a supplement addressing facts that did not exist when the opposition was filed. My May 1, 2026 opposition (ECF No. 258, § VII.A) did defend the failure-to-

---

2 Exhibits B and C are redacted solely to remove information concerning a non-party that is irrelevant to this motion. The redactions do not alter the terms of either proposal that bear on RU's settlement demands—specifically, the demand to withdraw the PI motion "with prejudice" and the global release "from the beginning of the world" (¶ 8).

3 The January 23, 2026 order (ECF No. 223) denied my first PI motion, which was based on the Third Amended Complaint and predated any FHA claim; the same order granted me leave to file the 4AC, which I did on January 30, 2026, adding the FHA claim for the first time. My renewed PI Motion (ECF No. 232) is premised on that new FHA claim; the Court denied only its TRO portion and ordered RU to show cause (ECF No. 237), and that motion remains pending and undecided. RU's reliance on the January 2026 proceedings is therefore inapposite—those proceedings predated the FHA claim and could not have adjudicated it.

protect theory underlying ¶¶ 177–185 of the 4AC, and that theory remains pleaded and contested in RU's own motion to dismiss (ECF No. 248).

Decisively, the factual predicate is pleaded across my submissions: the proposed Supplemental Declaration sets forth the August 2025 filings and the February 15, 2018 CBMM email establishing RU's knowledge of Azevedo's official coordinating role one month before he assaulted me in my RU apartment (ECF No. 273-2, ¶¶ 36–39); my main PI Declaration swore to that exact email (ECF No. 233, ¶ 4); and the Security Director's request for Azevedo's photograph to ban him from campus—a measure RU never implemented—is pleaded in the 4AC itself at ¶ 75. The failure-to-protect claim is therefore pleaded in the operative complaint and throughout the very submissions RU asks the Court to reject.

**IV. <u>This Is Not a Landlord-Tenant Dispute; It Is FHA Retaliation</u>.**

RU's argument that these facts are merely re-argument overlooks that each one postdates the briefing: the replacement notice was served on September 29, 2026—after the motion to dismiss was fully briefed—and the settlement drafts and the fee expenditure followed. On those new facts, RU's likelihood-of-success argument rests on two premises: that my August 2025 filings were "employment disputes" unrelated to housing, and that the replacement notice was a neutral correction. Both fail.

A. *The August 2025 filings were FHA-protected activity.* They exposed RU's failure, as my landlord, to protect me from a known assailant in my home. (ECF No. 183; ECF No. 193; Supp. Decl. ¶¶ 36–39.) Azevedo was not a colleague but an authorized CBMM coordinator who used his control over program access to obtain lodging in my RU apartment, where he raped me. (4AC ¶¶ 15, 53–58.) Opposition to that failure is protected under *Francis v. Kings Park Manor*, 992 F.3d 67, 74–75 (2d Cir. 2021), and 24 C.F.R. § 100.400(c)(5). RU's answer—that it had no authority over Azevedo because he was MIT's employee (ECF No. 238 at 14–16)—misapprehends the duty. The authority *Francis* requires is authority over the premises, and RU had it: its Security Director requested Azevedo's photograph to ban him from campus and RU never acted. (4AC ¶ 75.) HUD's 2016 rule imposes liability for that failure without requiring discriminatory animus. 81 Fed. Reg. 63,060, 63,076 (Sept. 14, 2016).

B. *RU's "lawful termination" premise is false*. The New Notice rests on the claim that my employment was "lawfully terminated" and the lease therefore ended. The August 2025 filings supplied direct documentary evidence that the termination was retaliatory: my May 29, 2020 email setting a professional boundary with Freiwald, and his immediate response that I should "move to a different place" and that continuing my research would be "the end of your career." (ECF Nos. 183-1, 183-2.) The NYSDHR had already found probable cause of retaliation in January 2022. (4AC ¶ 9; Ex. A.) RU cannot rest an eviction on a termination whose lawfulness is contested and, on this record, unsupported. See *JSB Props. LLC v. Yershov*, 77 Misc. 3d 235 (Civ. Ct. N.Y. Cnty. 2022).

C. *The timing defeats any claim of neutral correction*. RU served the replacement notice on the evening of September 29—before the Civil Court entered the September 30 discontinuance, and while my motion challenging the prior notice was pending. (Supp. Decl. ¶¶ 6–7, Exs. C–D.) If RU's only concern was correcting a defect, it would have withdrawn in August 2026, when my counsel moved for dismissal on that ground. Instead, it used the intervening weeks to press a settlement requiring me to withdraw my PI "with prejudice" and release "any and all claims … from the beginning of the world," then discontinued only after I refused to sign its final proposal on September 28—the same day it dated the New Notice. (Supp. Decl. ¶¶ 51–54.) Under *Gilead Cmty. Servs., Inc. v. Town of Cromwell*, 112 F.4th 93, 101 (2d Cir. 2024), that sequence shows retaliation "played a part."

D. *RU engineered the arrears it now relies upon.* RU argues that the arrears evidence is irrelevant to my FHA claim. (ECF No. 276 at 2–3.) That misapprehends its role: I do not offer it to prove the

eviction was unlawful in the abstract, but to prove pretext. RU has selected nonpayment as its legitimate, non-retaliatory reason for the notice. The record shows those arrears exist because RU blocked the programs designed to pay them—failing to provide ERAP landlord documentation in 2021, and refusing an HRA landlord letter in 2024 on the stated ground that there was "presently no landlord-tenant relationship." (ECF No. 273-2 ¶¶ 24–33; ECF No. 273-9 at 4; see also ECF Nos. 243 at 5–8; 244 ¶¶ 16–31.) Under the pretext framework of *Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 147–48 (2000), a factfinder may infer retaliatory motive from the unrebutted falsity of RU's stated justification—and under *Gilead*, that is enough to show retaliation "played a part."

F. *"Proprietary rights" is not an answer*. The FHA prohibits exercising property rights in a retaliatory manner. RU's invocation of "proprietary rights" is a conclusion, not a legitimate non-retaliatory reason. Under *DeSouza v. Park West Apartments, Inc*., No. 5:22-cv-01202 (N.D.N.Y. 2023), "even when there were other objectively valid grounds," a retaliation claim survives if retaliatory motive was "at least a substantial or motivating factor." Id. (quoting *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir. 2001)). RU dismisses my two jobs as irrelevant to its property rights, but that is the harm itself: RU's demand for use-and-occupancy forced me into two jobs below my scientific qualifications, and that schedule prevents me from attending the daytime psychiatric care my PTSD requires (ECF No. 273-2 ¶¶ 61–66) — while the threatened eviction itself would leave me homeless. The question is not whether RU may exercise proprietary rights, but whether it may do so in a manner that both retaliates and inflicts the very health harm the FHA protects against. And RU's proprietary-rights argument does not address the separate failure-to-protect claims at ¶¶ 177–185.

**V. <u>The Fee Claim Is Compensatory Damages, Not a New Demand.</u>**

The claim is not new: the 4AC seeks "[c]ompensatory Damages for past and future economic losses" (4AC at 34, ¶ 2), and the $9,776.67 itemizes losses from July–September 2026. RU concedes the petition was defective (ECF No. 276 at 2). But a party genuinely seeking to conserve judicial resources would have withdrawn when my counsel moved to dismiss on August 2, 2026—not six weeks later, on the eve of trial. (Supp. Decl. ¶¶ 4, 6–7.) Instead, RU litigated the defective petition through August and September. And RU's New Notice demands that I reimburse its own "reasonable attorneys' fees" (ECF No. 273-4 at 3); it cannot seek fees for a defective notice while calling my fee demand improper.

For these reasons, I respectfully request that the Court grant my Letter Motion (ECF No. 273) and consider my Supplemental Brief and Declaration (ECF Nos. 273-1 to 273-11).

I thank the Court for its consideration of this matter.

Respectfully submitted,

Dr. Karolina Marciniak-Domingues Goncalves Agra
(Plaintiff *pro se*)
Karolina Marciniak-Agra
500 E 63rd St, Apt 13F
New York, NY 10065
(646) 770 2045
marciniak.kar@gmail.com

**cc:** All Counsel of Record (via ECF)